# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LaBarron Tate, <br> Sarah Bannister, <br> Brandon Hood <br><br> Petitioning Creditors <br> v. <br><br> Navient Solutions LLC, <br><br> Putative Debtor | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Austin C, Smith,
Smith Law Group LLP
95 Cove Hollow Rd
East Hampton, NY 11937
acsmithlawgroup.com

February 8, 2021

1

LaBarron Tate, Sarah Bannister, and Brandon Hood (collectively as "Petitioning Creditors") bring involuntary petition under 11 U.S.C § 303 against Navient Solutions LLC.

## I. PROLOGUE

In the early 2000s, a private student loan company called The First Marblehead Company ("FMC") introduced a new student loan product aimed at borrowers with riskier credit scores and made outside the financial aid office. *In re The First Marblehead.*, 639 F. Supp. 2d 145 (D. Mass. 2009). It was widely successful; FMC went public, the stock soared, and 12 months before it collapsed, senior officers and directors liquidated more than $300 million in cash from the company. *In re Mata*, 2020 WL 5543716, at *2 (Bankr. C.D. Cal. July 31, 2020). Every major bank, guarantor, and speculator rushed into the bankruptcy court in Boston to file more than $20 billion in claims, representing the debts owed by more than 800,000 student debtors. TERI had only $300 million in cash, which its parent, FMC, and its various securitizations, managed to appropriate most of after somehow persuading the IRS to reduce its claim against TERI from $99,698,781 to only $914.[1] We do not know how or why; no explanation was ever made to the court. But nobody bothered to provide legal notice to these 800,000 debtors. *In re Zaman*, 621 B.R. 519, 524 (Bankr. S.D. Fla. 2020) ("Absent this opportunity, a creditor has a near iron-clad argument that due process has not been observed, and that he should not be bound by the terms of the plan and any attendant court-ordered or statutory injunction."). Among the unnoticed debtors were LaBarron Tate and Sarah Bannister; for due process purposes, the human debtors of corporate Debtors are treated as the collateral; they are only treated as citizens when the time comes to enforce the conclusions made about them behind their backs. *In re Medina*, 2020 WL 5553451

---

[1] **Exhibit A,** In re The Educational Resources Inc, 08-12450, Claim No. 11-2 (Bankr. Mass. Apr. 14, 2009).

(Bankr. S.D. Cal. Sept. 10, 2020) (holding unnoticed single mother to terms of TERI's Fourth Amended Plan).

TERI and FMC then left the market for private student lending almost entirely to Sallie Mae /Navient, who already had a major share of the federal loan market. And by 2000, "nearly half of the financial assets of the United States government – over a trillion dollars – are promissory notes related to unpaid loans made to America's students for their loans." *Student Loan Servicing All. v. D.C.*, 351 F. Supp. 3d 26, 38–39 (D.D.C. 2018). It is likely for that reason that the Code of Conduct under the Higher Education Act contains the strictest— almost Victorian—ethical guidelines of any federal agency, including "loyalty to the highest moral principles" while prohibiting any "business with the Government, either directly or indirectly, which is inconsistent with the conscientious performance of governmental duties," or using " any information gained confidentially in the performance of governmental duties as a means of making private profit."

Navient discloses that it has approximately $87.4 billion in assets, and $85 billion in liabilities; that is, the company is so highly leveraged its paper is below investment grade. Moreover, as Navient's loan originations grew rapidly from 2000 to 2006, it concentrated on certain particularly risky loan cohorts, "in every year from 2000 to 2007, between 68% and 87% of loans defaulted." *Pennsylvania v. Navient Corp.*, 354 F. Supp. 3d 529, 536 (M.D. Pa. 2018). Navient has been evading repaying more than $20 million in overcharges to the federal government for a decade and brazenly operates under the color of the sovereign when pursuing its purely private commercial affairs. *U.S. v. Podell,* 436 F.Supp. 1039, 1042 (S.D.N.Y. 1977)("If he secretly advances interests adverse to those of the government which he serves, it is a breach of confidence and he must account to his 'master' for the benefits received as a result, irrespective of

