Hearing Date:  To be determined
Objection Deadline:  To be determined

Stephen E. Hessler, P.C.
Chad J. Husnick, P.C.
Jennifer Levy (admission *pro hac vice* pending)
AnnElyse Scarlett Gains
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

*Co-Counsel for Navient Solutions, LLC*

Thomas M. Farrell (admission *pro hac vice* pending)
K. Elizabeth Sieg (admission *pro hac vice* pending)
Joseph Florczak (admission *pro hac vice* pending)
**MCGUIREWOODS LLP**
800 East Canal Street
Richmond, Virginia 23219
Telephone:    (804) 775-1000

*Co-Counsel for Navient Solutions, LLC*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LABARRON TATE,<br>SARAH BANNISTER,<br>BRANDON HOOD<br><br>Petitioners.<br><br>v.<br><br>NAVIENT SOLUTIONS, LLC,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Chapter 11<br>)<br>)    Case No. 21-10249 (MG)<br>)<br>)<br>) |

## NOTICE OF HEARING OF EXPEDITED MOTION TO
## DISMISS INVOLUNTARY PETITION AND REQUEST FOR DAMAGES

**PLEASE TAKE NOTICE** that on February 17, 2021, Navient Solutions, LLC

("Navient"), the respondent in the above-captioned involuntary chapter 11 case (the "Involuntary

Case"), filed the *Expedited Motion to the Dismiss Involuntary Petition and Request for Damages*

(the "Motion," a copy of which is attached hereto) for approval before the Honorable Martin Glenn

of the United States Bankruptcy Court for the Southern District of New York (the "Court"), **at a**

**time to be determined** (the "Hearing").  In accordance with General Order M-543, dated March

20, 2020, the Hearing will be conducted telephonically. Any parties wishing to participate must do so telephonically by making arrangements through CourtSolutions by telephone (917-746-7476).

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Motion may be obtained by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: February 17, 2021

/s/ Stephen E. Hessler, P.C.

Stephen E. Hessler, P.C.
Chad J. Husnick, P.C.
Jennifer Levy (admission *pro hac vice* pending)
AnnElyse Scarlett Gains
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    stephen.hessler@kirkland.com
Email:    chad.husnick@kirkland.com
Email:    jennifer.levy@kirkland.com
Email:    annelyse.gains@kirkland.com

*Co-Counsel for Navient Solutions, LLC*

Thomas M. Farrell (admission *pro hac vice* pending)
K. Elizabeth Sieg (admission *pro hac vice* pending)
Joseph Florczak (admission *pro hac vice* pending)
**MCGUIREWOODS LLP**
800 East Canal Street
Richmond, Virginia 23219
Telephone:    (804) 775-1000
Email: tfarrell@mcguirewoods.com
Email: bsieg@mcguirewoods.com
Email: jflorczak@mcguirewoods.com

*Co-Counsel for Navient Solutions, LLC*

**Hearing Date:  To be determined**
**Objection Deadline:  To be determined**

Stephen E. Hessler, P.C.
Chad J. Husnick, P.C.
Jennifer Levy (admission *pro hac vice* pending)
AnnElyse Scarlett Gains
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

*Co-Counsel for Navient Solutions, LLC*

Thomas M. Farrell (admission *pro hac vice* pending)
K. Elizabeth Sieg (admission *pro hac vice* pending)
Joseph Florczak (admission *pro hac vice* pending)
**MCGUIREWOODS LLP**
800 East Canal Street
Richmond, Virginia 23219
Telephone:    (804) 775-1000

*Co-Counsel for Navient Solutions, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LABARRON TATE,<br>SARAH BANNISTER,<br>BRANDON HOOD<br><br>              Petitioners.<br><br>v.<br><br>NAVIENT SOLUTIONS, LLC,<br><br>              Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Chapter 11<br><br>Case No. 21-10249 (MG) |

**EXPEDITED MOTION TO DISMISS**
**INVOLUNTARY PETITION AND REQUEST FOR DAMAGES**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ..................................................................................... 4

A.    The Involuntary Case. ................................................................... 4

B.    Petitioners. ................................................................................... 4

    i.    Sarah Bannister ....................................................................... 4

    ii.    Brandon Hood ......................................................................... 6

    iii.    Labarron Tate ....................................................................... 7

C.    Other Ongoing Litigation. ............................................................ 8

ARGUMENT ......................................................................................... 10

    I.    The Court Should Dismiss the Involuntary Case Because the
Claims of Petitioners are Contingent and the Subject of Bona Fide
Dispute. ....................................................................................... 10

        A.    Petitioners Bear the Initial Burden of Establishing that Their
Claims are Noncontingent and are not the Subject of Bona
Fide Dispute. ................................................................... 10

        B.    Petitioners Fail to Establish a *Prima Facie* Case that Their
Claims are not Contingent and Subject to a Bona Fide
Dispute as to Liability or Amount. ................................... 11

        C.    Petitioners' Claims Are Contingent and Subject to a Bona
Fide Dispute. ................................................................... 12

    II.    The Court Should Dismiss the Involuntary Case Because
Petitioners Filed the Involuntary Petition in Bad Faith. ........... 14

        A.    Petitioners Filed the Involuntary Petition to Influence the
Outcome of Other Matters Including an Ongoing Dispute in
the Crocker Discharge Litigation. ................................... 15

        B.    Petitioners Commenced the Involuntary Case to Harm
Navient's Reputation. ....................................................... 17

    III.    The Court Should Dismiss the Involuntary Case Because
Petitioners Have Not, and Cannot, Make Any Credible
Allegation that Navient is not Generally Paying Its Debts as they
Become Due. ................................................................................ 18

        A.    Petitioners Rely on Unsubstantiated Claims of Insolvency to
Adduce that Navient is Not Generally Paying Its Debts as
they Become Due. ............................................................ 18

B.      Petitioners Offer No Supporting Evidence that Navient is
        Not Generally Paying Its Debts as They Become Due. ................ 20

IV.    Alternatively, the Court Should Abstain and Dismiss the
       Involuntary Case Under Section 305(a) of the Bankruptcy Code. ........... 21

       A.      The Involuntary Petition is a Disguised Two-Party Dispute,
               and Economic and Efficiency Considerations Favor
               Dismissal. ..................................................................................... 22

       B.      Alternate Forums are Available to Protect all Parties, and the
               Court Is Not Necessary to Reach a Just and Equitable
               Solution for Petitioners. ............................................................... 23

V.     Navient Is Entitled to Costs, Attorneys' Fees, and Damages
       Pursuant to Section 303(i) of the Bankruptcy Code. ................................ 23

CONCLUSION ................................................................................................................ 25

# **TABLE OF AUTHORITIES**

## **Cases**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ..................................................................... 20

*Am. Airlines Fed. Credit Union v. Cardona*,
   2015 WL 9459883 (Bankr. S.D. Fla. Dec. 23, 2015) ................................................. 13

*Amaker v. Foley*, 274 F.3d 677 (2d Cir. 2001) ............................................................ 20

*Bannister v. U.S. Treasury Dep.'t*, No. 20-4458 (MKV) (S.D.N.Y. June 10, 2020) ................... 12

*Brown v. CitiBank*, N.A., 539 B.R. 853 (Bankr. S.D. Cal. 2015) ................................. 13

*Brown v. Rust*, 510 B.R. 562 (Bankr. E.D. Ky. 2014) ................................................ 13

*Crest One Spa v. TPG Troy, LLC (In re TPG Troy, LLC)*,
   793 F.3d 228 (2d Cir. 2015) .......................................................................... 11, 14, 24

*De la Rosa v. Kelly*, 582 B.R. 905 (Bankr. S.D. Tex. 2018) ........................................ 13

*Desormes v. Infilaw Corp.*, 569 F. App'x 42
   (2d Cir. 2014) (unpublished opinion) ............................................................... 13

*In re 9281 Shore Rd. Owners Corp.*, 187 B.R. 837 (E.D.N.Y. 1995) ......................... 15

*In re A&J Quality Diamonds, Inc.*, 377 B.R. 460 (Bankr. S.D.N.Y. 2007) ........................ 18, 20

*In re Anmuth Holdings LLC*, 600 B.R. 168 (Bankr. E.D.N.Y. 2019) ........................ 14, 21, 24, 25

*In re B.D. Int'l Disc. Corp.*, 701 F.2d 1071 (2d Cir. 1983) ....................................... 20

*In re Bayshore Wire Prods. Corp.*, 209 F.3d 100 (2d Cir. 2000) ..................................... 11, 15, 25

