IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

In re Navient Solutions, LLC,

Respondent

21-bk-10249-mg

## I. PRELIMINARY STATEMENT

The Respondent's papers made significant attacks on undersigned counsel ("Smith" or "Counsel") and labeled him a crusader; counsel will say only that it strikes him that although crusades may be fought in error, they are necessarily fought in good faith—otherwise they are called mercenary expeditions.

"As a threshold matter, there is a presumption that an Involuntary Petition was filed in good faith." *In re Speer*, 522 B.R. 1, 10 (Bankr. D. Conn. 2014). Since this Court's hearing on February 25, 2021, the state of Washington won partial summary judgment against Navient, see *State of Washington v. Navient Corporation et. al*. 17-2-01115-1-SEA. (Wa. Sup. Ct. Mar 5, 2011) (granting summary judgment on the state's claim for misleading borrowers and cosigners about co-signer release and stating the civil penalty of up to *$2,000 per violation* would be assessed at a later date) and the District of New Jersey certified yet another securities fraud class action. *Pope et. al., v. Navient Corp., et al.,* No. 17-8373 (RBK/AMD), 2021 WL 926611 (D.N.J. Mar. 11,

1

2021) (stating that "Navient's press releases called the lawsuits politically motivated [and b]ased on Navient's response, analysts such as Credit Suisse did not downgrade Navient's rating.").[1]

## II. LEGAL STANDARDS

### A. Fed. R. Bank. Pro. 9023

"A motion for reargument or reconsideration is governed by Local Bankruptcy Rule 9023-1." *In re Fairfield Sentry Limited, et al.,* No. 10-13164 (SMB), 2021 WL 771677, at *2 (Bankr. S.D.N.Y. Feb. 23, 2021). "The movant must show that the court overlooked controlling decisions or factual matters that might have materially influenced its earlier decision." *In re Asia Glob. Crossing, Ltd.*, 332 B.R. 520, 524 (Bankr. S.D.N.Y. 2005). "Alternatively, the movant must demonstrate 'the need to correct a clear error or prevent manifest injustice.'" *Perez v. Progenics Pharm., Inc.*, 46 F. Supp. 3d 310, 314 (S.D.N.Y. 2014). "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court." *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999). See also *Kolel Beth Yechiel Mechil of Tertikov, Inc. v. YLL Irrevocable Tr.,* 729 F.3d 99, 104 (2d Cir. 2013) (analyzing Fed. R. Civ Pro. 59). "The motion must set forth concisely the matters or controlling decisions which counsel believes the Court has not considered." Local Rule 9023-1.

## III. ARGUMENT AND AUTHORITIES

### A. Summary

This Court noted that the Second Circuit has not selected amongst the three chief tests for determining whether a party acted in bad faith under 11 U.S.C. 303(i): (i) the improper purpose

---

[1] This comes after the District of Delaware certified a securities class in August 2020. *See Lord Abbett et. al. v. Navient Corp. et. al.*, 16-112-MN (D. Del. Aug 25, 2020) (certifying class of investors based, *inter alia*, on allegation that Navient artificially kept $2.5 billion of distressed private loans out of default to use as collateral), SAC *available at:* https://securities.stanford.edu/filings-documents/1057/NC00_01/20171117_r01c_16CV00112.pdf

2

test; (ii) the improper use test; (iii) the objective test and (iv) the Rule 9011 test. This Court's analysis focused on three factual issues, which were reviewed under all four tests.

### B. The Rule 9023 Motion Seeks To Correct Clear Error

Petitioning Creditors respectfully submit that this Court's finding of bad faith was clear error and is otherwise prohibited by the Fed. R. Bankr Pro. 9029, which prohibits any "sanction or other disadvantage . . .for noncompliance with any requirement not in federal law, federal rules, Official Forms, or the local rules of the district unless the alleged violator has been furnished in the particular case with actual notice of the requirement." Petitioning Creditors, through Counsel, completely filled out Form 105. Despite compliance with the Official Form, this Court found that the submission was "profoundly lacking." *In re Navient Sols., LLC*, No. 21-10249 (MG), 2021 WL 857114 (Bankr. S.D.N.Y. Mar. 8, 2021). At no point was Counsel or Petitioning Creditors put on actual notice that failure to proffer material evidence at the pleading stage could result in any sanction. Moreover, after studying the extraneous materials contained in Navient's motion, Counsel sought to convert to summary judgment, which this Court denied.[2]

