# Exhibit B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x

In re:                                                    **FOR PUBLICATION**

          NAVIENT SOLUTIONS, LLC,          Chapter 11

                                         Case No. 21-10249 (MG)

                            Putative Debtor.
----------------------------------------------------------------x

## MEMORANDUM OPINION GRANTING ALLEGED DEBTOR'S MOTION TO DISMISS INVOLUNTARY PETITION

*A P P E A R A N C E S:*

KIRKLAND & ELLIS LLP
*Attorneys for Navient Solutions, LLC*
601 Lexington Avenue
New York, NY 10022
By:    Stephen Hessler, Esq.
         Chad J. Husnick, Esq.
         Jennifer Levy, Esq.
         AnnElyse Scarlett Gains, Esq.

MCGUIREWOODS LLP
*Attorneys for Navient Solutions, LLC*
800 East Canal Street
Richmond, VA 23219
By:    Thomas M. Farrell, Esq.
         K. Elizabeth Sieg, Esq.
         Joseph Florczak, Esq.
         Shawn R. Fox, Esq.

SMITH LAW GROUP LLP
*Attorneys for the Petitioning Creditors*
99 Wall Street, No. 426
New York, NY 10005
By:    Austin C. Smith, Esq.

LAW OFFICES OF MICHAEL B. WOLK, P.C.
*Attorneys for Public Interest Capital, LLC*
155 East 55th Street, Suite 300B
New York, NY 10022
By:    Michael B. Wolk, Esq.

OFFICE OF THE UNITED STATES TRUSTEE
201 Varick Street, Room 1006
New York, NY 10014
By:    Andrea B. Schwartz, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

This involuntary case rests on allegations of discharge violations committed by Navient

Solutions, LLC ("Navient" or the "Alleged Debtor").  The Court takes these allegations very

seriously.  The Court also notes that the Fifth Circuit and the Tenth Circuit, in well-reasoned

opinions, have recently ruled that section 523(a)(8)(A)(ii) of the Bankruptcy Code does not apply

to exempt from discharge certain private student loans.  *See Crocker v. Navient Sols., LLC (In re*

*Crocker)*, 941 F.3d 206 (5th Cir. 2019); *McDaniel v. Navient Sols., LLC (In re McDaniel)*, 973

F.3d 1083 (10th Cir. 2020).  While there is no controlling law on this point in this Circuit, a

direct appeal is currently pending before the Second Circuit on the issue.  *See Homaidan v. Sallie*

*Mae, Inc. (In re Homaidan)*, No. 20-1981 (2d Cir. June 24, 2020).  No federal court of appeals

has ruled in a precedential decision contrary to the Fifth and Tenth Circuits.[1]  However, while the

applicability of section 523(a)(8)(A)(ii) is a major issue with respect to the petitioning creditors'

alleged claims and in the related pending suits, it is not the only disputed issue.  Numerous suits

remain pending in many courts around the country, including several cases against Navient that

involve counsel to the petitioning creditors, regarding the same or similar allegations that are

asserted in the involuntary petition, the supplemental statement thereto, and the joinder, with

many unresolved issues.

---

[1]     The Tenth Circuit in *McDaniel* explicitly rejected the argument that the Second Circuit, in an unpublished
summary order, found that section 523(a)(8)(A)(ii) encompasses private student loans.  *McDaniel*, 973 F.3d at 1099
(discussing *Desormes v. Infilaw Corp. (In re Desormes)*, 569 F. App'x 42 (2d Cir. 2014)).

2

While the allegations of discharge violations are troubling, the Court also takes very seriously the filing of an involuntary petition and finds that the petition and the joinder are profoundly lacking. This is particularly due to the lack of any documentation supporting any of the claims, as well as the failure of counsel to the petitioning creditors to file any response to the motion to dismiss, or even to attend the hearing on the motion. In addition, there has been no showing that the Alleged Debtor is generally not paying its debts as they become due. Significantly, the Alleged Debtor is owned by Navient Corp., a publicly traded corporation with a market capitalization as of March 5, 2021 of $2.367 billion. And despite the number of lawsuits pending against Navient asserting violations of discharge injunctions, its counsel stated during the Hearing that there are no unsatisfied judgments against Navient, a statement that has not been contradicted by the petitioning creditors' counsel. Rather, this involuntary case is a transparent effort by the petitioning creditors' counsel to bypass litigating the numerous cases against Navient that raise allegations of violations by Navient of discharge injunctions. Entry of an order of relief against Navient in this involuntary case would mean that all lawsuits seeking damages against Navient would be subject to the automatic stay under section 362.

The Court also finds that abstention is warranted so that the important disputed issues may be resolved in the cases in which they were properly raised.

Accordingly, after a hearing held by the Court on February 25, 2021, the Court issued an order dismissing the involuntary petition. (ECF Doc. # 42.) This opinion elaborates on the findings of fact and conclusions of law supporting the Court's order and dismissal of the involuntary case.[2]

---

[2]    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which incorporates Rule 52 of the Federal Rules of Civil Procedure. Pursuant to Bankruptcy Rule 7052, findings of fact shall be

## I.  <u>FINDINGS OF FACT</u>

On February 8, 2021, Austin C. Smith, Esq. ("Smith") filed an involuntary petition against Navient Solutions, LLC, on behalf of Sarah Bannister ("Bannister"), Brandon Hood ("Hood"), and Labarron Tate ("Tate," and with Bannister and Hood, the "Petitioning Creditors"). ("Involuntary Petition," ECF Doc. # 1.)  An amended involuntary petition was filed on February 10, 2021.  ("Amended Petition," ECF Doc. # 2.)  Attached to the Amended Petition is the *Amended Statement on Involuntary Petition against Navient Solutions LLC.*  ("Supplement," ECF Doc. # 2-1.)

On February 17, 2021, Navient filed a motion to dismiss the involuntary petition. ("Motion," ECF Doc. # 14.)  In support of the Motion, Navient filed two declarations of its counsel, Stephen E. Hessler.  ("First Hessler Decl.," ECF Doc. # 16; "Second Hessler Decl.," ECF Doc. # 29.)

On February 23, 2021, Public Interest Capital, LLC ("PICAP"), filed a joinder in the involuntary petition in this case.  ("PICAP Joinder," ECF Doc. # 35.)

On February 25, 2021, the Court held a hearing (the "Hearing"), during which it heard arguments from counsel for Navient and PICAP.  Notably, Smith did not file an opposition to the Motion, and he did not attend the Hearing.  Smith's lack of attendance followed his repeated requests for extensions to file a response to the Motion and other accommodations.  Two such requests were granted, but further requests were denied.[3]  Neither the Petitioning Creditors nor PICAP filed a response addressing the arguments for dismissal contained in the Motion.

---

construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  Bankruptcy Rule 1018 makes Bankruptcy Rule 7052 applicable to contested involuntary petitions.

[3]      The original deadline to file an objection to the Motion was on November 22, 2021, at 12 noon.  ("Notice of Hearing," ECF Doc. # 20, at 2.)  On February 22, 2021, Smith filed a letter on ECF requesting a five-hour extension of the objection deadline, stating that "Counsel is diligently preparing the opposition but fears he will be

### A.    The Petitioning Creditors

The Amended Petition states that the three Petitioning Creditors assert claims against

Navient totaling $45,683.64; each claim seeks a "[r]efund of overpayment." (Amended Petition

at 3.) The Petitioning Creditors only make vague assertions that their claims reflect "money

wrongfully collected from them after discharge." (Supplement at 9.) The Petitioning Creditors

submitted no supporting documentation to the Court regarding their claims.

