Stephen E. Hessler, P.C.
Chad J. Husnick, P.C.
Jennifer Levy (admitted *pro hac vice*)
AnnElyse Scarlett Gains
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

*Co-Counsel for Navient Solutions, LLC*

Thomas M. Farrell (admitted *pro hac vice*)
K. Elizabeth Sieg (admitted *pro hac vice*)
Joseph Florczak (admitted *pro hac vice*)
**MCGUIREWOODS LLP**
800 East Canal Street
Richmond, Virginia 23219
Telephone:     (804) 775-1000

*Co-Counsel for Navient Solutions, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | |
| NAVIENT SOLUTIONS, LLC, | ) | Case No. 21-10249 (MG) |
| | ) | |
| Putative Debtor. | ) | |
| | ) | |

**DECLARATION OF STEPHEN E. HESSLER IN SUPPORT OF NAVIENT'S**
**MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 11 U.S.C. § 303(i)**

Stephen E. Hessler hereby declares under penalty of perjury pursuant to section 1746 of

title 28 of the United States Code:

1.     I am the president of Stephen E. Hessler, P.C., a partner of the law firm of

Kirkland & Ellis P.C., located at 601 Lexington Avenue, New York, New York 10022, and a

partner of Kirkland & Ellis International, LLP (together with Kirkland & Ellis LLP, collectively,

"Kirkland").  I am an attorney admitted to practice before this Court, and am one of the lead

attorneys representing Navient Solutions, LLC ("Navient"), the putative debtor in the

above-captioned and dismissed involuntary chapter 11 case (the "Involuntary Case").  I submit

this declaration in support of Navient's *Motion for Attorneys' Fees and Costs Pursuant to*

*11 U.S.C. § 303(i)* (the "Motion) filed contemporaneously herewith.[1]  The exhibits referenced in

the Motion and attached as appendices hereto are true and correct to the best of my knowledge.

2.      Below is a list of the Exhibits:

**Document**

**Exhibit A**    Summary of Attorneys' Fees and Costs of Kirkland & Ellis LLP for Legal Services
Rendered Through March 24, 2021.

**Exhibit B**    Summary of Attorneys' Fees and Costs of McGuireWoods LLP for Legal Services
Rendered Through February 28, 2021.

**Exhibit C**    Transcript of Motion to Dismiss Hearing, *In re Navient Solutions, LLC*,
No. 21-10249 (MG) (Bankr. S.D.N.Y. Feb. 25, 2021).

New York, New York
Dated:  March 29, 2021                        */s/ Stephen E. Hessler*
                                             As President of Stephen E. Hessler, P.C., as
                                             Partner of Kirkland & Ellis LLP, and as
                                             Partner of Kirkland & Ellis International LLP

---

[1]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

**<u>Exhibit A</u>**

**Summary of Attorneys' Fees and Costs
of Kirkland & Ellis LLP for Legal Services Rendered Through March 24, 2021**

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, NY 10022

FEIN 36-1326630

March 29, 2021

Navient Solutions, LLC
13865 Sunrise Valley Drive
Suite 110
Herndon, VA 20171

Attn: Mark Heleen

**Invoice Number: 1050042184**
**Client Matter:** 17194-29

---

**In the Matter of Involuntary Petition SDNY**

| | |
|---|---|
| For legal services rendered through March 24, 2021 (see attached Description of Legal Services for detail) | $ 524,050.80 |
| For expenses incurred through March 24, 2021 (see attached Description of Expenses for detail) | $ 2,903.54 |
| Total legal services rendered and expenses incurred | $ 526,954.34 |

Bay Area    Beijing    Boston    Chicago    Dallas    Hong Kong    Houston    London    Los Angeles    Munich    Paris    Shanghai    Washington, D.C.

Navient Solutions, LLC                                    Invoice Number:            1050042184
Legal Services for the Period Ending March 24, 2021       Matter Number:                17194-29
March 29, 2021

## Summary of Hours Billed

| Name | Hours | Rate | Amount |
|------|------:|-----:|-------:|
| Julia R. Foster | 39.80 | 390.00 | 15,522.00 |
| AnnElyse Scarlett Gains | 101.30 | 1,185.00 | 120,040.50 |
| Susan D. Golden | 8.00 | 1,220.00 | 9,760.00 |
| Stephen E. Hessler, P.C. | 33.50 | 1,695.00 | 56,782.50 |
| Chad J. Husnick, P.C. | 45.60 | 1,695.00 | 77,292.00 |
| Elizabeth Helen Jones | 122.80 | 765.00 | 93,942.00 |
| Jennifer Levy, P.C. | 5.30 | 1,396.00 | 7,398.80 |
| Trudy Smith | 43.40 | 995.00 | 43,183.00 |
| Alex Warso | 84.30 | 875.00 | 73,762.50 |
| Carole Michelle Wurzelbacher | 26.50 | 995.00 | 26,367.50 |
| **TOTALS** | **510.50** | | **$ 524,050.80** |

Navient Solutions, LLC            Invoice Number:    1050042184
Legal Services for the Period Ending March 24, 2021    Matter Number:      17194-29
March 29, 2021

**Description of Legal Services**

| Date | Name | Hours | Description |
|---|---|---|---|
| 02/10/21 | Julia R. Foster | 1.50 | Circulate recently filed Navient pleadings; draft Navient notice of appearances for S. Hessler, C. Husnick, A. Gains, and J. Levy; draft Navient pleading template. |
| 02/10/21 | AnnElyse Scarlett Gains | 9.00 | Review amended pleadings; summarize re same; correspond and conference with K&E team re same; initiate outline and draft of motion to dismiss; analyze research and background information re same; conference and correspond with K&E team, McGuireWoods team re same. |
| 02/10/21 | Susan D. Golden | 0.50 | Teleconference with S. Hessler, C. Husnick, and A. Gains re involuntary case; follow up with A. Gains re same. |
| 02/10/21 | Stephen E. Hessler, P.C. | 4.50 | Telephone conferences and correspond with K&E team re involuntary filing and work in process; telephone conference with K&E team and McGuireWoods re same. |
| 02/10/21 | Chad J. Husnick, P.C. | 2.50 | Correspond and conference with K&E team, client re involuntary filing and next steps. |
| 02/10/21 | Elizabeth Helen Jones | 5.60 | Telephone conference with A. Gains, K&E team re motion to dismiss; compile summary of involuntary petition rules; draft sections of motion to dismiss; research case law on sanctions/damages. |
| 02/10/21 | Jennifer Levy, P.C. | 1.50 | Background review, research, and telephone conference with client and K&E team re involuntary petition. |
| 02/10/21 | Trudy Smith | 2.40 | Telephone conference and correspond with K&E team re involuntary petition and motion to dismiss work streams; read and analyze involuntary petition; review background materials re same. |
| 02/10/21 | Carole Michelle Wurzelbacher | 6.50 | Draft motion to dismiss involuntary chapter 11; telephone conference with A. Gains and K&E team re same; research re same. |

Navient Solutions, LLC
Legal Services for the Period Ending March 24, 2021
March 29, 2021

Invoice Number:     1050042184
Matter Number:      17194-29

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 02/11/21 | Julia R. Foster | 5.50 | Research re Motion for Emergency Hearing; shell pleadings re same; revise notice of appearances; revise pro hac vice motion; research re corporate ownership statement; draft re same; shell motion requesting costs; revise Motion to Dismiss; research precedent re notices to show cause; draft re same; review and cite check motion to dismiss. |
| 02/11/21 | AnnElyse Scarlett Gains | 8.80 | Review amended pleadings; summarize re same; correspond and conference with K&E team re same; draft and revise motion to dismiss; correspond and conference with K&E team, McGuireWoods team, client re same. |
| 02/11/21 | Susan D. Golden | 0.50 | Correspond with Judge Glenn's chambers re filing responsive pleadings; call with US Trustee; correspond with K&E team re same. |
| 02/11/21 | Stephen E. Hessler, P.C. | 3.50 | Telephone conferences and correspond with K&E team re assistance; review draft outline of Motion to Dismiss; telephone conferences and correspond with K&E team re same; telephone conference and correspond with K&E team and Company re filing. |
| 02/11/21 | Chad J. Husnick, P.C. | 0.50 | Correspond and conference with K&E team, client re involuntary filing and next steps. |
| 02/11/21 | Elizabeth Helen Jones | 6.70 | Draft motion to dismiss; research case law on damages; research case law on bad faith; draft corporate ownership statement; revise re same; correspond with A. Gains re motion to exceed page limits; draft re same; telephone conference with K&E team, A. Gains re case status. |
| 02/11/21 | Jennifer Levy, P.C. | 0.80 | Calls with client and K&E team re fact investigation, corporate structure and strategy issues. |
| 02/11/21 | Trudy Smith | 9.70 | Research case law re abstention; draft motion to dismiss section re same; correspond with K&E team re same; telephone conference with K&E team re status; telephone conference with S. Golden re motion to show cause; review and analyze bankruptcy rules re emergency relief; correspond and telephone conference with A. Gains re same. |

Navient Solutions, LLC
Legal Services for the Period Ending March 24, 2021
March 29, 2021

Invoice Number:      1050042184
Matter Number:          17194-29

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 02/11/21 | Alex Warso | 9.90 | Draft, revise motion to dismiss; research, analyze case law re same; analyze issues re standard of dismissal; telephone conference with K&E team re same; correspond with J. Foster re citations. |
| 02/11/21 | Carole Michelle Wurzelbacher | 8.50 | Review, revise motion to dismiss; research re same; correspond with A. Gains and K&E team re same. |
| 02/12/21 | Julia R. Foster | 1.20 | Correspond with printing/courier vendor re service; correspond with A. Gains re filing; draft Hessler Declaration in support of Motion to Dismiss; review and revise pleadings. |
| 02/12/21 | AnnElyse Scarlett Gains | 10.00 | Review pleadings; correspond and conference with K&E team re same; draft and revise motion to dismiss; correspond and conference with K&E team, McGuireWoods team, client re same; attend strategy call with client. |
| 02/12/21 | Chad J. Husnick, P.C. | 2.00 | Review and revise motion to dismiss; correspond and conference with K&E team, client re same. |
| 02/12/21 | Elizabeth Helen Jones | 3.20 | Correspond with A. Gains re motion to dismiss; revise same. |
| 02/12/21 | Trudy Smith | 6.90 | Draft verified declaration re appendices to motion to dismiss; correspond with K&E team re documents cited in motion; compile documents; revise motion to dismiss re company's financial position; read and analyze financial report as of Dec. 2020; correspond with K&E team re same; draft order and declaration re show cause; telephone conference and correspond with A. Gains re same; review motions to dismiss comments. |
| 02/12/21 | Alex Warso | 8.80 | Review, analyze background materials; revise motion to dismiss re same; research, analyze case law, precedent re same; draft summaries re motion to dismiss. |
| 02/12/21 | Carole Michelle Wurzelbacher | 6.60 | Review, revise motion to dismiss; research re various issues re same; correspond with A. Gains and K&E team re same. |
| 02/13/21 | AnnElyse Scarlett Gains | 3.40 | Review, revise motion to dismiss; correspond with K&E team re same. |

Navient Solutions, LLC                                   Invoice Number:           1050042184
Legal Services for the Period Ending March 24, 2021       Matter Number:             17194-29
March 29, 2021

---

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 02/13/21 | Stephen E. Hessler, P.C. | 2.20 | Telephone conference and correspond with K&E team re corporate ownership statement and documents to be filed; telephone conferences and correspond with K&E team and Company re work in process. |
| 02/13/21 | Chad J. Husnick, P.C. | 1.50 | Review and revise motion to dismiss; correspond and conference with K&E team re same. |
| 02/13/21 | Elizabeth Helen Jones | 4.50 | Revise motion to dismiss; correspond with A. Gains re same. |
| 02/13/21 | Trudy Smith | 2.20 | Read and analyze case law re automatic stay and sanctions. |
| 02/13/21 | Alex Warso | 0.20 | Correspond with A. Gains re transcript analysis, citation; analyze issue re same. |
| 02/14/21 | AnnElyse Scarlett Gains | 3.60 | Review, revise motion to dismiss; correspond with K&E team and McGuireWoods Team re same. |
| 02/14/21 | Chad J. Husnick, P.C. | 0.50 | Correspond and conference with K&E team re motion to dismiss research issues. |
| 02/14/21 | Elizabeth Helen Jones | 1.80 | Compile list of pending litigations re Navient and issues raised in involuntary petition; revise motion to dismiss; correspond with A. Gains re same. |
| 02/14/21 | Trudy Smith | 5.10 | Research re automatic stay in other pending bankruptcy matters involving petitioners; draft analysis re same; correspond with K&E team re same. |
| 02/14/21 | Alex Warso | 0.20 | Revise status conference reference; correspond with A. Gains re same. |
| 02/15/21 | AnnElyse Scarlett Gains | 8.70 | Review, revise motion to dismiss; correspond and conference with K&E team and McGuireWoods team re same; review information and documents re same. |
| 02/15/21 | Stephen E. Hessler, P.C. | 2.50 | Telephone conference and correspond with K&E team re Motion to Dismiss. |
| 02/15/21 | Chad J. Husnick, P.C. | 3.00 | Review and revise motion to dismiss and related documents; correspond and conference with K&E team, client re same; telephone conference with A. Gains re same. |
| 02/15/21 | Elizabeth Helen Jones | 5.30 | Correspond with A. Gains re motion to dismiss; revise re same. |

Navient Solutions, LLC
Legal Services for the Period Ending March 24, 2021
March 29, 2021

Invoice Number:          1050042184
Matter Number:               17194-29

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 02/15/21 | Trudy Smith | 3.40 | Revise verified declaration re Motion to Dismiss and correspond with K&E team re same; compile exhibits; read revised motion to dismiss. |
| 02/15/21 | Alex Warso | 11.20 | Draft motion to redact; correspond with A. Gains re same; review, analyze factual issues re evidentiary support; correspond with A. Gains re same; revise dismissal motion re same; correspond with J. Urban re video support; review, analyze precedent re sealing motions; analyze local rules, bankruptcy rules, chambers guidelines re same; telephone conference with E. Jones re case updates, outstanding items. |
| 02/16/21 | Julia R. Foster | 0.30 | Research re Judge Glenn procedures. |
| 02/16/21 | AnnElyse Scarlett Gains | 2.90 | Review, revise motion to dismiss; correspond and conference with client and K&E teams re same; review information and documents re same. |
| 02/16/21 | Stephen E. Hessler, P.C. | 0.70 | Telephone conference and correspond with K&E team re Navient case update. |
| 02/16/21 | Chad J. Husnick, P.C. | 3.50 | Review and revise motion to dismiss and related documents; correspond and conference with K&E team, client re same; correspond and conference with A. Gains re same. |
| 02/16/21 | Elizabeth Helen Jones | 5.80 | Revise motion to dismiss; correspond with A. Gains re same; research outstanding issues re same; revise corporate ownership statement. |
| 02/16/21 | Jennifer Levy, P.C. | 0.50 | Review draft motion to dismiss involuntary petition; confer with K&E team re strategy issues re same. |
| 02/16/21 | Trudy Smith | 0.50 | Revise verified declaration and correspond with K&E team re same. |
| 02/16/21 | Alex Warso | 1.10 | Revise redaction motion; correspond with A. Gains re same; review, analyze revised pleadings re filing preparations; correspond with K&E team re same. |
| 02/17/21 | Julia R. Foster | 7.90 | Prepare materials for filing; prepare notice of appearances and pro hac vice motions for filing; review and revise pleadings; prepare binder materials for service; correspond with printing/courier vendor re filings; file pleadings. |

Navient Solutions, LLC
Legal Services for the Period Ending March 24, 2021
March 29, 2021

Invoice Number: 1050042184
Matter Number: 17194-29

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 02/17/21 | AnnElyse Scarlett Gains | 11.30 | Review, revise motion to dismiss; correspond and conference with teams re same; review information and documents re same. |
| 02/17/21 | Susan D. Golden | 1.00 | Call with A. Gains re Motion to Dismiss and requests for Judge Glenn's chambers; correspond and call with D. Anderson of Judge Glenn's chambers re same; review and revise Motion to Shorten Time for hearing and correspond with A. Warso re same. |
| 02/17/21 | Stephen E. Hessler, P.C. | 1.50 | Telephone conference and correspond with K&E team re Motion to Dismiss; telephone conference and correspond with K&E team re timeline. |
| 02/17/21 | Chad J. Husnick, P.C. | 3.50 | Review and revise motion to dismiss and related documents; correspond and conference with K&E team, client re same. |
| 02/17/21 | Elizabeth Helen Jones | 9.20 | Revise motion to dismiss; revise corporate ownership statement; correspond with A. Gains re same; prepare same for filing; prepare all filed documents for service; correspond with T. Smith re Hessler Declaration. |
| 02/17/21 | Trudy Smith | 7.40 | Compile exhibits for verified declarations; telephone conferences with K&E team re same; revise verified declarations; review redactions; revise motion to dismiss; correspond with K&E team re verified declaration; prepare filing version of the same. |
| 02/17/21 | Alex Warso | 9.30 | Revise, finalize pleadings re motion to dismiss; draft motion to shorten notice; telephone conference, correspond with A. Gains re same; correspond with J. Foster, A. Gains, K&E team re service, filing, information dissemination; correspond with J. Foster, K&E team re A/V exhibits, materials; correspond with E. Jones re same, service, finalization of pleadings. |
| 02/17/21 | Carole Michelle Wurzelbacher | 0.80 | Draft talking points for motion to dismiss; correspond with K&E team re same. |

Navient Solutions, LLC                                          Invoice Number:          1050042184
Legal Services for the Period Ending March 24, 2021            Matter Number:                17194-29
March 29, 2021

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 02/18/21 | Julia R. Foster | 4.40 | Revise notice of hearing; file re same; revise pleadings caption; correspond with courier re delivery of pleadings; coordinate CourtSolutions line re February 25, 2021 hearing; draft certificate of service re February 17, 2021 filings; prepare digital materials for filing; correspond with K&E team re service. |
| 02/18/21 | AnnElyse Scarlett Gains | 4.30 | Correspond and conference with K&E and client team re motion to dismiss, letter from Smith, service, next steps; review and analyze re same. |
| 02/18/21 | Susan D. Golden | 1.50 | Review petitioning creditors letter response to Motion to Dismiss and correspond with C. Husnick, S. Hessler, A. Gains re response to same; call with A. Gains re submission of audio/video exhibits to chambers and correspond with Judge Glenn's chambers re same; call with J. Mercado and T. George of Bankruptcy Court re procedure for filing audio and video files. |
| 02/18/21 | Stephen E. Hessler, P.C. | 0.50 | Telephone conference and correspond with K&E team re Navient letter requesting Summary Judgment. |
| 02/18/21 | Chad J. Husnick, P.C. | 0.50 | Correspond and conference with K&E team, client re motion to dismiss and hearing re same. |
| 02/18/21 | Elizabeth Helen Jones | 5.80 | Draft certificates of services; serve additional filings; correspond with A. Gains re same; correspond with Court re filing of electronic media; correspond with S. Golden re same. |
| 02/18/21 | Trudy Smith | 0.20 | Review correspondence from K&E team re filings. |
| 02/18/21 | Alex Warso | 3.90 | Analyze case law re Smith letter to court; correspond with A. Gains, K&E team re same; correspond with A. Gains, S. Golden, J. Foster, E. Jones re service; revise electronic media PDF; coordinate filing re same. |
| 02/19/21 | Julia R. Foster | 1.30 | Correspond with K&E team re digital materials; revise certificate of service re Navient pleadings; prepare certificate of service for filing; file certificate of services. |
| 02/19/21 | Julia R. Foster | 0.40 | Prepare binder materials re February 25, 2021 hearing. |

9

Navient Solutions, LLC                                    Invoice Number:              1050042184
Legal Services for the Period Ending March 24, 2021      Matter Number:                17194-29
March 29, 2021

---

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 02/19/21 | AnnElyse Scarlett Gains | 1.50 | Correspond and conference with teams re motion to dismiss, service re same, letters to chambers; review, analyze re same. |
| 02/19/21 | Susan D. Golden | 0.50 | Correspond with V. Genna and D. Anderson re filing protocols for audio files; coordinate transcription re same. |
| 02/19/21 | Chad J. Husnick, P.C. | 0.30 | Correspond and conference with K&E team, client re motion to dismiss and hearing re same. |
| 02/19/21 | Elizabeth Helen Jones | 4.50 | Prepare binder for C. Husnick re February 25, 2021 hearing preparation; compile pleadings and case law re same; correspond with A. Warso, J. Foster re same; draft talking points re motion to dismiss. |
| 02/19/21 | Trudy Smith | 0.70 | Draft talking points re abstention; correspond with K&E team re same; review filed motion to dismiss re same. |
| 02/19/21 | Alex Warso | 4.90 | Draft, revise dismissal talking points; correspond with A. Gains, K&E team re same; correspond with S. Golden, Veritext re multimedia sources. |
| 02/19/21 | Carole Michelle Wurzelbacher | 1.50 | Review, revise motion to dismiss talking points; correspond with K&E team re same. |
| 02/20/21 | Susan D. Golden | 0.50 | Review transcribed audio; correspond with A. Warso and Veritext re same. |
| 02/20/21 | Elizabeth Helen Jones | 1.30 | Draft talking points for motion to dismiss; correspond with A. Warso re same. |
| 02/20/21 | Alex Warso | 7.70 | Draft, revise talking points re motion to dismiss; correspond with A. Gains, K&E team re same; review, analyze case law re same; analyze pleadings re key admissions, open items; correspond with A. Gains, K&E team re review materials; correspond with S. Golden, transcriber re finalization of transcripts. |
| 02/21/21 | Julia R. Foster | 0.90 | Prepare S. Hessler Declaration for filing; file re same. |
| 02/21/21 | AnnElyse Scarlett Gains | 1.00 | Correspond and conference with K&E team re next steps, talking points, hearing preparation. |
| 02/21/21 | Susan D. Golden | 0.50 | Review and revise Hessler Declaration re transcribed audio and video exhibits; correspond with A. Warso re same. |

Navient Solutions, LLC
Legal Services for the Period Ending March 24, 2021
March 29, 2021

Invoice Number:      1050042184
Matter Number:          17194-29

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 02/21/21 | Chad J. Husnick, P.C. | 4.00 | Correspond and conference with K&E team re hearing re motion to dismiss; review and analyze materials re hearing preparation. |
| 02/21/21 | Elizabeth Helen Jones | 2.60 | Prepare service of Hessler Declaration; serve Hessler Declaration; draft summaries of Petitioners; correspond with A. Gains re same. |
| 02/21/21 | Alex Warso | 1.10 | Draft, revise Hessler declaration; finalize transcripts re same; correspond with S. Golden, A. Gains, K&E team re same. |
| 02/21/21 | Carole Michelle Wurzelbacher | 0.60 | Draft talking points for motion to dismiss; correspond with K&E team re same. |
| 02/22/21 | Julia R. Foster | 0.60 | Compile recently filed pleadings for K&E team review; coordinate CourtSolutions lines for S. Hessler. |
| 02/22/21 | AnnElyse Scarlett Gains | 2.80 | Conference and correspond with K&E team and McGuireWoods team re objection, hearing preparation, talking points; review, analyze same. |
| 02/22/21 | Stephen E. Hessler, P.C. | 0.80 | Telephone conference and correspond with K&E team re Letter of Extension; telephone conference and correspond with K&E team re Objection; telephone conference and correspond with K&E team re work in progress. |
| 02/22/21 | Chad J. Husnick, P.C. | 4.00 | Prepare for hearing re motion to dismiss; review and analyze pleadings, preparation materials re same; correspond and conference with K&E team, client, co-advisors re same. |
| 02/22/21 | Elizabeth Helen Jones | 6.30 | Revise summaries of petitioners; correspond with A. Gains, McGuireWoods team re same; telephone conference with same re Crocker decision; draft summary of Crocker decision; revise re same; revise talking points re motion to dismiss; correspond with A. Warso re same. |
| 02/22/21 | Trudy Smith | 3.90 | Revise talking points re comments received; correspond with K&E team re same; review motion to dismiss, verified declaration re same. |

Navient Solutions, LLC                                    Invoice Number:              1050042184
Legal Services for the Period Ending March 24, 2021       Matter Number:                 17194-29
March 29, 2021

---

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 02/22/21 | Alex Warso | 9.30 | Revise talking points; correspond with A. Gains, K&E team re same; correspond with C. Husnick, K&E team re same; analyze comments, outline re hearing preparation; research, analyze case law re same. |
| 02/22/21 | Carole Michelle Wurzelbacher | 0.70 | Review, revise motion to dismiss talking points. |
| 02/23/21 | Julia R. Foster | 6.40 | Draft February 25, 2021 hearing agenda; compile recently filed pleadings; prepare certificate of service for filing; file re same; correspond with K&E team re February 25, 2021 hearing; prepare materials for February 25, 2021 hearing. |
| 02/23/21 | AnnElyse Scarlett Gains | 7.40 | Correspond and conference with K&E team, McGuireWoods team re hearing preparation, objection deadlines, motion to dismiss, joinder; review, analyze same. |
| 02/23/21 | Susan D. Golden | 1.00 | Correspond with K&E team re Joinder filing; correspond with D. Anderson of Judge Glenn's chambers re filed pleadings; review and revise agenda. |
| 02/23/21 | Stephen E. Hessler, P.C. | 3.50 | Telephone conference and correspond with K&E team re extension request; telephone conference and correspond with K&E team re joinder; telephone conference and correspond with K&E team re status update; telephone conference and correspond with K&E team re Hearing Agenda. |
| 02/23/21 | Chad J. Husnick, P.C. | 3.50 | Prepare for hearing re motion to dismiss; review and analyze materials re same; correspond and conference with K&E team, client, co-advisors re same. |
| 02/23/21 | Elizabeth Helen Jones | 6.30 | Draft certificate of service; revise hearing agenda; review joinder; research issues re same; correspond with A. Gains, A. Warso re same; revise talking points re same; draft summary outlining joinder issues re same; draft summary of McDaniel decision; research re same. |
| 02/23/21 | Trudy Smith | 0.30 | Read and analyze motion to adjourn hearing on motion to dismiss; correspond with K&E team re same. |