3

consideration of fraud or damage.") *And yet it is currently a fiduciary for more than half this nation's assets.*

It is difficult to imagine a TSA employee passing a background check with that level of debt; and it is shocking that an avowed perjurer and unrepentant embezzler has not been disciplined, suspended, disbarred or even asked to mind its tone. 48 C.F.R. § 9.406-2 ("Commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects the present responsibility of a Government contractor or subcontractor."). And yet for years, Senators Warren, Durbin and Blumenthal were the only members of the Senate prepared to call a spade a spade.[2] But this is a new regime: the government must be repaid—it must be repaid now, and Navient's arrogant defiance of law must end.

### A. The Petitioning Creditors

LaBarron Tate, Sarah Bannister, and Brandon Hood ("Petitioning Creditors") had their private student debts discharged in bankruptcy. OCC Student Lending Handbook, 2016 WL 2770153, at *6 ("Private student loans extended to students in programs without access to federal funding (i.e., certain trade schools) may be dischargeable in bankruptcy."),[3] but have been hounded and lied to for more than a decade to repay discharged debts.

### B. The Putative Debtor

---

[2] YAHOO FINANCE, *Bilking taxpayers: Warren demands $22 million owed by student loan servicer Navient*, (Jan 29, 2020).

[3] Petitioners have complained to multiple federal and state agencies without success. Their confusion and fear ultimately led the Petitioners to bring an APA action the US Treasury seeking an explanation on why their debts were utterly indestructible according to Navient and how they could be both private loans and government loans at different times. In that case, Treasury: (i) acknowledged Navient had so injured them; (2) Treasury possessed sole discretion to stop Navient; (3) it was too late to fix; (4) if they wanted any relief, they must take it up with Navient. Exhibit B, *Bannister et. al. v. U.S. Treasury*, 20-CV-4458, ECF No. 20 (S.D.N.Y. 2020). It should be noted that Treasury's counsel, AUSA Ilan Stein, has acted honestly, forthrightly and with genuine decency while vigorously defending his client.

Navient Solutions LLC, the servicing arm of Navient Corporation, occupies a vague legal status in which it has possession of all Navient promissory notes, owns none of them but also has the unilateral right to repurchase any loan it wishes from any asset-backed securities ("SLABS") which it administers. NSL is currently being sued by the CFPB, five state attorneys' general, dozens of major securities firms, hedge funds, consumer groups, and individuals.

## II.  JURISDICTION AND VENUE

Jurisdiction is proper under 28 U.S.C § 1334, and venue is proper under 28 U.S.C § 1408 because the principal assets of the putative debtor are held by a banking association in this district.

## III.  ARGUMENT

In the lead up the 2020 election, a historic number of lawsuits were settled by every rational corporate actor who realized the *laissez-faire* attitude towards consumer abuse and financial mismanagement was sadly coming to an end; that law and order would again be imposed. Except, of course, for Navient. It is now the official position of the federal government is that there is no dispute that Navient ~~misappropriated~~ ***looted*** more than $22 million from the Department of Education.[4] It is now the official position of the federal government—having moved for summary judgment on all claims as to liability— that Navient misappropriated $4 billion through complicated interest rate manipulations called "steering." *See, e.g., Consumer Fin. Prot. Bureau v. Navient Corp.*, 2021 WL 134618 (M.D. Pa. Jan. 13, 2021). And yet rather than ceasing its illegal conduct as the administration changed, or settling its lawsuits, Navient spent the months leading up to the election vigorously defending its own actions, and blaming everyone else. Navient has defied and continues to defy federal and state regulators, federal courts, and anyone

---

[4] **Exhibit C**, *In re Navient Corporation*, 16-42-SA (Jan 15, 2021).

who stands in their way of delivering sixteen-cents per quarter in dividends. Navient personally slanders members of the United States Senate and Cabinet Members as though the halls of government were some type of boarding house.[5] Since no rational person could behave this way, it seemed there were only two options in January 2021: first, Navient is planning its own chapter 11; or second, Navient had already collateralized the borrowers they had defrauded, and thus the only way to settle would require asking the noteholders of the student loan asset backed securities for the loans back; which would surely cause their stock price to collapse.