*In re Braten*, 74 B.R. 1021 (Bankr. S.D.N.Y. 1987) .................................................. 12

*In re CNG Foods*, 2020 WL 4219679 (Bankr. E.D.N.Y. July 13, 2020) ...................... 25

*In re Dino's, Inc.*, 183 B.R. 779 (S.D. Ohio 1995) .................................................... 18

*In re Euro-Am. Lodging Corp.*, 357 B.R. 700 (Bankr. S.D.N.Y. 2007) ...................... 20

*In re Forever Green Athletic Fields, Inc.*, 500 B.R. 413 (Bankr. E.D. Pa. 2013) ...................... 15

*In re Luxeyard, Inc.*, 556 B.R. 627 (Bankr. D. Del. 2016) ........................................ 18

*In re Meltzer*, 516 B.R. 504 (Bankr. N.D. Ill. 2014)................................................................ 2, 15

*In re Monitor Single Lift I, Ltd.*, 381 B.R. 455 (Bankr. S.D.N.Y. 2008) ...................................... 21

*In re Mountain Dairies Inc.*, 372 B.R. 623 (Bankr. S.D.N.Y. 2007)...................................... 22, 24

*In re Murray*, 565 B.R. 527 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53 (2d Cir. 2018) ....................... 15

*In re Persco Cont. and Trucking, Inc.*,
    2010 WL 3766555 (Bankr. S.D.N.Y. Aug. 20, 2010) ...................................................... 22, 23

*In re Rosenberg*, 471 B.R. 307 (Bankr. S.D. Fla. 2012)............................................................ 24

*In re Shaw*, 2015 WL 1000213 (Bankr. S.D. Tex. Mar. 3, 2015)................................................ 13

*In re Silberkraus*, 253 B.R. 890 (Bankr. C.D. Cal. 2000)............................................................ 15

*In re Taub*, 438 B.R. 761 (Bankr. E.D.N.Y. 2010)........................................................................ 24

*In re TPG Troy, LLC*, 492 B.R. 150 (Bankr. S.D.N.Y. 2013),
    *subsequently aff'd, TPG Troy Appeal*, 793 F.3d 228................................................................ 14

*In re TPG Troy*, 2013 WL 3789344 (Bankr. S.D.N.Y. July 18, 2013)........................................ 24

*In re Votex Fishing Sys., Inc.*, 277 F.3d 1057 (9th Cir. 2002) ...................................................... 11

*In re White*, 2020 WL 639200 (Bankr. M.D. Tenn. Jan. 10, 2020).............................................. 13

*In re Zapas*, 530 B.R. 560 (Bankr. E.D.N.Y. 2015) ...................................................................... 11

*Maas v. Northstar Educ. Fin., Inc.*, 514 B.R. 866 (W.D. Mich. 2014) ........................................ 13

*Rizor v. Acapita Educ. Fin. Corp.*, 553 B.R. 144 (Bankr. D. Alaska 2016)................................. 13

*Shinko v. Miele*, 29 Fed. Appx. 890 (3d Cir. 2002) ...................................................................... 11

*Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440 (2004) ...................................................... 6

*United States Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269, 274 n. 11 (2010) ......................... 6

## Statutes

11 U.S.C. § 303(b)(1) ................................................................... 10, 12, 14, 25

11 U.S.C. § 303(h) ............................................................................. 19, 20

11 U.S.C. § 303(h)(1) ......................................................................... 18, 19

11 U.S.C. § 303(i) ............................................................................ 23, 24, 25

11 U.S.C. § 305(a)(1)............................................................................... 21

11 U.S.C. § 523(a)(8)(A)(ii) ...................................................................... 13

## Other Authorities

ASC Law Group Webpage, *In re Navient Solutions LLC*, available at

  https://www.acsmithlawgroup.com/navient-303 (last accessed Feb. 15, 2021) ....................... 17

Austin Smith, *Dragos and the Robocalls*, YOUTUBE (Dec. 30, 2020),

  https://www.youtube.com/watch?v=-CLEBYQcY7o ............................................. 17

Austin Smith, *Hall 2*, YOUTUBE (Jan. 2, 2021),

  https://www.youtube.com/watch?v=cOMrX8NfyHg&t=31s................................... 17

Austin Smith, *Navient 303 Claims*, YOUTUBE (Feb. 14, 2021),

  https://www.youtube.com/watch?v=-CLEBYQcY7o, at 0:21 ................................ 16

Company Form 8-k filed June 2, 2020 .......................................................... 3

Company Form 8-k filed October 6, 2020........................................................ 3

Federal Home Loan Mortgage Corporation's Form 8-k filed June 2, 2020 ................... 3

Navient Rep. Fourth-Quarter 2020 Fin. Results, (Jan. 26, 2021) ................................ 3

## Treatises

2 Collier on Bankruptcy ¶ 303.31 (16th ed. 2020) ....................................... 19

Navient Solutions, LLC ("Navient"), the respondent in the above-captioned involuntary chapter 11 case (the "Involuntary Case"), by and through counsel, before the United States Bankruptcy Court for the Southern District of New York (the "Court"), files this motion (this "Motion") to dismiss the Involuntary Case pursuant to sections 105, 303, and 305(a) of title 11 of the United States Code (the "Bankruptcy Code"), rules 1011 and 1014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 12(b) of the Federal Rules of Civil Procedure (the "Federal Rules") (incorporated by reference through Bankruptcy Rule 7012).  In addition, Navient both requests damages as set forth below and expressly reserves the right to seek further relief for the imposition of all available damages against Petitioners (as defined below) and their counsel, Austin C. Smith and Smith Law Group LLP ("Counsel"), to the fullest extent of the law.  In furtherance thereof, Navient respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Involuntary Case is frivolous and must be dismissed.  Nothing about the filing is based on reality, facts, or evidence.  Nothing about the filing serves the broader goals of the Bankruptcy Code.  Put simply, the Involuntary Case is the latest salvo in Counsel's long-running, highly public crusade against Navient and the broader student loan servicing industry.

2.      The Involuntary Case does not remotely satisfy section 303 of the Bankruptcy Code.  Petitioners have not alleged any concrete details regarding their claims against Navient, much less that any such debts are neither contingent nor subject to a bona fide dispute.  As discussed below, one Petitioner is engaged in active litigation against Navient regarding her student loan debt in this jurisdiction.  And all three Petitioners fall facially within class definitions in other pending litigation and nationwide class mediations involving Counsel adjudicating the dischargeability of their student loan debts.  None of that litigation has yielded a judgment on any of these claims that can be said to be free from bona fide dispute.

3.      In addition, the gross waste involved with placing Navient into an involuntary chapter 11 proceeding and the availability of other fora to adjudicate the disputes of Petitioners weigh overwhelmingly against the Court entertaining the Involuntary Case.  Petitioners, in an egregious disregard of the law, opted to enforce "payment rights" through the Involuntary Case after they have continuously failed to be successful on this issue in multiple fora, including a case against the U.S. Treasury in this District.[1]

4.      And perhaps most importantly, the motivation of Counsel is clear—this Involuntary Case was filed in a bad faith attempt to gain leverage in ongoing litigation against Navient and to continue a media crusade riddled with falsehoods unrelated to the enforcement or protection of Petitioners' legal and equitable rights.  The Involuntary Case and accompanying papers are replete with unsupported and defamatory accusations that go to the heart of a bad faith filing.[2]  This is a clear violation of the purpose of the bankruptcy process and ***alone*** warrants dismissal of this case.[3]

5.      Chapter 11, at its core, provides corporations in financial distress a breathing spell to restructure their debts and exit bankruptcy with a fresh start.  COVID-19 has crushed many businesses this last year and forced them to seek chapter 11 relief; however, Navient is certainly not among them.  Navient is but one subsidiary of Navient Corporation (together with Navient and Navient Corporation's other subsidiaries and affiliates, the "Company")—a leader in education loan management and business processing solutions for education, healthcare, and government entities at all levels with approximately $1.2 billion in cash and cash equivalents on the Company's

---

[1]    *See* Involuntary Supplement at 4 n.3. ("Petitioners have complained to multiple federal and state agencies without success.  Their confusion and fear ultimately led the Petitioners to bring an APA action the US Treasury seeking an explanation on why their debts were utterly indestructible according to Navient . . . .").

[2]    *See*, *e.g.*, Involuntary Supplement at 4 (describing Navient as an "avowed perjurer and unrepentant embezzler"); *id.* at 7 (stating that Navient's "entire business model is . . . a Ponzi scheme").  Navient reserves all rights to pursue appropriate remedies against Counsel and any other persons who perpetuate such falsehoods.