---

[2] There of course remains the issue of Counsel's failure to file any opposition. Although the Second Circuit does not appear to have ruled on the issue, the First, Fourth and Fifth Circuits have concluded that failure to oppose a motion to dismiss is not grounds to grant the motion, and the court must still perform the analysis—accepting as true the allegations and viewing in light most favorable, etc. *See Pomerleau v. W. Springfield Pub. Sch.*, 362 F.3d 143, 145 (1st Cir.2004) ("When deciding a 12(b)(6) motion, the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim. This obligation means that a court may not automatically treat a failure to respond to a 12(b)(6) motion as a procedural default."); *Webb v. Morella*, 457 F. App'x 448, 452 (5th Cir. 2012)(same); *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 (4th Cir. 2014)(same). The Ninth Circuit, on the other hand, appears to allow such a remedy; however, in *Bank of Mellon*, the court explicitly cited Local Rule 7-2, which calls for unopposed motions to be granted. *Bank of New York Mellon v. 7321 Wandering St. Tr.*, 796 F. App'x 365, 367 (9th Cir. 2019)("Local Rule 7-2(d) states that '[t]he failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion.' Because plaintiff has not opposed the motion to dismiss, it has consented to the granting of the motion."). The SDNY has no such rule, but instead warns litigants that an unopposed 12(b)(6) *may be turned* into a motion for summary judgment, and if so, then the litigant is at risk of dismissal for failure to oppose. But this Court declined to convert the motion into one for summary judgment, and thus the Local Rules by implication seem to suggest such a remedy is improper. Furthermore, courts in this circuit are routinely generous with bankruptcy deadlines. *See Fetman v. Aish Hatorah of N.Y. Inc.*, 2018 WL 4288630, at *1 (E.D.N.Y. Sept. 7, 2018) (allowing more than a year to pass between initial deadline and issuing order to show cause why bankruptcy appeal should not be dismissed for failure to prosecute); *Babcock v. Philp*, 2008 WL 4948447, at *2 (E.D.N.Y. Oct. 31, 2008) (stating that failure to file appellate brief for *several months* without any explanation amounts

3

C. **Petitioning Creditors Filed The Involuntary Petition To Protect Against Other Creditors Obtaining Disproportionate Advantages**

First, the Petitioning Creditors were explicit that their purpose was to ensure other creditors did not obtain an unfair advantage in Navient's ultimate reorganization. *See* Amended Statement at 8 ("The Petitioning Creditors had to act now so that they were not left without a chair when the music stops."). Moreover, the Petitioning Creditors chief goal through this filing was to at last obtain judicial determination that their career training loans were discharged. "The Bankruptcy Code [] requires courts to consider the 'fair value' of the debtor's assets. In performing a fair value analysis, a court does not have to accept the values listed on financial statements and may consider any contingencies that impact an asset's fair value." *In re Alpha Protective Servs., Inc.*, 593 B.R. 364, 373 (Bankr. M.D. Ga. 2018). Such a goal is not consistent with trying to obtain an advantage over other creditors; the Petitioning Creditors were only seeking to obtain some control over Navient from its unending attempts to collect on discharged student debt—along with the attendant creditor reporting problems this is causing.

In attempting to demonstrate how and why Petitioning Creditors felt this action was necessary, they also analogized this matter to the TERI bankruptcy. TERI, which was a quasi-subsidiary of Navient's chief competitor during the early 2000s, The First Marblehead Corporation, had forced TERI into bankruptcy in 2008, an event which had profound effects on nearly 800,000 unnoticed student debtors. *In re Mata*, No. 6:13-BK-30625-MH, 2020 WL 5543716, at *10 (Bankr. C.D. Cal. July 31, 2020) ("The Court finds unpersuasive Plaintiff's argument that TERI's treatment of its guarantees during its bankruptcy somehow retroactively

---

to an inexcusable delay); *In re Michalek*, 104 F.3d 356 (2d Cir. 1996) (district court gave appellant more than ten months after the original deadline before issuing order to show cause why appeal should not be dismissed for failure to prosecute).