### 1.    Bannister

Bannister asserts a claim of $6,097.37. (Amended Petition at 3.) Bannister holds five

Tuition Answer Loans serviced by Navient for her daughter's education, originated between

2005 and 2007.[4] (Motion ¶ 11; First Hessler Decl. Exs. I-1 to I-5.) Bannister also held two

Career Training Loans, also for her daughter's education, originated in 2006 and 2008. (Motion

¶ 11; First Hessler Decl. Exs. J-1, J-2.) On November 18, 2009, Bannister filed a petition for

relief under chapter 7 of the Bankruptcy Code in the Southern District of New York. (Case No.

09-16875 (JLG).) Bannister received a discharge on May 26, 2010. (*Id.*, ECF Doc. # 12.)

Bannister's bankruptcy case was closed on July 12, 2010. On May 10, 2012, Bannister moved to

---

unable to submit a clean version by noon. Counsel is confident he will be able to submit a clean version by 5:00 p.m." (ECF Doc. # 30.) The extension was granted the same day. (ECF Doc. # 31.) At 5:01 p.m., after the deadline had passed, Smith filed another letter on ECF requesting "a *twelve-hour* extension on the 5:00 p.m. deadline set forth by this Court," again stating that "Counsel is diligently preparing the opposition but fears he will be unable to submit a clean version by noon" (despite the new deadline of 5:00 p.m.). (ECF Doc. # 32 (emphasis added).) Smith stated that he "is confident he will be able to submit a clean version by tomorrow." (ECF Doc. # 32.) The twelve-hour extension was granted. (ECF Doc. # 33.) On February 23, Smith filed yet another letter on ECF, stating that he intended to request a 24-hour extension. (ECF Doc. # 34.) This request was denied the same day. (ECF Doc. # 35.) Smith called chambers the day before the Hearing, stating, "I had a bit of a medical issue come up and I just wanted to ask how best to proceed with the Court to avoid any sort of further complications." Smith was informed that any request concerning the Hearing must be in writing and filed on ECF. Since then, Smith never filed anything on ECF.

[4]    The Motion states that the loans were "for her daughter's attendance at a Title IV institution." (Motion ¶ 11.) With respect to each of the loans at issue in this proceeding, the Court takes no position as to whether the loans were for attendance at Title IV or non-Title IV institutions, which remains a disputed issue.

reopen her bankruptcy case.  (*Id.*, ECF Doc. # 13.)  The request to reopen the case was granted

on May 22, 2012.  (*Id.*, ECF Doc. # 14.)

On December 12, 2015, Bannister filed an adversary proceeding against Navient, among

others, arguing that the loans with Navient are dischargeable under section 523(a)(8).  (Adv.

Proc. 15-01418, ECF Doc. #1.)  On May 31, 2017, the court entered an order approving a

stipulation of settlement between Bannister and Navient (the "Stipulation" or the "Bannister

Stipulation," *id.*, ECF Doc. # 22-1), and dismissing Navient from the adversary proceeding.  (*Id.*,

ECF Doc. # 23.)  In July 2020, Bannister filed a motion to vacate the Stipulation on the grounds

that the Stipulation did not meet the requirements of section 524(c) and that the loans referenced

in the Stipulation were dischargeable.  (*Id.*, ECF Doc. ## 99, 101.)  On January 20, 2021, Judge

Garrity issued a memorandum decision and order denying the motion to vacate the Stipulation.

("Denial Order," *id.*, ECF Doc. # 121.)

In the Denial Order, Judge Garrity found that the Stipulation did not need to meet the

requirements of section 524(c), as that section applies only to dischargeable debts, while "the

Debtor stipulated that the Navient Debt is excepted from discharge under section 523(a)(8), and

the Court approved the Stipulation for Settlement.  The stipulation resolves the issue of the

dischargeability of the Navient Debt."  (*Id.* at 13.)  The Denial Order has not been appealed, and

the time to do so has expired.  *See* FED. R. BANKR. P. 8002(a) ("[A] notice of appeal must be

filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being

appealed.").

The Stipulation only related to five out of the seven loans held by Bannister, and it is not

clear to which loans Bannister's claim for a refund of overpayment relate.  (*See* Stipulation at 2

(listing the five loans that are the subject of the Stipulation); Motion ¶ 11 (noting that, in addition

to the five Tuition Answer Loans addressed in the Stipulation, "Bannister also held two Career

Training Loans").)

On July 28, 2020, Bannister filed a petition for relief under chapter 13 of the Bankruptcy

Code, again in the Southern District of New York. (Case No. 20-11718 (CGM).)[5] On January

19, 2021, Bannister commenced an adversary proceeding against Navient, among others, in an

action which Bannister describes as "aris[ing] out of an adversary proceeding that was being

heard as part of Bannister's 2009 chapter 7 before the Honorable James Garrity." (Adv. Proc.

21-01003 (CGM), ECF Doc. # 1, ¶ 5.) By this most recent adversary proceeding, Bannister

again seeks a determination of dischargeability. (*Id.* ¶ 17.) No rulings have been issued yet in

this adversary proceeding.

 2. Hood

Hood asserts a claim of $28,919.37. (Amended Petition at 3.) Hood holds five Signature

Student Loans, originated between 2000 and 2003, that have been consolidated and are now

serviced by Navient. (Motion ¶ 13; First Hessler Decl. Exs. M-1 to M-6.) Hood also held one

Career Training Loan that originated in 2008. (Motion ¶ 13; First Hessler Decl. Ex. N.)

On June 16, 2011, Hood filed a petition for relief under chapter 7 of the Bankruptcy Code

in the District of Massachusetts. (Motion ¶ 12; Case No. 11-15781 (WCH).) Hood was granted

a discharge on October 4, 2011. (Motion ¶ 12; First Hessler Decl. Ex. L.) Hood did not file an

adversary proceeding to contest the dischargeability of any educational debt with Navient or its

affiliates. (Motion ¶ 12.)

---

[5]     As Bannister's reopened bankruptcy case before Judge Garrity has not been closed, it appears that this
more recent chapter 13 filing violates the "single-estate rule." *See In re Truong*, 2009 WL 2929261 (Bankr.
S.D.N.Y. Sept. 3, 2009), *aff'd, Truong v. Sapir*, 2013 WL 6170308 (S.D.N.Y. Nov. 25, 2013). However, this issue
is not before this Court.

3. Tate

Tate asserts a claim of $10,666.90.  (Amended Petition at 3.)  Tate holds one loan

serviced by Navient, originated in 2002.  (Motion ¶ 14; First Hessler Decl. Ex. P.)

On June 30, 2004, Tate filed a petition for relief under chapter 13 of the Bankruptcy Code

in the Northern District of Georgia.  (Motion ¶ 14; Case No. 04-11990 (WHD).)  Tate's chapter

13 case was converted to one under chapter 7 on March 27, 2006.  (Motion ¶ 14.)  Tate was

granted a discharge on July 7, 2006.  (*Id.*; First Hessler Decl. Ex. O.)  Tate did not file an

adversary proceeding to contest the dischargeability of any educational debt with Navient or its

affiliates.  (Motion ¶ 14.)