Navient Solutions, LLC
Legal Services for the Period Ending March 24, 2021
March 29, 2021

Invoice Number:        1050042184
Matter Number:            17194-29

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 02/23/21 | Alex Warso | 8.30 | Revise talking points, hearing draft outline; correspond with A. Gains, C. Husnick re same; analyze case law, precedent re involuntary case; research, analyze case law, treatises re issues raised by joinder; correspond, telephone conference with A. Gains, E. Jones re same. |
| 02/23/21 | Carole Michelle Wurzelbacher | 0.50 | Research re PICAP joinder; correspond with K&E team re same. |
| 02/24/21 | Julia R. Foster | 4.50 | Prepare February 25, 2021 hearing agenda for filing; file re same; correspond with K&E team re February 25, 2021 hearing; file Husnick letter to Judge Glenn; prepare hearing binder materials for S. Hessler; research precedent re dismissal orders; draft dismissal order; prepare certificate of service for filing. |
| 02/24/21 | AnnElyse Scarlett Gains | 4.50 | Prepare for hearing; correspond and conference with K&E and client teams re same; review, revise analysis and research re motion to dismiss hearing. |
| 02/24/21 | Susan D. Golden | 1.00 | Correspond with K&E team re response to PICAP request to adjourn hearing. |
| 02/24/21 | Stephen E. Hessler, P.C. | 1.50 | Telephone conference and correspond with K&E team re adjournment request; telephone conference and correspond with K&E team and Company re case study; telephone conference and correspond with K&E team, Company and McGuireWoods re Involuntary Bankruptcy Petition - Status Update. |
| 02/24/21 | Chad J. Husnick, P.C. | 5.50 | Prepare for hearing re motion to dismiss; review and analyze materials re same; correspond and conference with K&E team, client, co-advisors re same. |
| 02/24/21 | Elizabeth Helen Jones | 5.70 | Correspond with A. Gains, K&E team re letter to the Court; correspond with A. Gains re service; prepare binder for S. Hessler; research McDaniel (10th Circuit) docket; research further joinder issues; prepare service of agenda; serve re same; draft proposed order granting dismissal; correspond with A. Gains, A. Warso re same; revise talking points. |

Navient Solutions, LLC                                    Invoice Number:              1050042184
Legal Services for the Period Ending March 24, 2021       Matter Number:               17194-29
March 29, 2021

---

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 02/24/21 | Jennifer Levy, P.C. | 0.50 | Call with K&E team re strategy for response to objections and plan for hearing. |
| 02/24/21 | Trudy Smith | 0.70 | Read letter filing; review and comment on talking points; correspond with K&E team re same. |
| 02/24/21 | Alex Warso | 5.60 | Research, analyze case law re discharge violation claims; correspond, telephone conference with E. Jones re same; correspond with A. Gains re research re joinder issues; revise talking points, oral argument outline; correspond with A. Gains, K&E team re same; correspond with E. Jones, A. Gains re dismissal order; draft, revise same. |
| 02/24/21 | Carole Michelle Wurzelbacher | 0.80 | Review, revise Motion to Dismiss talking points. |
| 02/25/21 | Julia R. Foster | 2.50 | File certificate of service; open CourtSolutions line; attend and assist with February 25, 2021 hearing; circulate entered dismissal order to K&E team. |
| 02/25/21 | AnnElyse Scarlett Gains | 4.50 | Prepare for and attend court hearing; prepare order granting motion to dismiss; correspond and conferences with K&E team, McGuireWoods re same. |
| 02/25/21 | Stephen E. Hessler, P.C. | 4.00 | Telephone conference and correspond with K&E team re Pre-hearing Update Call; attend motion to dismiss hearing; telephone conference and correspond with K&E team re post motion to dismiss Hearing; telephone conference and correspond with K&E team re Dismissal Order. |
| 02/25/21 | Chad J. Husnick, P.C. | 4.00 | Prepare for and attend hearing re motion to dismiss; review and analyze materials re same; correspond and conference with K&E team, client, other advisors re same; review and revise order re motion to dismiss. |
| 02/25/21 | Elizabeth Helen Jones | 1.10 | Revise order granting motion to dismiss; correspond with A. Gains, A. Warso re same; draft summary of hearing; correspond with C. Husnick, A. Gains re same. |
| 02/25/21 | Jennifer Levy, P.C. | 2.00 | Attend motion to dismiss involuntary hearing and conference with client. |
| 02/25/21 | Alex Warso | 0.30 | Revise dismissal order; correspond with A. Gains, E. Jones re same; telephone conference with E. Jones re same. |

Navient Solutions, LLC
Legal Services for the Period Ending March 24, 2021
March 29, 2021

Invoice Number: 1050042184
Matter Number: 17194-29

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 02/26/21 | AnnElyse Scarlett Gains | 1.10 | Correspond and conference with K&E and client teams re damages and next steps; analyze re same. |
| 02/26/21 | Stephen E. Hessler, P.C. | 1.50 | Telephone conference and correspond with K&E team re Damages Motion. |
| 02/26/21 | Chad J. Husnick, P.C. | 0.50 | Correspond and conference with K&E team re damages motion. |
| 02/26/21 | Elizabeth Helen Jones | 0.50 | Telephone conference with A. Gains re damages chart for damages motion; research case law and code re same. |
| 03/01/21 | Julia R. Foster | 0.80 | Correspond with printing/courier vendor re service; correspond with A. Gains re same; circulate February 25, 2021 hearing transcript; save February 25, 2021 hearing transcript to document database; correspond with L. Aasa re docket update. |
| 03/01/21 | Chad J. Husnick, P.C. | 1.00 | Correspond and conference with K&E team re damages motion and next steps; review transcript of hearing re same. |
| 03/01/21 | Elizabeth Helen Jones | 4.70 | Research damages under section 303(i); draft summary chart re same. |
| 03/02/21 | Elizabeth Helen Jones | 1.30 | Revise summary chart of section 303(i) damages; correspond with A. Gains re same. |
| 03/03/21 | AnnElyse Scarlett Gains | 2.40 | Review, revise damages chart; correspond with K&E team re same. |
| 03/03/21 | Chad J. Husnick, P.C. | 0.50 | Correspond and conference with K&E team re damages motion and next steps. |
| 03/03/21 | Elizabeth Helen Jones | 2.70 | Revise summary chart of damages; correspond with A. Gains re same. |
| 03/04/21 | Julia R. Foster | 0.80 | Research re Crocker, Homaidan, and McDaniel appellate dockets and orders. |
| 03/04/21 | Julia R. Foster | 0.50 | Research re Crocker, Homaidan, and McDaniel bankruptcy orders. |
| 03/04/21 | AnnElyse Scarlett Gains | 2.00 | Correspond and conference with K&E team re damages chart and memorandum; review re same. |
| 03/04/21 | Stephen E. Hessler, P.C. | 1.50 | Telephone conference and correspond with K&E team re damages chart; telephone conference and correspond with K&E team re draft note; telephone conference and correspond with K&E team re damages. |

Navient Solutions, LLC
Legal Services for the Period Ending March 24, 2021
March 29, 2021

| Invoice Number: | 1050042184 |
| Matter Number: | 17194-29 |

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 03/04/21 | Chad J. Husnick, P.C. | 0.50 | Correspond and conference with K&E team re damages chart, motion, and next steps; review and revise chart re same. |
| 03/04/21 | Elizabeth Helen Jones | 2.10 | Telephone conference with K&E team re damages chart; revise re same; compile pleadings re current pending litigations in Homaidan, Crocker, and McDaniel. |
| 03/05/21 | Julia R. Foster | 0.30 | Review precedent findings re litigation bankruptcy court orders. |
| 03/05/21 | AnnElyse Scarlett Gains | 1.50 | Review, revise damages chart; correspond and conference with K&E team re same. |
| 03/05/21 | Chad J. Husnick, P.C. | 0.50 | Correspond and conference with K&E team re damages motion and next steps; review and revise chart re same. |
| 03/05/21 | Elizabeth Helen Jones | 1.50 | Revise damages chart; correspond with A. Gains re same; draft motion for damages. |
| 03/08/21 | AnnElyse Scarlett Gains | 0.70 | Correspond with teams re damages next steps; review opinion granting motion to dismiss. |
| 03/08/21 | Susan D. Golden | 0.50 | Telephone conference with A. Gains re outreach to Judge Glenn Chambers; correspond and call with D. Anderson of Judge Glenn chambers re same. |
| 03/08/21 | Stephen E. Hessler, P.C. | 0.30 | Telephone conference and correspond with K&E team re fees, expenses, and damages chart. |
| 03/08/21 | Chad J. Husnick, P.C. | 0.50 | Review and analyze opinion re motion to dismiss. |
| 03/08/21 | Elizabeth Helen Jones | 1.80 | Research re attorneys' fees and costs; correspond with A. Gains re same; review opinion granting motion to dismiss. |
| 03/08/21 | Alex Warso | 0.40 | Analyze, review dismissal opinion; correspond with E. Jones re same. |
| 03/09/21 | AnnElyse Scarlett Gains | 0.20 | Correspond with K&E team re next steps. |
| 03/09/21 | Stephen E. Hessler, P.C. | 1.00 | Telephone conference and correspond with K&E team re strategy; telephone conference and correspond with K&E team re bad faith finding summary. |
| 03/09/21 | Elizabeth Helen Jones | 1.40 | Draft summary re opinion granting motion to dismiss for client; correspond with A. Gains, K&E team re same. |
| 03/10/21 | AnnElyse Scarlett Gains | 0.20 | Correspond with K&E team, McGuireWoods team re extension of deadlines and damages. |

Navient Solutions, LLC
Legal Services for the Period Ending March 24, 2021
March 29, 2021

Invoice Number:       1050042184
Matter Number:            17194-29

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 03/10/21 | Stephen E. Hessler, P.C. | 1.00 | Telephone conference and correspond with K&E team re Bad Faith Opinion. |
| 03/10/21 | Chad J. Husnick, P.C. | 0.30 | Correspond with K&E team, client re A. Smith extension request; research re same. |
| 03/11/21 | AnnElyse Scarlett Gains | 0.70 | Review and analyze letter filings; correspond with K&E team, McGuireWoods team re same. |
| 03/11/21 | Stephen E. Hessler, P.C. | 1.00 | Telephone conference and correspond with K&E team re Navient Opinion. |
| 03/11/21 | Chad J. Husnick, P.C. | 0.50 | Correspond and conference with K&E team, client re A. Smith extension request; review response letter re same; review motion to reconsider. |
| 03/11/21 | Elizabeth Helen Jones | 0.40 | Correspond with A. Gains, K&E team re service of letter; serve letter on Chambers. |
| 03/12/21 | AnnElyse Scarlett Gains | 2.50 | Review, analyze filings re motion to reconsider; correspond and conference with K&E team, McGuireWoods team re same. |
| 03/12/21 | Susan D. Golden | 0.50 | Review motion for reconsideration; calls with Judge Glenn's chambers re response; correspond with A. Gains, C. Husnick re same. |
| 03/12/21 | Stephen E. Hessler, P.C. | 1.00 | Telephone conference and correspond with K&E team re Navient Reconsideration Motion. |
| 03/12/21 | Chad J. Husnick, P.C. | 0.50 | Correspond and conference with K&E team, client re motion to reconsider; review order denying request re same. |
| 03/12/21 | Elizabeth Helen Jones | 4.70 | Correspond with A. Gains, A. Warso re response to motion to reconsider; research re same; draft outline re same; correspond with A. Gains re motion for fees and costs; draft motion re same. |
| 03/12/21 | Alex Warso | 2.10 | Review, analyze issues re reconsideration reply; correspond with E. Jones, A. Gains re same; analyze counsel multimedia platform, content; research, analyze case law re reconsideration; review order denying reconsideration. |
| 03/14/21 | Elizabeth Helen Jones | 4.80 | Draft motion for attorneys' fees and costs; revise re same. |
| 03/15/21 | AnnElyse Scarlett Gains | 2.80 | Review, revise damages motion; correspond with K&E team re same. |

Navient Solutions, LLC

Legal Services for the Period Ending March 24, 2021

March 29, 2021

| | Invoice Number: | 1050042184 |
| --- | --- | --- |
| | Matter Number: | 17194-29 |

| Date | Name | Hours | Description |
| --- | --- | --- | --- |
| 03/15/21 | Elizabeth Helen Jones | 7.10 | Draft motion for attorneys' fees and costs; revise re same; correspond with A. Gains re same; review transcript of February 25 hearing; draft Hessler declaration re motion for attorneys' fees and costs; review exhibits re same. |
| 03/16/21 | AnnElyse Scarlett Gains | 1.80 | Review, revise damages motion; correspond and conference with K&E team re same. |
| 03/16/21 | Chad J. Husnick, P.C. | 0.50 | Correspond and conference with K&E team re next steps. |
| 03/16/21 | Elizabeth Helen Jones | 4.40 | Revise motion requesting attorneys' fees and costs; correspond with A. Gains re same; correspond with K&E team re same. |
| 03/17/21 | AnnElyse Scarlett Gains | 0.80 | Correspond with K&E team re damages motion; review re same. |
| 03/17/21 | Chad J. Husnick, P.C. | 1.00 | Correspond with K&E team re damages motion; review and revise re same. |
| 03/17/21 | Elizabeth Helen Jones | 5.70 | Revise motion requesting fees and costs re C. Husnick, A. Gains comments; review February 25 transcript and opinion re same; correspond with K&E team re same. |
| 03/18/21 | AnnElyse Scarlett Gains | 0.90 | Review, revise damages motion; correspond with client and K&E team re same. |
| 03/18/21 | Stephen E. Hessler, P.C. | 0.50 | Telephone conference and correspond with K&E team re damages motion. |
| 03/18/21 | Elizabeth Helen Jones | 2.90 | Revise motion requesting fees and costs re C. Husnick, A. Gains comments; review, revise exhibits to declaration re same; correspond with K&E team re same. |
| 03/19/21 | Stephen E. Hessler, P.C. | 0.50 | Telephone conference and correspond with K&E team re damages motion. |
| 03/19/21 | Chad J. Husnick, P.C. | 0.50 | Review and revise exhibit to damages motion. |
| 03/19/21 | Elizabeth Helen Jones | 1.10 | Review, revise exhibits to Hessler Declaration; correspond with A. Gains re same. |

**Total**                    **510.50**

Navient Solutions, LLC                                    Invoice Number:              1050042184
Legal Services for the Period Ending March 24, 2021      Matter Number:                17194-29
March 29, 2021

**Description of Expenses**

| Description | Amount |
| --- | --- |
| Court Reporter Fee/Deposition | 526.35 |
| Filing Fees | 870.00 |
| Outside Copy/Binding Services | 306.83 |
| Outside Printing Services | 1,200.36 |
| **TOTAL EXPENSES** | **$ 2,903.54** |

## Exhibit B

**Summary of Attorneys' Fees and Costs
of McGuireWoods LLP for Legal Services Rendered Through February 28, 2021**

# McGuireWoods

| | |
|---|---|
| Invoice Date: | 03/17/2021 |
| Invoice Number: | 92468149 |
| Matter: | 2049501-0177 |

Navient Solutions, LLC
Accounts Payable
13865 Sunrise Valley Dr., Suite 110
Herndon, VA 20171

## CLIENT
Navient Solutions, LLC

## MATTER
Involuntary Bankruptcy

## Invoice for Services Rendered Through 02/28/2021

### FEE SUMMARY

| TIMEKEEPER | TITLE | RATE/HR | HOURS | AMOUNT |
|---|---|---|---|---|
| K. Elizabeth Sieg | Partner | $720.00 | 56.7 | $40,824.00 |
| Joseph A. Florczak | Associate | $639.00 | 57.6 | $36,806.40 |
| Shawn R. Fox | Counsel | $913.50 | 2.3 | $2,101.05 |
| Kaitlyn N. Dmytryszyn | Paralegal | $261.00 | 5.3 | $1,383.30 |
| Garnett Lee IV | Other Timekeeper | $166.50 | 1.9 | $316.35 |
| | | **Total Fees** | **123.8** | **$81,431.10** |

### TASK AND ACTIVITY SUMMARY

| TASK - DESCRIPTION | ACTIVITY - DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| L120 - Analysis/Strategy | A104 - Review/analyze | 52.2 | $35,628.75 |
| L140 - Document/File Management | A104 - Review/analyze | 3.1 | $629.55 |
| L190 - Other Case Assess.Dev. & Admin. | A104 - Review/analyze | 3.3 | $861.30 |
| L250 - Other Written Motions & Submiss. | A104 - Review/analyze | 54.2 | $36,464.40 |
| L390 - Other Discovery | A104 - Review/analyze | 1.0 | $639.00 |
| L440 - Other Trial Prep. & Support | A104 - Review/analyze | 4.0 | $2,880.00 |
| L450 - Trial and Hearing Attendance | A104 - Review/analyze | 6.0 | $4,328.10 |
| | **Total Fees** | **123.8** | **$81,431.10** |

| | |
|---|---|
| **Invoice Total** | **$81,431.10** |

# McGuireWoods

| | |
|---|---|
| Invoice Date: | 03/17/2021 |
| Invoice Number: | 92468149 |
| Matter: | 2049501-0177 |

## Invoice Detail

### FEE DETAIL

| DATE | TIMEKEEPER | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|---|
| 02/08/2021 | K. Elizabeth Sieg | Analysis of petition, review of petitioning creditor bankruptcy filings, research and start work on motion to dismiss | 6.4 | $4,608.00 |
| 02/08/2021 | Joseph A. Florczak | Research defenses to involuntary filing in Second Circuit | 6.1 | $3,897.90 |
| 02/08/2021 | Shawn R. Fox | Emails regarding involuntary bankruptcy case against Navient | 0.5 | $456.75 |
| 02/09/2021 | K. Elizabeth Sieg | Continue analysis of petition, review of petitioning creditor bankruptcy filings, research and work on draft motion to dismiss | 5.8 | $4,176.00 |
| 02/09/2021 | Joseph A. Florczak | Draft, review and revise motion to dismiss involuntary petition | 9.5 | $6,070.50 |
| 02/09/2021 | Kaitlyn N. Dmytryszyn | Review recent pleadings in the involuntary bankruptcy case and circulate report on findings (.2) research ECF noticing procedure for the Southern District of New York bankruptcy court (.2) | 0.4 | $104.40 |
| 02/10/2021 | K. Elizabeth Sieg | Continue analysis of petition, review of petitioning creditor bankruptcy filings, research and work on MTD (8.2) and communications with co-counsel regarding same (1.5) | 9.7 | $6,984.00 |
| 02/10/2021 | Joseph A. Florczak | Draft, review and revise motion to dismiss involuntary proceeding (8.2), correspondence with and calls with KE team (.9) | 9.1 | $5,814.90 |
| 02/10/2021 | Kaitlyn N. Dmytryszyn | Review recent pleadings in the involuntary bankruptcy case and circulate report on findings | 0.2 | $52.20 |

Sarah A. Zielinski
312 849 8288

**1,100 lawyers | 21 offices | www.mcguirewoods.com**

# McGuireWoods

| | | |
|---|---|---|
| Invoice Date: | 03/17/2021 |
| Invoice Number: | 92468149 |
| Matter: | 2049501-0177 |

| DATE | TIMEKEEPER | DESCRIPTION | HOURS | AMOUNT |
|------|-----------|-------------|-------|--------|
| 02/11/2021 | K. Elizabeth Sieg | Continue research, analysis, and revisions to motion to dismiss and borrower/litigation background for co-counsel | 4.1 | $2,952.00 |
| 02/11/2021 | Kaitlyn N. Dmytryszyn | Review recent pleadings in the involuntary bankruptcy case and circulate report on findings | 0.2 | $52.20 |
| 02/12/2021 | K. Elizabeth Sieg | Call regarding media inquiries and strategies | 0.7 | $504.00 |
| 02/12/2021 | Joseph A. Florczak | Review and revise motion to dismiss involuntary petition (6.3), emails to KE team regarding status of petitioning creditors and class action cases (1.1) | 7.4 | $4,728.60 |
| 02/12/2021 | Kaitlyn N. Dmytryszyn | Review recent pleadings in the involuntary bankruptcy case and circulate report on findings | 0.2 | $52.20 |
| 02/13/2021 | Joseph A. Florczak | Emails with KE team regarding status of class action cases and relationships to involuntary petitions | 0.9 | $575.10 |
| 02/14/2021 | Joseph A. Florczak | Review and revise draft KE motion to dismiss | 1.4 | $894.60 |
| 02/15/2021 | K. Elizabeth Sieg | Continue research, analysis, and revisions to motion to dismiss and borrower/litigation background for co-counsel | 3.2 | $2,304.00 |
| 02/15/2021 | Joseph A. Florczak | Review and revise motion to dismiss and provide supporting data to KE team | 7.1 | $4,536.90 |
| 02/16/2021 | K. Elizabeth Sieg | Continue research, analysis, and revisions to motion to dismiss and borrower/litigation background for co-counsel | 7.2 | $5,184.00 |
| 02/16/2021 | Joseph A. Florczak | Review and revise draft involuntary petition | 2.5 | $1,597.50 |

----------------------------------------------------------------------------------

# McGuireWoods

| | | |
|---|---|---|
| Invoice Date: | 03/17/2021 |
| Invoice Number: | 92468149 |
| Matter: | 2049501-0177 |

| DATE | TIMEKEEPER | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|---|
| 02/16/2021 | Kaitlyn N. Dmytryszyn | Review recent pleadings in the involuntary bankruptcy case and circulate report on findings | 0.2 | $52.20 |
| 02/17/2021 | K. Elizabeth Sieg | Continue research, analysis, and revisions to motion to dismiss and borrower/litigation background for co-counsel | 8.1 | $5,832.00 |
| 02/17/2021 | Kaitlyn N. Dmytryszyn | Review recent pleadings in the involuntary bankruptcy case and circulate report on findings | 0.2 | $52.20 |
| 02/17/2021 | Kaitlyn N. Dmytryszyn | Draft and review pro hac vice forms for J. Florczak, B. Sieg, and T. Farrell for the involuntary petition case | 0.4 | $104.40 |
| 02/18/2021 | K. Elizabeth Sieg | Research reporter background and other preparations for (1.7) and attend client pre-call (0.3) and call with Business Insider (1.0) | 3.0 | $2,160.00 |
| 02/18/2021 | Joseph A. Florczak | Research Austin Smith social media postings for information in support of motion to dismiss involuntary proceeding | 1.0 | $639.00 |
| 02/18/2021 | Kaitlyn N. Dmytryszyn | Review recent pleadings in the involuntary bankruptcy case and circulate report on findings | 0.2 | $52.20 |
| 02/18/2021 | Kaitlyn N. Dmytryszyn | Review and index Tate call recordings and produce to KE counsel | 0.3 | $78.30 |
| 02/18/2021 | Kaitlyn N. Dmytryszyn | Draft and revise pro hac vice proposed orders for K. Sieg, T. Farrell, and J. Florczak in the involuntary petition case | 0.3 | $78.30 |
| 02/19/2021 | Joseph A. Florczak | Review materials in preparation for hearing on motion to dismiss involuntary case | 2.0 | $1,278.00 |
| 02/19/2021 | Kaitlyn N. Dmytryszyn | Review recent pleadings in the involuntary bankruptcy case and circulate report on findings | 0.2 | $52.20 |

--------------------------------------------------------------------------------

# McGuireWoods

| | | |
|---|---|---|
| Invoice Date: | 03/17/2021 |
| Invoice Number: | 92468149 |
| Matter: | 2049501-0177 |

| DATE | TIMEKEEPER | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|---|
| 02/22/2021 | K. Elizabeth Sieg | Attention to follow up questions from client regarding media inquiries | 0.9 | $648.00 |
| 02/22/2021 | Joseph A. Florczak | Research and provide materials to KE in preparation for hearing and (2.1), provide materials for Navient PR staff (1.1) | 3.2 | $2,044.80 |
| 02/22/2021 | Kaitlyn N. Dmytryszyn | Review recent pleadings in the involuntary bankruptcy case and circulate report on findings | 0.2 | $52.20 |
| 02/23/2021 | K. Elizabeth Sieg | Work with co-counsel on hearing preparations and borrower/litigation background and merits of Navient's defenses in discharge litigation | 4.0 | $2,880.00 |
| 02/23/2021 | Joseph A. Florczak | Prepare and coordinate with KE team regarding hearing on motion to dismiss involuntary proceeding | 1.5 | $958.50 |
| 02/23/2021 | Kaitlyn N. Dmytryszyn | Register J. Florczak, K. Sieg, and T. Farrell for the upcoming involuntary petition hearing | 0.3 | $78.30 |
| 02/23/2021 | Kaitlyn N. Dmytryszyn | Review recent pleadings in the involuntary bankruptcy case and circulate report on findings | 0.2 | $52.20 |
| 02/24/2021 | K. Elizabeth Sieg | Call with co-counsel regarding hearing on Feb 25 | 0.6 | $432.00 |
| 02/24/2021 | Joseph A. Florczak | Review joinder and research Public Interest Capital LLC | 1.7 | $1,086.30 |
| 02/24/2021 | Kaitlyn N. Dmytryszyn | Assist S. Fox with hearing registration for the involuntary petition case | 0.2 | $52.20 |
| 02/24/2021 | Kaitlyn N. Dmytryszyn | Attend call with J. Florczak regarding archiving Austin Smith's tweets as exhibits | 0.2 | $52.20 |
| 02/24/2021 | Kaitlyn N. Dmytryszyn | Assist Practice Support with the archiving of all relevant tweets from A. Smith involving Navient | 0.8 | $208.80 |
| 02/24/2021 | Garnett Lee IV | Social media collection of Smith Law Group twitter page | 1.9 | $316.35 |