### A. The New Administration Acts

Only days after Secretary Devos resigned, the Acting Secretary of Education struck back. He confirmed that Navient had stolen $22.5 million from the government, and in a cryptic supplemental SEC disclosure, Navient seemed to announce it had lost its federal servicing contract.[6] Shortly thereafter, the White House Press Secretary announced that President Biden might be open to cancelling student debt after all. In the face of these blows to their business model, Navient's only emergency act was to issue $500 million in junk-grade paper to be used to repurchase stock.

The arithmetic that follows from the official position of this government leads inexorably to the conclusion that Navient is insolvent ($87.4 billion in assets minus $85 billion in liabilities minus $4 billion in damages in CFPB lawsuit equals -$1.6 billion net worth), and owes the sovereign billions of dollars. "When the debtor is insolvent, Congress has expressly given priority to the payment of indebtedness owing the United States. *U.S. v. Vermont,* 377 U.S. 351, 358 (U.S.

---

[5] **Exhibit D**, Letter from Jack Remondi to Secretary Devos, Nov 9, 2019 at 8

[6] It should also be noted that Navient has had three CFOs since June 2020; longtime CFO, Christian Lown, Ted Morris and now Joe Fisher as of October 6, 2020. And yet there appears to be no coverage on that highly suspicious series of events.

1964). Even if the government is not presently demanding payment, the FPA mandates "preserv[ation of] a debtor's assets pending resolution of any dispute regarding the government's claim." *U.S. v. Renda*, 709 F.3d 472, 483 (5th Cir. 2013). "[W]hen the debtor is insolvent, Congress has expressly given priority to the payment of indebtedness owing the United States." *U.S. v. Vermont,* 377 U.S. 351, 358 (U.S. 1964).

At some point the government will have to invoke the FPA, and when that happens, all hell will break loose. Whether the administration initiates massive debt cancellation before that, or else the market comes to its sense and makes a run on Navient's stock, the chaos and generalized shouting surrounding any of those events will consume the Petitioning Creditors' particularized grievances. If the Administration cancels outstanding student debt, Navient will blame this all on "the evils of socialism." If Navient's entire business model is exposed as a Ponzi scheme, the conversation will immediately be turned away from the actual victims and towards larger issues of human greed. In either scenario, the Petitioning Creditors' pleas for relief will be lost in the noise.

But the Petitioning Creditors, like this court, are not policy makers or armchair ethicists. They are suffering from concrete, particularized, and ongoing injuries. And the hundreds of thousands of others who have been psychologically tortured will be lumped together with everyone else. But there are major differences in the legal posture between the average student debtor and the Petitioning Creditors, including:

- **Fifth Circuit said these debts were discharged and Navient did not appeal to the Supreme Court.** *Crocker v. Navient Solutions, LLC*, 941 F.3d 206, 224 (5th Cir. 2019) ("We AFFIRM the determination that *loans such as those in issue here* are dischargeable."); *McDaniel v. Navient Solutions LLC*, 97 F.3d 1083 (10th Cir. 2020);

- **The OCC has told lenders under its supervision that these debts are dischargeable since at least 2016** OCC Student Lending Handbook, 2016 WL 2770153, at *6 ("Private

7

student loans extended to students in programs without access to federal funding (i.e., certain trade schools) may be dischargeable in bankruptcy.");

- **Navient's statements against interest, including the Career Training investor disclosures** ("Career training loans are generally dischargeable by a borrower in bankruptcy");[7]