[3]    *See In re Meltzer*, 516 B.R. 504, 515–16 (Bankr. N.D. Ill. 2014) ("A petitioner has no valid bankruptcy purpose—and acts in bad faith—when his goal is to stall or disrupt litigation in another court.").

balance sheet at the end of 2020.  *See* Navient Rep. Fourth-Quarter 2020 Fin. Results, at 9 (Jan. 26, 2021); *Hessler Verified Declaration* (filed contemporaneously herewith) (the "Hessler Declaration"), **Exhibit A**.  The Company entered 2021 with significantly less unsecured debt as the Company managed to retire $1.1 billion of senior unsecured debt, $579 million of which was scheduled to mature in 2021.  *Id.* at 1, 10.  During that same time, the Company remained adequately capitalized and funded, and liquidity was sufficiently strong such that when COVID hit, the Company took immediate steps to keep its employees safe and offered significant support to federal and private education loan borrowers in the form of loan modifications and payment suspensions, while returning $523 million to investors.  *Id.* at 9.

6.     This strong performance allows the Company to anticipate that it will ***continue*** to return excess capital in 2021.  The Company is certainly not facing financial distress.  *See id.* at 10 (for year end December 31, 2020, net income was $412 million compared with net income of $597 million for the year-ago period).  Despite these strong public financials, Petitioners attempt to impugn the Company's reputation through innuendo and false accusations of insolvency.[4]  They use the Involuntary Case as a means to continue Counsel's long-running campaign, despite the serious implications that bankruptcy would have to the Company, such as the threat to servicing contracts and other quantifiable and non-quantifiable harms and overall equity value.

7.     The great power (and responsibility) that comes with filing an involuntary case comes with heavy consequences when an attorney does not demonstrate careful pre-filing

---

[4]    For example, while it is true that the Company had three individuals act as CFO in 2020, this was a normal transition process and not nefarious or hidden from view. *See* Involuntary Supplement at 6 n.6.  Each step was disclosed in public filings and discussed publicly on the Company's earnings calls.  The Company announced the departure of Mr. Lown and that a current employee, Mr. Morris, would become acting CFO while the Company conducted a search for a replacement.  *See* Company Form 8-k filed June 2, 2020, Hessler Declaration, **Exhibit B**.  Then, Mr. Lown's new employer, Federal Home Loan Mortgage Corporation, filed its own Form 8-k announcing his appointment to the CFO role there.  *See* Federal Home Loan Mortgage Corporation's Form 8-k filed June 2, 2020, Hessler Declaration, **Exhibit C**.  Subsequently, the Company announced that it had appointed Mr. Fisher as CFO and Mr. Morris would no longer be acting CFO.  *See* Company Form 8-k filed October 6, 2020, Hessler Declaration, **Exhibit D**.

judgment (and subsequently provides ill-advised counsel).  That attorney is ***statutorily*** liable for attorneys' fees and costs as well as punitive damages.  The sheer magnitude of these potential penalties makes the technical, facial, and evidentiary defects and erroneous and unsupported allegations in the Involuntary Case astounding.  In view of the frivolous claims and ineligibility of Petitioners to file the Involuntary Case, the Court should dismiss the case and grant Navient all necessary remedies to repair the damage Navient has incurred and will incur from the filing.

## BACKGROUND

**A.    THE INVOLUNTARY CASE.**

8.    On February 8, 2021, Sarah Bannister, Brandon Hood, and Labarron Tate (the "Petitioners," and each, a "Petitioner") filed an involuntary petition against Navient [Docket No. 1] with an attached supplement [Docket No. 1-1] with this Court and commenced the Involuntary Case.  On February 10, 2021, Petitioners filed an amended involuntary petition [Docket No. 2] (the "Involuntary Petition") and amended petition supplement [Docket No. 2-1] (the "Involuntary Supplement").  Thereafter, a summons was issued on February 10, 2021 [Docket No. 5].  As of February 16, 2021, Navient has not been served with the summons.

**B.    PETITIONERS.**

**i.    Sarah Bannister**

9.    Public court filings show that Sarah Bannister ("Bannister") was party to a bankruptcy proceeding filed before the Court in November 2009 (the "First Bannister Bankruptcy").  *See* Docket No. 1, Case No. 09-16875 (JLG).  Bannister received a general bankruptcy discharge in May 2010.  *See* First Bannister Bankruptcy [Docket No. 12]; Hessler Declaration, **Exhibit E**.  In 2015, Bannister reopened her bankruptcy case and filed an adversary

proceeding against Nelnet Inc., Navient Solutions, Inc. (k/n/a Navient),[5] American Education

Services, and Citizens Financial Group to determine the dischargeability of student loan debts.

Bannister subsequently settled her dispute with Navient (the "Bannister Settlement"), whereby she

***stipulated*** that her outstanding debts to Navient are not dischargeable under section 523(a)(8) of

the Bankruptcy Code and that Navient be dismissed from the case.  *See Bannister v. National*

*Collegiate Student Loan Trust 2007-1*, Ad. Pro. No. 15-01418 (JLG) (Bankr. S.D.N.Y. July 13,

2020), *Stipulation for Settlement and for Dismissal of Navient Solutions as a Defendant in this*

*Adversary Proceeding* [Docket No. 22-1], Hessler Declaration, **Exhibit F**.  As part of the

settlement, Navient reduced the principal on Bannister's loans by almost $30,000, dropped her

annual interest rate to 1%, and extended her repayment time to 30 years.  *Id.*  More recently, and

with aid of Counsel, Bannister filed a motion to vacate the Bannister Settlement, which the Court

denied.  *See id.* [Docket No. 121]; Hessler Declaration, **Exhibit G**.

10.     In July 2020, Bannister filed a voluntary petition under chapter 13 of the

Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.

*See In re Sarah Bannister*, No. 20-11718 (CGM) (Bankr. S.D.N.Y. July 28, 2020) (the "Second

Bannister Bankruptcy") [Docket No. 1].  On January 19, 2021, Bannister commenced an adversary

proceeding in the Second Bannister Bankruptcy seeking discharge of her Navient loans in addition

to other educational debt.  *See id.* [Docket No. 22]; Hessler Declaration, **Exhibit H**.  As of the

filing of this Motion, the Second Bannister Bankruptcy remains pending and the second adversary

proceeding has not been adjudicated.

11.     Lastly, Bannister's circumstances may facially qualify her for inclusion in the

Homaidan Discharge Litigation (as defined below) and reflect her involvement at some point in

---

[5]     Navient was previously Navient Solutions, Inc.  It was converted to an LLC in January 2017.

time in the Crocker Discharge Litigation (as defined below) to the extent she could maintain any claim her loans are dischargeable. Bannister holds five Tuition Answer Loans serviced by Navient for her daughter's attendance at a Title IV institution and both filed and received a general bankruptcy discharge in the First Bannister Bankruptcy after 2005. *See* Bannister Tuition Answer Loans; Hessler Declaration, **Exhibits I-1, I-2, I-3, I-4, and I-5**. Bannister also held two Career Training Loans for her daughter's attendance at a non-Title IV institution and she both filed and received a general bankruptcy discharge in the First Bannister Bankruptcy after 2005.[6] *See* Bannister Career Training Loans; Hessler Declaration, **Exhibits J-1 and J-2**.

### ii.    Brandon Hood

12.    On June 16, 2011, Brandon Hood ("Hood") filed a voluntary petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court of Massachusetts. *See In re Brandon Campbell Hood,* No. 11-15781 (WCH) (Bankr. D. Mass. July 16, 2011) [Docket No. 1]. The Massachusetts bankruptcy court entered an order granting Hood a general bankruptcy discharge on October 4, 2011. *Id*. [Docket No. 12]; Hessler Declaration, **Exhibit L**. A review of the bankruptcy docket reveals that Hood did not file an adversary proceeding to contest the dischargeability of any educational debt with Navient or its affiliates. Initiation of such a proceeding is the debtor's burden under the Bankruptcy Code and Supreme Court precedent to contest the dischargeability of educational debt.[7]

13.    Lastly, Hood's circumstances may qualify him for inclusion in the Homaidan Discharge Litigation and reflect his involvement at some point in time in the Crocker Discharge

---

[6]    These Career Training Loans also indicate Bannister may facially qualify for the nationwide class alleged in the Mazloom Discharge Litigation (defined below). *See* Complaint, No. 20-80033 (DD) (Bankr. N.D.N.Y.) at 6 [Docket No. 1]; Hessler Declaration, **Exhibit K**.