4

changed the nondischargeability characteristics of the Loans in question."). Sarah Bannister was one of them; Bannister suffered a concrete injury in TERI's bankruptcy and was forced to repay a student debt with a 27% interest rate, which violates the criminal usury rate in New York state. Amended Statement at 8.[3]

"[W]hether 'a petitioning creditor uses involuntary bankruptcy procedures in an attempt to obtain a 'disproportionate advantage' for itself, rather than to protect against other creditors obtaining disproportionate advantages, particularly when the petitioner could have advanced its own interests in a different forum.'" *In re Navient Sols., LLC*, No. 21-10249 (MG), 2021 WL 857114, at *8 (Bankr. S.D.N.Y. Mar. 8, 2021). Smith genuinely does not understand in what way his statements on the YouTube video are demonstrative of bad faith; Smith explained his grounds for filing the petition, which were to ensure that "the assets that they have are not dissipated, are not looted, are not taken by the executive **before my putative clients, people I feel that I have a duty to protect are made whole.**" *In re Navient Sols., LLC*, No. 21-10249 (MG), 2021 WL 857114, at *10 (Bankr. S.D.N.Y. Mar. 8, 2021). After spending more than $50,000 out-of-pocket on audits, *see* Affidavit of Austin Smith ¶ 2 (ECF No. 22), having a liquidation analysis conducted, and consulting with dozens of bankruptcy experts and lawyers, Smith concluded that Navient was not attempting to resolve any of its litigation in good faith. Instead, Smith concluded that Navient's long-term plan could only be to continue buying back its stock with the annual cash generated until

---

[3] Smith himself experienced a similar problem in the first he litigated case under section 523(a)(8). *See Campbell v. Citibank et. al.,* Suggestion of Bankruptcy, 15-01038 (ECF No. 68) (Bankr. E.D.N.Y. March 23, 2017In *Campbell*, Counsel argued that unless the Court imposed punitive damages collection activities by creditors on discharged student debt would not abate. See *Campbell*, Hearing Trans. Dated November 18, 2016, ECF No. 63 at 11-12 ("THE COURT: You think that the label punitive would have a deterrent effect on other lenders seeking to do the same 13 thing. 14 MR. SMITH: That's correct, Your Honor."). The Court declined to impose punitive damages, but prior to the debt collector's own Chapter 11, had agreed that attorneys' fees were warranted. See *Campbell*, Hearing Trans. Dated November 18, 2016, ECF No. 63 ("THE COURT: I don't think this is an appropriate case for punitive damages either. Attorney's fees, yes. But and even though counsel is acting pro bono, his time has value. He bills his hours. So I think, I don't see any reason why he shouldn't be entitled to some type of compensation.").

5

the onslaught of government and private litigation consumed the corporation, at which time it would seek relief under Title 11. Smith believed there was no other rational explanation for Navient's failure to reserve any money to cover any of the litigation it was facing—much of it in advanced stages and far beyond the pleading stages.[4] Smith therefore concluded that the hundreds of thousands of persons he believed he had and has a duty to protect would likely not even receive notice, since Navient would deny the borrowers had any rights to any of Navient's property. *See In re Whiteside*, 240 B.R. 762, 766 (Bankr. W.D. Mo. 1999) (concluding that filing an involuntary bankruptcy petition in order to "find out where their money went and to get some of their money back" was not an improper purpose). Moreover, as the statute of limitations on various claims for restitution are growing increasingly distant, it is perhaps not wild to speculate that were Smith to wait five more years, any attempt to recover the funds obtained from 2015-2020 would be vehemently objected to by Navient as time barred, and the debtors accused of "sleeping on their rights."[5] Lastly, Smith has been removed from every single class action he was litigating against Navient with various former co-counsel; an outcome Smith was warned of prior to initiating the involuntary action. But Smith believed he had to take drastic steps to protect his clients and putative clients. It would appear he was wrong.

### D. There is No Evidence That Petitioning Creditors or Counsel Filed the Involuntary Petition To Harm Navient's Reputation; And In Sincerity, They Did Not.