**B.    PICAP**

PICAP asserts that it,

> in its individual capacity, holds an unsecured claim against the
> Alleged Debtor that is noncontingent, liquidated, and not subject to
> a bona fide dispute as to liability, (a) in the amount of not less than
> $37,000, representing the amount that the Alleged Debtor
> wrongfully and illegally collected from PICAP's predecessor-in-
> interest after the bankruptcy discharge of PICAP's predecessor-in-
> interest and (b) in the amount of not less than $300,000, representing
> an approximate amount of legal fees and litigation expenses
> incurred by PICAP's predecessor-in-interest in connection with its
> successful litigation against the Alleged Debtor, culminating in the
> Federal McDaniel-Liability Ruling issued against the Alleged
> Debtor.

(PICAP Joinder ¶ 1.)  At the Hearing, counsel to PICAP indicated that PICAP's "predecessor-in-

interest" was one of the plaintiffs in *McDaniel*, 973 F.3d 1083.  (Hearing at 1:05:55–1:06:51.)

PICAP also asserts that it,

> in its capacity as a proposed creditor-class claim representative, on
> behalf of all similarly situated persons or entities, holds an
> unsecured, creditor-class claim against the Alleged Debtor that is
> noncontingent, liquidated, and not subject to a bona fide dispute as
> to liability, in the anticipated amount of several billion dollars,
> representing sums that the Alleged Debtor (a) wrongfully and

8

> illegally collected from the creditor-class after the bankruptcy discharge of the creditor-class and (b) additionally owes the creditor-class arising from the Alleged Debtor's violations of, inter alia, federal and state consumer protection statutes involving the creditor-class.

(PICAP Joinder ¶ 2.)  Counsel to PICAP confirmed at the Hearing that PICAP has not been certified as class representative in any pending litigation.  (Hearing at 1:16:01–1:16:08.)  PICAP has not provided the Court with any authority that supports PICAP's ability to assert a claim "as a proposed creditor-class claim representative" on behalf of an unnamed, uncertified class.

Like the Petitioning Creditors, PICAP has not provided the Court with any documentation to support any of its claims.

### C.    Other Ongoing Litigation

Several putative class actions are currently pending against Navient, alleging that Navient has collected on private student loans that were discharged in the borrowers' bankruptcy proceedings.  These include *Crocker v. Navient Solutions, LLC*, Adv. Proc. No. 16-03175 (DRJ) (Bankr. S.D. Tex. 2016), *Homaidan v. Sallie Mae, Inc.*, Adv. Proc. No. 17-01085 (ESS) (Bankr. E.D.N.Y. June 23, 2017), *Bolt v. Navient Solutions*, Adv Proc. No. 20-03040 (AMN) (Bankr. D. Conn. Sept. 8, 2020), *Mazloom v. Navient Solutions, Inc.*, Adv. Proc. No. 20-80033 (DD) (Bankr. N.D.N.Y. July 2, 2020), and *Teran v. Navient Solutions, LLC*, Adv. Proc. No. 20-03075 (DM) (Bankr. N.D. Cal. Aug. 31, 2020) (collectively, the "Discharge Litigation").  (Motion ¶ 15.)  None of these cases have been certified as class actions.[6]

*McDaniel v. Navient Solutions, LLC*, Adv. Proc. No. 17-01274 (KHT) (Bankr. D. Colo. July 12, 2017) (and the appellate decision in *McDaniel*, 973 F.3d 1083, referenced above),

---

[6]    Smith is plaintiffs' counsel in *Homaidan*.  Smith was also plaintiffs' counsel in *Crocker*, but he withdrew. The court granted Smith's request to withdraw as counsel on February 10, 2021.  (First Hessler Decl. Ex. W.)

involves many of the same issues as the Discharge Litigation, but only involves two individual

plaintiffs (Byron and Laura McDaniel) and is not a class action.

## II.    DISCUSSION

### A.    Whether the Claims are Contingent or the Subject of a Bona Fide Dispute

Section 303(b)(1) of the Bankruptcy Code provides, in pertinent part:

> An involuntary case . . . is commenced by the filing with the
> bankruptcy court of a petition . . . (1) by three or more entities, each
> of which is . . . a holder of a claim . . . that is not contingent as to
> liability or *the subject of a bona fide dispute as to liability or amount*
> . . . .

11 U.S.C. § 303(b)(1) (emphasis added).[7]  "A creditor must satisfy both prongs of this test: the

claim must not be subject to a bona fide dispute as to either liability or a dispute as to amount."

*In re TPG Troy, LLC*, 492 B.R. 150, 159 (Bankr. S.D.N.Y. 2013).

The Second Circuit in *Crest One SpA v. TPG Troy, LLC (In re TPG Troy, LLC)*, 793 F.3d

228 (2d Cir. 2015), affirmed the bankruptcy court decision in *TPG Troy, LLC*, and held that

courts must apply an objective standard to determine whether a bona fide dispute exists.  The

court stated:

> A court must determine whether there is an objective basis for either
> a factual or a legal dispute as to the validity of the debt.  There is a
> bona fide dispute if there is either a genuine issue of material fact
> that bears upon the debtor's liability or a meritorious contention as
> to the application of law to undisputed facts. . . .  The petitioning
> creditor bears the initial burden of coming forward with evidence to
> establish a prima facie case that no bona fide dispute exists.  Once a
> prima facie case has been established, the burden shifts to the debtor
> to demonstrate the existence of a bona fide dispute.

*Id.* at 234 (internal quotation marks and citations omitted).  Once the bankruptcy court

determines that there is a bona fide dispute, it is not the proper forum to resolve it.  *See id.* ("An

---

[7]    While section 303(b)(2) requires only one qualifying creditor where there are fewer than twelve qualifying
creditors, no party disputes that Navient has twelve or more creditors.

involuntary bankruptcy case cannot be the means of pressuring a debtor to pay a legitimately disputed debt. . . .   Critically, while a court is called upon to determine the presence of a bona fide dispute, it is not called on to resolve such dispute.").

      1.  <u>The Petitioning Creditors and PICAP Have Failed to Meet Their Burden</u>

Far from meeting their burden to "com[e] forward with evidence to establish a prima facie case that no bona fide dispute exists," *id.* (internal quotation marks omitted), the Petitioning Creditors and PICAP have provided *no* evidence of their claims.  Accordingly, the involuntary petition should be dismissed on that basis alone.  Nevertheless, the Court proceeds to analyze, in the alternative, whether the Alleged Debtor has carried its burden "to demonstrate the existence of a bona fide dispute."  *Id.*

      2.  *Crocker* and *McDaniel*

In support of their arguments that the debts are dischargeable and the claims are not subject to bona fide dispute, the Petitioning Creditors and PICAP rely on *Crocker*, 941 F.3d 206, and *McDaniel*, 973 F.3d 1083.  Both cases address the scope of section 523(a)(8)(A)(ii) with respect to private student loans.