# McGuireWoods

Invoice Date:        03/17/2021
Invoice Number:      92468149
Matter:              2049501-0177

| DATE | TIMEKEEPER | DESCRIPTION | HOURS | AMOUNT |
|------|------------|-------------|-------|--------|
| 02/25/2021 | K. Elizabeth Sieg | Prepare for and attend hearing on motion to dismiss | 3.0 | $2,160.00 |
| 02/25/2021 | Joseph A. Florczak | Prepare for and attend hearing regarding motion to dismiss | 4.2 | $2,683.80 |
| 02/25/2021 | Shawn R. Fox | Attend Involuntary Petition hearings | 1.8 | $1,644.30 |
| 02/25/2021 | Kaitlyn N. Dmytryszyn | Review recent pleadings in the involuntary bankruptcy case and circulate report on findings | 0.2 | $52.20 |
| 02/25/2021 | Kaitlyn N. Dmytryszyn | Review and complete transcript request form for the February 25 involuntary petition hearing | 0.2 | $52.20 |
| 02/26/2021 | Kaitlyn N. Dmytryszyn | Review recent pleadings in the involuntary bankruptcy case and circulate report on findings | 0.2 | $52.20 |
| | | **Total Fees** | **123.8** | **$81,431.10** |

# McGuireWoods

| | |
|---|---|
| Invoice Date: | 03/17/2021 |
| Invoice Number: | 92468149 |
| Matter: | 2049501-0177 |

Navient Solutions, LLC
Accounts Payable
13865 Sunrise Valley Dr., Suite 110
Herndon, VA 20171

## CLIENT
Navient Solutions, LLC

## MATTER
Involuntary Bankruptcy

## Remittance

| | AMOUNT |
|---|---|
| Fees | $81,431.10 |
| **Total Due This Invoice** | **$81,431.10** |

**PAYMENT IN FULL IS DUE PER TERMS OF ENGAGEMENT BY BANK TRANSFER OR CHECK:**

| | | |
|---|---|---|
| Bank Name: | **OR** | **McGuireWoods LLP** |
| ABA: | | Attn: Accounts Receivable |
| ABA: | | 800 E. Canal Street |
| Swift Code: | | Richmond, VA 23219-3916 |
| Credit: | | |
| Account Number: | | |
| Reference: | | |
| Invoice #: | 92468149 | |
| Accounting Contact: | | |

**Tax ID: 54-0505857**
**Direct invoice or account inquiries to the McGuireWoods Accounts Receivable Helpline at 800-775-2202.**

---

Sarah A. Zielinski
312 849 8288

**1,100 lawyers | 21 offices | www.mcguirewoods.com**

## Exhibit C

**Transcript of Motion to Dismiss Hearing,**
***In re Navient Solutions, LLC*, No. 21-10249 (MG) (Bankr. S.D.N.Y. Feb. 25, 2021)**

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 21-10249-mg

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    NAVIENT SOLUTIONS, LLC,

8

9           Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                  United States Bankruptcy Court

13                  One Bowling Green

14                  New York, NY  10004

15

16                  February 25, 2021

17                  10:00 AM

18

19

20

21   B E F O R E :

22   HON MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  UNKNOWN

1    HEARING re (Doc ## 14 to 16, 19, 20, 29, 35, 37, 38, 39, 40)

2    Hearing Using CourtSolutions RE: Expedited Motion to Dismiss

3    Involuntary Petition and Request for Damages.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 3

```
 1   A P P E A R A N C E S :

 2

 3   KIRKLAND & ELLIS LLP

 4        Attorneys for the Debtor

 5        601 Lexington Avenue

 6        New York, NY 10022

 7

 8   BY:  CHAD HUSNICK (TELEPHONICALLY)

 9        ANNELYSE GAINS (TELEPHONICALLY)

10        STEPHEN HESSLER (TELEPHONICALLY)

11        JENNIFER LEVY (TELEPHONICALLY)

12

13   MCGUIRE WOODS LLP

14        Attorneys for the Alleged Debtor

15        800 East Canal Street

16        Richmond, VA 232196

17

18   BY:  ELIZABETH SIEG (TELEPHONICALLY)

19

20   MCGUIRE WOODS LLP

21        Attorneys for the Alleged Debtor

22        77 W Wacker Drive

23        Chicago, IL 60525

24

25   BY:  JOE FLORCZAK (TELEPHONICALLY)
```

Page 4

1    MCGUIRE WOODS LLP

2         Attorneys for the Alleged Debtor

3         1345 Avenue of the Americas

4         New York, NY 10105

5

6    BY:  SHAWN FOX (TELEPHONICALLY)

7

8    LAW OFFICES OF MICHAEL B. WOLK

9         Attorneys for the Joinder Creditor, Public Interest

10        Capital, LLC

11        31 West 34th Street, Suite 7040

12        New York, NY, 10001

13

14   BY:  MICHAEL B. WOLK (TELEPHONICALLY)

15

16   UNITED STATES DEPARTMENT OF JUSTICE

17        Attorneys for the U.S. Trustee

18        201 Varick Street, Suite 1006

19        New York, NY 10014

20

21   BY:  ANDREA B. SCHWARTZ (TELEPHONICALLY)

22

23

24

25

Page 5

 1   ALSO PRESENT TELEPHONICALLY:

 2

 3   SCOTT FLAHERTY

 4   MARIA CHUTCHIAN

 5   JASON BURGE

 6   ELIZABETH JONES

 7   JENNIFER LEVY

 8   MATT CANTOR

 9   STEVEN CHURCH

10   THOMAS FARRELL

11   ALEXANDER GLADSTONE

12   CHARLES MCDONOUGH

13   ANA LUCIA HURTADO

14   ALEX DEFELICE

15   JAY FLEISCHMAN

16   CEZARY PODKUL

17   JEREMY ZWEIG

18   CHRISTOPHER LACCINOLE

19   ELLIOTT STEIN

20

21

22

23

24

25

Page 6

1                        P R O C E E D I N G S

2              CLERK:  Good morning.  This is Judge Glenn's Court

3     Deputy, Deanna Anderson.  We're going to start the 10:00

4     hearing in the Navient Solutions case, Case No. 21-10249.

5              Before starting, I just have a few brief

6     announcements.  I wanted to remind the parties that they

7     need to state their name each time they speak on the Court

8     record.  If you have an electronic device on in the

9     background, that might interfere with the recording; please

10    mute it.  Also, if you have background noise, please mute

11    your line until you are ready to speak and then unmute.

12             Mr. Husnick, am I pronouncing your name correctly?

13             MR. HUSNICK:  Yes, Madam Clerk.

14             CLERK:  Thank you.  Can you please give your

15    appearance for the record.

16             MR. HUSNICK:  Sure.  Good morning.  Chad Husnick

17    with Kirkland & Ellis, LLP, appearing on behalf of Navient

18    Solutions, LLC, the alleged debtor.

19             CLERK:  Thank you so much.  Ms. Gains, please give

20    your appearance.

21             MS. GAINS:  Of course.  AnnElyse Gains of Kirkland

22    & Ellis on behalf of the putative debtor, Navient Solutions.

23             CLERK:  Thank you.  Mr. Hessler.

24             MR. HESSLER:  Good morning.  Steve Hessler of

25    Kirkland & Ellis, also on behalf of Navient.  Thank you.

Page 7

1                CLERK:  Thank you.  Is anyone else appearing with

2      live appearance for Kirkland this morning?  Is Jennifer Levy

3      appearing?

4                MS. LEVY:  Yes, thank you, Madam Clerk.  This is

5      Jennifer Levy, also from Kirkland & Ellis for Navient, the

6      putative debtor, Navient Solutions, LLC.

7                CLERK:  Thank you so much.  All right, we're going

8      to take appearance from counsel from McGuire Woods now.  Ms.

9      Sieg, am I pronouncing your name correctly?

10               MS. SIEG:  That's perfect, I'm here.

11               CLERK:  Okay, thank you.  Can you please give your

12     full appearance for the record.

13               MS. SIEG:  Absolutely.  This is Elizabeth Sieg.

14     I'm appearing on behalf of the alleged debtor from McGuire

15     Woods.

16               CLERK:  Thank you.  Mr. Florczak, is that correct?

17               MR. FLORCZAK:  Yes, Madam Clerk.  This is Joe

18     Florczak from McGuire Woods on behalf of the alleged debtor,

19     Navient Solutions, LLC.

20               CLERK:  Thank you.  Mr. Fox.

21               MR. FOX:  Good morning, Madam Clerk.  It's Shawn

22     Fox from McGuire Woods on behalf of Navient.

23               CLERK:  Thank you.  Mr. Wolk, is that correct?

24               MR. WOLK:  Yes, it is, thank you.  Good morning.

25     This is Michael Wolk of the Law Offices of Michael B. Wolk,

Page 8

1    P.C., counsel for the joinder creditor, Public Interest

2    Capital, LLC.

3                 CLERK:  Thank you.  Ms. Schwartz.

4                 MS. SCHWARTZ:  Ms. Schwartz from the U.S.

5    Trustee's Office or Ms. Schwartz from McGuire Woods?

6                 CLERK:  I'm sorry.  Andrea Schwartz from the

7    United States Trustee's Office.

8                 MS. SCHWARTZ:  I'm kidding, Deanna.  Andrea

9    Schwartz for the U.S. Trustee.

10                CLERK:  Thank you, Andrea.  Okay, Judge, that's

11   everyone that we have a live appearance for.  We're ready

12   when you are.

13                THE COURT:  All right.  Good morning, everybody.

14   This is Judge Glenn.  We're here in Navient Solutions, LLC,

15   21-10249.  This is a hearing in connection with the alleged

16   debtors' motion to dismiss.  The motion to dismiss was filed

17   at ECF Docket No. 14; it was filed on February 17, 2021.

18                There was also an application to shorten time for

19   the hearing.  The order granting the order to shorten time

20   and scheduling the hearing is filed at ECF Docket No. 19; it

21   was entered on February 18, 2021.  It set the hearing for

22   today at 10:00 a.m.  It required any response by Monday,

23   February 22nd at 12:00 noon.

24                On February 22nd at 9:51 a.m., the petitioning

25   creditors' counsel, Mr. Smith, filed a letter on ECF

Page 9

1    requesting a five-hour extension of the objection deadline,

2    stating that, quote, "Counsel is diligently preparing the

3    opposition, but fears he will be unable to submit a clean

4    version by noon.  Counsel is confident he will be able to

5    submit a clean version by 5:00 p.m."  That letter is ECF

6    Docket No. 30.  The extension was granted the same day at

7    12:00 p.m. at ECF Docket No. 31.

8           On February 22nd at 5:01 p.m., Mr. Smith filed

9    another letter on ECF requesting, quote, "A 12-hour

10   extension on the 5:00 p.m. deadline set forth by this

11   Court," close quote.  That's ECF Docket No. 32.

12          One of my law clerks informed Mr. Smith via email

13   that same day, February 22nd, at 5:13 p.m. stating that I

14   had approved the 12-hour extension.  Mr. Smith replied to my

15   law clerk via email the same day at 6:19 p.m. stating,

16   quote, "Thank you very much," close quote.  The request was

17   formally granted on the docket with a memorandum endorsement

18   of Mr. Smith's letter on February 23rd at 9:15 a.m.; that's

19   ECF Docket No. 33.

20          On February 23rd at 10:11 a.m., Mr. Smith filed

21   yet another letter on ECF stating that he intended to

22   request a 24-hour extension.  His letter stated, in part,

23   that he sought a 12-hour extension on the 5:00 p.m. deadline

24   set forth by this Court which amended the scheduling order

25   of February 18, 2021, ECF No. 20, but intended and hopes

1   opposing counsel understood this request as to read 24

2   hours.  Counsel intends to file papers at 5:00 p.m. and

3   apologizes for his drafting error; that's in ECF Docket No.

4   34.

5           That letter request was denied the same day,

6   February 23rd at 4:10 p.m. with the following, quote, "The

7   previous memorandum endorsed order stands.  Only the 12-hour

8   extension was granted.  No further extension of time has

9   been or will be granted."  That was in all caps; that's in

10  ECF Docket No. 36.

11          On February 24 at 9:49 a.m., Mr. Smith left a

12  voicemail for my Courtroom Deputy, Deanna Anderson, asking

13  to speak with a law clerk and stating, quote, "I had a bit

14  of a medical issue come up, and I just wanted to ask how

15  best to proceed with the Court to avoid any sort of further

16  complications."

17          My Courtroom Deputy, Deanna Anderson, emailed Mr.

18  Smith the same day at 11:04 a.m. stating that, quote, "Any

19  request concerning the hearing needs to be filed in writing

20  and filed on ECF."  He's still not filed any response to the

21  motion to dismiss or anything else on ECF since his last

22  letter requesting an extension, which was ECF Docket No. 34.

23          So the record should reflect no opposition to the

24  motion to dismiss or any other supporting papers of any

25  opposition to the motion to dismiss has been filed by or on

Page 11

1    behalf of the petitioning creditors.

2              Bear with me just a second, please.

3              On February 23rd, 2021 at ECF Docket 35, Mr. Wolk

4    filed a, quote, "Joinder in involuntary case pursuant to 11

5    U.S.C. 303(c) and Rule 1003(b) of the Federal Rules of

6    Bankruptcy Procedure."  On February 23rd -- bear with me --

7    Mr. Wolk filed a letter to the Court requesting an

8    adjournment of this hearing; that was filed at ECF Docket

9    No. 37.

10             On February 24th, 2021 at ECF Docket No. 39, Mr.

11   Husnick of Kirkland & Ellis filed a letter on the docket

12   pointing out that my chambers rules, any party requesting an

13   adjournment must first seek consent of the other parties

14   involved in the hearing before seeking the adjournment from

15   the Court.

16             Mr. Wolk had not sought consent from the moving

17   parties and consent was not given.  I would say whether or

18   not that request, whether Kirkland had agreed to the

19   consent, I would not have agreed to continue this hearing.

20             The joinder that was filed by Mr. Wolk is not

21   supported by any evidence or really anything else; it's

22   pretty bare bones, so we're going to proceed today with the

23   uncontested motion to dismiss filed by Kirkland and McGuire

24   Woods at ECF Docket No. 14.

25             Because of what I consider to be the seriousness

Page 12

1    of this case, I expect I'm going to have counsel proceed,

2    and I have some questions, but also to explain the basis for

3    the motion to dismiss this involuntary case.  Mr. Husnick,

4    are you going to begin?

5              MR. HUSNICK:  Yes, Your Honor.  Thank you for that

6    introduction.

7              Your Honor, before I dive into the merits of the

8    motion to dismiss the involuntary petition.  It's probably

9    helpful just to level set on who the Navient putative debtor

10   is and who it is not.

11             Your Honor, Navient Solutions, LLC, the putative

12   debtor is a subsidiary of Navient Corporation, a publicly

13   traded company.  The Navient parent, Navient Corporation,

14   and its subsidiaries are the leader in educational loan

15   management and business processing solutions for educational

16   loans.

17             The Navient parent, as I said, is publicly traded

18   and has significant secured and unsecured debt.  And within

19   the company's businesses, Navient Solutions, which I'll

20   refer to as Navient, is an entity that services student loan

21   contracts with various individual buyers.

22             Your Honor, Navient is embroiled in litigation

23   across the country, as you are more than aware from the

24   pleadings.  That litigation is ongoing in Texas, Colorado,

25   and in several jurisdictions in New York.  Petitioners'

Page 13

1    counsel is very, very involved in that litigation and, in

2    fact, has commenced much of that litigation in various

3    forms.  He has reason to know that these claims are

4    disputed, and that Navient vigorously disputes any of the

5    alleged claims and the alleged damages.

6         So Navient was surprised when the petitioner

7    commenced the involuntary proceeding.  We were surprised

8    because we were engaged, Navient was engaged in a court-

9    approved mediation with, among other parties, Mr. Smith and

10   certain of his clients.  Surprised because in another piece

11   of litigation pending in the McDaniel case, which is pending

12   in Colorado, there had recently been an agreed scheduling

13   order, Your Honor, that set forth deadlines for discovery

14   and pleading practice and there wasn't to be a trial until

15   the earliest of 2022.

16        There's no way to misconstrue or stretch the facts

17   of these underlying litigations in a manner to support the

18   commencement of an involuntary case.  Counsel's disdain for

19   Navient --

20        THE COURT:  Is Mr. Smith involved -- excuse me.

21   Is Mr. Smith involved in the McDaniel case?

22        MR. HUSNICK:  He is, Your Honor.  He is the lead

23   plaintiffs' counsel for the McDaniel's debtors -- oh, sorry

24   -- the McDaniel situation, and he --

25        THE COURT:  He has not withdrawn from that case,

Page 14

1    has he?

2              MR. HUSNICK:  He has not.  He withdrew from the

3    Crocker proceeding, which is -- just to be clear, McDaniel

4    is not seeking a class to be appointed; Crocker, they have

5    requested that a class be appointed.  And he was counsel to

6    one of the putative members of the class, but that class has

7    not yet been certified and he has now withdrawn as counsel

8    to that potential class.

9              THE COURT:  All right, go ahead.

10             MR. HUSNICK:  Your Honor, counsel's disdain for

11   Navient is clear.  He writes it in his pleadings, he puts it

12   in his emails, he tweets it on Twitter, he broadcasts it on

13   YouTube.  You know, what's clear from all of his misses is

14   that he's at least a zealous advocate for his clients.  But

15   when he filed the involuntary proceeding, when he commenced

16   an involuntary and tossed an $84 billion company into

17   bankruptcy with a facially defective involuntary petition,

18   he went too far.

19             His intent is clear on the petition in the vitriol

20   filled pages and his social media posts that followed.  This

21   is the bankruptcy equivalent of a strike suit.  There is no

22   legitimate purpose stated and, in fact, it's the essence of

23   bad faith.  We seek immediate dismissal.

24             THE COURT:  Can I ask you before you go on.

25             MR. HUSNICK:  Yup.

Page 15

1          THE COURT:  Before you go on, you indicated that

2     Navient Solutions is a subsidiary of Navient Corporation, a

3     publicly traded corporation.  What is the current market

4     capitalization of the publicly traded parent company?

5          MR. HUSNICK:  It's in excess of $2.4 billion.  And

6     you can take -- you can take, Your Honor, both from the face

7     of the Complaint where counsel asserted that there was $87.4

8     billion worth of assets reported and $85 billion worth of

9     liabilities, and you can get to the $2.4 billion there on

10    the face of the Complaint or you could, you know, do the

11    calculation based on stock trading price.

12         THE COURT:  All right.

13         MR. HUSNICK:  Your Honor, that takes me to

14    dismissal.  We sought immediate dismissal and damages

15    associated with the involuntary filing on three bases:

16    first, Section 303(b); second, 303(h); and third, 305(a).

17         I'll spend most of the time talking about 303(b)

18    because I think it's the most straightforward and

19    uncontested argument here, and that is that the claims

20    asserted in the petitioners' involuntary petition and the

21    supporting papers are subject to a bona fide dispute and are

22    contingent as to both liability and amount.

23         There's no dispute at all, Your Honor, that there

24    are more than 12 creditors here.  Indeed, on page 9, the

25    petitioners aver that there are hundreds of thousands of

Page 16

1    potential creditors.  And so, again on the face of the

2    Complaint Your Honor -- or the face of the petition Your

3    Honor can take note that we're in excess of 12 creditors.

4    As a result, under the statute, the petitioners need to have

5    at least three qualified and eligible creditors holding in

6    the aggregate at least $16,750 that are not subject to a

7    bona fide dispute as to liability or amount.

8              The claims here, Your Honor, are summarized in a

9    single sentence on page 9.  I'm going to read that sentence.

10   Quote, "Furthermore, the petitioning creditors are owed

11   $45,683.64 in money wrongfully collected from them after

12   discharge, along with likely more than a billion from

13   hundreds of thousands of other debtors Navient has defrauded

14   over the last two decades," end quote.

15             Your Honor, that's the single sentence in the

16   entire petition and involuntary supplement referring to the

17   nature of the damages claims that the petitioners are

18   asserting against Navient Solutions.  Your Honor, that's

19   simply insufficient to sustain their burden.

20             We should go through these individually, and I

21   will because I think it's very helpful.  But it's important

22   to note that if any one of the individual petitioners failed

23   and their claim is subject to a bona fide dispute as to

24   liability or amount, then the petition must fail and it must

25   be dismissed.

Page 17

1          Here, I would submit that all three of the

2     creditors' claims are subject to bona fide dispute.  Let me

3     start with Mrs. Bannister.  Mrs. Bannister has five loans

4     that were issued for attendance at a Title 4 institution.

5     Ms. Bannister commenced Chapter 7 case in the Southern

6     District of New York in 2007.  She received her discharge in

7     May of 2010.

8          Important for this litigation, Your Honor, Ms.

9     Bannister commenced -- reopened her case and commenced an

10    adversary to seek discharge with respect to these student

11    loans.  She commenced that adversary against Navient and

12    ultimately prosecuted the adversary.  The adversary resulted

13    in a settlement, and the settlement said that Ms.

14    Bannister's loan was non-dischargeable.

15         There were concessions made in the context of that

16    settlement limiting the amount of the loan and reducing it

17    to $90,000, setting a 1 percent interest payable over 30

18    years.  That settlement, importantly, was court approved; it

19    was approved by the Bankruptcy Court in the Southern

20    District.

21         THE COURT:  Let me ask you this, Mr. Husnick.

22         MR. HUSNICK:  Yup.  Because I've read Judge

23    Garrity's opinion in the Bannister case; it's reported at

24    2021 W.L. 219525, signed on January 20th, 2021.  Has an

25    appeal been taken from Judge Garrity's decision?

```
1              MR. HUSNICK:  Not to my knowledge, no.

2              THE COURT:  All right.  And I have that in front

3     of me, so I'm familiar with Judge Garrity ruling in that

4     case.  Go on.

5              MR. HUSNICK:  We think the failure to -- I'm

6     sorry, Your Honor.

7              THE COURT:  No, go ahead.

8              MR. HUSNICK:  Okay.  We think the failure of the

9     petitioners' counsel to mention in the involuntary

10    supplement that a Court had already ruled that the

11    stipulation withstood judicial scrutiny and stood is

12    important fact to disclose, because that at a minimum shows

13    that it actually may be -- it's beyond just a bona fide

14    dispute, Your Honor; it's actually wrong, there is not

15    claim.

16              There's no claim whatsoever, and certainly not a

17    claim sufficient to satisfy the not subject to bona fide as

18    to liability or amount standard that is set forth in Section

19    303(b) of the Bankruptcy Code.  As such, we think --

20              THE COURT:  Talk about the other two petitioning

21    creditors and what are their circumstances.

22              MR. HUSNICK:  Sure.  So Mr. Hood and Mr. Tate are

23    actually a very similar circumstance to each other, but let

24    me just briefly talk about.  Mr. Hood commenced his Chapter

25    11 case in Massachusetts; he received his discharge in 2011.
```

Page 19

1    There was no adversary commenced in the Hood bankruptcy

2    proceeding to seek a finding that the loan was

3    dischargeable, the student loan debt was dischargeable.  As

4    such, the presumption under 523(a)(8) is that his loans were

5    dischargeable.

6              Where I think this all comes down to, Your Honor,

7    and what the pending litigation in the various circuits is

8    about is whether, in fact, there are limitations on the

9    dischargeability of student loan debt.  And I would submit

10   while certain courts have ruled on particular issues,

11   they've not ruled on all of the issues.

12             And before I get into that, what issues remain

13   open and why they're subject to a bona fide dispute, let me

14   just give you a second on Tate and then I'll tie it all

15   together.

16             Tate is similar to Hood insofar as Mr. Tate

17   commenced a bankruptcy proceeding; his proceeding is in the

18   Northern District of Georgia.  He, like Mr. Hood, did not --

19   excuse me -- like, Mr. Hood, did not commence an adversary

20   proceeding seeking to challenge the dischargeability of the

21   loan.

22             THE COURT:  When did Mr. Tate file his bankruptcy

23   case?

24             MR. HUSNICK:  June 30th, 2004, Your Honor, in the

25   Northern District of Georgia.

Page 20

1          THE COURT:  Okay.

2          MR. HUSNICK:  No adversary was commenced there.  A

3  general discharge was granted.  And Mr. Tate, like Mr. Hood,

4  asserts a claim for overpayments allegedly made to Navient

5  on a discharged loan.  But there is no loan that is seeking

6  to discharge; instead, they're relying upon these class

7  action claims that have been asserted and are in the midst

8  of litigation to make the bridge.

9          The fundamental premise is that Mr. Tate's claim -

10  - the fundamental premise of Mr. Tate and Mr. Hood's claim

11  is that their loans were actually discharged, despite not

12  having brought an adversary proceeding and despite the fact

13  that the case was -- the order granting the discharge was

14  entered.

15          So we think both Tate and Hood are not eligible to

16  serve as creditors here because any claim they have is based

17  on this fundamentally false premise that their underlying

18  student loan debt was discharged.

19          I would anticipate, had we gotten reply papers

20  from Mr. Smith, that he would have tried to argue that the

21  Fifth Circuit's decision in Crocker and that the Tenth

22  Circuit's decision in McDaniel somehow put these claims out

23  of reach of a bona fide dispute.

24          So I want to talk a little bit about those

25  decisions.  Those decisions definitely resolve --

1           THE COURT:  In part, my question -- before you go

2      on.  I mean, McDaniel basically, if I'm reading it

3      correctly, says 523(a)(8) is inapplicable unless it's an

4      educational benefit loan.  Do you disagree with that?

5           MR. HUSNICK:  I think what McDaniel said is that

6      523(a)(8)(A)(ii) is inapplicable.  I agree with that, Your

7      Honor.  The Court did not go on to address a host of other

8      issues that are being litigated in the underlying case.  So

9      I agree with that the Court decision said, but I think

10     what's important is what it didn't say.

11           It didn't resolve whether a debtor is

12     automatically entitled to a discharge or whether it has to

13     initiate an adversary proceeding.  It didn't resolve factual

14     inquiries as to whether this is a co-borrower situation.  It

15     didn't resolve whether Navient's collection efforts actually

16     violated the discharge injunction.  It didn't resolve

17     whether the debtor has established that making payments

18     post-discharge and not the co-borrower, again, another fact

19     inquiry.  It didn't resolve whether the debtor is barred

20     from receiving a discharge because the loans were obtained

21     under false pretenses, another affirmative defense asserted

22     in that litigation.  It didn't resolve the laches defense.