- **Navient CEO's acknowledgement of Crocker (**"Recently, an appeals court found that, while these loans may in fact be dischargeable, the judge was wrong when he found that the plaintiffs had jurisdiction to bring these claims outside of the bankruptcy court that originally heard their bankruptcy."); [8]

- **A federal court order prohibits Navient from denying the Discharged Debts were discharged.** *Crocker v. Navient Sols., LLC*, 2020 WL 5579607, at *1 (Bankr. S.D. Tex. Aug. 27, 2020) ("this Agreed Order explicitly prohibits the rights and ability of NSL or NCFC or any of their Agents to accept payments made by a Bankrupt Non-Title-IV Educational Loan Borrower who has received, since bankruptcy discharge, a notification from NSL or NCFC or any of their Agents that such Bankrupt Non-Title-IV Educational Loan Borrower's debt was **not** discharged in his or her bankruptcy.").

## B. The Involuntary Petition [9]

The Petitioning Creditors had to act now so that they were not left without a chair when the music stops, like they were in TERI's bankruptcy—a adjudication that stamped a court's seal of approval on an assigned note with a criminal rate of usury under New York law.[10] And whether

---

[7] **Exhibit E**, Navient Investor Presentation, Second Quarter 2014

[8] Letter from Jack Remondi to Secretary Devos, Nov 9, 2019 at 8**.** Compare that with the decent and honorable mea culpa given by Sears CEO after Sears was caught engaged in a similar scheme to violate to bankruptcy code. Coincidentally, one of Navient's current board members was identified by the N.Y. Times as one of the key suspects of engineering the reaffirmation scandal while at Sears.

[9] Although the term "involuntary bankruptcy" scares lawyers, who reflexively think only final judgment creditors that have prevailed at the Supreme Court can use section 303, "as a threshold matter, there is a presumption that an Involuntary Petition was filed in good faith." *In re Speer*, 522 B.R. 1, 10 (Bankr. D. Conn. 2014).  Richard M. Hynes, *Revitalizing Involuntary Bankruptcy*, 105 Iowa L. Rev. 1127, 1129 (2020). "It is pure fantasy, in light of the appeals court's finding of liability, for Smith to think that he will walk away from the Fulton County litigation owing SDC nothing. "A dispute as to the amount of a claim does not negate its existence if the legal obligation to pay is present." *In re Braten,* 74 B.R. 1021, 1023 (Bankr.S.D.N.Y.1987) (citations omitted).  And "[t]here is no requirement that a claim be reduced to judgment or liquidated." *In re Speer*, 522 B.R. 1, 7 (Bankr. D. Conn. 2014).  "Pending litigation [does not] necessitate any finding of a bona fide dispute." *In re TPG Troy, LLC,* 793 F.3d 228 (2d Cir. 2015**).** "doctrine's applicability [that] is limited only by the inventiveness of men who find new ways to enrich themselves unjustly by grasping what should not belong to them." *In re Koreag, Controle* 961 F.2d 341, 353 (2d Cir. 1992).

[10] **Exhibit F**, Bannister Note.  Although the TILA form reads 12.7%, simple math shows otherwise.

8

the Petitioners' debts are analyzed as debts in their own individual bankruptcies or as assets of Navient's in its chapter 11 bankruptcy does not make a difference legally speaking. "It is well settled that whenever a 'claim' arises, a 'debt' necessarily arises as well; the only distinction between the two terms is the party to which it applies." *Shu Lun Wu v. May Kwan Si, Inc.*, 508 B.R. 606, 611 (S.D.N.Y. 2014). The Petitioning Creditors have nearly drowned swimming upstream to obtain basic protection under the law after being defrauded by Navient, an agent of this government. Navient claims the Petitioning Creditors owe them more than $100,000 at double digit interest rates (collectively as "Alleged Debts"). But now the Alleged Debts will be analyzed as *assets* of Navient's estate, and "the Bankruptcy Code requires courts to consider the 'fair value' of the debtor's assets." *In re Alpha Protective Servs., Inc.*, 593 B.R. 364, 373 (Bankr. M.D. Ga. 2018). "In performing a fair value analysis, a court does not have to accept the values listed on financial statements and may consider any contingencies that impact an asset's fair value." *In re Alpha Protective Servs., Inc.*, 593 B.R. 364, 373 (Bankr. M.D. Ga. 2018). The only "fair value" that can be assigned to a discharged debt is zero. *In re Iley*, 606 B.R. 871, 885 (Bankr. D. Colo. 2019) (stolen or otherwise illegally obtained funds are not property of the debtor's estate).