[7]    The Supreme Court held in *United States Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269, 274 n. 11 (2010), that student loans are presumptively not discharged until the debtor initiates an adversary proceeding and obtains a determination that the debt was discharged. *See also Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004) (same).

Litigation to the extent he could maintain any claim his loans are dischargeable. Hood holds five Signature Student loans that were consolidated and now serviced by Navient for attendance at a Title IV institution and both filed and received a general bankruptcy discharge post-2005. *See* Hood Signature Student Loans and Hood Consolidated Loan; Hessler Declaration, **Exhibits M-1, M-2, M-3, M-4, M-5, and M-6**. Hood also held one Career Training Loan for attendance at a non-Title IV institution and he both filed and received a general bankruptcy discharge post-2005.[8] *See* Hood Career Training Loan; Hessler Declaration, **Exhibit N**.

   **iii.**  **Labarron Tate**

   14.  On June 30, 2004, Labarron Tate ("Tate") filed a voluntary petition under chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia. *See In re Labarron Tate*, No. 04-11990 (WHD) (Bankr. N.D. Ga. June 30, 2004). The case was converted to one under Chapter 7 on March 27, 2006. *Id*. The Georgia bankruptcy court entered an order granting Tate a chapter 7 discharge on July 7, 2006. *Id*. [Docket No. 37]; Hessler Declaration, **Exhibit O**. A review of the bankruptcy docket reveals that Tate did not file an adversary proceeding to contest the dischargeability of any educational debt with Navient or its affiliates. Initiation of such a proceeding is the debtor's burden under the Bankruptcy Code and Supreme Court precedent to contest the dischargeability of educational debt.[9] Further, Tate's circumstances may facially qualify him for inclusion in the Homaidan Discharge Litigation to the extent Tate could maintain any claim his loan is dischargeable. He holds a loan serviced by Navient that was disbursed for attendance at a Title IV institution and received his general bankruptcy discharge post-2005. Hessler Declaration, **Exhibit P**.

---

[8]  These Career Training Loans also indicate Hood may facially qualify for the nationwide class alleged in the Mazloom Discharge Litigation. *See supra* note 6.

[9]  *See supra* note 7.

7

C.    **OTHER ONGOING LITIGATION.**[10]

15.    Counsel has been involved in several ongoing class actions currently pending against Navient and/or its affiliates, most notably *Crocker v. Navient Solutions, LLC*, Adv. Pro. No. 16-03175 (DRJ) (Bankr. S.D. Tex. 2016) (the "Crocker Discharge Litigation") (putative districtwide class action alleging discharge violations for educational debt at non-Title IV institutions), and *Homaidan et al. v. Sallie Mae, Inc.*, et al., Adv. Pro. No. 17-01085 (ESS) (Bankr. E.D.N.Y. June 23, 2017) (the "Homaidan Discharge Litigation") (putative nationwide class action for purported discharge violations regarding educational debt at Title IV institutions allegedly in excess of the cost of attendance). Additionally, there are a number of other class action suits pending against Navient that assert claims for discharge violations regarding student debt, including *Bolt v. Navient Solutions et al*, Adv. Pro. No. 20-03040 (AMN) (Bankr. D. Conn. Sept. 8, 2020) (putative districtwide class action alleging discharge violations for educational debt at non-Title IV institutions), *Mazloom v. Navient Solutions, Inc.*, Adv. Pro. No. 20-80033 (DD) (Bankr. N.D.N.Y. July 2, 2020) (putative nationwide class action alleging discharge violations for educational debt at non-Title IV institutions) (the "Mazloom Discharge Litigation"), and *Teran v. Navient Solutions, LLC, et al.*, Adv. Pro. No. 20-03075 (DM) (Bankr. N.D. Cal. Aug. 31, 2020) (putative districtwide class action alleging discharge violations for educational debt at non-Title IV institutions) (all such cases, collectively, the "Discharge Litigation").

16.    Prior to the Fifth Circuit's decision in *Crocker v. Navient Solutions, LLC*, 941 F.3d 206, 224 (5th Cir. 2019) (the "Crocker Decision"), the plaintiffs in the Crocker Discharge Litigation sought a putative ***nationwide*** class. *See* Crocker Discharge Litigation at 2 [Docket No. 95]; Hessler Declaration, **Exhibit Q**. As a result of the Crocker Decision (which limited the scope

---

[10]    For the avoidance of doubt, Navient reserves all its defenses in the Discharge Litigation (as defined herein) and denies that class certification is appropriate or may be maintained in any of those litigations under the Federal Rules of Civil Procedure.

of the lawsuit to only cases within that judicial district), on May 26, 2020, the plaintiffs in the
Crocker Discharge Litigation filed a *Fourth Amended Complaint* seeking to narrow the putative
nationwide class action to a district wide class action.  *See* Crocker Discharge Litigation at 2
[Docket No. 243]; Hessler Declaration, **Exhibit R**.

17.    In September 2020, the parties in the Crocker Discharge Litigation, including
Counsel, agreed to engage in mediation to resolve the case.  At a status conference on January 26,
2021, Navient and the other parties to the Crocker Discharge Litigation disclosed that they had
been in discussions regarding a potential nationwide settlement, but an agreement on certain
principal terms had only been reached for cases within the Fifth Circuit.  *See* Crocker Discharge
Litigation [Docket No. 303]; Hessler Declaration, **Exhibit S**.[11]

18.    Although the scope of the Crocker Discharge Litigation has been narrowed to a
putative district-wide only class, numerous individuals outside of the putative class with similar
loans serviced by Navient, including Bannister and Hood, have been the beneficiaries of an agreed
order (the "Crocker Order"), *see* Crocker Discharge Litigation [Docket No. 122]; Hessler
Declaration, **Exhibit T**, whereby, as part of the proceedings, Navient agreed to stop certain
collection efforts, for as long as the case is pending.  The Crocker Discharge Litigation remains
active and pending.

19.    Further, in the Homaidan Discharge Litigation, as outlined in the *Plaintiff's
Memorandum of Law In Support of their Motion For Class Certification*, the plaintiff is seeking
to certify a nationwide class against Navient.  *See* Homaidan Discharge Litigation at 15 [Docket
No. 169]; Hessler Declaration, **Exhibit U**.

---

[11]    Status Conference at 2:47/2:59, Crocker Discharge Litigation [Docket No. 303] ("After months of negotiation and a whole lot
of mediation sessions, I believe we've reached a settlement in principle on a class, the scope of which would be the entire
Fifth Circuit.  We tried very hard to reach terms on a nationwide class and ultimately were not able to get there.").

20.     In addition, Counsel for Petitioners here has been counsel in both the Crocker Discharge Litigation and Homaidan Discharge Litigation.  Prior to the filing of the Involuntary Petition, Counsel was designated as interim class counsel in the Crocker Discharge Litigation.  The day after filing the Involuntary Petition, Counsel filed an emergency motion seeking to voluntarily withdraw as counsel of record in the Crocker Discharge Litigation.  *See* Crocker Discharge Litigation [Docket No. 304]; Hessler Declaration, **Exhibit V**.  The court granted Counsel's request to withdraw with the caveat that "[a]ll rights to compensation and reimbursement of expenses are forfeited."  Crocker Discharge Litigation [Docket No. 306]; Hessler Declaration, **Exhibit W**.

## **ARGUMENT**

### I.    **The Court Should Dismiss the Involuntary Case Because the Claims of Petitioners are Contingent and the Subject of Bona Fide Dispute.**

21.     The Court should dismiss the Involuntary Case under section 303 of the Bankruptcy Code.  Specifically, any purported "claims" of Petitioners are, at minimum, contingent and the subject of a bona fide dispute as to liability and amount, as evidenced by, among other things, the defenses asserted by Navient in the various class action matters described above.

#### A.    **Petitioners Bear the Initial Burden of Establishing that Their Claims are Noncontingent and are not the Subject of Bona Fide Dispute.**

22.     Pursuant to section 303(b)(1) of the Bankruptcy Code, "[a]n involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title … by three or more entities, each of which is [a] holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount."  11 U.S.C. § 303(b)(1).  The Bankruptcy Code does not define "bona fide dispute," and the majority of courts, including the Second Circuit, apply an objective test to determine whether a bona fide dispute exists.  *See Crest One Spa v. TPG Troy, LLC (In re TPG Troy, LLC)*, 793 F.3d 228, 234 (2d Cir. 2015) ("<u>TPG Troy Appeal</u>").  Courts must determine whether there is an

objective basis for either a factual or legal dispute as to the validity of the debt. *See id*. Petitioners

bear the initial burden of proof to establish a "prima face case that no bona fide dispute exists." *Id*.