Second, this Court concluded that Smith was possessed of a desire to harm Navient's reputation. *In re Navient Sols., LLC*, No. 21-10249 (MG), 2021 WL 857114, at *10 (Bankr. S.D.N.Y. Mar. 8, 2021. Apart from Navient's *ipse dixit*, the only evidence marshalled by Navient

---

[4] See Navient's 2020 Annual Report.

[5] The parties were not "heading" into mediation in February 2021; the parties had been in a prolonged and entirely unfruitful series of mediations for six months that was being subject to constant delays without any meaningful opposition from Smith's former co-counsel.

6

was Smith's website and communications with the media (both of which were outside the four corners of the petition).[6]  Specifically, the Court found that "Smith makes regular use of social media, as well as more traditional news media, in this case and in his other cases involving student debt." *In re Navient*, 2021 WL 857114 (Bkrtcy. S.D.N.Y. Mar 8, 2021).  Respectfully, this Court did not conclude Smith makes any *improper* use of the media—such as lying to or misleading journalists about his work.  That Smith seeks to broaden public knowledge about an issue he feels is being overlooked is true and if this Court will excuse any perceived grandiosity, seemingly protected by the First Amendment.  *See Webb v. Paine*, No. 2:19-CV-00447, 2021 WL 261276, at *5 (S.D.W. Va. Jan. 26, 2021)("There is no genuine dispute of material fact that Webb's social media posts . . . are protected by the First Amendment . . .[t]he posts at issue all involved matters of public concern, relating to issues of education policy and policymakers. Such commentary falls squarely within the protections of the First Amendment.").  Indeed, this Court's Local Rules are explicit about the importance of keeping the press and public informed of matters under its consideration.  *See* 2013 Committee Note to Local Rule 5.2 ("Allowing such letters to be filed will improve the record on appeal . . .and will allow the public and press to follow more fully what is happening in pending cases.").  *See also* Erwin Chemerinsky, *Silence Is Not Golden: Protecting Lawyer Speech Under the First Amendment*, 47 Emory L. J. 859 (1998); *Whitney v. California*, 274 U.S. 357, 375 (1927) (Brandeis, J., concurring).[7]

### E. The Petitioning Creditors Adequately Completed The Form Required By the Federal Rules.

---

[6] Although this Court found Smith had said Navient was "running a Ponzi scheme," Smith actually wrote it as a contingent statement "If Navient's entire business model is exposed as a Ponzi scheme." Amended Statement at 7.

[7] Smith also routinely criticizes the media. *See* Austin Smith, LinkedIn Posting to Jimmy Lathrop, New Chapter 11 Filing—Navient Solutions LLC, csbankruptcyblog.com ("This was honestly the only intelligent article written on the theory.") His citation to the WSJ exclusive was in part an attempt to demonstrate this was not a gimmick as it seems to Smith that the most important financial newspaper in America is not in the habit of covering frivolous bankruptcy matters.

7

Lastly, this Court concluded that "the petition and the joinder are profoundly lacking," *In re Navient Sols., LLC*, No. 21-10249 (MG), 2021 WL 857114 (Bankr. S.D.N.Y. Mar. 8, 2021), and that "Petitioning Creditors plainly fail to show that they are the holders of claims that are not subject to a *bona fide* dispute, and this speaks to whether Petitioning Creditors filed this case for a proper purpose." *In re Navient Sols.* at *11. Respectfully, there is case law that has found compliance with Form 105 is necessarily sufficient to allege a claim is not subject to a *bona fide* dispute (and in fact, necessarily sufficient to overcome any 12(b)(6) motion). *In re Gutierrez*, No. 20-50129-NPO, 2020 WL 3720211, at *4 (Bankr. S.D. Miss. May 15, 2020) ("The mandate in Rule 9009(a) that a party use the Official Forms suggests that the use of Official Form 105 is legally sufficient to state a claim. Requiring additional information outside the Official Form would suggest the Official Form is somehow deficient."). *See also In re Rambo Imaging, L.L.P.*, 2007 WL 3376163, at *9 (Bankr. W.D. Tex. Nov. 8, 2007)("[B]y expressly alleging on the Official Form that it is eligible to be a petitioning creditor under § 303(b)(1), the Petitioner has incorporated that section's language to an extent that it should be considered to have made the allegation that its claim is not contingent nor subject to a bona fide dispute."). The *Gutierrez* Court elaborated:

> Rule 9009(a) of the Federal Rules of Bankruptcy Procedure ("Rule 9009") requires parties to use the Official Forms prescribed by the Judicial Conference of the United States in filing a bankruptcy petition without alteration, and their legal sufficiency is generally assumed. FED. R. BANKR. P. 9009. Indeed, the Advisory Committee Notes to the 1983 version of Rule 1003 of the Federal Rules of Bankruptcy Procedure provide that the Official Form contains the required allegations as specified in § 303(b) of the Code. FED. R. BANKR. P. 1003(a) advisory committee's note to 1983 amendment. Hancock Whitney filed the Petition using Official Form 105.
>
> ***The allegation that the Alleged Debtor's debt to Hancock Whitney is not the subject of a bona fide dispute is a negative statement.*** The factual allegations necessary to support this statement would consist of the petitioner not reciting facts but reciting the absence of facts indicating a bona fide dispute. That allegation may reasonably be inferred by the absence of facts and by the allegation on Official Form 105 that Hancock Whitney is eligible to be a petitioning creditor under § 303(b)(2).

8

*In re Gutierrez*, No. 20-50129-NPO, 2020 WL 3720211, at *3 (Bankr. S.D. Miss. May 15, 2020) (emphasis added) (citations omitted). Although this Court was of a different opinion, if the petitioning creditors preparation of this case would have been sufficient to defeat Navient's motion in one federal court, it hardly seems to accord with the uniform application of the Code that the same preparation and conduct could constitute bad faith in this Court. *In re Dumont*, 581 F.3d 1104, 1112 (9th Cir. 2009)(stating that it would raise "serious constitutional questions" for the Ninth Circuit to hold that Congress intended courts to apply a provision of the bankruptcy code differently in different circuits). *See also In re Thornburg*, 406 B.R. 657, 659 (Bankr. W.D. Pa. 2009). In addition, in the Amended Statement, the Petitioning Creditors enumerated significant points of fact and law in the Amended Statement explaining why they did not think there was any *bona fide* dispute.[8] And in the Letter Motion seeking to convert to summary judgment,(ECF No. 22), Petitioning Creditors cited case law that would permit this Court to conduct an in-camera review of certain settlement materials that Creditors believe tend to show the claims are not subject to any honest dispute. *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F. Supp. 2d 125, 131 (D. Conn. 2010) (discussing cases where courts have allowed settlement discussion in one case to demonstrate the sufficiency of evidence in a related involuntary bankruptcy).

---

[8] Navient's statements against interest, including the Career Training investor disclosures ("Career training loans are generally dischargeable by a borrower in bankruptcy."); and Navient CEO's acknowledgement of *Crocker* ("Recently, an appeals court found that, while these loans may in fact be dischargeable, the judge was wrong when he found that the plaintiffs had jurisdiction to bring these claims outside of the bankruptcy court that originally heard their bankruptcy."). [8] In fact, under a pending order from the Southern District of Texas, Navient is prohibited from denying the debts were discharged. *Crocker v. Navient Sols., LLC*, 2020 WL 5579607, at *1 (Bankr. S.D. Tex. Aug. 27, 2020) ("ORDERED that that this Agreed Order explicitly prohibits the rights and ability of NSL or NCFC or any of their Agents to accept payments made by a Bankrupt Non-Title-IV Educational Loan Borrower who has received, since bankruptcy discharge, a notification from NSL or NCFC or any of their Agents that such Bankrupt Non-Title-IV Educational Loan Borrower's debt was *not* discharged in his or her bankruptcy.").

9

### IV.  CONCLUSION

It was the sincere belief of counsel for Sarah Bannister, LaBarron Tate and Brandon Hood that Navient's conduct over the past five years was demonstrative of a genuine likelihood that it cannot stop collecting on discharged debt because its business model is based upon it. That is, that approximately $2.5 of its assets consist of discharged debt, which it cannot surrender without becoming objectively and nakedly insolvent. If counsel was in error, it was an error made in good faith; and one that arose only after careful study, analysis, and consultation with some of the leading restructuring lawyers in America.

Respectfully submitted,

By:  /s/ Austin Smith

**SMITH LAW GROUP LLP**
Austin C. Smith
99 Wall Street, No. 426
New York, New York 10005
(917) 992-2121