Section 523(a)(8)(A)(ii) provides that debt that is "an obligation to repay funds received as an educational benefit, scholarship, or stipend" is not discharged, "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8)(A)(ii).  The Fifth Circuit in *Crocker* held that the term "educational benefit" under section 523(a)(8)(A)(ii) "is limited to conditional payments with similarities to scholarships and stipends."  *Crocker*, 941 F.3d at 224.  The Tenth Circuit in *McDaniel* agreed with *Crocker* and found "that, read correctly, the language 'an obligation to repay funds received as an educational benefit' signifies a conditional grant of funding for education—akin to a stipend and scholarship—as opposed to a loan of funds for education."  *McDaniel*, 973 F.3d at

1098.  Both cases were remanded to the respective bankruptcy courts.  *See Crocker*, 941 F.3d at

224; *McDaniel*, 973 F.3d at 1105.  At the Hearing, counsel for Navient represented that no

money judgment has been rendered against Navient in either case.  (Hearing at 29:28–29:51.)

The Petitioning Creditors' bankruptcy cases did not occur in the Fifth or Tenth Circuits,

and, therefore, *McDaniel* and *Crocker* arguably have no effect on their claims.  In addition, the

issue of the applicability of section 523(a)(8)(A)(ii) to private student loans was recently

certified for direct appeal to the Second Circuit, as "there is no controlling case from the

Supreme Court or the Second Circuit on that issue."  *Homaidan v. Sallie Mae, Inc. (In re

Homaidan)*, 2020 WL 5668972, at *2 (E.D.N.Y. Feb. 25, 2020); *Homaidan v. Sallie Mae, Inc.

(In re Homaidan)*, No. 20-1981 (2d Cir. June 24, 2020).  The certification of the question to the

Second Circuit very strongly suggests that the dispute over the applicability of section

523(a)(8)(A)(ii) is bona fide, particularly with respect to the Bannister claim, as Bannister was

issued a discharge in her bankruptcy case within the Second Circuit (and Bannister's reopened

chapter 7 and new chapter 13 case currently continue within the Second Circuit).

As noted above, PICAP asserts that it holds the claim of one of the plaintiffs in

*McDaniel*.  (Hearing at 1:05:55–1:06:51.)  Nevertheless, even with respect to the *McDaniel*

claim—and even if PICAP were able to assert the claims of the putative class, and even if every

circuit were to agree with *Crocker* and *McDaniel* such that the applicability of section

523(a)(8)(A)(ii) would not be in dispute with respect to the Petitioning Creditors as well—

Navient asserts that many unresolved issues remain.  These issues include whether a debtor is

automatically entitled to a discharge of the debts in question or whether it must initiate an

adversary proceeding, whether there was a co-borrower on the loans at issue (and if so, whether

the debtor rather than the co-borrower made any payments post-discharge), whether Navient's

collection efforts actually violated the discharge injunction, whether the loans were obtained under false pretenses (and if so, whether the debtor is barred from receiving a discharge of the loans), whether the claims are barred by the doctrine of laches, and the amount of any alleged overpayment. (*Id.* at 25:59–27:08.)

These issues are currently being litigated in the *McDaniel* case and in other actions, including putative class actions, against Navient, where they should properly be resolved. While "the mere existence of pending litigation . . . or the filing of an answer is insufficient to establish the existence of a bona fide dispute, . . . 'pending litigation over a claim strongly suggests' the existence of a bona fide dispute, even if it does not suffice to firmly establish that existence." *TPG Troy*, 793 F.3d at 234 (quoting *TPG Troy*, 492 B.R. at 159–60). Here, as in *TPG Troy*, "[t]he plethora of ongoing litigation that involves the same nucleus of facts speaks strongly to the likelihood that there is a bona fide dispute in this case." 492 B.R. at 160.

### 3. The Bannister Stipulation and the Denial Order

The Bannister Stipulation and the Denial Order raise issues of preclusion. "[S]ettlements ordinarily occasion no *issue preclusion* (sometimes called collateral estoppel), unless it is clear . . . that the parties intend their agreement to have such an effect." *Arizona v. California*, 530 U.S. 392, 414 (2000). While "[i]t is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes," *Marvel Characters v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002), the effect of a dismissal without prejudice is less clear. Here, the dismissal order did not indicate that it was with prejudice, and it is not entirely clear that the parties intended the Stipulation to have collateral estoppel effect. Accordingly, the Stipulation may not have preclusive effect.

Nevertheless, the issue of whether the loans were dischargeable pursuant to the Stipulation was actually litigated and determined, and the court's finding on this issue was

essential to its finding that section 524 does not apply and that the Stipulation is enforceable. Accordingly, the court's finding that the loans were not dischargeable pursuant to the Stipulation has collateral estoppel effect. *See Arizona v. California*, 530 U.S. at 414. ("It is the general rule that issue preclusion attaches only '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.'" (quoting Restatement (Second) of Judgments § 27, p. 250 (1982))).

Moreover, under res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Brown v. Felsen*, 442 U.S. 127, 131 (1979). Accordingly, the Denial Order precludes the claim of dischargeability with respect to the loans at issue in the Stipulation.

However, as noted above, the Stipulation only related to five loans out of the seven that apparently exist between Bannister and Navient, and it is not clear to which loans Bannister's claim for a refund of overpayment relate. (*See* Stipulation at 2 (listing the five loans that are the subject of the Stipulation); Motion ¶ 11 (noting that, in addition to the five Tuition Answer Loans addressed in the Stipulation, "Bannister also held two Career Training Loans").) Therefore, only to the extent that Bannister's claim for a refund of overpayment relates to the loans at issue in the Stipulation, the claim is not only subject to bona fide dispute as to liability and amount, but it appears that Bannister is precluded entirely from asserting a claim premised on the dischargeability of those loans.

### 4. Conclusion

In light of (i) the complete failure by the Petitioning Creditors and PICAP to provide evidence showing that the claims are not subject to bona fide dispute, (ii) the multitude of issues that remain unresolved between the Petitioning Creditors, PICAP, and Navient (whether in the various ongoing litigations or otherwise), and (iii) the Bannister Stipulation (to the extent that

14

Bannister's purported claim relates to the loans at issue in the Stipulation), the Court **FINDS** that the claims of the Petitioning Creditors and PICAP are subject to a bona fide dispute both as to liability and amount. Accordingly, the requirements of section 303(b) are **NOT MET**.

### B. Whether the Petitioning Creditors Filed the Involuntary Petition in Bad Faith

Navient argues that the Court should dismiss this involuntary case because the Petitioning Creditors have filed the involuntary petition in bad faith. (Motion ¶¶ 32–40.) While the Bankruptcy Code does not define "bad faith," courts have developed a requirement that an involuntary petition be filed in good faith, and courts use various tests to determine whether creditors have filed an involuntary petition in bad faith. *See* 2 COLLIER ON BANKRUPTCY ¶ 303.16 (16th ed. 2021) (listing tests, including the improper purpose test, the improper use test, the objective test, and the Rule 9011 test).