23     And lastly, it certainly didn't resolve the amount of any

24     alleged overpayment.

25           And so, when you take that in connection with the

Page 22

1    standard of Section 303(b) that there cannot be a bona fide

2    dispute as to liability or amount, Your Honor, I would

3    submit that the McDaniel case, and similarly the Crocker

4    case, simply do not resolve all of the issues that underlay

5    this litigation.  They resolve one very narrow piece of that

6    issue, and there a host of factual inquiries that --

7              THE COURT:  Would you agree that if 523(a)(8) is

8    inapplicable that a debtor in a proceeding, in a bankruptcy

9    proceeding did not have to commence an adversary proceeding

10   in order to determine that loans that were not educational

11   benefit loans were discharged.  523(a) would seem to require

12   the adversary proceeding if it's a loan that's subject to

13   discharge, but not if it's one of the loans that would not

14   be subject to a discharge.

15             MR. HUSNICK:  Your Honor, I believe that's an

16   issue that's still being litigated in the underlying

17   litigation as to whether you have to, because of the

18   presumption that the Supreme Court articulated in the

19   Espinoza case, that student loans are presumptively

20   discharged.

21             And I understand what Your Honor is saying in

22   terms of how the statute reads and how it works.  You know,

23   I think that that is an issue that is still the subject of

24   dispute before the lower court in the McDaniel case.

25             THE COURT:  Let me -- both McDaniel and Crocker,

Page 23

1    the Circuit Courts in each case remanded them back to the

2    Bankruptcy Courts; is that correct?

3              MR. HUSNICK:  That is correct, Your Honor.  Both

4    cases were remanded, they were both decided in connection --

5    they were interlocutory appeals from motions to dismiss on

6    the very narrow issue, and they were remanded.  Indeed, in

7    the Crocker case, the class has not even yet been certified

8    and it's been referred to mediation, court-ordered

9    mediation.

10             THE COURT:  In either Crocker or McDaniel, was any

11   judgment entered against Navient in -- money judgment

12   entered against either of those cases?

13             MR. HUSNICK:  No, no money judgment has been

14   entered against Navient in either of those cases.

15             THE COURT:  Let me ask you to assume for a minute

16   that -- well, first off, let me ask you what's the case --

17   because the Second Circuit, there's an expedited appeal or

18   direct appeal to the Second Circuit from the Eastern

19   District.  Which case is that?

20             MR. HUSNICK:  That's the Homaidan case, the

21   Homaidan litigation.

22             THE COURT:  Okay.

23             MR. HUSNICK:  It's H-O-M-A-I-D-A-N.

24             THE COURT:  Okay.

25             MR. HUSNICK:  And that is a similar procedural

Page 24

1     posture, Your Honor.

2              THE COURT:  And what's the status of the Second

3     Circuit appeal?

4              MR. HUSNICK:  My understanding is it has been

5     fully briefed and they're waiting for oral argument to be

6     scheduled, Your Honor.

7              THE COURT:  And who is the bankruptcy judge there;

8     was that Judge Craig?

9              MR. HUSNICK:  I was waiting for you to get to a

10    question I couldn't answer, and you might have hit one.

11             THE COURT:  Does one of the other counsel for

12    Navient have the answer to that question?

13             MS. SIEG:  Judge, this is Beth Sieg at McGuire

14    Woods.  It's Judge Stahl.

15             THE COURT:  Yes, Stahl, okay.  All right.  And so,

16    you say it's fully briefed, Mr. Husnick, but not argument

17    date has been set yet?

18             MR. HUSNICK:  That's my understanding, yes, and

19    Ms. Sieg can confirm that as well because I believe they're

20    counsel of record.

21             MS. SIEG:  That's correct.

22             THE COURT:  Okay.  When was it fully briefed, Ms.

23    Sieg?

24             MS. SIEG:  It was fully briefed at the very end of

25    2020.

1          THE COURT:  All right.  So, Mr. Husnick, assume

2     for the sake of our discussion that both McDaniel and

3     Crocker are correct on the merits.  They obviously were

4     decisions -- Tenth Circuit in McDaniel, Fifth Circuit in

5     Crocker -- but let's assume that they correctly decide the

6     issue of whether student loans generally are excepted from

7     discharge rather than just educational benefit loans.

8          So would you agree that -- and let me say -- is

9     there any circuit court that has ruled to the contrary in a

10    -- let me ask that again.  Has any circuit court in a

11    reported decision ruled contrary to the Fifth or Tenth

12    Circuits?

13          MR. HUSNICK:  I believe the answer is no.

14          THE COURT:  I know there's an issue in the Second

15    Circuit, opinion not for publication, but I'm talking about

16    opinions for publication; has any circuit ruled to the

17    contrary to the Fifth or Tenth Circuits?

18          MR. HUSNICK:  I believe the answer is no.

19          THE COURT:  All right.

20          MR. HUSNICK:  Not on that narrow issue.

21          THE COURT:  So are any of the loans of any --

22    well, let's put -- bear with me again a second.  Let's put

23    Bannister aside because Bannister is in a different posture

24    because of Judge Garrity's ruling, but let's take Hood and

25    Tate.  Were any of Hood or Tate's loans, student loans that

1    were not educational benefit loans as those terms were used

2    in Crocker and ...

3              MR. HUSNICK:  One of the issues, Your Honor, that

4    will be litigated ultimately with Mr. Hood and Mr. Tate is

5    the nature of their loans and whether their loans were

6    actually provided for Title 4 institutions.  And so, a

7    523(a)(8)(A)(ii) decision, a-la Crocker and McDaniel, is not

8    dispositive because the other exception, 523(a)(8)(B), may

9    still be applicable.

10             And then even if you get past that, you know --

11   and even if you get past that, then you still have to go

12   through the what's the amount of any such liability, how

13   much of the loan was actually outstanding, et cetera, and

14   none of those issues as to that --

15             THE COURT:  We'll get to that.  Right now, I'm

16   trying to -- because I have to split it into not disputed as

17   to liability and then as to amount.  But as to liability,

18   would you agree that liability not be in dispute as to any

19   loans that foursquare were in the, essentially by the

20   Crocker and McDaniel decisions?

21             I mean, you don't have to have a decision at every

22   circuit in the country in order to have under (sound glitch)

23   as to liability; wouldn't you agree with that?

24             MR. HUSNICK:  I agree with you, Your Honor, to

25   some extent.  I agree you don't need a decision in every

Page 27

1    circuit.  Where I think the distinction is here, Your Honor,

2    is, first, there is -- if you look at the narrow set of

3    facts that were addressed in Crocker, it was a loan that was

4    used for a bar exam studies, if I remember correctly.

5            The Tate and Hood cases, that's not the case right

6    now; those facts have not been borne out.  And we still

7    believe that -- and we being Navient Solutions -- still

8    believe that we have access to the other subsections of

9    Section 523(a)(8) and those issues still have not been

10   resolved.  It's not as clean as one would like -- you know,

11   as the petitioners would like it to be in terms of relying

12   on Crocker or McDaniel, even if those were adopted by all

13   the circuits.

14            THE COURT:  All right.  Go ahead with your

15   argument; I interrupted you.

16            MR. HUSNICK:  No worries, Your Honor.  I'm not

17   sure -- did you need to hear more argument on the scope of

18   Crocker and McDaniel because it sounds like you are all over

19   it and understand exactly where we're headed on that front,

20   which is that those two cases --

21            THE COURT:  I'm happy to hear whatever further you

22   have to say.  Look, I haven't decided the issues that were

23   addressed in Crocker and McDaniel.  I've obviously read the

24   decisions, but I'm certainly happy to hear what other

25   argument you have about it.

1           MR. HUSNICK:  And I think Your Honor could, and I

2    think it's not the right conclusion, but I think Your Honor

3    could, if you concluded that the Fifth and Tenth Circuits

4    are binding law, it still leaves open these very material

5    issues as to the nature of the underlying Tate and Hood

6    loan.

7           You can't just assert that our loan was not

8    qualified under 523(a)(8), not have that issue litigated,

9    and then turn around and jump into an involuntary

10   proceeding.  That is an issue that should be and must be

11   resolved in front of the underlying Bankruptcy Court in

12   Georgia in the case of Mr. Tate and Massachusetts, I

13   believe, in the case of Mr. Hood.

14          Your Honor --

15          THE COURT:  Is every Chapter 7 or Chapter 13

16   debtor who had student loans that it believes were

17   discharged in the prior bankruptcy case, are they going to

18   have (sound glitch) reopen their bankruptcy cases and

19   litigate every borrower in every case whether they're loans

20   could be discharged in bankruptcy?

21          MR. HUSNICK:  Those are the issues, Your Honor,

22   that are being dealt with in the -- or that will likely be

23   dealt with in the context of the class action cases where

24   class has not yet been certified.  But if you look at the

25   Fifth Circuit's decision in Crocker, the Fifth Circuit said

Page 29

1    -- actually said, yes, in at least insofar as it could only

2    be done by a court in the district where the discharge was

3    issued.  It couldn't be a broad sweeping decision by a court

4    to reopen all of these cases and apply the discharge

5    injunction in that fashion.

6              That is an issue, again, that the Second Circuit

7    will likely deal with and may come out on a different side

8    than what the Fifth Circuit did and we'll have to address

9    that.  But suffice to say, I think those are all issues that

10   are being firm -- or are squarely being addressed in a non-

11   bankruptcy fora where it's appropriate for those issues to

12   be addressed.

13             The PICAP claim, Your Honor --

14             THE COURT:  In Crocker, class certification is

15   being sought at the Bankruptcy Court, correct?

16             MR. HUSNICK:  Correct, and the judge is -- that's

17   being held subject to the mediation right now.  But the

18   Fifth Circuit, you're correct, remanded back to the

19   Bankruptcy Court to decide on certification of class, but

20   made clear that the class could only be certified for the

21   Southern District of New York and not on a more wide base --

22   or nationwide basis.

23             THE COURT:  Not Southern District of New York.

24             MR. HUSNICK:  Correct.  And certainly not Georgia

25   and not Massachusetts either; those are two different

Page 30

1    jurisdictions.  Again, the issue of nationwide class

2    certification is still pending in the Homaidan litigation,

3    which again is before the Second Circuit, so that issue is

4    still open in at least one circuit.

5              Your Honor, the PICAP claim, just briefly, I

6    believe it's facially problematic because, as you noted in

7    your opening comments, it's a very bare bones joinder.  It

8    doesn't sufficiently disclose any of the information

9    required under Section 1003(a) of the Bankruptcy Code when

10   you file a joinder.  And that information, Your Honor, is

11   relevant for transferred claims because the involuntary

12   debtor needs to be able to understand who the creditor is

13   and what is the nature of the claim.

14             Fortunately, if you can read between the lines,

15   what was filed, you can identify that Mr. Wolk's client is

16   supposedly the transferee of some claim related to McDaniel.

17   We're not certain that those types of claims are even

18   assignable.

19             But setting that issue aside, as I said, there's a

20   host of open issues that are still being litigated in

21   McDaniel.  Petitioners' counsel, in fact, agreed, as I said

22   earlier, agreed to a scheduling order just two weeks ago

23   setting out a discovery schedule and a briefing schedule on

24   those various threshold issues that have to be resolved

25   before there could potential be a claim that's not subject

Page 31

1    to bona fide dispute.

2            Your Honor, therefore --

3            THE COURT:  Who was the assignor of the claim to

4    PICAP; do you know that?

5            MR. HUSNICK:  We do not know on the face of their

6    joinder.  Counsel may be able to say.

7            THE COURT:  Well, it's not in the pleading; you

8    agree with that?

9            MR. HUSNICK:  It is not in the pleading, and we

10   searched high and low for it, Your Honor.

11           Even though they filed under 1003(a) to satisfy

12   those baseline requirements and what were just talking in

13   our colleague, that's why that requirement exists.  We think

14   that there's also case law that had been adopted most

15   recently in the Eastern District of Pennsylvania in the

16   Forever Green Athletic Field v. Dawson case, 514 B.R. 768,

17   that there can be a bar to joinder for bad faith filing

18   cases, and we think that is exactly what should be invoked

19   here on the PICAP claim.

20           But even if, Your Honor --

21           THE COURT:  Excuse me.  When you refer to Rule

22   1003 for involuntary petition, 1003(a) requires that a

23   transferor or transferee of a claim shall annex to the

24   original in each copy of the petition, a copy of all

25   documents evidencing the transfer, it goes on from there;

Page 32

1     that's what you're referring to, right?

2             MR. HUSNICK:  That is exactly what I'm referring

3     to, Your Honor, and that would have allowed us, had they

4     complied --

5             THE COURT:  Your point is, is that the joinder is

6     facially invalid and ineffective because it didn't comply

7     with Bankruptcy Rule 1003(a), correct?

8             MR. HUSNICK:  That is correct, Your Honor.  And

9     even if you went to the underlying merits, Your Honor, we

10    believe it suffers from the same deficiencies that the Hood

11    and Tate claims suffer from.  While McDaniel's, we don't

12    know where that claim is coming from, so we can't actually

13    address the underlying merits of the nature of the claim,

14    which is why 1003(a) is there.  But we can surmise that it

15    was an assignment of a claim, in the best case, an

16    assignment of the McDaniel's claim itself.

17            And as I said though, Your Honor, that is still

18    subject to active litigation and petitioners' counsel is

19    knowingly involved in that litigation and is participating.

20            So, Your Honor, we believe that dismissal under

21    Section 303(b) is warranted, it is justified.  And, Your

22    Honor, all three of the petitioners and the joining

23    petitioner failed to make the very rudimentary prima facie

24    case that's required under Section 303(b); that is to have

25    three claims aggregating more than $16,750 that are not

Page 33

1    subject to bona fide dispute as to liability or amount.  And

2    here, they're subject to liability as to both -- subject to

3    dispute as to liability and amount.

4         The second basis for dismissal, Your Honor, is

5    Section 303(h) of the Bankruptcy Code.  Your Honor, this

6    one's a little tricky because, of course, we're looking only

7    at the face of the involuntary petition and what can we

8    discern from the face of the involuntary petition.

9         Your Honor though, you can look at the cases that

10   govern the standard under 12(b) for 12(b) motions to

11   dismiss, the Iqbal and Twombly cases.

12        And you can look at that to say that the Supreme

13   Court has said when you file a Complaint, in order to

14   withstand a 12(b)-style motion to dismiss, you must state a

15   claim, not just rudimentary ticking away the elements, but

16   you actually just state a plausible claim.  You must state

17   facts that can be reasonably inferred to lead to and support

18   the claim; that's what the Supreme Court said.

19        Here, petitioners didn't even try to satisfy

20   Section 303 standard.  They didn't make a single assertion

21   that Navient is not paying its debts as they come due, let

22   alone generally paying its debts as they come due, that they

23   made no reference in any of the papers on that topic;

24   instead, they make bald references to insolvency.

25   Insolvency is not the standard under Section 303(h).  You

1   must show and you must aver in the face of the petition that

2   the debtor is generally not paying its debts as they come

3   due.  They made no attempt, Your Honor.  The focus on

4   solvency is also deficient.

5          Your Honor, you can't just say somebody's

6   insolvent in an involuntary petition and toss it into

7   bankruptcy.  That's not what Congress intended when it put

8   the heavy burden and the heavy responsibility on involuntary

9   petitioners under Section 303.  It's not what Congress

10  intended.

11         What they did here though, Your Honor, is even

12  worse.  If you actually look at the involuntary supplement,

13  it undercuts the allegations of insolvency that they made.

14  They say, Your Honor -- and you asked me about this at the

15  very opening of my argument, which is what is the market

16  cap.  And they actually comment in their pleading and they

17  say $87.5 billion of assets and $85 billion of liabilities

18  and that's, I'm assuming, taking from the public filings.

19         Your Honor, that assertion though is then coupled

20  with the and-oh-by-the-way, you need to deduct $4 billion

21  because of these alleged claims, alleged claims there that

22  they refer to of CFPB.  Those claims are also being

23  litigated and are disputed.  There is no judgment that those

24  amounts are owing.

25         And so, Your Honor, it's not even accurate --

Page 35

1          THE COURT:  Where is that being litigated?

2          MR. HUSNICK:  I believe that is being litigated --

3          THE COURT:  Where is the CFPB claim being

4    litigated?

5          MR. HUSNICK:  I believe that's being litigated in

6    the D.C. Circuit, but let me ask Ms. Sieg to weigh in there.

7          THE COURT:  Sure.  Ms. Sieg, are you able to talk

8    about the CFPB lawsuit?

9          MS. SIEG:  I'm sorry.  I was on mute, Your Honor.

10          THE COURT:  That's fine.

11          MS. SIEG:  We are not counsel for Navient in that

12    litigation.  I believe that it is in the D.C. Circuit, but I

13    would have to independently confirm to say that for sure.

14          MS. LEVY:  Your Honor, this is Jennifer Levy.  I

15    am also counsel for Navient, not in that litigation, but

16    that is pending in Federal Court in Pennsylvania.

17          THE COURT:  Which district in Pennsylvania, do you

18    know?

19          MS. LEVY:  Eastern District.

20          THE COURT:  Are you able to tell me what the

21    status of that case is at the current time?

22          MS. LEVY:  I am not counsel in that case, but,

23    yes, that case is being actively litigated.  Summary

24    judgment has been briefed, summary judgment motions have

25    been briefed and are pending before the Judge in that

Page 36

1    litigation; it's before Judge Mariani.

2              THE COURT:  I'm sorry, say it again, who is it

3    before?

4              MS. LEVY:  The current status of that litigation

5    is that summary judgment motions have been briefed and it is

6    currently pending and awaiting ruling before the Court,

7    Judge Mariani.

8              THE COURT:  Which Judge?  Okay.  Who filed the

9    summary judgment motion?

10             MS. LEVY:  Both Navient and the CFPB.

11             THE COURT:  Okay, cross-motions for summary

12   judgment.

13             MS. LEVY:  That's right.

14             THE COURT:  Thank you very much, Ms. Levy.

15             MS. LEVY:  You're welcome.

16             THE COURT:  All right.  Mr. Husnick, back to you.

17             MS. LEVY:  Your Honor, I'm sorry.  I said Eastern

18   District of Pennsylvania, but it's Western District of

19   Pennsylvania.

20             THE COURT:  Okay, thank you very much.  That was

21   Ms. Levy who just -- you have to identify yourself each time

22   you speak.

23             MS. LEVY:  Yes, it was.  Yes, this is Ms. Levy.

24             THE COURT:  Thank you very much, Ms. Levy.  All

25   right, Mr. Husnick, back to you.

1            MR. HUSNICK:  Thank you, Your Honor.  Chad Husnick

2      from Kirkland & Ellis on behalf of Navient.

3            Your Honor, because they did not plead the 303(h)

4      standard that Navient is generally not paying its debts as

5      they come due, again, the involuntary petition can and must

6      be dismissed under Section 303(h).

7            The third basis for dismissal, Your Honor --

8            THE COURT:  What is it that you've -- let me ask

9      you this.  What is it that you believe would have to be

10     pleaded to satisfy the 303(h) standard with respect to

11     generally not paying debtors' debts as they become due?

12           MR. HUSNICK:  Your Honor, I think they would have

13     to make the assertion that the debtor is generally not

14     paying its debts as they come due, and that those debts that

15     they're relying on are not subject to bona fide dispute.

16           THE COURT:  Well, just --

17           MR. HUSNICK:  It basically is a showing that --

18           THE COURT:  Stop for a second.  It's easy to udder

19     the words, they're generally not paying the debtors' debts

20     as they come due; that's a conclusory allegation.  What

21     would a pleading have to include in order to satisfy the

22     Iqbal pleading requirements with respect to generally not

23     paying debts as they come due?

24           MR. HUSNICK:  Your Honor, I think they would have

25     to, for example, would have to give examples and oftentimes,

Page 38

1    the petitioners themselves are the examples.  But they can't

2    do that here because none of their claims are liquidated and

3    none of their claims are undisputed.

4           And so, what you mostly see when you see an

5    involuntary petition where they're pleading that the debtor

6    is not generally paying its debts as they come due is solid

7    examples in the pleading of a debt that has gone past its

8    due date, whether it's a trade debt or a loan payment.

9    That's the involuntary in Caesar's, Your Honor, where a loan

10   payment had come due, they were in the grace period, and the

11   assertion was that as a result of that, they were able to

12   file an involuntary petition.

13          But to make an assertion on a litigation claim

14   that has not yet been ruled to judgment, it simply doesn't

15   satisfy the standard.  I think I've answered your question,

16   but I want to be careful that I make sure that I've answered

17   your question.  That was, Your Honor?

18          THE COURT:  You can go ahead with your argument.

19          MR. HUSNICK:  So the third basis for dismissal,

20   and I'll be brief on this, Your Honor.

21          THE COURT:  Let me interrupt.  I apologize, let me

22   interrupt you for a minute.

23          MR. HUSNICK:  Yup.

24          THE COURT:  Are there any judgments, unsatisfied

25   judgments anywhere in any court in the United States --

1    Bankruptcy Court, District Court, whatever -- requiring a

2    repayment or payment of discharged loans that Navient

3    collected?

4            MR. HUSNICK:  Not to my knowledge, but I can call

5    on --

6            THE COURT:  Has any bankruptcy judge entered a

7    judgment against them?  Are there any judgments against

8    Navient, dollar amount judgments for the kinds of claims

9    that are being asserted in litigation as to whether the

10   loans were discharged or not?

11           MS. SIEG:  Judge, this is Beth Sieg at McGuire

12   Woods.

13           THE COURT:  Hold on.  I didn't hear your name

14   clearly, just state your name again if you would.

15           MS. SIEG:  Yes, Your Honor.  This is Beth Sieg at

16   McGuire Woods.  There are no unsatisfied judgments.

17           THE COURT:  Sure, go ahead, Ms. Sieg.

18           MS. SIEG:  No unsatisfied judgments, no judgments

19   of any kind in that nature, Judge.

20           THE COURT:  Okay.  Thank you very much, Ms. Sieg.

21           MS. SIEG:  Thank you.

22           THE COURT:  Okay, Mr. Husnick, now you can go on

23   with your ground.

24           MR. HUSNICK:  Okay.  The third ground for

25   dismissal, Your Honor, is Section 305(a).  Your Honor, that

1    section puts a lot of discretion in your hands to dismiss

2    the case where you determine that abstention is in the

3    interest of creditors and/or the debtor.  And here, Your

4    Honor, we submit that the totality of the circumstances

5    would support dismissal.

6          All of the factors that are considered, Your

7    Honor, support dismissal.  I want to talk about just a few.

8    The first factor that many courts consider -- economic use

9    of judicial assets and efficiency of administration and the

10   availability of alternative fora for resolution of the

11   disputes.

12         Here, Your Honor, we're far into litigation.

13   There have been Circuit Court opinions in that litigation,

14   there's ongoing mediation in that litigation, and there's a

15   scheduling order in the Tenth Circuit litigation.  It's far

16   more economical and efficient for the petitioners to pursue

17   their purported claims in those jurisdictions and not open

18   an entirely new jurisdiction where we're likely going to

19   have to sit and wait for those jurisdictions to resolve any

20   claims anyway.

21         But that takes me to the next point, which is a

22   bankruptcy is not needed for the equitable distribution of

23   assets here.  There's absolutely no credible concern about

24   Navient's ability to pay its debts as they come due.  You

25   can't just say it and have it be so that Navient is

Page 41

1   insolvent or unable to pay its debts as they come due, and

2   that's why there's such a high burden to file an involuntary

3   pleading.  It's not meant to be a collection proceeding;

4   it's not meant to be a forum for parties to exert leverage

5   or to try and extort settlement values.  That's just not the

6   purpose.

7           And that's why I think the last factor and the

8   factor that most courts that address Section 305(a) find to

9   be the most persuasive is, why was the filing initiated.  We

10  don't have to look any further than the social media posts

11  and the vitriol in the pleading to determine that the filing

12  was initiated in an effort to try and extract a settlement

13  outside the context of the litigation; that's not what

14  Chapter 11 is all about.  We're about maximizing value for

15  stakeholders, providing a fresh start, and facilitating the

16  equitable distribution of the assets.  There's simply no

17  assertion, no credible assertion that that is needed here,

18  that a bankruptcy is needed.

19          Your Honor, that concludes my argument on the

20  three bases.  I'm happy to answer any other questions you

21  have.  I would reserve on the imposition of damages under

22  Section 303(i) because I know Your Honor likes to take that

23  up separately.

24          But the one thing I want to say to you before I

25  completely wrap up, Your Honor, is the McDaniel and Crocker

Page 42

1    case, they resolve a narrow issue.  There are many other

2    issues that need to be resolved, and it's simply not --

3            THE COURT:  Tell me what you think -- what is the

4    narrow issue that you believe those cases resolve?

5            MR. HUSNICK:  Fifth and Tenth Circuit ruled that a

6    private loan for a non-Title 4 institution is not covered by

7    Section 523(a)(8)(A)(ii); that's it.  They did not rule that

8    the Tate loan is a non-Title 4, they did not rule that the

9    Hood loan is a non-Title 4 loan; that's just not what that

10   Court decision was about.  It did talk about specifics of

11   the underlying claim -- I forget the individual loan

12   debtor's name in that case.  It did talk about some specific

13   facts that it used to articulate the standard for what is a

14   non-Title 4 loan.

15           But we assert, Your Honor, in the pending

16   litigation that the loans of Mr. Tate and Mr. Hood are Title

17   4 loans, and that's a threshold issue that would need to be

18   resolved before any claim could be said to be free from bona

19   fide dispute.

20           Your Honor, I think the presence of this

21   litigation, the volume of this litigation puts us squarely

22   within Your Honor's decision in the TPG Troy case, where

23   there's a plethora of litigation around that everybody's

24   aware of and, therefore, Chapter 11, Chapter 7, any

25   involuntary type petition is not the right place for this

Page 43

1    company to be right now.  It's not the right place, it's not

2    the purpose of Chapter -- and I hope that Your Honor will

3    enter an order dismissing the case and letting Navient go on

4    its way.  Thank you.