Furthermore, the Petitioning Creditors are owed $45,683.64 in money wrongfully collected from them after discharge, along with likely more than a billion from hundreds of thousands of other debtors Navient has defrauded over the last two decades.[11] But because this money was illegally obtained, **it will not become part of Navient's estate**, and will need to be refunded in full outside section 541. It was "long established at common law, that a thief has no title in the property

---

[11] Among the many lawsuits that have been brought to stop illegal collections on discharged debt. *Homaidan, et al. v. Sallie Mae, Inc., et al.*, No. 17-01085 (Bankr. E.D.N.Y. 2017); and *Mazloom v. Navient Solutions, Inc.*, No. 20-80033 (Bankr. N.D.N.Y. 2020); *Mader v. Experian Info. Sols.*, No. 19-3787 (S.D.N.Y. 2019) (FCRA); *DiDonato v. GS Services Limited P'ship, et al.*, No. 20-2154 (S.D.N.Y. 2020) (FDCPA); *Bannister, et al. v. U.S. Treasury Dept.*, No. 20-04458 (S.D.N.Y. 2020) (APA).

that he steals." *In re Newpower*, 233 F.3d 922, 929 (6th Cir. 2000). "A constructive trust arises contrary to intention and *in invitum*, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy." Courts will generally impose a constructive trust on property "traceable" to the stolen or misappropriated property. *U.S. S.E.C. v. Universal Exp., Inc.*, 2008 WL 1944803, at *3 (S.D.N.Y. Apr. 30, 2008). "Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." *McMerty v. Herzog,* 710 F.2d 429, 431 (8th Cir.1983). Thus, the victim may recover against the thief regardless of the form into which the thief has converted the stolen property. *See Howard's Appliance,* 874 F.2d 88 (2d Cir. 1989).

## IV.    CONCLUSION

Contrary to Navient's PR spin, undersigned counsel and the vast majority of his clients have always acknowledged that while an honest bill collector may be a nuisance, one must repay one's debts honestly incurred, unless relieved by reason of law or contract. Navient may well dismiss this as the desperate act of a small-time plaintiff's lawyer. In that they would not be entirely wrong; but it is desperation born of years of battling an adversary who refuses to honor outcomes; refuses to obey the law, and refuses to acknowledge the psychological toll its actions are having on people.  Navient will likely call his ethics into question; waring of intentionally jeopardizing his own clients' claims for restitution.  Given that would be an admission of liability, undersigned counsel will happily bear the scarlet lettering from a thief.[12]

---

[12] Navient will not likely say "it's not big deal."  Navient tried that once before. **Exhibit G,** *See Crocker v. Navient Solutions LLC,* 16-ap-07135(Bankr. S.D. Tex. March 2017) ("THE COURT: I've seen the effects of collection

Submitted respectfully on this 8th day of February,


*/s Austin C. Smith,*
Smith Law Group LLP
95 Cove Hollow Rd
East Hampton, NY 11937
acsmithlawgroup.com
aconnellsmith@gmail.com

---

activities first-hand. I mean, I've seen people who come in and they can't carry on a conversation without breaking into tears. I've seen kids who won't answer the telephone because they're afraid. You know, I've seen -- and ***I've seen minority children who won't look a white person in the eye because they've been told that's the bill collector. The effects are real and they're serious.")(emphasis added).*** See also Sanctions Order (Exhibit H).