23.    A bona fide dispute exists "if 'there is either a genuine issue of material fact that

bears upon the debtor's liability or a meritorious contention as to the application of law to

undisputed facts.'" *Id*. Courts are not required to resolve the underlying disputes. *See id*.

("Critically, while a court is called upon to determine the presence of a bona fide dispute, it is not

called on to resolve such dispute."). Thus, "[t]he existence of an affirmative defense may suggest

that a bona fide dispute exists." *In re Zapas*, 530 B.R. 560, 567 (Bankr. E.D.N.Y. 2015) (citing *In*

*re Votex Fishing Sys., Inc.*, 277 F.3d 1057, 1067 (9th Cir. 2002)); *see also Shinko v. Miele*, 29 Fed.

Appx. 890 (3d Cir. 2002) ([T]he alleged claim was clearly the subject of a bona fide dispute, one

that had been seriously contested in many rounds of state court litigation.").

24.    If any one of the three Petitioners' claims are subject to a bona fide dispute, the

Involuntary Case must be dismissed. *See In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103–

05 (2d Cir. 2000) (affirming dismissal of case where one of the three petitioners' claims was

subject to bona fide dispute). A claim based on pending litigation "'strongly suggests' the

existence of a bona fide dispute." *TPG Troy Appeal*, 793 F.3d at 234 (internal citations omitted).

Creditors cannot use "[a]n involuntary bankruptcy case [as] the means of pressuring a debtor to

pay a legitimately disputed debt." *Id*.

> **B.    Petitioners Fail to Establish a *Prima Facie* Case that Their Claims are not
> Contingent and Subject to a Bona Fide Dispute as to Liability or Amount.**

25.    As an initial matter, Petitioners fail to establish a *prima facie* case that their claims

are not subject to a bona fide dispute as to liability or amount. The Involuntary Petition asserts

three claims for "refunds of overpayment" totaling $45,683.64. *See* Involuntary Petition, Part

3.13. In the Involuntary Supplement, Petitioners allege they "are owed $45,683.64 in money

wrongfully collected from them after discharge." Involuntary Supplement at 9. Yet at no point do Petitioners offer factual statements, legally binding judgments, or documentary evidence supporting: (a) the specific nature of the debts (including a calculation or methodology as to how the amounts "owed" were determined) or (b) the basis underlying a claim that such debts are presently due and owing.

26.    In addition to the lack of evidence supporting their claims, Petitioners also fail to unequivocally assert or argue (under penalty of perjury) that their claims are ***not*** subject to a bona fide dispute. *See* Involuntary Supplement at 8 n.9.[12] Accordingly, Petitioners fail to establish the threshold requirements under section 303(b)(1) and the Involuntary Case should be dismissed.

### C.    Petitioners' Claims Are Contingent and Subject to a Bona Fide Dispute.

27.    Even if Petitioners had met their initial burden, a bona fide dispute as to the liability and amount of Petitioners' claims exists. First, Petitioners and Counsel filed the Involuntary Petition in the midst of the U.S. Treasury's pending motion to dismiss Petitioners' complaint seeking a judgment declaring their student debt as void and/or discharged. *See Bannister v. U.S. Treasury Dep.'t*, No. 20-4458 (MKV) (S.D.N.Y. June 10, 2020) [Docket Nos. 19-24] (the "Treasury Action").[13] In the complaint, Petitioners admit that Navient continues to dispute their allegations that their debt was discharged: "Navient has represented to Plaintiffs that these debts are not void, discharged, or illegal and are entitled to all or many of the benefits Congress gave to lenders originating and holding Title IV Loans." *See id.* [Docket No. 5], ¶ 60; Hessler Declaration,

---

[12]    The only discussion on "bona fide dispute" occurs in a footnote on page 8 of the Involuntary Supplement. Petitioners' reliance on *Braten* is misplaced. In *Braten*, the court found that despite pending litigation over the ultimate amount of a petitioning creditor's claim, such claim was not contingent because a minimum principal amount had been determined. *In re Braten*, 74 B.R. 1021, 1023 (Bankr. S.D.N.Y. 1987). Due to the "minimum liability" finding, the court determined that the petitioning creditor's claim was neither contingent nor subject to a bona fide dispute up to the minimum amount, which satisfied the requirements of section 303(b)(1). *Id.* Here, there is no assertion that Navient has a legal obligation to pay Petitioners' claims, let alone a "minimum liability."

[13]    Counsel even noted the ongoing nature of the Treasury Action in the Involuntary Supplement. As of February 15, 2021, the issue is fully briefed but no judgment has been entered. *Id.*

**Exhibit X**.  In connection with the Treasury Action, on June 15, 2020, Counsel sent Navient a letter on behalf of Petitioner Tate outlining that Tate's loans have been the subject of Navient's collection actions for the last fourteen years.  *See* Letter from Austin C. Smith to Navient Solutions, LLC (June 15, 2020); Hessler Declaration, **Exhibit Y**.  It is disingenuous for Counsel and Petitioners to file the Involuntary Case and even ***suggest*** that their claims are noncontingent and not subject to bona fide dispute when they are actively litigating the issue in the Treasury Action and acknowledge Navient's continued disagreement regarding the same.

28.     Moreover, as set forth above, Bannister is actively pursuing litigation regarding her educational debt to Navient in an adversary proceeding pending before this Court, and this suit comes on the heels of a failed effort by her counsel (the very same Counsel here) to nullify a court-approved settlement regarding the debts Bannister reaffirmed to Navient.

29.     Lastly, Navient continues to litigate its defenses in the Discharge Litigation.  Such defenses include, among others, the scope and application of section 523(a)(8)(A)(ii) of the Bankruptcy Code.  Navient contends, and numerous courts across the country have held, that section 523(a)(8)(A)(ii) exempts certain private student loan debt from discharge in bankruptcy.[14] This very issue is presently on appeal to the Second Circuit in a case involving Counsel.[15]

30.     Without a clear or logical explanation, but in an apparent attempt to distinguish the claims of Petitioners as compared to other student loan debtors, the Involuntary Supplement cites to a variety of court documents and letters.  *See* Involuntary Supplement at 7–8.  Nothing in the documents referenced, however, establishes that the claims are noncontingent and not subject to

---

[14]     *See*, *e.g*, *In re White*, 2020 WL 639200 (Bankr. M.D. Tenn. Jan. 10, 2020); *Desormes v. Infilaw Corp.*, 569 F. App'x 42 (2d Cir. 2014) (unpublished opinion); *Maas v. Northstar Educ. Fin., Inc.*, 514 B.R. 866 (W.D. Mich. 2014) (sitting as appellate court); *De la Rosa v. Kelly*, 582 B.R. 905, 909–14 (Bankr. S.D. Tex. 2018); *Rizor v. Acapita Educ. Fin. Corp.*, 553 B.R. 144 (Bankr. D. Alaska 2016); *In re Shaw*, 2015 WL 1000213, at *2-3 (Bankr. S.D. Tex. Mar. 3, 2015); *Am. Airlines Fed. Credit Union v. Cardona*, 2015 WL 9459883 (Bankr. S.D. Fla. Dec. 23, 2015); *Brown v. CitiBank*, N.A., 539 B.R. 853 (Bankr. S.D. Cal. 2015); *Brown v. Rust*, 510 B.R. 562 (Bankr. E.D. Ky. 2014) (among others).
[15]     *See Homaidan v. Sallie Mae, Inc.*, No. 20-1981 (2d Cir. 2020).

bona fide dispute. At bottom, Petitioners have not and cannot present evidence to show they hold valid, undisputed claims. This reflects a complete failure to make a reasonable inquiry into the validity of the claims. [16]

31.    Simply put, the inability for Petitioners to produce a judgment or court order succinctly providing for the discharge of Petitioners' loans (let alone for repayment of alleged overpayments related to such discharged loans), the unsettled nature of the law on this point, and Navient's continued litigation regarding this defense and other defenses to dischargeability in the Discharge Litigation, renders each of the claims of Petitioners both contingent and subject to a bona fide dispute. *See In re TPG Troy, LLC*, 492 B.R. 150, 160 (Bankr. S.D.N.Y. 2013), *subsequently aff'd, TPG Troy Appeal*, 793 F.3d 228 ("The plethora of ongoing litigation that involves the same nucleus of facts speaks strongly to the likelihood that there is a bona fide dispute in this case."). Accordingly, Petitioners fail to satisfy the requirements of section 303(b)(1) of the Bankruptcy Code and therefore, the Involuntary Case should be dismissed.