Navient submits that "[c]ourts in the Second Circuit have applied the improper purpose test, which focuses on 'whether the filing of the petition was motivated by ill will, malice, or a desire to embarrass or harass the alleged debtor.'" (Motion ¶ 33 (quoting *Lubow Mach. Co. v. Bayshore Wire Prods. (In re Bayshore Wire Prods.)*, 209 F.3d 100, 105 (2d Cir. 2000).) Contrary to Navient's reading of *Bayshore*, however, rather than selecting a test, the *Bayshore* court concluded "that it did not need to choose among these approaches [to analyzing bad faith]" because the petition was filed in bad faith regardless of which test it applied. *Bayshore*, 209 F.3d at 106. While the Second Circuit disagreed with the bankruptcy court's ultimate conclusion on the issue of bad faith, it too declined to choose a particular test, "conclud[ing] that there [was] no basis for a finding of bad faith under any of the tests currently in usage." *Id.* Thus, it is instructive to briefly consider at least each of the four tests discussed by the Second Circuit in *Bayshore*.

The improper use test looks to whether "a petitioning creditor uses involuntary bankruptcy procedures in an attempt to obtain a 'disproportionate advantage' for itself, rather than to protect against other creditors obtaining disproportionate advantages, particularly when the petitioner could have advanced its own interests in a different forum." *Id.* at 105 (quoting *In re K.P. Enter.*, 135 B.R. 174, 179 n.14 (Bankr. D. Me. 1992)); *see also* 2 COLLIER ON BANKRUPTCY ¶ 303.16[1] (The "'improper use' test . . . looks at whether the creditor's conduct takes disproportionate advantage of other creditors" (e.g., "treating the bankruptcy process as if it were the creditor's own private collection agency").).  Under the improper use test, the involuntary petition appears to have been filed in bad faith.  Not only could the Petitioning Creditors have advanced their interests in a different forum, but they have also already engaged in active litigation against Navient in other forums, litigation that remained ongoing at the time of filing this case.  Smith, until recently, was participating in the *Crocker* case, and Bannister currently has two adversary proceedings pending against Navient in this District.[8]  Bannister is represented by Smith in both adversary proceedings.  Moreover, the Petitioning Creditors sought to thrust Navient into bankruptcy, which would have stayed other pending litigation against Navient, potentially to the advantage of the Petitioning Creditors and, in particular, Smith, at the expense of those other parties pursuing remedies against Navient in other pending court cases.

The improper purpose test, which Navient cites, finds bad faith "if the filing of the petition was motivated by ill will, malice, or a desire to embarrass or harass the alleged debtor." *Bayshore*, 209 F.3d at 105; *see also* 2 COLLIER ON BANKRUPTCY ¶ 303.16[1] (noting that the improper purpose test "is similar to the subjective test and assesses why the creditor sought to

---

[8]         Neither the main bankruptcy case nor the adversary proceeding before Judge Garrity have been closed. (Case No. 09-16875; Adv. Proc. 15-01418.)  Nevertheless, as noted above, Bannister has filed another bankruptcy case and adversary proceeding—likely in violation of the single-estate rule—which are both pending before Chief Judge Morris.  (Case No. 20-11718; Adv. Proc. 21-01003.)

file the involuntary case in the first instance"). Under this test too, it seems that the Petitioning

Creditors commenced this case in bad faith. This is perhaps a closer question, as it may be unfair

to impute Smith's own animosity for Navient to the Petitioning Creditors. But Smith has made

his position clear: he harbors significant ill will with respect to Navient, which he refers to as an

embezzler, as running a Ponzi scheme, and as a looter. (Supplement at 4–7.)

The objective test looks at whether a reasonable person in the creditor's position would

have believed it reasonable to file an involuntary petition. *See Bayshore*, 209 F.3d at 105–06; 2

COLLIER ON BANKRUPTCY ¶ 303.16[1]. Finally, "a number of courts have sought to model the

bad faith inquiry on the standards set forth in Bankruptcy Rule 9011," which contains both

objective and subjective elements. *Bayshore*, 209 F.3d at 106 ("An analysis under Rule 9011

inquires into a 'a significant objective requirement bearing on the legal justification of a claim or

defense: a reasonable inquiry into the facts and the law.' In addition to requiring an objective

inquiry, Rule 9011 requires a subjective inquiry as well: the bankruptcy proceeding cannot have

been interposed for an improper purpose, 'such as to harass, to cause delay, or to increase the

cost of litigation.'") (quoting *General Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d

1485, 1501 (11th Cir. 1997).) Again, and for reasons discussed below, whether under the

objective test or the 9011 test, the Court finds that this Involuntary Petition was filed in bad faith.

In addition to the tests for bad faith outlined in *Bayshore*, Navient identifies specific

factors that a court in this District applied, in *In re Murray*, 565 B.R. 527 (Bankr. S.D.N.Y.

2019), *aff'd*, 900 F.3d 53 (2d Cir. 2018), to determine whether an involuntary petition was filed

in bad faith. (Motion ¶ 32 n.17). In *Murray*, the court considered the following factors:

> (1) the existence of a long-standing two party dispute outside of the
> bankruptcy; (2) whether the petition was filed solely as a judgment
> enforcement mechanism; (3) whether there are other creditors
> competing to collect on claims; (4) the existence of adequate

> remedies under nonbankruptcy law; (5) whether the petitioning
> creditor is seeking a benefit unavailable outside of bankruptcy; (6)
> whether the debtors' assets would be lost or dissipated outside of
> bankruptcy; and (7) whether the debtor needs or wants a discharge.

(*Id.* (citing *Murray*, 565 B.R. at 533).)  Navient submits that "[c]ourts have consistently found

that it is bad faith to file a bankruptcy to 'delay, forum shop, or obtain a tactical advantage

regarding litigation ongoing in [a] nonbankruptcy form.'"  (*Id.* ¶ 34 (alteration in original)

(quoting *In re Silberkraus*, 253 B.R. 890, 905 (Bankr. C.D. Cal. 2000)).)  Navient also submits

that "filing a bankruptcy 'for the purpose of exerting pressure on an opponent in pending

litigation is evidence of bad faith.'"  (*Id.* (quoting *In re Forever Green Athletic Fields, Inc.*, 500

B.R. 413, 427 (Bankr. E.D. Pa. 2013)).)

Navient advances two specific arguments as to why Petitioning Creditors have filed the

involuntary petition in bad faith.  First, Navient argues that the involuntary petition is an attempt

to influence other litigation involving Navient and the Petitioning Creditors, particularly ongoing

proceedings in *Crocker* and *McDaniel*.  (Motion ¶¶ 34–36.)  Navient argues that Smith's own

statements indicate that the Involuntary Petition was not filed for a legitimate purpose.  (*Id.* ¶

35.)  Specifically, Navient points to Smith's statement in a YouTube video that Smith recorded

on the subject of his section 303 claims against Navient.  (*Id.*)  Although the video itself is no

longer available on YouTube.com, Navient has provided a transcript of the video.  ("Navient 303

Claims Tr.," ECF Doc. # 29-3.)  Navient reproduces the following passage in the Motion:

> And this [involuntary petition] came about after many years of
> litigation . . . It became increasingly clear to me during the course of
> that litigation that there was no end in sight, and the number of calls
> or requests about what is going on, what is happening, when is this
> going to end became heightened and heightened and heightened,
> um, and I did take the drastic step of filing this petition which asks
> for the Court to mandate that Navient be placed into bankruptcy, that
> a trustee be appointed to ensure that the assets that they have are not
> dissipated, are not looted, are not taken by the executive **before my**

18

**putative clients, people I feel that I have a duty to protect are made whole.**

(Motion ¶ 35 (alteration and emphasis in original); *see also* Navient 303 Claims Tr. at 3:5–24.)