5              THE COURT:  Thank you very much, Mr. Husnick.  All

6    right, no appearance has been made on behalf of the

7    petitioning creditors.  I recited the circumstances about

8    that before we started the argument.

9              Mr. Wolk filed a joinder, and he also asked for an

10   adjournment.  Mr. Wolk, I'll hear you briefly, and go ahead

11   if you want to argue.

12             MR. WOLK:  Yes, thank you, Your Honor.  First, at

13   the outset, I'd like to just inform the Court, as well as

14   the alleged debtors' counsel, that I reached out yesterday

15   to Mr. Smith to find out if he was intending to file any

16   papers belatedly or otherwise and to find out if he intended

17   to attend today's hearing and to find out what he had in

18   mind.

19             And I did reach him by phone, and I can only

20   report what he reported to me; I don't have any independent

21   knowledge as to whether it's true or untrue.  But what he

22   informed me was that he had had a reoccurrence of his

23   cancer.  He told me that he had called the Court and left a

24   message and had hoped to speak directly when connected to

25   the Court about his reoccurrence of his cancer.  That by

Page 44

1    virtue of that reoccurrence of the cancer, he had flown to

2    Chicago and was in the Chicago area staying with his mother

3    and under her care and to deal with the reoccurrence of his

4    cancer.  And that by virtue of the situation, which he told

5    me had worsened significantly over the last three or four

6    days, according to him, that he had been unable because of

7    that to prepare papers.  And he said that by virtue of that,

8    he would not be able to attend today's hearing.

9           Now, I am only passing on what Mr. Smith told me.

10   Again, I have no independent basis of knowing whether the

11   assertions by Mr. Smith to me are accurate or inaccurate,

12   but I am just passing that on for the record, and I just

13   wanted to say that because I do believe that it's

14   potentially relevant depending upon whether or not Mr. Smith

15   is or is not suffering from a reoccurrence of cancer and

16   whether that impeded his ability to respond.

17          THE COURT:  As I indicated earlier, on February

18   22nd at 9:51 a.m., Mr. Smith filed a letter on ECF

19   requesting a five-hour extension to the objection deadline

20   and stating that, quote, "Counsel is diligently preparing

21   the opposition, but fears he will be unable to submit a

22   clean version by noon.  Counsel is confident he will be able

23   to submit a clean version by 5:00 p.m.," closed quote; that

24   is at ECF No. 30, so we'll just leave the record at that.

25          If you would please, Mr. Wolk, address the issues,

Page 45

1    and what I see the issues with respect to your joinder as

2    the paper that you filed does not comply with Bankruptcy

3    Rule 1003, if you would address that please.

4            MR. WOLK:  Okay, first on 1003.  The way I

5    interpret 1003(a) is that the documents transferring the

6    claim, which I'm happy to file within one minute after this

7    hearing if Your Honor would like me to, that 1003(a)

8    requires attaching the transfer of the claim if you're going

9    to commence the Chapter -- the involuntary petition, and it

10   says that you have to attach it for the purposes of

11   commencing the case.

12           And my review of that was I certainly did not

13   commence this case, and subsequent to this case and pursuant

14   to independent due diligence on prepetition rulings by the

15   Fifth Circuit and Tenth Circuit and trying to get up to

16   speed as quickly as I can about that entire situation, I am

17   not Mr. Smith.  I'm not involved in prior student loan debt

18   litigation.

19           But upon my review of the Fifth and Tenth Circuit

20   decisions and based upon my review of Rule 1003, we thought

21   that we were governed by 1003(b), which says joinder

22   petitioners after filing.  And 1003(b), unlike 1003(a), does

23   not require the attachment of an assignment for the claim,

24   although I am happy, independent of Rule 1003, if Your Honor

25   deems that I'm governed by that, I'm happy to file that

Page 46

1    immediately.  There's no -- I wasn't trying to shroud

2    anything in mystery.  We acted very, very quickly on

3    Wednesday afternoon once we decided that, at least in our

4    judgment and having nothing to do with Mr. Smith and

5    independent of Mr. Smith and his prepetition creditors, that

6    we believe that Ms. McDaniel is in a situation where, if

7    you'll allow me to address it, she does, in fact -- I'm

8    sorry?

9              THE COURT:  I don't know who was speaking.

10   Whoever else is on the line, please mute your phones while

11   Mr. Wolk is arguing.  Please go ahead, Mr. Wolk.

12             MR. WOLK:  All right.  Thank you, Your Honor.  And

13   so, you know, if allow would allow me, I'm happy to explain

14   why Public Interest Capital believes that the McDaniel

15   claim, which it purchased from Ms. McDaniel and we dealt

16   directly with Ms. McDaniel and, as you will see, I'm happy

17   to file the assignment, we actually provided a space for Ms.

18   McDaniel's attorney in the Colorado litigation, Mr. Smith,

19   to sign.

20             Ms. McDaniel signed, Mr. Smith did not sign, and

21   we can prove that we've paid Ms. McDaniel handsomely for her

22   claim based upon our belief that she is now in a strong

23   position based upon the Tenth Circuit ruling.  And the

24   assignment includes not only assignment of her individual

25   creditor rights, it also includes an assignment of any class

Page 47

1   claim or class representative rights that she may have and

2   be able to establish before a court of competent

3   jurisdiction.

4           So again, on the assignment, I'm happy to file a

5   public record right after this hearing, but the reason that

6   it wasn't done was not to shroud anything in mystery.  It's

7   because we believe we were governed by 1003(b), which did

8   not require that.

9           THE COURT:  Mr. Wolk.

10          MR. WOLK:  Yes.

11          THE COURT:  When is the first time you spoke with

12  Mr. Smith about his either -- in anticipation of this filing

13  or after he filed this involuntary petition?

14          MR. WOLK:  Well, I did speak with Mr. Smith before

15  we purchased the McDaniel claim because we thought he was an

16  appropriate person to contact as her counsel as to whether

17  or not that was a claim that would be available for sale,

18  for transfer, so we did speak with him in connection with

19  that.

20          THE COURT:  And did you at any time speak with Mr.

21  Smith about his filing an involuntary petition against

22  Navient, yes or no?

23          MR. WOLK:  Oh, absolutely.  We contacted Mr. Smith

24  after he had filed it, yes.

25          THE COURT:  Did you speak with Mr. Smith at any

Page 48

1   time before he filed the involuntary petition about filing

2   an involuntary petition?

3             MR. WOLK:  Yes, I did have -- yes, the answer is

4   yes.  I think within the prior (crosstalk).

5             THE COURT:  Stop.  When, on how many occasions did

6   you speak with Mr. Smith about his filing an involuntary

7   petition before he did so?

8             MR. WOLK:  I spoke to him two or three times, and

9   I recommended to him at that point in time based upon my

10  knowledge at that point in time that I didn't think it was a

11  good idea.  It is only after several --

12            THE COURT:  When did you speak with Mr. Smith for

13  the first time about his filing an involuntary petition

14  against Navient?

15            MR. WOLK:  When for the first time did I speak

16  about the concept of a proposed involuntary petition?

17            THE COURT:  Yes.

18            MR. WOLK:  I would say about -- I would say less

19  than two weeks before he actually chose to file it.  And

20  during that time period, I told him that I didn't think it

21  was a good idea based upon what I knew --

22            THE COURT:  At any time before he filed the

23  involuntary petition, did you have any discussion with Mr.

24  Smith about filing a joinder in the petition?

25            MR. WOLK:  No, no, no, no, no; in fact, to the

Page 49

1   contrary.  I told Mr. Smith that I didn't think it was a

2   good idea, and Mr. Smith told me I need to read all the

3   cases that had actually already happened, in particular, the

4   Fifth and Tenth Circuit.

5        And it's only subsequently and after he filed this

6   involuntary and that I saw that there was, you know,

7   extensive media coverage that apparently occurred right away

8   that I then looked at the Fifth and Tenth Circuit decisions

9   and I was surprised, at least in my independent estimation,

10  that I did think it established an adjudicated liability.

11       Yes, the amount hasn't been established, and I'm

12  happy to address that if Your Honor will allow me, but that

13  the issue of liability of Navient Solutions, LLC with

14  respect to post-discharge collections under non-Title 4

15  loans had been addressed and adjudicated as something that

16  is illegal.

17       THE COURT:  And did you discuss with Mr. Smith

18  whether the three petitioning creditors were non-Title 4

19  loans?

20       MR. WOLK:  Absolutely not, because not only did I

21  not talk about the specifics of any of his three petitioning

22  creditors, my just general reaction at that time -- and I'm

23  being as candid as I can -- was, you know, that's a pretty

24  serious thing to file an involuntary petition.  You better

25  make sure first and foremost --

1          THE COURT:  That's the one thing I agree with you.

2     That's the one thing I would agree with you about, it's a

3     very serious thing to file an involuntary petition.

4          MR. WOLK:  Yes, absolutely.

5          THE COURT:  And it's a very serious thing to file

6     a joinder in an involuntary petition.

7          MR. WOLK:  Yeah, well, can I address that then?

8          THE COURT:  Go ahead.

9          MR. WOLK:  Okay.  Well, I have actually looked at

10    the Tenth Circuit case and the Fifth Circuit case, and if

11    Your Honor will allow me even just a brief period of time,

12    I'd love to submit papers on it because we've done

13    exhaustive review on this over the last 10 days.  And we

14    believe that it does, in fact, unequivocally establish --

15    and I'm happy to do it, they're both long opinions, so I'll

16    have to go into it -- that it is illegal, it is wrongful, it

17    violates the Federal Bankruptcy Code, it violates the

18    Federal Fair Debt Collection Practices Act, it violates

19    principles of restitution, and other theories to collect

20    money to which you are not entitled.

21          And that the Tenth and Fifth Circuit had ruled

22    that it is illegal for Navient Solutions, LLC to collect

23    money after the discharge of a person with respect to non-

24    Title 4 loans, just like Ms. McDaniel had and just like as

25    we're doing our best to get up to speed on this, we

Page 51

1    understand there are many, many people around the nation who

2    are also in the same situation, so that the issue of

3    liability -- the issue as to whether or Navient Solutions,

4    LLC can collect under non-Title 4 loans after a discharge

5    has been ruled and passed upon specifically by the Tenth and

6    the Fifth Circuit.

7              And, you know, it's always hard to prognosticate,

8    but at least in my opinion from the clear wording of those

9    unanimous Circuit Court decisions, I don't see another

10   Circuit Court reaching a contrary reported decision on it.

11   And it is only per our extensive --

12             THE COURT:  How does that translate into

13   insolvency of Navient?

14             MR. WOLK:  Okay.  So again --

15             THE COURT:  Let me ask you, before you answer

16   that, there's nothing in your joinder addressing the issue

17   of whether Navient is not generally paying its debts as they

18   come due; do you agree?

19             MR. WOLK:  That is correct, as we quickly put it

20   together on --

21             THE COURT:  And so, you're going to have to rise

22   or fall with what Mr. Smith said in his petition, because

23   you provided nothing with respect to an essential element

24   for an involuntary claim, that the debtor is generally not

25   paying its debts as they become due.  So you're stuck with

Page 52

1    what Mr. Smith did or didn't say, correct?

2              MR. WOLK:  No, no.  I would respectfully submit,

3    Your Honor, two things: first, at the same time that I filed

4    the joinder -- first I emailed and then filed online an

5    application under 11 U.S.C. 303(c) -- Federal Bankruptcy

6    Rule 1003(b) and the reliance upon the only reported

7    appellate decision on the issue that I'm aware of, the QDOS

8    case from the Ninth Circuit Bankruptcy Appellate Panel in

9    2019, indicating that, number one, I believe that it's not

10   only Public Interest Capital as transferee of Ms. McDaniel's

11   claim, I believe it is the universe of the entire creditor

12   body which include all student loan borrowers who had

13   previously obtained bankruptcy discharges around the nation

14   with respect to non-Title 4 loans that, by virtue of the

15   Tenth Circuit ruling and the Fifth Circuit ruling in

16   McDaniel and Crocker respectively, those previously

17   discharged student loan borrowers under non-Title 4 loans

18   are not only creditors as of this moment in time -- and if

19   Your Honor would allow me even a day or two, I'd love to

20   brief it.

21              Not only are they creditors, but they are

22   creditors who claims against Navient by virtue of those

23   appellate rulings are not subject to a bona fide dispute as

24   to liability.  And the amount of those claims, at a minimum,

25   are the amount that was wrongfully collected from them, and

Page 53

1   the amount wrongfully collected from them will be in excess

2   of the statutorily required amount for an involuntary.

3           So Public Interest Capital seeks to not only be a

4   joinder creditor in its individual capacity as transferee of

5   Ms. McDaniel, but also -- and his happy to brief it again on

6   an expedited basis -- it wishes to --

7           THE COURT:  Public interest capital has not been

8   certified as a class representative in any pending

9   litigation, correct?

10          MR. WOLK:  Correct, correct, correct.  But Public

11  Interest Capital, as the recent transferee of Ms. McDaniel's

12  claim, wishes and believes it can establish under the

13  applicable requirements that it should be treated as a

14  proposed class claim representative in connection with this

15  involuntary under the case law that exists so far from the

16  Bankruptcy Court.

17          THE COURT:  What case, give me a case -- wait.

18  Give me a case that says that a party such as Public

19  Interest Capital can be, on behalf of an unnamed uncertified

20  class representative in an involuntary case.  Just give me

21  one case that says that.

22          MR. WOLK:  I don't believe the issue --

23          THE COURT:  Do you have a case that says that?

24          MR. WOLK:  There is no case that says I can't do

25  it.  There are cases --

Page 54

1          THE COURT:  All right.

2          MR. WOLK:  Your Honor, if I may.  There are cases

3   saying that the purchaser of a claim from Ms. McDaniel,

4   there are Federal Circuit Court rulings from the Second

5   Circuit, can assert a class claim as transferee on behalf of

6   others, so that the Second Circuit has ruled -- and again,

7   I'm happy to brief this on an expedited basis.

8          THE COURT:  What's the case?

9          MR. WOLK:  I don't have it at my fingertips.  I

10  can give it to you within 10 -- you know, shortly after this

11  hearing.

12         THE COURT:  No.  Mr. Wolk, this is the argument on

13  the motion to dismiss.  You appeared; I'm letting you argue.

14  You are not able to provide me with any case authority

15  during this hearing for the position you've asserted.  You

16  said there's a Second Circuit case, but you couldn't tell me

17  what it is; is that correct?

18         MR. WOLK:  No, I respectfully disagree, Your

19  Honor.  I first moved for an adjournment because -- well, 11

20  U.S.C. 303(b).

21         THE COURT:  Mr. Wolk, Mr. Wolk, this is the

22  hearing on the alleged debtors' motion to dismiss.  I've

23  denied your motion for an adjournment.  I'm asking you -- I

24  gave you a chance to argue, and you've not been able to tell

25  me the name of a case -- you say there's a Second Circuit

Page 55

1    case.  I'd be interested in whatever circuit, but certainly

2    the Second Circuit since I'm bound by it.  You can't give me

3    the name of a Second Circuit case to support the proposition

4    you've asserted.

5                 MR. WOLK:  And I'm respectfully asking for the

6    opportunity to have a half hour to submit that case to Your

7    Honor after this, as we object to having --

8                 THE COURT:  Why didn't you look before this

9    hearing?

10               MR. WOLK:  Well, I know --

11               THE COURT:  Why didn't you look before the

12   hearing?

13               MR. WOLK:  -- it does exist.  I just don't have it

14   right in front of me physically.

15               THE COURT:  All right.

16               MR. WOLK:  The case does exist.

17               THE COURT:  Is there anything you wanted -- Mr.

18   Wolk, is there anything you want to add briefly?

19               MR. WOLK:  Yes, Your Honor.  First of all, I'd

20   like to say that if, in fact, there are a nationwide group

21   of discharged student loan borrowers under non-Title 4 loans

22   and my understanding is it's in the aggregate several

23   billion dollars, then that on its face shows that there's

24   alleged debtors --

25               THE COURT:  Do you think I'm supposed to rely on

Page 56

1    your statement without any facts?

2           MR. WOLK:  No, I mean --

3           THE COURT:  You say that there's a group --

4           MR. WOLK:  I would like to have the opportunity,

5    respectfully, even two days since we're just getting

6    involved in this case to do so and respectfully, 11 U.S.C.

7    303 indicates in the QDOS case from the Bankruptcy Appellate

8    Panel, which is the only reported appellate case on this

9    issue, says that it would violate due process for the

10   universe of creditors in an involuntary to not be given a

11   reasonable opportunity to be able to bring to the attention

12   of the Court their facts, their law as to why those joinder

13   creditors independent of the petitioning creditors,

14   independent of whatever defects may exist with respect to

15   Mr. Smith and that they can rectify that.  In that case,

16   they reversed the Bankruptcy Court's decision to proceed

17   without allowing that relief.

18           THE COURT:  What's the citation of the case?

19           MR. WOLK:  That I have.  I'm just going to my

20   computer to pull this up.

21           MR. HUSNICK:  Your Honor, it's Mr. Husnick from

22   Kirkland.  It's 607 B.R. 338, I believe.

23           MR. WOLK:  That is correct.

24           THE COURT:  What's the year?  You said it's Ninth

25   Circuit BAP.

Page 57

1           MR. HUSNICK:  Right.

2           MR. WOLK:  Yeah.  It's November of 2019, and then

3      in November 2020, as indicated in my letter application, a

4      further appeal was taken by the alleged debtor in that case

5      from the adverse ruling against the alleged debtor who was

6      trying to deprive the joinder creditors of their opportunity

7      and the Ninth Circuit dismissed the alleged debtors' appeal

8      for lack of jurisdiction.

9           THE COURT:  All right.  Anything else, Mr. Wolk,

10     before you finish?

11          MR. WOLK:  Yes.  I'd also like to point out that

12     on the generally not paying its debts when they become due

13     issue, nowhere in the motion to dismiss papers does the

14     alleged debtor say that the alleged debtor itself, the

15     privately held entity, Navient Solutions, LLC, that it

16     itself, okay, generally pay their debts as they come do.

17          Instead, what they do is they define the alleged

18     debtor by reference to it non-debtor parent and an array of

19     other non-debtor entities, then calls them the company and

20     then proceeds to say that the company, according to them,

21     can pay their debts when they become due.

22          And so, I would say that on the fact of the motion

23     to dismiss, it is not specifically disputed by Navient

24     Solutions, LLC that that specific debtor entity itself can

25     actually pay its debts when they become due, and that they

Page 58

1  tried to meet that issue by reference to non-debtor entities

2  who are not the subject of the involuntary, who are not the

3  subject of the joinder, and that with all due respect -- and

4  Navient may be trying to give the impression that the

5  alleged debtor can pay its debts when that, in fact, is not

6  true and they don't even make an unequivocal assertion that

7  the alleged debtor itself, divorced from all these other

8  non-debtor entities, has the ability to actually make

9  payments to the student loan borrowers who have been

10 discharged under non-Title 4 loans.

11       And by the way, it's the Middle District of

12 Pennsylvania.  The CFPB case against Navient is United

13 States District Court for the Middle District of

14 Pennsylvania, not the Eastern District or the Western

15 District.

16       And the summary judgment motion in that case filed

17 by the United States government through the Consumer

18 Financial Protection Bureau seeks summary judgment after

19 multiple years of extensive factual discovery saying that

20 after all that fact finding, Navient owes the CFPB on behalf

21 of the federal government over $4 billion.  And that is

22 also, I believe, a relevant issue because, although there's

23 no ruling yet, per se, if in fact the basis for the summary

24 judgment ruling is well founded, I believe that also shows

25 that Navient Solutions, LLC, not any of the other non-debtor

1    entities, non-debtor parent, cannot pay its debts to the

2    federal government, cannot pay it's --

3            THE COURT:  Mr. Wolk, I'm giving you five more

4    minutes and then you're cut off, so make your remaining

5    argument in the next five minutes.

6            MR. WOLK:  Okay.  Well, I think first, it's very

7    important that an involuntary petition is designed for the

8    benefit of the entire creditor class.  All right?  Although

9    Mr. Smith and his petitioning creditors started this case --

10   and at a point in time where I didn't even think it was

11   appropriate based upon what I knew at that time -- upon

12   further due diligence and looking into the actual decisions

13   that exist prepetition, I think that an involuntary is

14   perfectly appropriate because you have discharged student

15   loan debtors all over the nation and they are not required,

16   respectfully -- and I'm happy to brief this issue if given

17   the chance -- all those student loan debtor borrowers are

18   not required as their only remedy to go into their

19   respective local bankruptcy courts, seek to reopen their

20   cases, and then try to apply the Tenth Circuit and the Fifth

21   Circuit ruling in those particular cases.

22           The only thing that the United States Supreme

23   Court addressed in 2019 was that if you sue for contempt of

24   court damages for violation of a discharge injunction, then

25   jurisdiction over the contempt of court damages claim must

Page 60

1    be in the very same court that issued the discharge.  But

2    there are Second Circuit cases -- and again, I'd be happy to

3    provide the Court with it right after the hearing -- that

4    say that that doesn't govern the Federal Fair Debt

5    Collection Practices Act claims, and that that can be

6    addressed outside of the bankruptcy court in which the

7    underlying action took place -- the Second Circuit's ruled

8    on that too; that it would be appropriate to bring other

9    types of claims under statutory violations or common law

10   violations in other courts of competent jurisdiction, non-

11   bankruptcy or bankruptcy.

12          And I believe what's most important and central

13   here is that student debt borrowers nationwide, who in my

14   view whose rights have been vindicated by the Tenth and

15   Fifth Circuit rulings, that they wrongfully paid money --

16   they were caused by Navient to wrongfully pay money for many

17   years post-discharge; they should get their money back.

18   They should get their money back from Navient, whether it's

19   an FDCPA claim, a contempt of court bankruptcy discharge

20   claim, a restitution claim or otherwise.

21          My understanding is that aggregate amount is at

22   least several billion, not even including the federal

23   government's $4-plus billion dollar claim; that's on summary

24   judgment after several years of fact finding from Navient,

25   which is pending.  And according to what I've seen, Navient

Page 61

1    Solutions, LLC -- I'm not talking about its non-debtor

2    parent or any other non-debtor entities -- that those

3    student loan borrowers or the federal government are not

4    going to be able to collect from Navient Solutions, LLC

5    because Navient Solutions, LLC, from everything that I've

6    seen, they don't have the money to pay them.

7              And I do note that in the consolidated accounting

8    filed by the parent -- publicly by the parent, the parent

9    says on respect to it, Navient Solutions, LLC and all other

10   entities, there are no reserves -- no reserves by Navient

11   Solutions, LLC for those several billion dollars in student

12   loan borrower wrongful discharge collection claims.  Nothing

13   for the $4 billion-plus claim of the federal government

14   after several years of fact discovery on its pending summary

15   judgment motion.

16             And that's the only, quote, "litigation reserve"

17   that even exists is solely with respect to a separate $22

18   million claim that the federal government independently has

19   in connection with an administrative proceeding against

20   Navient, but nothing for non-administrative actually pending

21   litigation proceedings by the federal government, by

22   multiple state attorneys' general who have also been suing

23   Navient around the country on pending claims, not the

24   student loan borrowers nationally who under the Tenth and

25   Fifth Circuit rulings are entitled to their money back, and

1   my understanding that's several billion dollars.

2          And nowhere in their motion to dismiss papers,

3   regardless of any issues involving Mr. Smith and any defects

4   that may or may not exist with respect to that and any

5   defects that may or may not exist with respect to my joinder

6   and doing the best I can at the eleventh hour, nowhere does

7   the alleged debtor say that the alleged debtor itself can

8   pay any of those claims or even assert --

9          THE COURT:  All right, your time is up.

10          MR. WOLK:  -- the alleged debtor itself --

11          THE COURT:  Mr. Wolk, your time is up.  Mr.

12   Husnick, any reply?

13          MR. HUSNICK:  Yes, Your Honor, thank you.  I'll be

14   very brief.  I listened very closely to what Mr. Wolk was

15   saying, and unfortunately for Mr. Wolk, the louder you get,

16   it doesn't make your argument more credible.  His argument

17   is not credible.

18          THE COURT:  Let's just address the argument.

19          MR. HUSNICK:  Yeah.  Your Honor, what he said in

20   the joinder, let's look at what they filed.  At the top of

21   page 2 of their joinder, they said it was an adjudicated

22   liability.  That's wrong.  There is no adjudicated liability

23   of the alleged debtor.

24          MR. WOLK:  Yes, there is, and I apologize.

25          THE COURT:  Mr. Wolk.

Page 63

1          MR. WOLK:  Yes, there is.

2          THE COURT:  Mr. Wolk, I'm going to hold you in

3    contempt the next time you do that.  Do you understand?

4          MR. WOLK:  I do, Your Honor.

5          THE COURT:  Respond Mr. Wolk.

6          MR. WOLK:  I do, Your Honor.

7          THE COURT:  I do not want to hear from you again.

8    Go ahead, Mr. Husnick.

9          MR. HUSNICK:  Second, Your Honor, on top of page

10   3, the alleged debtor that is non-contingent, and then he

11   uses the word liquidated.  That term has very significant

12   meaning in the bankruptcy world.  He admitted in his

13   argument -- we don't have a running transcript here, but he

14   admitted that it's an unliquidated claim.  That is a

15   requirement to satisfy 303(b), it is a requirement.  You

16   can't file an involuntary on the bases that they filed.

17          But on top of that, Your Honor, McDaniels, let's

18   talk about the McDaniel's case one more time because it's

19   incredibly important; it only addressed 523(a)(8)(A)(ii).

20   We also have the ability to argue that that loan, that loan

21   to the McDaniels' borrower is dischargeable under 523 -- I'm

22   sorry -- is non-dischargeable under 523(a)(8)(B) and

23   523(a)(8)(A); that's an open issue in the litigation.  All

24   those other issues, I summarized earlier, are open issues in

25   the litigation.  It's the petitioners' burden, Your Honor,

Page 64

1  to show in the pleading, on the face of the pleading; they

2  can't do that.