## II.    The Court Should Dismiss the Involuntary Case Because Petitioners Filed the Involuntary Petition in Bad Faith.

32.    The Court should dismiss the Involuntary Case because it was filed in bad faith. When determining whether a filing was made in bad faith, courts weigh "the totality of the facts and circumstances surrounding the particular case."[17]  *See In re Silberkraus*, 253 B.R. 890, 902 (Bankr. C.D. Cal. 2000) (citation omitted); *see also In re 9281 Shore Rd. Owners Corp.*, 187 B.R.

---

[16]    This factual issue is inextricably linked to the bad faith factors argued below. "In determining bad faith under the totality of circumstances, courts consider whether the involuntary petition was meritorious and whether the creditors made a reasonable inquiry into the relevant facts and pertinent law before filing." *In re Annuth Holdings LLC*, 600 B.R. 168, 197 (Bankr. E.D.N.Y. 2019).

[17]    At least one court in this district applied the following factors when assessing whether an involuntary petition was filed in bad faith: (1) the existence of a long-standing two party dispute outside of the bankruptcy; (2) whether the petition was filed solely as a judgment enforcement mechanism; (3) whether there are other creditors competing to collect on claims; (4) the existence of adequate remedies under nonbankruptcy law; (5) whether the petitioning creditor is seeking a benefit unavailable outside of bankruptcy; (6) whether the debtors' assets would be lost or dissipated outside of bankruptcy; and (7) whether the debtor needs or wants a discharge. *In re Murray*, 565 B.R. 527, 533 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53 (2d Cir. 2018).

837, 848 (E.D.N.Y. 1995) (holding when examining bad faith filings, "courts may consider any factors which evidence an intent to abuse the judicial process and the purpose of reorganization").

33.     Courts in the Second Circuit have also applied the improper purpose test, which focuses on "whether the filing of the petition was motivated by ill will, malice, or a desire to embarrass or harass the alleged debtor."[18]  *In re Bayshore Wire Prods.*, 209 F.3d at 105.  When a court assesses bad faith through the improper use test, the "petitioning creditors' actions before and after the filing must be examined."  *Id.*  Here, the totality of the circumstances show that the Involuntary Petition was filed in bad faith to try to influence Navient's decision to resolve other lawsuits with which Counsel is or had been involved and to harm Navient's reputation.

### A.    Petitioners Filed the Involuntary Petition to Influence the Outcome of Other Matters Including an Ongoing Dispute in the Crocker Discharge Litigation.

34.     Courts have consistently found that it is bad faith to file a bankruptcy to "delay, forum shop, or obtain a tactical advantage regarding litigation ongoing in [a] nonbankruptcy forum."  *In re Silberkraus*, 253 B.R. at 905; *see also In re Meltzer*, 516 B.R. at 506 (finding bad faith where petitioning creditors had previously been denied relief in multiple frivolous actions against the alleged debtor and the involuntary petition was premised on those "disputed and fictitious" claims); *In re Forever Green Athletic Fields, Inc.*, 500 B.R. 413, 427 (Bankr. E.D. Pa. 2013) (noting filing a bankruptcy "for the purpose of exerting pressure on an opponent in pending litigation is evidence of bad faith").

35.     Petitioners clearly did not file the Involuntary Petition for a legitimate purpose. Counsel's own words speak volumes:

---

[18]    Courts in this district have also used the (1) improper use test, which focuses on whether a petitioning creditor has used the involuntary bankruptcy to obtain a disproportionate advantage for itself, (2) the objective test, which employs an objective test based on what a reasonable person would have believed, and (3) the Rule 9011 test, which combines an objective test with a subjective inquiry into whether the petition was used to harass, cause delay, or increase costs for the alleged debtor. *In re Bayshore Wire Prods.*, 209 F.3d at 105.

And this [involuntary petition] came about after many years of litigation . . . It became increasingly clear to me during the course of that litigation that there was no end in sight, and the number of calls or requests about what is going on, what is happening, when is this going to end became heightened and heightened and heightened, um, and I did take the drastic step of filing this petition which asks for the Court to mandate that Navient be placed into bankruptcy, that a trustee be appointed to ensure that the assets that they have are not dissipated, are not looted, are not taken by the executive *before my putative clients, people I feel that I have a duty to protect are made whole*.[19]

36.    Apparently unhappy with the progress in the Crocker Discharge Litigation, Counsel and Petitioners are seeking an alternative forum to litigate their disputed claims (including in Counsel's capacity as putative class counsel) and to generate leverage against Navient.  The Involuntary Petition was filed on the eve of a mediation session among the parties in the Crocker Discharge Litigation.  The day after the Involuntary Petition was filed, but before the scheduled mediation session, Counsel filed an emergency motion with the Bankruptcy Court in the Southern District of Texas (the "Texas Bankruptcy Court") seeking to withdraw as counsel.  *See* Crocker Discharge Litigation, **Exhibit V**.  Perhaps appreciating the risk associated with filing the Involuntary Petition the day before a scheduled mediation session in a case in which he was counsel of record against Navient, Counsel requested to withdraw as counsel from the Crocker Discharge Litigation.  But critically, he sought to retain an economic interest in the outcome of the Crocker Discharge Litigation, which means any influence he could try to assert against Navient through the Involuntary Petition could potentially inure to his own benefit in the Crocker Discharge Litigation.  *Id*.  Despite Counsel's attempt to preserve his award, the Texas Bankruptcy Court, while permitting Counsel to withdraw, stated that Counsel "forfeited" any claim to such an award.  This Court is not the appropriate forum to resolve or address Petitioners' claims, and

---

[19]    Austin Smith, *Navient 303 Claims*, YOUTUBE (Feb. 14, 2021), https://www.youtube.com/watch?v=-CLEBYQcY7o, at 0:21.  As of February 17, 2021, Counsel's YouTube page was made private.  All videos cited in this Motion will be served via USB drive.

Petitioners' efforts to use this Court for that purpose is a clear indication that the Involuntary Petition was filed in bad faith.

### B.    Petitioners Commenced the Involuntary Case to Harm Navient's Reputation.

37.    In addition to constituting an improper attempt to influence other ongoing litigation involving Counsel and Petitioners, the Involuntary Case also seeks to harm the reputation of Navient and its affiliates—part of a lengthy effort by Counsel including the use of social media.[20]

38.    Moreover, prior to filing the Involuntary Petition, Counsel "shopped" for potential petitioners, going so far as to discuss a plan to manufacture a claim that could be used to force Navient into an involuntary chapter 11.[21]    In the days following the filing of the Involuntary Petition, Counsel has also paraded the story across the media.  He created a webpage dedicated to the Involuntary Petition on his firm's website, including an "FAQ," designed to inflame other student loan borrowers by feeding them false information.[22]

39.    Furthermore, in the Involuntary Supplement, Counsel made numerous inflammatory and unfounded accusations against Navient and the student loan servicing industry in general that do not support or further the purpose of the Involuntary Case.  *See* Involuntary Supplement at 9–10.  Given Counsel's conduct on social media and the lack of legitimate purpose to this filing, it appears evident that Counsel's primary purpose is to damage Navient and its affiliates, including through a media campaign.[23]  *See In re Luxeyard, Inc.*, 556 B.R. 627, 640

---

[20]    Counsel makes this point clear on his YouTube page where he posted a video discussing how to set up "robocalls" to inundate Navient with debt collection messages.  *See* Austin Smith, *Dragos and the Robocalls*, YOUTUBE (Dec. 30, 2020), https://www.youtube.com/watch?v=-CLEBYQcY7o.

[21]    Austin Smith, *Hall 2*, YOUTUBE (Jan. 2, 2021), https://www.youtube.com/watch?v=cOMrX8NfyHg&t=31s.

[22]    *See* ASC Law Group Webpage, *In re Navient Solutions LLC*, available at https://www.acsmithlawgroup.com/navient-303 (last accessed Feb. 15, 2021).  Nowhere in the FAQ does Counsel mention that the overwhelming majority of student loans are nondischargeable and therefore would not form the basis for a claim against Navient.

[23]    Involuntary Petition at 7 ("If the Administration cancels outstanding student debt, Navient will blame this all on 'the evils of socialism.'  If Navient's entire business model is exposed as a Ponzi scheme, the conversation will immediately be turned away from the actual victims and toward larger issues of human greed.").