Navient argues that Petitioning Creditors have filed the involuntary petition in an effort to litigate "their disputed claims" (asserted in *Crocker*) against Navient in an alternative forum "and to generate leverage against Navient." (Motion ¶ 36.) Navient submits that Smith withdrew from his representation in *Crocker* one day after filing the Involuntary Petition, which "was filed on the eve of a mediation session among the parties in [*Crocker*]." (*Id.*) Navient argues that this Court is not the proper forum to "resolve or address Petitioners' claims," and attempts to use this Court for those purposes are evidence of a bad faith filing. (*Id.*) Moreover, Smith was involved in *Crocker* for quite an extensive period of time, having become part of that case at least as early as the filing of the *Plaintiffs' Second Amended Complaint* on January 26, 2017, more than four years before the commencement of the present involuntary case. (*See* First Hessler Decl. Ex. Q at 307 (signature page bearing the signature of "Austin Smith").) When Smith was permitted to withdraw from *Crocker*, he then immediately sought to use this involuntary case as an apparent attempt to circumvent the protracted *Crocker* litigation, as that litigation was heading toward mediation; his own statements in his YouTube video make this clear. This would signal bad faith under any applicable test.

Second, Navient argues that Petitioning Creditors commenced this case in an effort to harm Navient's reputation. (Motion ¶¶ 37–40.) Navient claims that this tactic to harm Navient's reputation is in fact "part of a lengthy effort by [Smith] including the use of social media." (*Id.* ¶ 37.) Navient notes that Smith has "paraded the story across the media" since filing the involuntary petition. (*Id.* ¶ 38.) Navient further submits that "[Smith] made numerous inflammatory and unfounded accusations against Navient and the student loan servicing industry

19

in general that do not support or further the purpose of the Involuntary Case." (*Id.* ¶ 39.)
Navient argues that "this Court cannot determine the dischargeability of Petitioners' debts in
other bankruptcy jurisdictions," but allowing this case to proceed "could hurt the reputation of
Navient and its affiliates, to the detriment of Navient's stakeholders." (*Id.* ¶ 40.)  Smith has
indeed included some inflammatory characterizations of Navient in his submissions to this
Court.  (*See, e.g.*, Supplement at 4 (referring to Navient as "an avowed perjurer and unrepentant
embezzler" and expressing surprise that Navient "has not been disciplined, suspended, disbarred[9]
or even asked to mind its tone").)  And Navient is correct that Smith has "paraded the story [of
this case] across the media." (Motion ¶ 38.)  In fact, this case now has its own page on Smith's
website.[10]  Smith makes regular use of social media, as well as more traditional news media,[11] in
this case and in his other cases involving student debt.

Navient argues the FAQ section (the "FAQ") on Smith's website is "designed to inflame
other student loan borrowers by feeding them false information" since it does not state that most
student loans are nondischargeable.  (*Id.* ¶ 38 & n.22.)  This does not appear entirely accurate.
The FAQ may not explicitly inform its readers that most student loan debt is indeed likely
nondischargeable, but it is hardly inflammatory or patently false.  In fact, the FAQ concisely and
accurately summarizes the elements required to commence an involuntary petition under section
303 of the Bankruptcy Code.[12]  Nevertheless, the website, taken as a whole, along with Smith's

---

[9]      It is unclear how it would be possible for Navient to be "disbarred."

[10]     *See In re Navient Solutions LLC*, ACSMITHLAWGROUP.COM, https://www.acsmithlawgroup.com/navient-303 (last visited March 4, 2021).

[11]     Smith's web page dedicated to this case also includes a link to a Wall Street Journal "Exclusive."  *Id.*

[12]     *Id.* ("We must demonstrate only that three or more creditors or at least one once certain exclusions are made hold claims totaling at least $15,325; (2) the claims are not contingent as to liability; (3) the claims are not the subject of a bona fide dispute as to liability and amount; and (4) the alleged debtor is generally not paying debts as they come due.").

broader social media presence raises legitimate concerns that the filing of the petition was motivated by ill will, malice, or a desire to embarrass or harass the alleged debtor.

More problematic than the nature of the information contained in FAQ, and particularly the summary of section 303, is Smith's blatant failure to take heed of that information and plead those necessary elements that he correctly identifies. While not explicitly among the factors that courts consider when evaluating bad faith, in this case the utter failure of the Petitioning Creditors to properly assert the elements of section 303 is telling. Petitioning Creditors plainly fail to show that they are the holders of claims that are not subject to a bona fide dispute, and this speaks to whether Petitioning Creditors filed this case for a proper purpose. As Navient submits, Petitioning Creditors' failure to "present evidence to show they hold valid, undisputed claims . . . reflects a complete failure to make a reasonable inquiry into the validity of the claims." (*Id.* ¶ 30.) This glaring deficiency of the petition evidences a lack of good faith by the Petitioning Creditors. The deficiency appears only more egregious when the FAQ demonstrates Smith's apparent understanding of the necessary elements of a petition under section 303. And while Navient asserted in its Motion its arguments of Smith's bad faith, Smith filed no response and did not appear at the Hearing.

Accordingly, Court **FINDS** that the involuntary petition was filed in bad faith.

### C.      Whether Navient Is Generally Not Paying Its Debts as They Become Due

Navient argues that it is entitled to a dismissal because "Petitioners have not, and cannot, make any credible allegations that Navient is not generally paying its debts as they become due." (Motion at 26.) Section 303(h)(1) of the Bankruptcy Code provides:

> If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

> (1) the debtor is generally not paying such debtor's debts as such
> debts become due unless such debts are the subject of a bona
> fide dispute as to liability or amount;

11 U.S.C. § 303(h)(1). "The petitioning creditors have the burden of proving . . . that the debtor

is generally not paying its bills on time."[13] *In re A&J Quality Diamonds, Inc.*, 377 B.R. 460, 463

(Bankr. S.D.N.Y. 2007) (citing *In re Palace Oriental Rugs, Inc.*, 193 B.R. 126, 129 (Bankr. D.

Conn. 1996)). Once this requirement is satisfied, the burden shifts to the putative debtor to show

that there is a dispute as to a material fact, such as the existence of the liability of its amount.

*See id.* at 463.

Whether a debtor is "generally not paying" its debts is not the same as the Bankruptcy

Code's balance-sheet insolvency standard contained in section 101(32). *See* 11 U.S.C. §

101(32); 2 COLLIER ON BANKRUPTCY ¶ 303.31 ("The 'generally not paying' standard set forth in

section 303(h)(1) sounds like a form of an insolvency test. But it isn't."). The "generally not

paying" standard is also not an equity insolvency standard, which considers whether a debtor is

*able* to pay debts as they become due, not whether the debtor *is* paying such debts. *See* 2

COLLIER ON BANKRUPTCY ¶ 303.31; *but see In re B.D. Int'l Disc. Corp.*, 15 B.R. 755, 762

(Bankr. S.D.N.Y. 1981) ("In '. . . . the most significant departure from (prior) law concerning the

grounds for involuntary bankruptcy . . . .' an 'equity insolvency test' has been substituted.")