3          On 303(h), Your Honor, again, Mr. Wolk misstates

4  the law.  It's the petitioners' burden to make the

5  assertion.  That's the A&J Quality case, 377 B.R. 460.  They

6  did nothing.  You can't just react on the call and throw out

7  reckless accusations about solvency, insolvency; that's not

8  enough.

9          Your Honor, this is a strike suit, and it needs to

10  be dismissed.  There's nothing in the petition that supports

11  an involuntary petition of Navient.  Thank you.

12          THE COURT:  All right.

13          MR. WOLK:  Your Honor, may I have one minute to

14  respond to his newest --

15          THE COURT:  No, you may not.  No, you may not.

16  Mr. Wolk, you may not.

17          All right.  Pending before the Court is the motion

18  to dismiss the involuntary petition filed by three

19  petitioning creditors; the motion was filed as ECF Docket

20  No. 14.  The order scheduling today's hearing and requiring

21  a response, ECF 19, was filed on February 18, 2021, and your

22  response had to be filed by February 22nd at 12:00 noon.

23          I recited out the outset that no response was

24  filed, an extension of time was given, and no response was

25  filed.  And the purported joinder in the involuntary

Page 65

1    petition was filed by Mr. Wolk, who requested an

2    adjournment, which was denied.

3           While no opposition was timely filed or was filed

4    at all to the motion to dismiss, the Court has nevertheless

5    had extensive argument today addressing the issues

6    surrounding the involuntary petition that was filed.

7           An order will be entered dismissing the

8    involuntary petition because the claims asserted of the

9    three petitioning creditors are subject to bona fide

10   disputes as to liability and amount.

11          And with respect to the joinder, which purports to

12   assert an assigned claim, does not provide details to show

13   that it involves a claim that is not disputed as to

14   liability or amount.

15          Additionally -- and that was under 303(b) -- under

16   303(h), the involuntary petition does not provide any non-

17   conclusory allegation that the alleged debtor is not

18   generally -- is generally not paying its debts as they come

19   due.

20          Additionally, the involuntary petition is

21   dismissed under Section 305(a) based on abstention.  This is

22   a case where multiple lawsuits are pending, including an

23   appeal pending the Second Circuit on direct appeal from the

24   Eastern District.  There are many issues that are going to

25   have to be resolved before there are creditors with claims

Page 66

1    that are not disputed as to liability or amount.  The proper

2    place for that litigation to proceed at this stage is in the

3    courts that are currently grappling with the issues, and not

4    jumping the que, if you will, by filing this ill-informed

5    involuntary petition.

6           The issues raised by Crocker and McDaniel are

7    serious issues, and it may well be that many bankruptcy

8    debtors or past bankruptcy debtors have valid claims that

9    they can assert that their student loans were discharged in

10   their cases and that money was improperly collected

11   thereafter by Navient Solutions.  But it is a far cry to say

12   that liability is not disputed, and the amount of any

13   liability disputed; it clearly is.

14          Whether Navient is able to satisfy the ultimate

15   obligations that may be determined or whether it ultimately

16   must proceed in a bankruptcy case remains to be seen.  This

17   is not the case to jump the que with the effect that all

18   litigation against Navient Solutions, if an order for relief

19   is entered, will be subject to the automatic stay.  The

20   appropriate place for these issues to get resolved are the

21   courts across the country in which those issues are pending.

22   No class action has been certified at this stage.

23          Class certification proceedings are pending in the

24   Crocker case, but not with respect to a nationwide class and

25   no class has been certified.  McDaniel is not a class

Page 67

1   action, and the Second Circuit may address the issue in the

2   pending appeal before it, whether a nationwide class can be

3   asserted in Homaidan case, but that has not yet been

4   decided.

5         Mr. Husnick, prepare a brief order granting the

6   motion to dismiss for the reasons stated, and indicating

7   that an opinion will follow in due course further

8   elaborating on the reasons I've given today, but it's time

9   for this case to be dismissed and litigation elsewhere can

10   proceed unaffected by this involuntary Chapter 11 case.

11   That's going to be the Court's ruling.

12         So a brief order, as I say, should grant the

13   motion to dismiss can indicate it's on 303(b), 303(h), and

14   also for extension under Section 305(a), and with an opinion

15   to follow.

16         MR. HUSNICK:  Thank you, Your Honor.

17         THE COURT:  We're adjourned.

18         MR. HUSNICK:  Your Honor, I have one question, if

19   I may?

20         THE COURT:  Yes, go ahead quickly.

21         MR. HUSNICK:  Yes, very quickly.  You did not

22   mention the damages.  Would we be able to include a

23   reservation for that issue?

24         THE COURT:  As I think you indicated earlier, Mr.

25   Husnick, in the PPG case, I did not deal with the PPG case,

Page 68

1    I did not deal with any damages that might be recoverable

2    when an involuntary is dismissed, and I'm not going to do

3    that now either.  I'm not foreclosing you from bringing a

4    properly supported application to do that, but I'm not

5    ruling on that at this stage.

6                MR. HUSNICK:  Thank you, Your Honor.

7                THE COURT:  That's exactly what I did in PPG.

8                MR. HUSNICK:  Thank you.

9                THE COURT:  We're adjourned.

10                (Whereupon these proceedings were concluded at

11    11:41 AM)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 69

1                       C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  March 1, 2021

[& - accurate]                                                                    Page 1

**&**

**&**   3:3 6:17,22,25
7:5 11:11 37:2

**1**

**1**   17:17 69:25
**10**   50:13 54:10
**10001**   4:12
**10004**   1:14
**10014**   4:19
**10022**   3:6
**1003**   11:5 30:9
31:11,22,22 32:7
32:14 45:3,4,5,7
45:20,21,22,22,24
47:7 52:6
**1006**   4:18
**10105**   4:4
**10:11**   9:20
**11**   11:4 18:25
41:14 42:24 52:5
54:19 56:6 67:10
**11501**   69:23
**11:04**   10:18
**11:41**   68:11
**12**   9:9,14,23 10:7
15:24 16:3 33:10
33:10,14
**12:00**   8:23 9:7
64:22
**13**   28:15
**1345**   4:3
**14**   2:1 8:17 11:24
64:20
**16**   2:1
**16,750**   16:6 32:25
**17**   8:17
**18**   8:21 9:25 64:21
**19**   2:1 8:20 64:21

**2**

**2**   62:21
**2.4**   15:5,9

**20**   2:1 9:25
**2004**   19:24
**2007**   17:6
**201**   4:18
**2010**   17:7
**2011**   18:25
**2019**   52:9 57:2
59:23
**2020**   24:25 57:3
**2021**   1:16 8:17,21
9:25 11:3,10
17:24,24 64:21
69:25
**2022**   13:15
**20th**   17:24
**21-10249**   1:3 6:4
8:15
**219525**   17:24
**22**   61:17
**22nd**   8:23,24 9:8
9:13 44:18 64:22
**232196**   3:16
**23rd**   9:18,20 10:6
11:3,6
**24**   9:22 10:1,11
**24th**   11:10
**25**   1:16
**29**   2:1

**3**

**3**   63:10
**30**   9:6 17:17 44:24
**300**   69:22
**303**   11:5 15:16,16
15:17 18:19 22:1
32:21,24 33:5,20
33:25 34:9 37:3,6
37:10 41:22 52:5
54:20 56:7 63:15
64:3 65:15,16
67:13,13
**305**   15:16 39:25
41:8 65:21 67:14

**30th**   19:24
**31**   4:11 9:7
**32**   9:11
**33**   9:19
**330**   69:21
**338**   56:22
**34**   10:4,22
**34th**   4:11
**35**   2:1 11:3
**36**   10:10
**37**   2:1 11:9
**377**   64:5
**38**   2:1
**39**   2:1 11:10

**4**

**4**   17:4 26:6 34:20
42:6,8,9,14,17
49:14,18 50:24
51:4 52:14,17
55:21 58:10,21
60:23 61:13
**40**   2:1
**45,683.64**   16:11
**460**   64:5
**4:10**   10:6

**5**

**514**   31:16
**523**   19:4 21:3,6
22:7,11 26:7,8
27:9 28:8 42:7
63:19,21,22,23
**5:00**   9:5,10,23
10:2 44:23
**5:01**   9:8
**5:13**   9:13

**6**

**601**   3:5
**60525**   3:23
**607**   56:22
**6:19**   9:15

**7**

**7**   17:5 28:15 42:24
**7040**   4:11
**768**   31:16
**77**   3:22

**8**

**8**   19:4 21:3,6 22:7
26:7,8 27:9 28:8
42:7 63:19,22,23
**800**   3:15
**84**   14:16
**85**   15:8 34:17
**87.4**   15:7
**87.5**   34:17

**9**

**9**   15:24 16:9
**90,000**   17:17
**9:15**   9:18
**9:49**   10:11
**9:51**   8:24 44:18

**a**

**a&j**   64:5
**a.m.**   8:22,24 9:18
9:20 10:11,18
44:18
**ability**   40:24
44:16 58:8 63:20
**able**   9:4 30:12
31:6 35:7,20
38:11 44:8,22
47:2 54:14,24
56:11 61:4 66:14
67:22
**absolutely**   7:13
40:23 47:23 49:20
50:4
**abstention**   40:2
65:21
**access**   27:8
**accounting**   61:7
**accurate**   34:25
44:11 69:4

accusations 64:7
act 50:18 60:5
acted 46:2
action 20:7 28:23
 60:7 66:22 67:1
active 32:18
actively 35:23
actual 59:12
add 55:18
additionally
 65:15,20
address 21:7 29:8
 32:13 41:8 44:25
 45:3 46:7 49:12
 50:7 62:18 67:1
addressed 27:3,23
 29:10,12 49:15
 59:23 60:6 63:19
addressing 51:16
 65:5
adjourned 67:17
 68:9
adjournment 11:8
 11:13,14 43:10
 54:19,23 65:2
adjudicated 49:10
 49:15 62:21,22
administration
 40:9
administrative
 61:19,20
admitted 63:12,14
adopted 27:12
 31:14
adversary 17:10
 17:11,12,12 19:1
 19:19 20:2,12
 21:13 22:9,12
adverse 57:5
advocate 14:14
affirmative 21:21
afternoon 46:3

aggregate 16:6
 55:22 60:21
aggregating 32:25
ago 30:22
agree 21:6,9 22:7
 25:8 26:18,23,24
 26:25 31:8 50:1,2
 51:18
agreed 11:18,19
 13:12 30:21,22
ahead 14:9 18:7
 27:14 38:18 39:17
 43:10 46:11 50:8
 63:8 67:20
alex 5:14
alexander 5:11
allegation 37:20
 65:17
allegations 34:13
alleged 3:14,21
 4:2 6:18 7:14,18
 8:15 13:5,5 21:24
 34:21,21 43:14
 54:22 55:24 57:4
 57:5,7,14,14,17
 58:5,7 62:7,7,10
 62:23 63:10 65:17
allegedly 20:4
allow 46:7,13,13
 49:12 50:11 52:19
allowed 32:3
allowing 56:17
alternative 40:10
amended 9:24
americas 4:3
amount 15:22
 16:7,24 17:16
 18:18 21:23 22:2
 26:12,17 33:1,3
 39:8 49:11 52:24
 52:25 53:1,2
 60:21 65:10,14
 66:1,12

amounts 34:24
ana 5:13
anderson 6:3
 10:12,17
andrea 4:21 8:6,8
 8:10
annelyse 3:9 6:21
annex 31:23
announcements
 6:6
answer 24:10,12
 25:13,18 41:20
 48:3 51:15
answered 38:15
 38:16
anticipate 20:19
anticipation
 47:12
anyway 40:20
apologize 38:21
 62:24
apologizes 10:3
apparently 49:7
appeal 17:25
 23:17,18 24:3
 57:4,7 65:23,23
 67:2
appeals 23:5
appearance 6:15
 6:20 7:2,8,12 8:11
 43:6
appeared 54:13
appearing 6:17
 7:1,3,14
appellate 52:7,8
 52:23 56:7,8
applicable 26:9
 53:13
application 8:18
 52:5 57:3 68:4
apply 29:4 59:20
appointed 14:4,5

appropriate
 29:11 47:16 59:11
 59:14 60:8 66:20
approved 9:14
 13:9 17:18,19
area 44:2
argue 20:20 43:11
 54:13,24 63:20
arguing 46:11
argument 15:19
 24:5,16 27:15,17
 27:25 34:15 38:18
 41:19 43:8 54:12
 59:5 62:16,16,18
 63:13 65:5
array 57:18
articulate 42:13
articulated 22:18
aside 25:23 30:19
asked 34:14 43:9
asking 10:12
 54:23 55:5
assert 28:7 42:15
 54:5 62:8 65:12
 66:9
asserted 15:7,20
 20:7 21:21 39:9
 54:15 55:4 65:8
 67:3
asserting 16:18
assertion 33:20
 34:19 37:13 38:11
 38:13 41:17,17
 58:6 64:5
assertions 44:11
asserts 20:4
assets 15:8 34:17
 40:9,23 41:16
assignable 30:18
assigned 65:12
assignment 32:15
 32:16 45:23 46:17
 46:24,24,25 47:4

assignor 31:3
associated 15:15
assume 23:15
  25:1,5
assuming 34:18
athletic 31:16
attach 45:10
attaching 45:8
attachment 45:23
attempt 34:3
attend 43:17 44:8
attendance 17:4
attention 56:11
attorney 46:18
attorneys 3:4,14
  3:21 4:2,9,17
  61:22
authority 54:14
automatic 66:19
automatically
  21:12
availability 40:10
available 47:17
avenue 3:5 4:3
aver 15:25 34:1
avoid 10:15
awaiting 36:6
aware 12:23
  42:24 52:7

**b**

b 1:21 4:8,14,21
  7:25 11:5 15:16
  15:17 18:19 22:1
  26:8 32:21,24
  33:10,10,14 45:21
  45:22 47:7 52:6
  54:20 63:15,22
  65:15 67:13
b.r. 31:16 56:22
  64:5
back 23:1 29:18
  36:16,25 60:17,18
  61:25

background 6:9
  6:10
bad 14:23 31:17
bald 33:24
bankruptcy 1:1
  1:12,23 11:6
  14:17,21 17:19
  18:19 19:1,17,22
  22:8 23:2 24:7
  28:11,17,18,20
  29:11,15,19 30:9
  32:7 33:5 34:7
  39:1,6 40:22
  41:18 45:2 50:17
  52:5,8,13 53:16
  56:7,16 59:19
  60:6,11,11,19
  63:12 66:7,8,16
bannister 17:3,3,5
  17:9,23 25:23,23
bannister's 17:14
bap 56:25
bar 27:4 31:17
bare 11:22 30:7
barred 21:19
base 29:21
based 15:11 20:16
  45:20 46:22,23
  48:9,21 59:11
  65:21
baseline 31:12
bases 15:15 41:20
  63:16
basically 21:2
  37:17
basis 12:2 29:22
  33:4 37:7 38:19
  44:10 53:6 54:7
  58:23
bear 11:2,6 25:22
behalf 6:17,22,25
  7:14,18,22 11:1
  37:2 43:6 53:19

54:5 58:20
belatedly 43:16
belief 46:22
believe 22:15
  24:19 25:13,18
  27:7,8 28:13 30:6
  32:10,20 35:2,5
  35:12 37:9 42:4
  44:13 46:6 47:7
  50:14 52:9,11
  53:22 56:22 58:22
  58:24 60:12
believes 28:16
  46:14 53:12
benefit 21:4 22:11
  25:7 26:1 59:8
best 10:15 32:15
  50:25 62:6
beth 24:13 39:11
  39:15
better 49:24
beyond 18:13
billion 14:16 15:5
  15:8,8,9 16:12
  34:17,17,20 55:23
  58:21 60:22,23
  61:11,13 62:1
binding 28:4
bit 10:13 20:24
body 52:12
bona 15:21 16:7
  16:23 17:2 18:13
  18:17 19:13 20:23
  22:1 31:1 33:1
  37:15 42:18 52:23
  65:9
bones 11:22 30:7
borne 27:6
borrower 21:14
  21:18 28:19 61:12
  63:21
borrowers 52:12
  52:17 55:21 58:9

59:17 60:13 61:3
  61:24
bound 55:2
bowling 1:13
bridge 20:8
brief 6:5 38:20
  50:11 52:20 53:5
  54:7 59:16 62:14
  67:5,12
briefed 24:5,16,22
  24:24 35:24,25
  36:5
briefing 30:23
briefly 18:24 30:5
  43:10 55:18
bring 56:11 60:8
bringing 68:3
broad 29:3
broadcasts 14:12
brought 20:12
burden 16:19
  34:8 41:2 63:25
  64:4
bureau 58:18
burge 5:5
business 12:15
businesses 12:19
buyers 12:21

**c**

c 3:1 6:1 11:5 52:5
  69:1,1
caesar's 38:9
calculation 15:11
call 39:4 64:6
called 43:23
calls 57:19
canal 3:15
cancer 43:23,25
  44:1,4,15
candid 49:23
cantor 5:8
cap 34:16

[capacity - commenced] Page 4

capacity 53:4
capital 4:10 8:2
  46:14 52:10 53:3
  53:7,11,19
capitalization
  15:4
caps 10:9
care 44:3
careful 38:16
case 1:3 6:4,4 11:4
  12:1,3 13:11,18
  13:21,25 17:5,9
  17:23 18:4,25
  19:23 20:13 21:8
  22:3,4,19,24 23:1
  23:7,16,19,20
  27:5 28:12,13,17
  28:19 31:14,16
  32:15,24 35:21,22
  35:23 40:2 42:1
  42:12,22 43:3
  45:11,13,13 50:10
  50:10 52:8 53:15
  53:17,17,18,20,21
  53:23,24 54:8,14
  54:16,25 55:1,3,6
  55:16 56:6,7,8,15
  56:18 57:4 58:12
  58:16 59:9 63:18
  64:5 65:22 66:16
  66:17,24 67:3,9
  67:10,25,25
cases 23:4,12,14
  27:5,20 28:18,23
  29:4 31:18 33:9
  33:11 42:4 49:3
  53:25 54:2 59:20
  59:21 60:2 66:10
caused 60:16
central 60:12
certain 13:10
  19:10 30:17

certainly 18:16
  21:23 27:24 29:24
  45:12 55:1
certification
  29:14,19 30:2
  66:23
certified 14:7 23:7
  28:24 29:20 53:8
  66:22,25 69:3
cetera 26:13
cezary 5:16
cfpb 34:22 35:3,8
  36:10 58:12,20
chad 3:8 6:16
  37:1
challenge 19:20
chambers 11:12
chance 54:24
  59:17
chapter 17:5
  18:24 28:15,15
  41:14 42:24,24
  43:2 45:9 67:10
charles 5:12
chicago 3:23 44:2
  44:2
chose 48:19
christopher 5:18
church 5:9
chutchian 5:4
circuit 23:1,17,18
  24:3 25:4,4,9,10
  25:15,16 26:22
  27:1 28:25 29:6,8
  29:18 30:3,4 35:6
  35:12 40:13,15
  42:5 45:15,15,19
  46:23 49:4,8
  50:10,10,21 51:6
  51:9,10 52:8,15
  52:15 54:4,5,6,16
  54:25 55:1,2,3
  56:25 57:7 59:20

59:21 60:2,15
  61:25 65:23 67:1
circuit's 20:21,22
  28:25 60:7
circuits 19:7
  25:12,17 27:13
  28:3
circumstance
  18:23
circumstances
  18:21 40:4 43:7
citation 56:18
claim 16:23 18:15
  18:16,17 20:4,9
  20:10,16 29:13
  30:5,13,16,25
  31:3,19,23 32:12
  32:13,15,16 33:15
  33:16,18 35:3
  38:13 42:11,18
  45:6,8,23 46:15
  46:22 47:1,15,17
  51:24 52:11 53:12
  53:14 54:3,5
  59:25 60:19,20,20
  60:23 61:13,18
  63:14 65:12,13
claims 13:3,5
  15:19 16:8,17
  17:2 20:7,22
  30:11,17 32:11,25
  34:21,21,22 38:2
  38:3 39:8 40:17
  40:20 52:22,24
  60:5,9 61:12,23
  62:8 65:8,25 66:8
class 14:4,5,6,6,8
  20:6 23:7 28:23
  28:24 29:14,19,20
  30:1 46:25 47:1
  53:8,14,20 54:5
  59:8 66:22,23,24
  66:25,25 67:2

clean 9:3,5 27:10
  44:22,23
clear 14:3,11,13
  14:19 29:20 51:8
clearly 39:14
  66:13
clerk 6:2,13,14,19
  6:23 7:1,4,7,11,16
  7:17,20,21,23 8:3
  8:6,10 9:15 10:13
clerks 9:12
client 30:15
clients 13:10
  14:14
close 9:11,16
closed 44:23
closely 62:14
code 18:19 30:9
  33:5 50:17
colleague 31:13
collect 50:19,22
  51:4 61:4
collected 16:11
  39:3 52:25 53:1
  66:10
collection 21:15
  41:3 50:18 60:5
  61:12
collections 49:14
colorado 12:24
  13:12 46:18
come 10:14 29:7
  33:21,22 34:2
  37:5,14,20,23
  38:6,10 40:24
  41:1 51:18 57:16
  65:18
comes 19:6
coming 32:12
commence 19:19
  22:9 45:9,13
commenced 13:2
  13:7 14:15 17:5,9

[commenced - cut]        Page 5

17:9,11 18:24
19:1,17 20:2
**commencement**
13:18
**commencing**
45:11
**comment** 34:16
**comments** 30:7
**common** 60:9
**company** 12:13
14:16 15:4 43:1
57:19,20
**company's** 12:19
**competent** 47:2
60:10
**complaint** 15:7,10
16:2 33:13
**completely** 41:25
**complications**
10:16
**complied** 32:4
**comply** 32:6 45:2
**computer** 56:20
**concept** 48:16
**concern** 40:23
**concerning** 10:19
**concessions** 17:15
**concluded** 28:3
68:10
**concludes** 41:19
**conclusion** 28:2
**conclusory** 37:20
65:17
**confident** 9:4
44:22
**confirm** 24:19
35:13
**congress** 34:7,9
**connected** 43:24
**connection** 8:15
21:25 23:4 47:18
53:14 61:19

**consent** 11:13,16
11:17,19
**consider** 11:25
40:8
**considered** 40:6
**consolidated** 61:7
**consumer** 58:17
**contact** 47:16
**contacted** 47:23
**contempt** 59:23
59:25 60:19 63:3
**context** 17:15
28:23 41:13
**contingent** 15:22
63:10
**continue** 11:19
**contracts** 12:21
**contrary** 25:9,11
25:17 49:1 51:10
**copy** 31:24,24
**corporation** 12:12
12:13 15:2,3
**correct** 7:16,23
23:2,3 24:21 25:3
29:15,16,18,24
32:7,8 51:19 52:1
53:9,10,10,10
54:17 56:23
**correctly** 6:12 7:9
21:3 25:5 27:4
**counsel** 7:8 8:1,25
9:2,4 10:1,2 12:1
13:1,23 14:5,7
15:7 18:9 24:11
24:20 30:21 31:6
32:18 35:11,15,22
43:14 44:20,22
47:16
**counsel's** 13:18
14:10
**country** 12:23
26:22 61:23 66:21
69:21

**coupled** 34:19
**course** 6:21 33:6
67:7
**court** 1:1,12 6:2,7
8:13 9:11,24
10:15 11:7,15
13:8,20,25 14:9
14:24 15:1,12
17:18,19,21 18:2
18:7,10,20 19:22
20:1 21:1,7,9 22:7
22:18,24,25 23:8
23:10,15,22,24
24:2,7,11,15,22
25:1,9,10,14,19
25:21 26:15 27:14
27:21 28:11,15
29:2,3,14,15,19
29:23 31:3,7,21
32:5 33:13,18
35:1,3,7,10,16,17
35:20 36:2,6,8,11
36:14,16,20,24
37:8,16,18 38:18
38:21,24,25 39:1
39:1,6,13,17,20
39:22 40:13 42:3
42:10 43:5,13,23
43:25 44:17 46:9
47:2,9,11,20,25
48:5,12,17,22
49:17 50:1,5,8
51:9,10,12,15,21
53:7,16,17,23
54:1,4,8,12,21
55:8,11,15,17,25
56:3,12,18,24
57:9 58:13 59:3
59:23,24,25 60:1
60:3,6,19 62:9,11
62:18,25 63:2,5,7
64:12,15,17 65:4
67:17,20,24 68:7