(Bankr. D. Del. 2016) ("[I]t is not a proper purpose to file an involuntary petition to frustrate proceedings in other courts or to force a company out of business.").[24]

40.      "The danger of an involuntary bankruptcy cannot be overlooked . . . . It leaves a permanent scar even if promptly dismissed." *In re Dino's, Inc.*, 183 B.R. 779, 783 (S.D. Ohio 1995). The Involuntary Petition will not resolve Petitioners' claims as this Court cannot determine the dischargeability of Petitioners' debts in other bankruptcy jurisdictions, but it could hurt the reputation of Navient and its affiliates, to the detriment of Navient's stakeholders. The Court must not countenance this outrageous and deliberate abuse of the Bankruptcy Code.

## III.    The Court Should Dismiss the Involuntary Case Because Petitioners Have Not, and Cannot, Make Any Credible Allegation that Navient is not Generally Paying Its Debts as they Become Due.

41.      Section 303(h)(1) of the Bankruptcy Code provides, in relevant part, that "the court shall order relief against the debtor in an involuntary case . . . only if the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(h)(1). "The petitioning creditors have the burden of proving . . . that the debtor is generally not paying its bills on time." *In re A&J Quality Diamonds, Inc.*, 377 B.R. 460, 463 (Bankr. S.D.N.Y. 2007) (citation omitted). Only once this burden is satisfied does the burden shift to the debtor to show that there is a dispute as to whether the debtor is paying its debts as they come due. *See In re A&J Quality Diamonds*, 377 B.R. at 463.

### A.    Petitioners Rely on Unsubstantiated Claims of Insolvency to Adduce that Navient is Not Generally Paying Its Debts as they Become Due.

42.      Puzzlingly, Petitioners fail to provide any basis to conclude that Navient is not generally paying its debts as they come due, opting instead to make bald assertions regarding

---

[24]    Given that Petitioners knew their student loans were not discharged and have failed to obtain a discharge of those loans in various other courts, Navient also contends that their conduct easily satisfies the bad faith standard under the objective, improper use, and Bankruptcy Rule 9011 tests.

Navient's solvency.  *See* Involuntary Supplement at 6.  This is a *per se* defect that renders the Involuntary Petition defunct on its face.  This Court cannot, under well settled Second Circuit law, take unsubstantiated assertions as to Navient's balance sheet "insolvency" and use those assertions to infer that section 303(h) is satisfied and that Navient is not paying debts as they come due.

43.    Section 303(h)(1) is not a strict insolvency test, and Petitioners' inapposite reliance on rudimentary back-of-the-napkin math that allegedly demonstrates "inexorably . . . the conclusion that Navient is insolvent, and owes billions of dollars to the federal government" belies the lack of care and proper diligence with which the Involuntary Petition was prepared. Involuntary Supplement at 4.  Rather than test an ability to pay, section 303(h)(1) merely asks *if* debts are being paid[25]

44.    Even if section 303(h)(1) were a balance-sheet solvency test, Petitioners cannot muster support for any colorable claim of balance-sheet insolvency.  The Involuntary Supplement itself notes that the trading price of the Company's publicly held stock reflects a market capitalization of more than $2.4 billion and that the Company recently raised over $500 million in funding from the capital markets, ***but***, goes on to assert an additional $4 billion in liability based on speculation regarding the outcome of pending litigation and asserts, ***without citation***, over a billion dollars in liability to allegedly discharged borrowers.  Involuntary Supplement at 6, 9.  The speculative nature of these claims is obviously insufficient to carry Petitioners' burden.

---

[25]    *See* 2 Collier on Bankruptcy ¶ 303.31 (16th ed. 2020) ("The "generally not paying" standard set forth in section 303(h)(1) sounds like a form of an insolvency test.  But it isn't.  The "generally not paying standard" is not synonymous with the Bankruptcy Code's definition of insolvency contained in section 101(32).  It is not a balance-sheet insolvency test based on a comparison of assets and liabilities.  Whether the debtor is actually paying its debts as a general matter, not whether it could pay them based on a cash resource or cash-flow analysis, is not an "equity insolvency" standard either (although it bears a distinct similarity), since the "equity insolvency" standard considers whether the debtor can pay its debts, not whether it is paying its debts.").

### B.      Petitioners Offer No Supporting Evidence that Navient is Not Generally Paying Its Debts as They Become Due.

45.      Legislative history indicates Congress' insistence on the ***generality*** of nonpayment as debts become due.  *See In re B.D. Int'l Disc. Corp.*, 701 F.2d 1071, 1075–76 (2d Cir. 1983).  In the Southern District of New York, a four-factor test has been established to evaluate whether an alleged debtor is "generally not paying" its debts.  Courts consider:  (1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the non-payments; and (4) the debtor's overall conduct of its financial affairs.  *In re Euro-Am. Lodging Corp.*, 357 B.R. 700, 713 (Bankr. S.D.N.Y. 2007) (citation omitted).  When faced with a dearth of evidentiary support that precludes petitioners from meeting their evidentiary burden, such as is in this case, courts are left with no choice but to dismiss the involuntary petition.  *See*, *e.g.*, *In re A & J Quality Diamonds*, 377 B.R. at 464 ("In this case the record is devoid of evidence addressing any of the factors courts regularly examine in determining whether the debtor is generally not paying its debts as they become due. . . .  [T]he request for relief under chapter 7 must be denied.").

46.      Petitioners are ***required*** to demonstrate that Navient is not paying its debts as they come due generally.  On this point, Petitioners are silent.  Further, even if the Court were to proceed to evaluate whether Navient is generally paying its debts as they become due, the burden cannot shift to Navient to dispute or otherwise raise affirmative defenses against this element because Petitioners fail even to attempt to meet this element of the statutory test, and therefore cannot meet their initial burden under section 303(h).[26]

---

[26]      *Cf. Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("If the evidence adduced in support of the summary judgment motion does not meet this burden, summary judgment must be denied *even if no opposing evidentiary matter is presented.*") (internal quotations omitted) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)).

47.    Moreover, Petitioners did not make inquiries into whether Navient was generally paying its debts as they became due.[27]  Involuntary Supplement at 11.  Courts have admonished petitioners who file involuntary petitions without performing sufficient due diligence.[28]  In short, Petitioners have not, and cannot, credibly assert that Navient is not paying its debts generally as they come due.  This is fatal to the Involuntary Petition.

## IV.    Alternatively, the Court Should Abstain and Dismiss the Involuntary Case Under Section 305(a) of the Bankruptcy Code.

48.    As described herein, Petitioners are improperly attempting to use the involuntary chapter 11 process to gain an advantage in other litigation and to seek to generate negative publicity for Navient and its affiliates.  These objectives violate the policies underpinning the Bankruptcy Code and support the dismissal of the Involuntary Petition under section 305(a)(1).  This Court is permitted to abstain from and dismiss any bankruptcy case pursuant to section 305 when "the interests of creditors and the debtor would be better served by such dismissal . . .[.]"  11 U.S.C. § 305(a)(1).  The decision to abstain is made on a case-by-case basis looking at the totality of the circumstances.  *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 464 (Bankr. S.D.N.Y. 2008).  Courts have relied on the following factors:

a.    the economy and efficiency of administration;
b.    whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court;
c.    whether federal proceedings are necessary to reach a just and equitable solution;
d.    whether there is an alternative means of achieving an equitable distribution of assets;
e.    whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;
f.    whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and
g.    the purpose for which bankruptcy jurisdiction has been sought.

---

[27]    In the Epilogue, Petitioners accuse **Navient** of failing to investigate the merits of the allegations levied in the Involuntary Supplement, citing the lack of audited financials.  Petitioners fundamentally misunderstand their affirmative burdens.

[28]    *See, e.g.*, *In re Anmuth*, 600 B.R. at 198 ("Moreover, the Petitioning Creditors admit that they made no effort of any kind to investigate whether "[t]he debtor is generally not paying its debts as they come due," an allegation the Petitioning Creditors attested to on the Involuntary Petitions against Anmuth and Quest.").

*Id*. at 464–65 (citing cases). Although all factors are considered, "not all are given equal weight in every case." *Id*. The last consideration, *i.e.*, the purpose for which the involuntary petition was filed, has been regarded as "the most important factor." *In re Persco Cont. and Trucking, Inc.*, 2010 WL 3766555, at *4 (Bankr. S.D.N.Y. Aug. 20, 2010). Here, the purpose for filing the Involuntary Petition alone warrants abstention and dismissal, but the other considerations weigh in favor of dismissal as well.