(quoting H.R. REP. NO. 95-595 at 324 (1977)). Regardless of whether section 303(h)(1) is

classified as an equity insolvency standard or some other standard measuring the failure to pay

debts, the Petitioning Creditors have plainly failed to meet its pleading requirements.

---

[13]    At the Hearing, the Court asked counsel for Navient what a pleading would have to include in order to satisfy the pleading requirement with respect to whether a debtor is generally not paying its debts as they become due. Navient's counsel responded: "It would have to give examples, and oftentimes the petitioners themselves are the examples. But they can't do that here because none of [the Petitioning Creditors'] claims are liquidated, and none of their claims are undisputed." (Hearing at 51:26–54.) The conclusory allegations asserted by the Petitioning Creditors and PICAP are insufficient.

It is not enough that a debtor is not paying some portion of its debts; it must be "generally" not paying its debts as they become due.  11 U.S.C. § 303(h)(1).  To determine whether a debtor is "generally" not paying its debts, one approach is to "undertake a rough calculus of the number and amount of the [a]lleged [d]ebtor's delinquent and current debts on the [p]etition [d]ate . . . . [and] utilize the results of that calculus to determine if the ratio of delinquent to current debts is supportive of a pattern of 'generally not paying.'"  *Palace Oriental Rugs*, 193 B.R. at 129.  In addition to this "rough calculus" approach, courts in this Circuit have applied a four-factor test that considers: "(1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the non-payments; and (4) the debtor's overall conduct of its financial affairs."  *In re Euro-Amer. Lodging Corp.*, 357 B.R. 700, 713 (Bankr. S.D.N.Y. 2007) (quoting *Crown Heights Jewish Cmty. Council, Inc. v. Fischer (In re Fischer)*, 202 B.R. 341, 350 (E.D.N.Y. 1996)).  The debtor's failure to pay a single creditor can satisfy the requirement that the debtor is generally not paying its debts, provided that the single debt is sufficiently substantial.  *Id.* at 713–14.

Navient advances two arguments in favor of dismissal on the basis that Petitioning Creditors have not, and cannot, show that Navient is not generally paying its debts as they become due.  (Motion ¶¶ 41–47.)  First, Navient argues that the Petitioning Creditors—rather than providing evidence that Navient is not generally paying its debts as they become due—have alleged, without substantiation, only that Navient is insolvent.  (*Id.* ¶ 42.)  But, as noted above, and as Navient points out, section 303(h)(1) does not require a showing of insolvency, and especially not balance-sheet insolvency.  (*Id.* ¶ 43 (citing 11 U.S.C. § 303(h)(1).)

Petitioning Creditors submit that "[t]he arithmetic that follows from the official position of this government leads inexorably to the conclusion that Navient is insolvent ($87.4 billion in

assets minus $85 billion in liabilities minus $4 billion in damages in CFPB lawsuit equals -$1.6 billion net worth), and owes the sovereign billions of dollars." (Supplement at 6.) But Navient argues that, even if a balance-sheet insolvency test were part of the proper analysis under section 303(h)(1), the $4 billion liability based on the CFPB suit that Petitioning Creditors identify is "based on speculation regarding the outcome of pending litigation." (Motion ¶ 44.) Thus, even using a largely irrelevant, inapplicable test, Petitioning Creditors have failed to adequately plead that Navient is insolvent.

Second, Navient correctly asserts that Petitioning Creditors do not provide evidence to support a finding that Navient is generally not paying its debts as they become due. (*Id.* ¶ 45.) The Supplement outlines only the alleged balance-sheet insolvency, with absolutely no discussion of whether or not Navient is generally paying debts as they become due. Navient submits that Petitioning Creditors "did not made inquiries into whether Navient was generally paying its debts as they became due." (*Id.* ¶ 47.) And, when asked at the Hearing whether there are any unsatisfied dollar-amount judgments anywhere in the United States for the kinds of claims that are being asserted in litigation as to whether the loans in question were discharged, i.e., judgments requiring a repayment of discharged loans that Navient had collected, Navient's counsel responded simply: "There are no unsatisfied judgments, no judgments of any kind in that nature." (Hearing 53:04–19.) Petitioning Creditors failed to offer even the barest conclusory allegations that Navient is generally not paying its debts as they become due. If the statements of Navient's counsel are correct, the explanation for the Involuntary Petition's deficiency appears simple: Navient has no outstanding debts of the type that the Petitioning Creditors attempt to assert, at least none that are liquidated and that are not the subject of a bona fide dispute.

Accordingly, the Court **FINDS** that the Petitioning Creditors have not shown that Navient is generally not paying its debts as they become due.[14]

### D.    Whether the Court Should Abstain Under Section 305(a) of the Bankruptcy Code

Section 305(a)(1) of the Bankruptcy Code provides that a court, "after notice and a hearing," may dismiss or suspend all proceedings in a case at any time when "the interests of creditors and the debtor would be better served by such dismissal . . .[.]" 11 U.S.C. § 305(a)(1). Granting an abstention motion pursuant to section 305(a)(1) requires more than a simple balancing of harm to the debtor and creditors; rather, the interests of both the debtor and its creditors must be served by granting the requested relief. *In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 255 (S.D.N.Y. 2004) (citing *In re Eastman*, 188 B.R. 621, 624 (9th Cir. BAP 1995)). The moving party bears the burden of demonstrating that the interests of both the debtor and its creditors would benefit from dismissal. *Gurley v. Mills (In re Gurley)*, 222 B.R. 124, 130 (Bankr. W.D. Tenn. 1998) (citing 2 COLLIER ON BANKRUPTCY ¶ 305.02[1] (15th ed. rev. 1997)).

The decision to abstain is made on a case-by-case basis considering the totality of the circumstances. *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 464 (Bankr. S.D.N.Y. 2008). "A bankruptcy court is not bound by a prescriptive template; it may consider any factors it deems relevant to the determination of whether it is in the best interests of the parties to the suit to seek

---

[14]    On February 23, 2021, PICAP filed a letter requesting an adjournment of the Hearing, stating that such an adjournment was required to preserve the rights of the unsecured creditors of Navient under section 303(c), Bankruptcy Rule 1003(b), and the case *Hayden v. QDOS, Inc. (In re QDOS, Inc.)*, 607 B.R. 338 (9th Cir. BAP 2019). (ECF Doc. # 37.) The adjournment request was not granted. While *QDOS* does state that "all creditors must have a *reasonable opportunity* to join in an involuntary petition," it also states that such an opportunity is "unnecessary" where "the involuntary debtor is not in financial distress" and joinder would therefore be "a meaningless endeavor." 607 B.R. at 344 (emphasis in original). The *QDOS* court used the term "financial distress" to describe the standard in section 303(h). *Id.* at 343. As the Court finds that section 303(h) is not met, an opportunity for creditors to join the involuntary petition is not necessary.