68:9
**court's** 56:16
67:11
**courtroom** 10:12
10:17
**courts** 19:10 23:1
23:2 40:8 41:8
59:19 60:10 66:3
66:21
**courtsolutions** 2:2
**coverage** 49:7
**covered** 42:6
**craig** 24:8
**credible** 40:23
41:17 62:16,17
**creditor** 4:9 8:1
30:12 46:25 52:11
53:4 59:8
**creditors** 8:25
11:1 15:24 16:1,3
16:5,10 17:2
18:21 20:16 40:3
43:7 46:5 49:18
49:22 52:18,21,22
56:10,13,13 57:6
59:9 64:19 65:9
65:25
**crocker** 14:3,4
20:21 22:3,25
23:7,10 25:3,5
26:2,7,20 27:3,12
27:18,23 28:25
29:14 41:25 52:16
66:6,24
**cross** 36:11
**crosstalk** 48:4
**cry** 66:11
**current** 15:3
35:21 36:4
**currently** 36:6
66:3
**cut** 59:4

| d | | | |
|---|---|---|---|
| **d**  6:1 23:23 | 55:24 57:7 59:15 | **designed**  59:7 | **discretion**  40:1 |
| **d.c.**  35:6,12 | 66:8,8 | **despite**  20:11,12 | **discuss**  49:17 |
| **damages**  2:3 13:5 | **debts**  33:21,22 | **details**  65:12 | **discussion**  25:2 |
| 15:14 16:17 41:21 | 34:2 37:4,11,14 | **determine**  22:10 | 48:23 |
| 59:24,25 67:22 | 37:14,19,23 38:6 | 40:2 41:11 | **disdain**  13:18 |
| 68:1 | 40:24 41:1 51:17 | **determined**  66:15 | 14:10 |
| **date**  24:17 38:8 | 51:25 57:12,16,21 | **device**  6:8 | **dismiss**  2:2 8:16 |
| 69:25 | 57:25 58:5 59:1 | **different**  25:23 | 8:16 10:21,24,25 |
| **dawson**  31:16 | 65:18 | 29:7,25 | 11:23 12:3,8 23:5 |
| **day**  9:6,13,15 10:5 | **decades**  16:14 | **diligence**  45:14 | 33:11,14 40:1 |
| 10:18 52:19 | **decide**  25:5 29:19 | 59:12 | 54:13,22 57:13,23 |
| **days**  44:6 50:13 | **decided**  23:4 | **diligently**  9:2 | 62:2 64:18 65:4 |
| 56:5 | 27:22 46:3 67:4 | 44:20 | 67:6,13 |
| **deadline**  9:1,10 | **decision**  17:25 | **direct**  23:18 65:23 | **dismissal**  14:23 |
| 9:23 44:19 | 20:21,22 21:9 | **directly**  43:24 | 15:14,14 32:20 |
| **deadlines**  13:13 | 25:11 26:7,21,25 | 46:16 | 33:4 37:7 38:19 |
| **deal**  29:7 44:3 | 28:25 29:3 42:10 | **disagree**  21:4 | 39:25 40:5,7 |
| 67:25 68:1 | 42:22 51:10 52:7 | 54:18 | **dismissed**  16:25 |
| **dealt**  28:22,23 | 56:16 | **discern**  33:8 | 37:6 57:7 64:10 |
| 46:15 | **decisions**  20:25,25 | **discharge**  16:12 | 65:21 67:9 68:2 |
| **deanna**  6:3 8:8 | 25:4 26:20 27:24 | 17:6,10 18:25 | **dismissing**  43:3 |
| 10:12,17 | 45:20 49:8 51:9 | 20:3,6,13 21:12 | 65:7 |
| **debt**  12:18 19:3,9 | 59:12 | 21:16,18,20 22:13 | **dispositive**  26:8 |
| 20:18 38:7,8 | **deduct**  34:20 | 22:14 25:7 29:2,4 | **dispute**  15:21,23 |
| 45:17 50:18 60:4 | **deems**  45:25 | 49:14 50:23 51:4 | 16:7,23 17:2 |
| 60:13 | **defective**  14:17 | 59:24 60:1,17,19 | 18:14 19:13 20:23 |
| **debtor**  1:9 3:4,14 | **defects**  56:14 62:3 | 61:12 | 22:2,24 26:18 |
| 3:21 4:2 6:18,22 | 62:5 | **dischargeability** | 31:1 33:1,3 37:15 |
| 7:6,14,18 12:9,12 | **defelice**  5:14 | 19:9,20 | 42:19 52:23 |
| 21:11,17,19 22:8 | **defense**  21:21,22 | **dischargeable** | **disputed**  13:4 |
| 28:16 30:12 34:2 | **deficiencies**  32:10 | 17:14 19:3,3,5 | 26:16 34:23 57:23 |
| 37:13 38:5 40:3 | **deficient**  34:4 | 63:21,22 | 65:13 66:1,12,13 |
| 51:24 57:4,5,14 | **define**  57:17 | **discharged**  20:5 | **disputes**  13:4 |
| 57:14,18,18,19,24 | **definitely**  20:25 | 20:11,18 22:11,20 | 40:11 65:10 |
| 58:1,5,7,8,25 59:1 | **defrauded**  16:13 | 28:17,20 39:2,10 | **distinction**  27:1 |
| 59:17 61:1,2 62:7 | **denied**  10:5 54:23 | 52:17 55:21 58:10 | **distribution**  40:22 |
| 62:7,10,23 63:10 | 65:2 | 59:14 66:9 | 41:16 |
| 65:17 | **department**  4:16 | **discharges**  52:13 | **district**  1:2 17:6 |
| **debtor's**  42:12 | **depending**  44:14 | **disclose**  18:12 | 17:20 19:18,25 |
| **debtors**  8:16 | **deprive**  57:6 | 30:8 | 23:19 29:2,21,23 |
| 13:23 16:13 37:11 | **deputy**  6:3 10:12 | **discovery**  13:13 | 31:15 35:17,19 |
| 37:19 43:14 54:22 | 10:17 | 30:23 58:19 61:14 | 36:18,18 39:1 |
| | | | 58:11,13,13,14,15 |

65:24
**dive** 12:7
**divorced** 58:7
**doc** 2:1
**docket** 8:17,20
9:6,7,11,17,19
10:3,10,22 11:3,8
11:10,11,24 64:19
**documents** 31:25
45:5
**doing** 50:25 62:6
**dollar** 39:8 60:23
**dollars** 55:23
61:11 62:1
**drafting** 10:3
**drive** 3:22
**due** 33:21,22 34:3
37:5,11,14,20,23
38:6,8,10 40:24
41:1 45:14 51:18
51:25 56:9 57:12
57:21,25 58:3
59:12 65:19 67:7

**e**

**e** 1:21,21 3:1,1 6:1
6:1 69:1
**earlier** 30:22
44:17 63:24 67:24
**earliest** 13:15
**east** 3:15
**eastern** 23:18
31:15 35:19 36:17
58:14 65:24
**easy** 37:18
**ecf** 8:17,20,25 9:5
9:7,9,11,19,21,25
10:3,10,20,21,22
11:3,8,10,24
44:18,24 64:19,21
**economic** 40:8
**economical** 40:16
**ecro** 1:25

**educational** 12:14
12:15 21:4 22:10
25:7 26:1
**effect** 66:17
**efficiency** 40:9
**efficient** 40:16
**effort** 41:12
**efforts** 21:15
**either** 23:10,12,14
29:25 47:12 68:3
**elaborating** 67:8
**electronic** 6:8
**element** 51:23
**elements** 33:15
**eleventh** 62:6
**eligible** 16:5 20:15
**elizabeth** 3:18 5:6
7:13
**elliott** 5:19
**ellis** 3:3 6:17,22
6:25 7:5 11:11
37:2
**email** 9:12,15
**emailed** 10:17
52:4
**emails** 14:12
**embroiled** 12:22
**endorsed** 10:7
**endorsement** 9:17
**engaged** 13:8,8
**enter** 43:3
**entered** 8:21
20:14 23:11,12,14
39:6 65:7 66:19
**entire** 16:16 45:16
52:11 59:8
**entirely** 40:18
**entities** 57:19 58:1
58:8 59:1 61:2,10
**entitled** 21:12
50:20 61:25
**entity** 12:20 57:15
57:24

**equitable** 40:22
41:16
**equivalent** 14:21
**error** 10:3
**espinoza** 22:19
**essence** 14:22
**essential** 51:23
**essentially** 26:19
**establish** 47:2
50:14 53:12
**established** 21:17
49:10,11
**estimation** 49:9
**et** 26:13
**everybody** 8:13
**everybody's**
42:23
**evidence** 11:21
**evidencing** 31:25
**exactly** 27:19
31:18 32:2 68:7
**exam** 27:4
**example** 37:25
**examples** 37:25
38:1,7
**excepted** 25:6
**exception** 26:8
**excess** 15:5 16:3
53:1
**excuse** 13:20
19:19 31:21
**exert** 41:4
**exhaustive** 50:13
**exist** 55:13,16
56:14 59:13 62:4
62:5
**exists** 31:13 53:15
61:17
**expect** 12:1
**expedited** 2:2
23:17 53:6 54:7
**explain** 12:2
46:13

**extension** 9:1,6,10
9:14,22,23 10:8,8
10:22 44:19 64:24
67:14
**extensive** 49:7
51:11 58:19 65:5
**extent** 26:25
**extort** 41:5
**extract** 41:12

**f**

**f** 1:21 69:1
**face** 15:6,10 16:1
16:2 31:5 33:7,8
34:1 55:23 64:1
**facially** 14:17
30:6 32:6
**facie** 32:23
**facilitating** 41:15
**fact** 13:2 14:22
18:12 19:8 20:12
21:18 30:21 46:7
48:25 50:14 55:20
57:22 58:5,20,23
60:24 61:14
**factor** 40:8 41:7,8
**factors** 40:6
**facts** 13:16 27:3,6
33:17 42:13 56:1
56:12
**factual** 21:13 22:6
58:19
**fail** 16:24
**failed** 16:22 32:23
**failure** 18:5,8
**fair** 50:18 60:4
**faith** 14:23 31:17
**fall** 51:22
**false** 20:17 21:21
**familiar** 18:3
**far** 14:18 40:12,15
53:15 66:11
**farrell** 5:10

**fashion** 29:5
**fdcpa** 60:19
**fears** 9:3 44:21
**february** 1:16
   8:17,21,23,24 9:8
   9:13,18,20,25
   10:6,11 11:3,6,10
   44:17 64:21,22
**federal** 11:5 35:16
   50:17,18 52:5
   54:4 58:21 59:2
   60:4,22 61:3,13
   61:18,21
**fide** 15:21 16:7,23
   17:2 18:13,17
   19:13 20:23 22:1
   31:1 33:1 37:15
   42:19 52:23 65:9
**field** 31:16
**fifth** 20:21 25:4
   25:11,17 28:3,25
   28:25 29:8,18
   42:5 45:15,19
   49:4,8 50:10,21
   51:6 52:15 59:20
   60:15 61:25
**file** 10:2 19:22
   30:10 33:13 38:12
   41:2 43:15 45:6
   45:25 46:17 47:4
   48:19 49:24 50:3
   50:5 63:16
**filed** 8:16,17,20
   8:25 9:8,20 10:19
   10:20,20,25 11:4
   11:7,8,11,20,23
   14:15 30:15 31:11
   36:8 43:9 44:18
   45:2 47:13,24
   48:1,22 49:5 52:3
   52:4 58:16 61:8
   62:20 63:16 64:18
   64:19,21,22,24,25

65:1,3,3,6
**filing** 15:15 31:17
   41:9,11 45:22
   47:12,21 48:1,6
   48:13,24 66:4
**filings** 34:18
**filled** 14:20
**financial** 58:18
**find** 41:8 43:15,16
   43:17
**finding** 19:2 58:20
   60:24
**fine** 35:10
**fingertips** 54:9
**finish** 57:10
**firm** 29:10
**first** 11:13 15:16
   23:16 27:2 40:8
   43:12 45:4 47:11
   48:13,15 49:25
   52:3,4 54:19
   55:19 59:6
**five** 9:1 17:3
   44:19 59:3,5
**flaherty** 5:3
**fleischman** 5:15
**florczak** 3:25 7:16
   7:17,18
**flown** 44:1
**focus** 34:3
**follow** 67:7,15
**followed** 14:20
**following** 10:6
**fora** 29:11 40:10
**foreclosing** 68:3
**foregoing** 69:3
**foremost** 49:25
**forever** 31:16
**forget** 42:11
**formally** 9:17
**forms** 13:3
**forth** 9:10,24
   13:13 18:18

**fortunately** 30:14
**forum** 41:4
**founded** 58:24
**four** 44:5
**foursquare** 26:19
**fox** 4:6 7:20,21,22
**free** 42:18
**fresh** 41:15
**front** 18:2 27:19
   28:11 55:14
**full** 7:12
**fully** 24:5,16,22
   24:24
**fundamental** 20:9
   20:10
**fundamentally**
   20:17
**further** 10:8,15
   27:21 41:10 57:4
   59:12 67:7
**furthermore**
   16:10

### g

**g** 6:1
**gains** 3:9 6:19,21
   6:21
**garrity** 18:3
**garrity's** 17:23,25
   25:24
**general** 20:3
   49:22 61:22
**generally** 25:6
   33:22 34:2 37:4
   37:11,13,19,22
   38:6 51:17,24
   57:12,16 65:18,18
**georgia** 19:18,25
   28:12 29:24
**getting** 56:5
**give** 6:14,19 7:11
   19:14 37:25 53:17
   53:18,20 54:10
   55:2 58:4

**given** 11:17 56:10
   59:16 64:24 67:8
**giving** 59:3
**gladstone** 5:11
**glenn** 1:22 8:14
**glenn's** 6:2
**glitch** 26:22 28:18
**go** 14:9,24 15:1
   16:20 18:4,7 21:1
   21:7 26:11 27:14
   38:18 39:17,22
   43:3,10 46:11
   50:8,16 59:18
   63:8 67:20
**goes** 31:25
**going** 6:3 7:7
   11:22 12:1,4 16:9
   28:17 40:18 45:8
   51:21 56:19 61:4
   63:2 65:24 67:11
   68:2
**good** 6:2,16,24
   7:21,24 8:13
   48:11,21 49:2
**gotten** 20:19
**govern** 33:10 60:4
**governed** 45:21
   45:25 47:7
**government** 58:17
   58:21 59:2 61:3
   61:13,18,21
**government's**
   60:23
**grace** 38:10
**grant** 67:12
**granted** 9:6,17
   10:8,9 20:3
**granting** 8:19
   20:13 67:5
**grappling** 66:3
**green** 1:13 31:16
**ground** 39:23,24

**group** 55:20 56:3

**h**

**h** 15:16 23:23
    33:5,25 37:3,6,10
    64:3 65:16 67:13
**half** 55:6
**hands** 40:1
**handsomely**
    46:21
**happened** 49:3
**happy** 27:21,24
    41:20 45:6,24,25
    46:13,16 47:4
    49:12 50:15 53:5
    54:7 59:16 60:2
**hard** 51:7
**headed** 27:19
**hear** 27:17,21,24
    39:13 43:10 63:7
**hearing** 2:1,2 6:4
    8:15,19,20,21
    10:19 11:8,14,19
    43:17 44:8 45:7
    47:5 54:11,15,22
    55:9,12 60:3
    64:20
**heavy** 34:8,8
**held** 29:17 57:15
**helpful** 12:9 16:21
**hessler** 3:10 6:23
    6:24,24
**high** 31:10 41:2
**hit** 24:10
**hold** 39:13 63:2
**holding** 16:5
**homaidan** 23:20
    23:21 30:2 67:3
**hon** 1:22
**honor** 12:5,7,11
    12:22 13:13,22
    14:10 15:6,13,23
    16:2,3,8,15,18
    17:8 18:6,14 19:6

19:24 21:7 22:2
22:15,21 23:3
24:1,6 26:3,24
27:1,16 28:1,2,14
28:21 29:13 30:5
30:10 31:2,10,20
32:3,8,9,17,20,22
33:4,5,9 34:3,5,11
34:14,19,25 35:9
35:14 36:17 37:1
37:3,7,12,24 38:9
38:17,20 39:15,25
39:25 40:4,7,12
41:19,22,25 42:15
42:20 43:2,12
45:7,24 46:12
49:12 50:11 52:3
52:19 54:2,19
55:7,19 56:21
62:13,19 63:4,6,9
63:17,25 64:3,9
64:13 67:16,18
68:6
**honor's** 42:22
**hood** 18:22,24
    19:1,16,18,19
    20:3,15 25:24,25
    26:4 27:5 28:5,13
    32:10 42:9,16
**hood's** 20:10
**hope** 43:2
**hoped** 43:24
**hopes** 9:25
**host** 21:7 22:6
    30:20
**hour** 9:1,9,14,22
    9:23 10:7 44:19
    55:6 62:6
**hours** 10:2
**hundreds** 15:25
    16:13
**hurtado** 5:13

**husnick** 3:8 6:12
    6:13,16,16 11:11
    12:3,5 13:22 14:2
    14:10,25 15:5,13
    17:21,22 18:1,5,8
    18:22 19:24 20:2
    21:5 22:15 23:3
    23:13,20,23,25
    24:4,9,16,18 25:1
    25:13,18,20 26:3
    26:24 27:16 28:1
    28:21 29:16,24
    31:5,9 32:2,8 35:2
    35:5 36:16,25
    37:1,1,12,17,24
    38:19,23 39:4,22
    39:24 42:5 43:5
    56:21,21 57:1
    62:12,13,19 63:8
    63:9 67:5,16,18
    67:21,25 68:6,8
**hyde** 2:25 69:3,8

**i**

**idea** 48:11,21 49:2
**identify** 30:15
    36:21
**ii** 21:6 26:7 42:7
    63:19
**il** 3:23
**illegal** 49:16 50:16
    50:22
**immediate** 14:23
    15:14
**immediately** 46:1
**impeded** 44:16
**important** 16:21
    17:8 18:12 21:10
    59:7 60:12 63:19
**importantly**
    17:18
**imposition** 41:21
**impression** 58:4

**improperly** 66:10
**inaccurate** 44:11
**inapplicable** 21:3
    21:6 22:8
**include** 37:21
    52:12 67:22
**includes** 46:24,25
**including** 60:22
    65:22
**incredibly** 63:19
**independent**
    43:20 44:10 45:14
    45:24 46:5 49:9
    56:13,14
**independently**
    35:13 61:18
**indicate** 67:13
**indicated** 15:1
    44:17 57:3 67:24
**indicates** 56:7
**indicating** 52:9
    67:6
**individual** 12:21
    16:22 42:11 46:24
    53:4
**individually**
    16:20
**ineffective** 32:6
**inferred** 33:17
**inform** 43:13
**information** 30:8
    30:10
**informed** 9:12
    43:22 66:4
**initiate** 21:13
**initiated** 41:9,12
**injunction** 21:16
    29:5 59:24
**inquiries** 21:14
    22:6
**inquiry** 21:19
**insofar** 19:16 29:1

**insolvency** 33:24
33:25 34:13 51:13
64:7
**insolvent** 34:6
41:1
**institution** 17:4
42:6
**institutions** 26:6
**insufficient** 16:19
**intended** 9:21,25
34:7,10 43:16
**intending** 43:15
**intends** 10:2
**intent** 14:19
**interest** 4:9 8:1
17:17 40:3 46:14
52:10 53:3,7,11
53:19
**interested** 55:1
**interfere** 6:9
**interlocutory**
23:5
**interpret** 45:5
**interrupt** 38:21
38:22
**interrupted** 27:15
**introduction** 12:6
**invalid** 32:6
**invoked** 31:18
**involuntary** 2:3
11:4 12:3,8 13:7
13:18 14:15,16,17
15:15,20 16:16
18:9 28:9 30:11
31:22 33:7,8 34:6
34:8,12 37:5 38:5
38:9,12 41:2
42:25 45:9 47:13
47:21 48:1,2,6,13
48:16,23 49:6,24
50:3,6 51:24 53:2
53:15,20 56:10
58:2 59:7,13

63:16 64:11,18,25
65:6,8,16,20 66:5
67:10 68:2
**involved** 11:14
13:1,20,21 32:19
45:17 56:6
**involves** 65:13
**involving** 62:3
**iqbal** 33:11 37:22
**issue** 10:14 22:6
22:16,23 23:6
25:6,14,20 28:8
28:10 29:6 30:1,3
30:19 42:1,4,17
49:13 51:2,3,16
52:7 53:22 56:9
57:13 58:1,22
59:16 63:23 67:1
67:23
**issued** 17:4 29:3
60:1
**issues** 19:10,11,12
21:8 22:4 26:3,14
27:9,22 28:5,21
29:9,11 30:20,24
42:2 44:25 45:1
62:3 63:24,24
65:5,24 66:3,6,7
66:20,21

**j**

**january** 17:24
**jason** 5:5
**jay** 5:15
**jennifer** 3:11 5:7
7:2,5 35:14
**jeremy** 5:17
**joe** 3:25 7:17
**joinder** 4:9 8:1
11:4,20 30:7,10
31:6,17 32:5 43:9
45:1,21 48:24
50:6 51:16 52:4
53:4 56:12 57:6

58:3 62:5,20,21
64:25 65:11
**joining** 32:22
**jones** 5:6
**judge** 1:23 6:2
8:10,14 17:22,25
18:3 24:7,8,13,14
25:24 29:16 35:25
36:1,7,8 39:6,11
39:19
**judgment** 23:11
23:11,13 34:23
35:24,24 36:5,9
36:12 38:14 39:7
46:4 58:16,18,24
60:24 61:15
**judgments** 38:24
38:25 39:7,8,16
39:18,18
**judicial** 18:11
40:9
**jump** 28:9 66:17
**jumping** 66:4
**june** 19:24
**jurisdiction** 40:18
47:3 57:8 59:25
60:10
**jurisdictions**
12:25 30:1 40:17
40:19
**justice** 4:16
**justified** 32:21

**k**

**kidding** 8:8
**kind** 39:19
**kinds** 39:8
**kirkland** 3:3 6:17
6:21,25 7:2,5
11:11,18,23 37:2
56:22
**knew** 48:21 59:11
**know** 13:3 14:13
15:10 22:22 25:14

26:10 27:10 31:4
31:5 32:12 35:18
41:22 46:9,13
49:6,23 51:7
54:10 55:10
**knowing** 44:10
**knowingly** 32:19
**knowledge** 18:1
39:4 43:21 48:10

**l**

**la** 26:7
**laccinole** 5:18
**laches** 21:22
**lack** 57:8
**lastly** 21:23
**law** 4:8 7:25 9:12
9:15 10:13 28:4
31:14 53:15 56:12
60:9 64:4
**lawsuit** 35:8
**lawsuits** 65:22
**lead** 13:22 33:17
**leader** 12:14
**leave** 44:24
**leaves** 28:4
**ledanski** 2:25 69:3
69:8
**left** 10:11 43:23
**legal** 69:20
**legitimate** 14:22
**letter** 8:25 9:5,9
9:18,21,22 10:5
10:22 11:7,11
44:18 57:3
**letting** 43:3 54:13
**level** 12:9
**leverage** 41:4
**levy** 3:11 5:7 7:2,4
7:5 35:14,14,19
35:22 36:4,10,13
36:14,15,17,21,23
36:23,24

lexington 3:5
liabilities 15:9
  34:17
liability 15:22
  16:7,24 18:18
  22:2 26:12,17,17
  26:18,23 33:1,2,3
  49:10,13 51:3
  52:24 62:22,22
  65:10,14 66:1,12
  66:13
likes 41:22
limitations 19:8
limiting 17:16
line 6:11 46:10
lines 30:14
liquidated 38:2
  63:11
listened 62:14
litigate 28:19
litigated 21:8
  22:16 26:4 28:8
  30:20 34:23 35:1
  35:2,4,5,23
litigation 12:22,24
  13:1,2,11 17:8
  19:7 20:8 21:22
  22:5,17 23:21
  30:2 32:18,19
  35:12,15 36:1,4
  38:13 39:9 40:12
  40:13,14,15 41:13
  42:16,21,21,23
  45:18 46:18 53:9
  61:16,21 63:23,25
  66:2,18 67:9
litigations 13:17
little 20:24 33:6
live 7:2 8:11
llc 1:7 4:10 6:18
  7:6,19 8:2,14
  12:11 49:13 50:22
  51:4 57:15,24

58:25 61:1,4,5,9
  61:11
llp 3:3,13,20 4:1
  6:17
loan 12:14,20
  17:14,16 19:2,3,9
  19:21 20:5,5,18
  21:4 22:12 26:13
  27:3 28:6,7 38:8,9
  42:6,8,9,9,11,14
  45:17 52:12,17
  55:21 58:9 59:15
  59:17 61:3,12,24
  63:20,20
loans 12:16 17:3
  17:11 19:4 20:11
  21:20 22:10,11,13
  22:19 25:6,7,21
  25:25,25 26:1,5,5
  26:19 28:16,19
  39:2,10 42:16,17
  49:15,19 50:24
  51:4 52:14,17
  55:21 58:10 66:9
local 59:19
long 50:15
look 27:2,22
  28:24 33:9,12
  34:12 41:10 55:8
  55:11 62:20
looked 49:8 50:9
looking 33:6
  59:12
lot 40:1
louder 62:15
love 50:12 52:19
low 31:10
lower 22:24
lucia 5:13

**m**

m 23:23
madam 6:13 7:4
  7:17,21

making 21:17
management
  12:15
manner 13:17
march 69:25
maria 5:4
mariani 36:1,7
market 15:3
  34:15
martin 1:22
massachusetts
  18:25 28:12 29:25
material 28:4
matt 5:8
matter 1:5
maximizing 41:14
mcdaniel 13:11
  13:21,24 14:3
  20:22 21:2,5 22:3
  22:24,25 23:10
  25:2,4 26:7,20
  27:12,18,23 30:16
  30:21 41:25 46:6
  46:14,15,16,20,21
  47:15 50:24 52:16
  53:5 54:3 66:6,25
mcdaniel's 13:23
  32:11,16 46:18
  52:10 53:11 63:18
mcdaniels 63:17
  63:21
mcdonough 5:12
mcguire 3:13,20
  4:1 7:8,14,18,22
  8:5 11:23 24:13
  39:11,16
mean 21:2 26:21
  56:2
meaning 63:12
meant 41:3,4
media 14:20
  41:10 49:7

mediation 13:9
  23:8,9 29:17
  40:14
medical 10:14
meet 58:1
members 14:6
memorandum
  9:17 10:7
mention 18:9
  67:22
merits 12:7 25:3
  32:9,13
message 43:24
mg 1:3
michael 4:8,14
  7:25,25
middle 58:11,13
midst 20:7
million 61:18
mind 43:18
mineola 69:23
minimum 18:12
  52:24
minute 23:15
  38:22 45:6 64:13
minutes 59:4,5
misconstrue
  13:16
misses 14:13
misstates 64:3
moment 52:18
monday 8:22
money 16:11
  23:11,13 50:20,23
  60:15,16,17,18
  61:6,25 66:10
morning 6:2,16
  6:24 7:2,21,24
  8:13
mother 44:2
motion 2:2 8:16
  8:16 10:21,24,25
  11:23 12:3,8

**[motion - parent]**                                                      Page 12

33:14 36:9 54:13
54:22,23 57:13,22
58:16 61:15 62:2
64:17,19 65:4
67:6,13
**motions** 23:5
33:10 35:24 36:5
36:11
**moved** 54:19
**moving** 11:16
**multiple** 58:19
61:22 65:22
**mute** 6:10,10 35:9
46:10
**mystery** 46:2 47:6