A.    **The Involuntary Petition is a Disguised Two-Party Dispute, and Economic and Efficiency Considerations Favor Dismissal.**

49.    Navient has been engaged in litigation involving Counsel (with respect to his other clients) and at least one Petitioner since 2015. Now, Counsel is spearheading collection efforts against the Company through the guise of the Involuntary Petition, which is being used as a "debt collection tool." This court has found that using an involuntary petition to attempt to collect a debt is an improper purpose, thereby warranting abstention. *See, e.g., In re Mountain Dairies Inc.*, 372 B.R. 623, 635 (Bankr. S.D.N.Y. 2007) ("The Bankruptcy Court is not a collection agency."). Practically, Petitioners are acting as a "sole petitioning creditor" and have not filed the Involuntary Petition as part of a "joint effort of the creditor body or a large number of creditors," which is a recognized purpose. *See In re Persco Cont.*, 2010 WL 3766555, at *4. Indeed, the Involuntary Petition makes this clear, as it asserts that "there are major differences in the legal posture between the average student debtor and the Petitioning Creditors." Involuntary Supplement at 7; *see generally id*. at 7–9. As a result, Petitioners are seeking to satisfy obligations they believe they are owed rather than further the public policy goals underpinning the Bankruptcy Code and the chapter 11 process, *e.g.*, maximizing value for ***all*** stakeholders and providing debtors with a "fresh start."

50.    Moreover, it is more economical and efficient for Petitioners to pursue their purported claims in their own bankruptcy cases or through the Discharge Litigation and potential

class actions, which are the appropriate fora for these disputes. *See In re Persco Cont.*, 2010 WL 3766555, at *5 (explaining that the petitioners should be pursuing their collection efforts in the district court as an appropriate forum rather than in the bankruptcy court). Petitioners would have the Court supersede other proceedings and place a solvent entity into an involuntary chapter 11 that would, at minimum, cost millions of dollars in professional fees, to say nothing of the potentially millions of dollars in business disruption and lost value to Navient and its stakeholders. There is simply no justification for this gross waste.

**B.    Alternate Forums are Available to Protect all Parties, and the Court Is Not Necessary to Reach a Just and Equitable Solution for Petitioners.**

51.    There is no question that alternate forums are available to adjudicate the claims of Petitioners. Borrowers who believe that their loans should be discharged in bankruptcy have numerous avenues available to them to resolve their disputes through negotiation, arbitration, or other legal action. The fact that the Discharge Litigation or any alternative forum might not be as expeditious or result in a favorable outcome to Petitioners has been rejected as a basis for granting an involuntary petition in previous cases. *See In re Persco Cont.*, 2010 WL 3766555, at *5.

**V.    Navient Is Entitled to Costs, Attorneys' Fees, and Damages Pursuant to Section 303(i) of the Bankruptcy Code.**

52.    Navient expressly seeks the imposition of, and preserves its rights under the Bankruptcy Code (including, but not limited to, section 303(i)) to pursue any and all damages and related remedies against Petitioners and Counsel resulting from this frivolous Involuntary Case. For the avoidance of doubt, Navient reserves the right to supplement its request for damages in additional pleadings at the Court's request.

53.     As an initial matter, courts have held that the term "petitioner" as used in section

303(i) expands beyond the "petitioning creditors" that signed an involuntary petition.[29]

Accordingly, Navient also seeks damages from both Petitioners and Counsel under section 303(i).

However, because Counsel is the common thread between Petitioners and the other ongoing

lawsuits against Navient, Navient believes Counsel should be responsible for the majority, and

perhaps all, of the costs, attorneys' fees, and damages.

54.     In the Second Circuit, "[w]hen an involuntary petition is dismissed, 'there is a

presumption that costs and attorney's fees will be awarded to the alleged debtor.'"  *TPG Troy

Appeal*, 793 F.3d at 235 (quoting *Mountain Dairies*, 372 B.R. at 637).  Fees and costs spent in

litigating a section 303(i) request may be included in the award.  *See In re TPG Troy*, 2013 WL

3789344, at *4 (Bankr. S.D.N.Y. July 18, 2013).  Courts typically apply a "totality of the

circumstances" test to determine whether a debtor should be awarded fees and costs.[30]

55.     In addition to fees and costs, a debtor may be awarded damages under

section 303(i)(2) upon a finding of bad faith.  *See* 11 U.S.C. § 303(i)(2).  As outlined above, bad

faith is not defined in the Bankruptcy Code and courts have applied various tests to determine

whether a petition was filed in bad faith for purposes of section 303(i)(2).  *See In re TPG Troy,

LLC*, 2013 WL 3789344, at *5.[31]  Courts in the Second Circuit are not uniform in their application

---

[29]    *See In re Anmuth Holdings*, 600 B.R. at 205 (finding that petitioner includes those that cause the petitioning creditors to file the petition); *In re Rosenberg*, 471 B.R. 307, 312 (Bankr. S.D. Fla. 2012) (concluding that the term '*petitioner*' must be construed to include those agents and/or principals who sign the involuntary petition for or on behalf of the Petitioning Creditors under principles of agency law and the doctrine of respondeat superior.") (internal citations omitted).

[30]    *In re TPG Troy*, 2013 WL 3789344, at *4 (Bankr. S.D.N.Y. July 18, 2013) ((quoting *In re Taub*, 438 B.R. 761, 775 (Bankr. E.D.N.Y. 2010)) ("Most of the courts . . . have adopted a "totality of the circumstances" test, in which certain factors are to be considered.  These include (1) the merits of the involuntary petition; (2) the role of any improper conduct on the part of the alleged debtor; (3) the reasonableness of the actions taken by the petitioning creditors; and (4) the motivation and objectives behind the filing of the petition.").

[31]    *See supra* note 18.

of the "bad faith" standard. *See In re Bayshore Wire Prods.*, 209 F.3d at 106 ("Like the Bankruptcy Court, we see no need to choose among the various tests or bad faith in disposing of this case[.]").

56.     Punitive damages under section 303(i)(2) may be awarded whether or not there is proof of actual damages to punish the wrongdoer and deter similar conduct in the future. *See In re Anmuth Holdings*, 600 B.R. at 202.  Finally, it is within a court's discretion to determine the allocation of liabilities under section 303(i)(2).  *Id*. at 205.

57.     For the reasons described herein, the Court should award Navient all of its costs and reasonable attorneys' fees as well as damages.  ***First***, the Involuntary Petition does not satisfy the requirements of section 303(b)(1).  ***Second***, Petitioners and Counsel have not acted reasonably in filing the Involuntary Petition—they failed to provide any evidence or argument as to why they believe their claims are neither contingent nor the subject of a bona fide dispute or that Navient is not generally paying its debts as they become due.  ***Third***, the purpose behind Petitioners' and Counsel's decision to file the Involuntary Petition is grounded in ulterior motives rather than a sincere belief that Petitioners are entitled to payment of their claims here.  *See In re CNG Foods*, 2020 WL 4219679, at *19 (Bankr. E.D.N.Y. July 13, 2020) (finding that filing an involuntary petition motivated by ill will, malice, or a desire to embarrass and/or harass a debtor was evidence of bad faith).

58.     For the reasons stated herein, the Court should award Navient reasonable costs and attorneys' fees as well as punitive damages as a result of the filing of the Involuntary Petition.

## **CONCLUSION**

59.     For the foregoing reasons, Navient submits that the Involuntary Case should be immediately **DISMISSED** and this Court should award Navient its attorneys' fees, costs, and actual, consequential, and punitive damages, and for such other and further relief as the Court deems just and appropriate.

Dated:  February 17, 2021

/s/ *Stephen E. Hessler, P.C.*
_____

Stephen E. Hessler, P.C.

Chad J. Husnick, P.C.

Jennifer Levy (admission *pro hac vice* pending)

AnnElyse Scarlett Gains

**KIRKLAND & ELLIS LLP**

**KIRKLAND & ELLIS INTERNATIONAL LLP**

601 Lexington Avenue

New York, New York 10022

Telephone:    (212) 446-4800

Facsimile:    (212) 446-4900

Email:        stephen.hessler@kirkland.com

Email:        chad.husnick@kirkland.com

Email:        jennifer.levy@kirkland.com

Email:        annelyse.gains@kirkland.com


*Co-Counsel for Navient Solutions, LLC*

Thomas M. Farrell (admission *pro hac vice* pending)

K. Elizabeth Sieg (admission *pro hac vice* pending)

Joseph Florczak (admission *pro hac vice* pending)

**MCGUIREWOODS LLP**

800 East Canal Street

Richmond, Virginia 23219

Telephone:    (804) 775-1000

Email: tfarrell@mcguirewoods.com

Email: bsieg@mcguirewoods.com

Email: jflorczak@mcguirewoods.com


*Co-Counsel for Navient Solutions, LLC*