25

dismissal.  Reasoned judgment based on articulated facts is the only test which the statute itself

requires."  *In re First Assured Warranty Corp.*, 383 B.R. 502, 530 (Bankr. D. Colo. 2008)

(citation omitted).  That said, courts generally rely on the following seven factors (the "*Monitor*

*Single* Factors"):

> a. the economy and efficiency of administration;
> b. whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court;
> c. whether federal proceedings are necessary to reach a just and equitable solution;
> d. whether there is an alternative means of achieving an equitable distribution of assets;
> e. whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;
> f. whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and
> g. the purpose for which bankruptcy jurisdiction has been sought.

*In re Monitor Single Lift I, Ltd.*, 381 B.R. at 464–65 (citing cases).  Not all factors are given

equal weight in each case.  *Id.*

The "purpose for which the involuntary petition was filed" has been regarded as "the

most important factor although not dispositive."  *In re Persico Contracting & Trucking, Inc.*,

2010 WL 3766555, at *4 (Bankr. S.D.N.Y. Aug. 20, 2010); *see also* 2 COLLIER ON BANKRUPTCY

¶ 305.02[2][a] (16th ed. 2021) (stating that "the prototypical fact pattern under section 305(a)(1)"

as noted by Congress involves out-of-court workouts and efforts by recalcitrant creditors to

commence an involuntary case to gain leverage).  In fact, section 305 mainly functions to rid the

bankruptcy courts of retaliatory, involuntary cases.  *In re Monitor Single Lift I, Ltd.*, 381 B.R. at

463.

1.  Factors 1–6: Economic and Efficiency Considerations; Availability of
    Alternate Forums

For purposes of this abstention analysis, factors 1–6 are grouped together because these factors touch upon the availability of an alternate forum to efficiently achieve an equitable distribution.  *See In re Acis Capital Mgmt., L.P.*, 584 B.R. 115, 146 (Bankr. N.D. Tex. 2018).

A suitable alternate forum will be deemed to exist if in that forum "there are pending arrangements that will equitably satisfy the creditors and not be unduly burdensome or prejudicial to the debtor," so that continuation of the bankruptcy proceeding will be "duplicitous and uneconomical."  *In re RAI Marketing Services, Inc.*, 20 B.R. 943, 946 (Bankr. D. Kan. 1982).  Here, there is no question that there are alternate forums available that can efficiently adjudicate the claims of the Petitioning Creditors: Navient is currently engaged in pending lawsuits regarding the very same alleged conduct that is the basis for this involuntary petition. The ongoing Discharge Litigation and the other host of potential class actions on the horizon are the appropriate forums for these disputes.  *See In re Persico Contracting & Trucking, Inc.*, 2010 WL 3766555, at *5 (explaining that the petitioning creditors should be pursuing their collection efforts in the district court as an appropriate forum rather than in the bankruptcy court).

Furthermore, an involuntary proceeding in this Court is not necessary to reach a just and equitable solution for the Petitioning Creditors.  Moving the Alleged Debtor into bankruptcy and consequently activating the automatic stay would only impede the ongoing Discharge Litigation and its critical progress toward resolution of unsettled issues in multiple circuits.  Moreover, when a matter is pending in another court that will affect whether the bankruptcy reorganization is necessary at all, bankruptcy courts have found that a suitable alternate forum is available and that the court should abstain.  *In re Realty Tr. Corp.,* 143 B.R. 920, 926–927 (D. N. Mar. 1992) ("When bankruptcy is used as a prophylactic measure to secure an alternative forum for

resolution of unsettled issues of state or local law, and one of the likely local law outcomes would obviate the need for bankruptcy entirely, the presence of such unsettled non-bankruptcy issues is a factor counseling dismissal . . . . While this court has the power to consider and discharge the claims, an alternative forum is available."). That is exactly the case here, where the conclusion of the pending litigation against Navient will determine whether there are viable claims against it and if reorganization is even necessary.

In other words, the relief sought in this Court would be premature. Halting the Discharge Litigation would be neither expeditious nor economical. The fact that the Discharge Litigation or any alternate forum might not be as expeditious or result in as a favorable an outcome to the Petitioning Creditors has also been rejected as a basis for granting an involuntary petition in previous cases. *See In re Persico Contracting & Trucking, Inc.*, 2010 WL 3766555, at *5. In addition, the Court has not been presented with any economic justification for placing Navient, a solvent entity, into an involuntary chapter 11. On the contrary, a chapter 11 case would result in substantial professional fees and potentially millions of dollars in business disruption and lost value to Navient and its stakeholders.

Accordingly, factors 1–6 collectively weigh in favor of abstention.

2. Factor 7: Purpose for Which This Bankruptcy Was Filed

Navient explains that it has been engaged in litigation involving at least one of the Petitioning Creditors and other clients of Smith since 2015. Now, Smith is attempting collection efforts against Navient through the guise of the Involuntary Petition. The Court has found that using an involuntary petition to attempt to collect a debt is an improper purpose, thereby warranting abstention. *In re Persico Contracting & Trucking, Inc.*, 2010 WL 3766555, at *4; 2 COLLIER ON BANKRUPTCY ¶ 305.02[2][d]. As aptly stated by Judge Morris, presently Chief

28

Judge of this Court, in *In re Mountain Dairies, Inc.*, "[t]he Bankruptcy Court is not a collection agency." 372 B.R. 623, 635 (Bankr. S.D.N.Y. 2007). There are strong policy considerations against allowing a creditor that has a dispute with a debtor to gain leverage in that dispute. *Id.* at 632–33.

Practically, the Petitioning Creditors are acting as a "sole petitioning creditor" and have not filed the involuntary petition as part of a "joint effort of the creditor body or a large number of creditors," which is a recognized proper purpose. *See In re Persico Contracting & Trucking, Inc.*, 2010 WL 3766555, at *4. Indeed, the involuntary petition makes this clear, as it asserts that "there are major differences in the legal posture between the average student debtor and the Petitioning Creditors." (Supplement at 7; *see generally id.* at 7–9.) As a result, the Petitioning Creditors are simply seeking to satisfy unadjudicated obligations they believe they are owed. The Petitioning Creditors are not by any means furthering public policy goals underpinning the Bankruptcy Code and the chapter 11 process, which include maximizing value for all stakeholders and providing debtors with a "fresh start." This factor also weighs in favor of abstention.

Based on the Court's analysis of the *Monitor Single* Factors, the Court **FINDS** that abstention from this case is warranted.

### III.    CONCLUSION

For the reasons stated above, the Court entered an Order (ECF Doc. # 42) dismissing the involuntary petition. Whether the Alleged Debtor may recover damages from the Petitioning Creditors, or from Smith, is not presently before the Court.[15]

---

[15]    The Order dismissing the Involuntary Petition expressly reserved these issues. *See* Order Granting (A) Expedited Motion to Dismiss Involuntary Petition and (B) Related Relief , ECF Doc. # 42,  ¶ 6 ("Navient has not

Dated:    March 8, 2021
          New York, New York

*Martin Glenn*
_____
MARTIN GLENN
United States Bankruptcy Judge

---

waived the right to seek judgment against the Petitioners, Counsel, Public Interest Capital, LLC ('PICAP'), and counsel for PICAP pursuant to section 303(i) of the Bankruptcy Code and this Court may, upon subsequent proceedings initiated by Navient, take under advisement additional proceedings related to the Involuntary Case pursuant to section 303(i) of the Bankruptcy Code.").