**n**

**n** 3:1 6:1 23:23
69:1
**name** 6:7,12 7:9
39:13,14 42:12
54:25 55:3
**narrow** 22:5 23:6
25:20 27:2 42:1,4
**nation** 51:1 52:13
59:15
**nationally** 61:24
**nationwide** 29:22
30:1 55:20 60:13
66:24 67:2
**nature** 16:17 26:5
28:5 30:13 32:13
39:19
**navient** 1:7 6:4,17
6:22,25 7:5,6,19
7:22 8:14 12:9,11
12:12,13,13,17,19
12:20,22 13:4,6,8
13:19 14:11 15:2
15:2 16:13,18
17:11 20:4 23:11
23:14 24:12 27:7
33:21 35:11,15
36:10 37:2,4 39:2

39:8 40:25 43:3
47:22 48:14 49:13
50:22 51:3,13,17
52:22 57:15,23
58:4,12,20,25
60:16,18,24,25
61:4,5,9,10,20,23
64:11 66:11,14,18
**navient's** 21:15
40:24
**need** 6:7 16:4
26:25 27:17 34:20
42:2,17 49:2
**needed** 40:22
41:17,18
**needs** 10:19 30:12
64:9
**nevertheless** 65:4
**new** 1:2,14 3:6 4:4
4:12,19 12:25
17:6 29:21,23
40:18
**newest** 64:14
**ninth** 52:8 56:24
57:7
**noise** 6:10
**non** 17:14 29:10
42:6,8,9,14 49:14
49:18 50:23 51:4
52:14,17 55:21
57:18,19 58:1,8
58:10,25 59:1
60:10 61:1,2,20
63:10,22 65:16
**noon** 8:23 9:4
44:22 64:22
**northern** 19:18,25
**note** 16:3,22 61:7
**noted** 30:6
**november** 57:2,3
**number** 52:9
**ny** 1:14 3:6 4:4,12
4:19 69:23

**o**

**o** 1:21 6:1 23:23
69:1
**object** 55:7
**objection** 9:1
44:19
**obligations** 66:15
**obtained** 21:20
52:13
**obviously** 25:3
27:23
**occasions** 48:5
**occurred** 49:7
**office** 8:5,7
**offices** 4:8 7:25
**oftentimes** 37:25
**oh** 13:23 34:20
47:23
**okay** 7:11 8:10
18:8 20:1 23:22
23:24 24:15,22
36:8,11,20 39:20
39:22,24 45:4
50:9 51:14 57:16
59:6
**old** 69:21
**once** 46:3
**one's** 33:6
**ongoing** 12:24
40:14
**online** 52:4
**open** 19:13 28:4
30:4,20 40:17
63:23,24
**opening** 30:7
34:15
**opinion** 17:23
25:15 51:8 67:7
67:14
**opinions** 25:16
40:13 50:15
**opportunity** 55:6
56:4,11 57:6

**opposing** 10:1
**opposition** 9:3
10:23,25 44:21
65:3
**oral** 24:5
**order** 8:19,19
9:24 10:7 13:13
20:13 22:10 26:22
30:22 33:13 37:21
40:15 43:3 64:20
65:7 66:18 67:5
67:12
**ordered** 23:8
**original** 31:24
**outset** 43:13 64:23
**outside** 41:13 60:6
**outstanding** 26:13
**overpayment**
21:24
**overpayments**
20:4
**owed** 16:10
**owes** 58:20
**owing** 34:24

**p**

**p** 3:1,1 6:1
**p.c.** 8:1
**p.m.** 9:5,7,8,10,13
9:15,23 10:2,6
44:23
**page** 15:24 16:9
62:21 63:9
**pages** 14:20
**paid** 46:21 60:15
**panel** 52:8 56:8
**paper** 45:2
**papers** 10:2,24
15:21 20:19 33:23
43:16 44:7 50:12
57:13 62:2
**parent** 12:13,17
15:4 57:18 59:1
61:2,8,8,8

**part** 9:22 21:1
**participating** 32:19
**particular** 19:10 49:3 59:21
**parties** 6:6 11:13 11:17 13:9 41:4
**party** 11:12 53:18
**passed** 51:5
**passing** 44:9,12
**pay** 40:24 41:1 57:16,21,25 58:5 59:1,2 60:16 61:6 62:8
**payable** 17:17
**paying** 33:21,22 34:2 37:4,11,14 37:19,23 38:6 51:17,25 57:12 65:18
**payment** 38:8,10 39:2
**payments** 21:17 58:9
**pending** 13:11,11 19:7 30:2 35:16 35:25 36:6 42:15 53:8 60:25 61:14 61:20,23 64:17 65:22,23 66:21,23 67:2
**pennsylvania** 31:15 35:16,17 36:18,19 58:12,14
**people** 51:1
**percent** 17:17
**perfect** 7:10
**perfectly** 59:14
**period** 38:10 48:20 50:11
**person** 47:16 50:23

**persuasive** 41:9
**petition** 2:3 12:8 14:17,19 15:20 16:2,16,24 31:22 31:24 33:7,8 34:1 34:6 37:5 38:5,12 42:25 45:9 47:13 47:21 48:1,2,7,13 48:16,23,24 49:24 50:3,6 51:22 59:7 64:10,11,18 65:1 65:6,8,16,20 66:5
**petitioner** 13:6 32:23
**petitioners** 12:25 15:20,25 16:4,17 16:22 18:9 27:11 30:21 32:18,22 33:19 34:9 38:1 40:16 45:22 63:25 64:4
**petitioning** 8:24 11:1 16:10 18:20 43:7 49:18,21 56:13 59:9 64:19 65:9
**phone** 43:19
**phones** 46:10
**physically** 55:14
**picap** 29:13 30:5 31:4,19
**piece** 13:10 22:5
**place** 42:25 43:1 60:7 66:2,20
**plaintiffs** 13:23
**plausible** 33:16
**plead** 37:3
**pleaded** 37:10
**pleading** 13:14 31:7,9 34:16 37:21,22 38:5,7 41:3,11 64:1,1

**pleadings** 12:24 14:11
**please** 6:9,10,14 6:19 7:11 11:2 44:25 45:3 46:10 46:11
**plethora** 42:23
**plus** 60:23 61:13
**podkul** 5:16
**point** 32:5 40:21 48:9,10 57:11 59:10
**pointing** 11:12
**position** 46:23 54:15
**post** 21:18 49:14 60:17
**posts** 14:20 41:10
**posture** 24:1 25:23
**potential** 14:8 16:1 30:25
**potentially** 44:14
**ppg** 67:25,25 68:7
**practice** 13:14
**practices** 50:18 60:5
**premise** 20:9,10 20:17
**prepare** 44:7 67:5
**preparing** 9:2 44:20
**prepetition** 45:14 46:5 59:13
**presence** 42:20
**present** 5:1
**presumption** 19:4 22:18
**presumptively** 22:19
**pretenses** 21:21
**pretty** 11:22 49:23

**previous** 10:7
**previously** 52:13 52:16
**price** 15:11
**prima** 32:23
**principles** 50:19
**prior** 28:17 45:17 48:4
**private** 42:6
**privately** 57:15
**probably** 12:8
**problematic** 30:6
**procedural** 23:25
**procedure** 11:6
**proceed** 10:15 11:22 12:1 56:16 66:2,16 67:10
**proceeding** 13:7 14:3,15 19:2,17 19:17,20 20:12 21:13 22:8,9,9,12 28:10 41:3 61:19
**proceedings** 61:21 66:23 68:10 69:4
**proceeds** 57:20
**process** 56:9
**processing** 12:15
**prognosticate** 51:7
**pronouncing** 6:12 7:9
**proper** 66:1
**properly** 68:4
**proposed** 48:16 53:14
**proposition** 55:3
**prosecuted** 17:12
**protection** 58:18
**prove** 46:21
**provide** 54:14 60:3 65:12,16

provided 26:6
46:17 51:23
providing 41:15
public 4:9 8:1
34:18 46:14 47:5
52:10 53:3,7,10
53:18
publication 25:15
25:16
publicly 12:12,17
15:3,4 61:8
pull 56:20
purchased 46:15
47:15
purchaser 54:3
purported 40:17
64:25
purports 65:11
purpose 14:22
41:6 43:2
purposes 45:10
pursuant 11:4
45:13
pursue 40:16
put 20:22 25:22
25:22 34:7 51:19
putative 6:22 7:6
12:9,11 14:6
puts 14:11 40:1
42:21

**q**

qdos 52:7 56:7
qualified 16:5
28:8
quality 64:5
que 66:4,17
question 21:1
24:10,12 38:15,17
67:18
questions 12:2
41:20
quickly 45:16
46:2 51:19 67:20

67:21
quote 9:2,9,11,16
9:16 10:6,13,18
11:4 16:10,14
44:20,23 61:16

**r**

r 1:21 3:1 6:1 69:1
raised 66:6
reach 20:23 43:19
reached 43:14
reaching 51:10
react 64:6
reaction 49:22
read 10:1 16:9
17:22 27:23 30:14
49:2
reading 21:2
reads 22:22
ready 6:11 8:11
really 11:21
reason 13:3 47:5
reasonable 56:11
reasonably 33:17
reasons 67:6,8
received 17:6
18:25
receiving 21:20
recited 43:7 64:23
reckless 64:7
recommended
48:9
record 6:8,15
7:12 10:23 24:20
44:12,24 47:5
69:4
recording 6:9
recoverable 68:1
rectify 56:15
reducing 17:16
refer 12:20 31:21
34:22
reference 33:23
57:18 58:1

references 33:24
referred 23:8
referring 16:16
32:1,2
reflect 10:23
regardless 62:3
related 30:16
relevant 30:11
44:14 58:22
reliance 52:6
relief 56:17 66:18
rely 55:25
relying 20:6 27:11
37:15
remain 19:12
remaining 59:4
remains 66:16
remanded 23:1,4
23:6 29:18
remedy 59:18
remember 27:4
remind 6:6
reoccurrence
43:22,25 44:1,3
44:15
reopen 28:18 29:4
59:19
reopened 17:9
repayment 39:2
replied 9:14
reply 20:19 62:12
report 43:20
reported 15:8
17:23 25:11 43:20
51:10 52:6 56:8
representative
47:1 53:8,14,20
request 2:3 9:16
9:22 10:1,5,19
11:18
requested 14:5
65:1

requesting 9:1,9
10:22 11:7,12
44:19
require 22:11
45:23 47:8
required 8:22
30:9 32:24 53:2
59:15,18
requirement
31:13 63:15,15
requirements
31:12 37:22 53:13
requires 31:22
45:8
requiring 39:1
64:20
reservation 67:23
reserve 41:21
61:16
reserves 61:10,10
resolution 40:10
resolve 20:25
21:11,13,15,16,19
21:22,23 22:4,5
40:19 42:1,4
resolved 27:10
28:11 30:24 42:2
42:18 65:25 66:20
respect 17:10
37:10,22 45:1
49:14 50:23 51:23
52:14 56:14 58:3
61:9,17 62:4,5
65:11 66:24
respectfully 52:2
54:18 55:5 56:5,6
59:16
respective 59:19
respectively 52:16
respond 44:16
63:5 64:14
response 8:22
10:20 64:21,22,23

64:24
**responsibility**
  34:8
**restitution**  50:19
  60:20
**result**  16:4 38:11
**resulted**  17:12
**reversed**  56:16
**review**  45:12,19
  45:20 50:13
**richmond**  3:16
**right**  7:7 8:13
  14:9 15:12 18:2
  24:15 25:1,19
  26:15 27:5,14
  28:2 29:17 32:1
  36:13,16,25 42:25
  43:1,1,6 46:12
  47:5 49:7 54:1
  55:14,15 57:1,9
  59:8 60:3 62:9
  64:12,17
**rights**  46:25 47:1
  60:14
**rise**  51:21
**road**  69:21
**rudimentary**
  32:23 33:15
**rule**  11:5 31:21
  32:7 42:7,8 45:3
  45:20,24 52:6
**ruled**  18:10 19:10
  19:11 25:9,11,16
  38:14 42:5 50:21
  51:5 54:6 60:7
**rules**  11:5,12
**ruling**  18:3 25:24
  36:6 46:23 52:15
  52:15 57:5 58:23
  58:24 59:21 67:11
  68:5
**rulings**  45:14
  52:23 54:4 60:15

61:25
**running**  63:13

**s**

**s**  3:1 6:1
**sake**  25:2
**sale**  47:17
**satisfy**  18:17
  31:11 33:19 37:10
  37:21 38:15 63:15
  66:14
**saw**  49:6
**saying**  22:21 54:3
  58:19 62:15
**says**  21:3 45:10,21
  53:18,21,23,24
  56:9 61:9
**schedule**  30:23,23
**scheduled**  24:6
**scheduling**  8:20
  9:24 13:12 30:22
  40:15 64:20
**schwartz**  4:21 8:3
  8:4,4,5,6,8,9
**scope**  27:17
**scott**  5:3
**scrutiny**  18:11
**se**  58:23
**searched**  31:10
**second**  11:2 15:16
  19:14 23:17,18
  24:2 25:14,22
  29:6 30:3 33:4
  37:18 54:4,6,16
  54:25 55:2,3 60:2
  60:7 63:9 65:23
  67:1
**section**  15:16
  18:18 22:1 27:9
  30:9 32:21,24
  33:5,20,25 34:9
  37:6 39:25 40:1
  41:8,22 42:7
  65:21 67:14

**secured**  12:18
**see**  38:4,4 45:1
  46:16 51:9
**seek**  11:13 14:23
  17:10 19:2 59:19
**seeking**  11:14
  14:4 19:20 20:5
**seeks**  53:3 58:18
**seen**  60:25 61:6
  66:16
**sentence**  16:9,9
  16:15
**separate**  61:17
**separately**  41:23
**serious**  49:24 50:3
  50:5 66:7
**seriousness**  11:25
**serve**  20:16
**services**  12:20
**set**  8:21 9:10,24
  12:9 13:13 18:18
  24:17 27:2
**setting**  17:17
  30:19,23
**settlement**  17:13
  17:13,16,18 41:5
  41:12
**shawn**  4:6 7:21
**shorten**  8:18,19
**shortly**  54:10
**show**  34:1 64:1
  65:12
**showing**  37:17
**shows**  18:12 55:23
  58:24
**shroud**  46:1 47:6
**side**  29:7
**sieg**  3:18 7:9,10
  7:13,13 24:13,13
  24:19,21,23,24
  35:6,7,9,11 39:11
  39:11,15,15,17,18
  39:20,21

**sign**  46:19,20
**signed**  17:24
  46:20
**significant**  12:18
  63:11
**significantly**  44:5
**similar**  18:23
  19:16 23:25
**similarly**  22:3
**simply**  16:19 22:4
  38:14 41:16 42:2
**single**  16:9,15
  33:20
**sit**  40:19
**situation**  13:24
  21:14 44:4 45:16
  46:6 51:2
**smith**  8:25 9:8,12
  9:14,20 10:11,18
  13:9,20,21 20:20
  43:15 44:9,11,14
  44:18 45:17 46:4
  46:5,18,20 47:12
  47:14,21,23,25
  48:6,12,24 49:1,2
  49:17 51:22 52:1
  56:15 59:9 62:3
**smith's**  9:18
**social**  14:20 41:10
**solely**  61:17
**solid**  38:6
**solutions**  1:7 6:4
  6:18,22 7:6,19
  8:14 12:11,15,19
  15:2 16:18 27:7
  49:13 50:22 51:3
  57:15,24 58:25
  61:1,4,5,9,11
  66:11,18 69:20
**solvency**  34:4
  64:7
**somebody's**  34:5

sonya  2:25 69:3,8
sorry  8:6 13:23
    18:6 35:9 36:2,17
    46:8 63:22
sort  10:15
sought  9:23 11:16
    15:14 29:15
sound  26:22 28:18
sounds  27:18
southern  1:2 17:5
    17:19 29:21,23
space  46:17
speak  6:7,11
    10:13 36:22 43:24
    47:14,18,20,25
    48:6,12,15
speaking  46:9
specific  42:12
    57:24
specifically  51:5
    57:23
specifics  42:10
    49:21
speed  45:16 50:25
spend  15:17
split  26:16
spoke  47:11 48:8
squarely  29:10
    42:21
stage  66:2,22 68:5
stahl  24:14,15
stakeholders
    41:15
standard  18:18
    22:1 33:10,20,25
    37:4,10 38:15
    42:13
stands  10:7
start  6:3 17:3
    41:15
started  43:8 59:9
starting  6:5

state  6:7 33:14,16
    33:16 39:14 61:22
stated  9:22 14:22
    67:6
statement  56:1
states  1:1,12 4:16
    8:7 38:25 58:13
    58:17 59:22
stating  9:2,13,15
    9:21 10:13,18
    44:20
status  24:2 35:21
    36:4
statute  16:4 22:22
statutorily  53:2
statutory  60:9
stay  66:19
staying  44:2
stein  5:19
stephen  3:10
steve  6:24
steven  5:9
stipulation  18:11
stock  15:11
stood  18:11
stop  37:18 48:5
straightforward
    15:18
street  3:15 4:11
    4:18
stretch  13:16
strike  14:21 64:9
strong  46:22
stuck  51:25
student  12:20
    17:10 19:3,9
    20:18 22:19 25:6
    25:25 28:16 45:17
    52:12,17 55:21
    58:9 59:14,17
    60:13 61:3,11,24
    66:9

studies  27:4
style  33:14
subject  15:21 16:6
    16:23 17:2 18:17
    19:13 22:12,14,23
    29:17 30:25 32:18
    33:1,2,2 37:15
    52:23 58:2,3 65:9
    66:19
submit  9:3,5 17:1
    19:9 22:3 40:4
    44:21,23 50:12
    52:2 55:6
subsections  27:8
subsequent  45:13
subsequently  49:5
subsidiaries  12:14
subsidiary  12:12
    15:2
sue  59:23
suffer  32:11
suffering  44:15
suffers  32:10
suffice  29:9
sufficient  18:17
sufficiently  30:8
suing  61:22
suit  14:21 64:9
suite  4:11,18
    69:22
summarized  16:8
    63:24
summary  35:23
    35:24 36:5,9,11
    58:16,18,23 60:23
    61:14
supplement  16:16
    18:10 34:12
support  13:17
    33:17 40:5,7 55:3
supported  11:21
    68:4

supporting  10:24
    15:21
supports  64:10
supposed  55:25
supposedly  30:16
supreme  22:18
    33:12,18 59:22
sure  6:16 18:22
    27:17 35:7,13
    38:16 39:17 49:25
surmise  32:14
surprised  13:6,7
    13:10 49:9
surrounding  65:6
sustain  16:19
sweeping  29:3

t

t  69:1,1
take  7:8 15:6,6
    16:3 21:25 25:24
    41:22
taken  17:25 57:4
takes  15:13 40:21
talk  18:20,24
    20:24 35:7 40:7
    42:10,12 49:21
    63:18
talking  15:17
    25:15 31:12 61:1
tate  18:22 19:14
    19:16,16,22 20:3
    20:10,15 25:25
    26:4 27:5 28:5,12
    32:11 42:8,16
tate's  20:9 25:25
telephonically  3:8
    3:9,10,11,18,25
    4:6,14,21 5:1
tell  35:20 42:3
    54:16,24
tenth  20:21 25:4
    25:11,17 28:3
    40:15 42:5 45:15

45:19 46:23 49:4
49:8 50:10,21
51:5 52:15 59:20
60:14 61:24
**term** 63:11
**terms** 22:22 26:1
27:11
**texas** 12:24
**thank** 6:14,19,23
6:25 7:1,4,7,11,16
7:20,23,24 8:3,10
9:16 12:5 36:14
36:20,24 37:1
39:20,21 43:4,5
43:12 46:12 62:13
64:11 67:16 68:6
68:8
**theories** 50:19
**thing** 41:24 49:24
50:1,2,3,5 59:22
**things** 52:3
**think** 15:18 16:21
18:5,8,19 19:6
20:15 21:5,9
22:23 27:1 28:1,2
28:2 29:9 31:13
31:18 37:12,24
38:15 41:7 42:3
42:20 48:4,10,20
49:1,10 55:25
59:6,10,13 67:24
**third** 15:16 37:7
38:19 39:24
**thomas** 5:10
**thought** 45:20
47:15
**thousands** 15:25
16:13
**three** 15:15 16:5
17:1 32:22,25
41:20 44:5 48:8
49:18,21 64:18
65:9

**threshold** 30:24
42:17
**throw** 64:6
**ticking** 33:15
**tie** 19:14
**time** 6:7 8:18,19
10:8 15:17 35:21
36:21 47:11,20
48:1,9,10,13,15
48:20,22 49:22
50:11 52:3,18
59:10,11 62:9,11
63:3,18 64:24
67:8
**timely** 65:3
**times** 48:8
**title** 17:4 26:6
42:6,8,9,14,16
49:14,18 50:24
51:4 52:14,17
55:21 58:10
**today** 8:22 11:22
65:5 67:8
**today's** 43:17 44:8
64:20
**told** 43:23 44:4,9
48:20 49:1,2
**top** 62:20 63:9,17
**topic** 33:23
**toss** 34:6
**tossed** 14:16
**totality** 40:4
**tpg** 42:22
**trade** 38:8
**traded** 12:13,17
15:3,4
**trading** 15:11
**transcribed** 2:25
**transcript** 63:13
69:4
**transfer** 31:25
45:8 47:18

**transferee** 30:16
31:23 52:10 53:4
53:11 54:5
**transferor** 31:23
**transferred** 30:11
**transferring** 45:5
**translate** 51:12
**treated** 53:13
**trial** 13:14
**tricky** 33:6
**tried** 20:20 58:1
**troy** 42:22
**true** 43:21 58:6
69:4
**trustee** 4:17 8:9
**trustee's** 8:5,7
**try** 33:19 41:5,12
59:20
**trying** 26:16
45:15 46:1 57:6
58:4
**turn** 28:9
**tweets** 14:12
**twitter** 14:12
**two** 16:14 18:20
27:20 29:25 30:22
48:8,19 52:3,19
56:5
**twombly** 33:11
**type** 42:25
**types** 30:17 60:9

**u**

**u.s.** 1:23 4:17 8:4
8:9
**u.s.c.** 11:5 52:5
54:20 56:6
**udder** 37:18
**ultimate** 66:14
**ultimately** 17:12
26:4 66:15
**unable** 9:3 41:1
44:6,21

**unaffected** 67:10
**unanimous** 51:9
**uncertified** 53:19
**uncontested**
11:23 15:19
**undercuts** 34:13
**underlay** 22:4
**underlying** 13:17
20:17 21:8 22:16
28:5,11 32:9,13
42:11 60:7
**understand** 22:21
27:19 30:12 51:1
63:3
**understanding**
24:4,18 55:22
60:21 62:1
**understood** 10:1
**undisputed** 38:3
**unequivocal** 58:6
**unequivocally**
50:14
**unfortunately**
62:15
**united** 1:1,12 4:16
8:7 38:25 58:12
58:17 59:22
**universe** 52:11
56:10
**unknown** 1:25
**unliquidated**
63:14
**unmute** 6:11
**unnamed** 53:19
**unsatisfied** 38:24
39:16,18
**unsecured** 12:18
**untrue** 43:21
**use** 40:8
**uses** 63:11

| v | | |
|---|---|---|

**v**

**v** 31:16
**va** 3:16
**valid** 66:8
**value** 41:14
**values** 41:5
**varick** 4:18
**various** 12:21
13:2 19:7 30:24
**veritext** 69:20
**version** 9:4,5
44:22,23
**view** 60:14
**vigorously** 13:4
**vindicated** 60:14
**violate** 56:9
**violated** 21:16
**violates** 50:17,17
50:18
**violation** 59:24
**violations** 60:9,10
**virtue** 44:1,4,7
52:14,22
**vitriol** 14:19
41:11
**voicemail** 10:12
**volume** 42:21

**w**

**w** 3:22
**w.l.** 17:24
**wacker** 3:22
**wait** 40:19 53:17
**waiting** 24:5,9
**want** 20:24 38:16
40:7 41:24 43:11
55:18 63:7
**wanted** 6:6 10:14
44:13 55:17
**warranted** 32:21
**way** 13:16 34:20
43:4 45:4 58:11
**we've** 46:21 50:12

**wednesday** 46:3
**weeks** 30:22 48:19
**weigh** 35:6
**welcome** 36:15
**went** 14:18 32:9
**west** 4:11
**western** 36:18
58:14
**whatsoever** 18:16
**wide** 29:21
**wishes** 53:6,12
**withdrawn** 13:25
14:7
**withdrew** 14:2
**withstand** 33:14
**withstood** 18:11
**wolk** 4:8,14 7:23
7:24,25,25 11:3,7
11:16,20 43:9,10
43:12 44:25 45:4
46:11,11,12 47:9
47:10,14,23 48:3
48:8,15,18,25
49:20 50:4,7,9
51:14,19 52:2
53:10,22,24 54:2
54:9,12,18,21,21
55:5,10,13,16,18
55:19 56:2,4,19
56:23 57:2,9,11
59:3,6 62:10,11
62:14,15,24,25
63:1,2,4,5,6 64:3
64:13,16 65:1
**wolk's** 30:15
**woods** 3:13,20 4:1
7:8,15,18,22 8:5
11:24 24:14 39:12
39:16
**word** 63:11
**wording** 51:8
**words** 37:19

**works** 22:22
**world** 63:12
**worries** 27:16
**worse** 34:12
**worsened** 44:5
**worth** 15:8,8
**wrap** 41:25
**writes** 14:11
**writing** 10:19
**wrong** 18:14
62:22
**wrongful** 50:16
61:12
**wrongfully** 16:11
52:25 53:1 60:15
60:16

**x**

**x** 1:4,10

**y**

**yeah** 50:7 57:2
62:19
**year** 56:24
**years** 17:18 58:19
60:17,24 61:14
**yesterday** 43:14
**york** 1:2,14 3:6
4:4,12,19 12:25
17:6 29:21,23
**youtube** 14:13
**yup** 14:25 17:22
38:23

**z**

**zealous** 14:14
**zweig** 5:17