UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------x
In re

NAVIENT SOLUTIONS, LLC,                                              Case No. 21-21049 (MG)

                        Alleged Involuntary Debtor.
---------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER FRBP 9023 TO ALTER OR AMEND AN ORDER - - AND/OR FOR RECONSIDERATION AND VACATUR OF AN ORDER - - TO THE EXTENT THE ORDER INCORRECTLY IMPOSES LEGAL FEE SHIFTING LIABILITY AGAINST PUBLIC INTEREST CAPITAL LLC, UNDER 11 U.S.C. 303(i)(1), IN THE SUM OF $14,649.40**

1. On May 11, 2021, the Court entered a written order ("Order") denying, in its entirety, the branch of a post-dismissal legal fee shifting motion ("Motion") from the alleged involuntary debtor Navient Solutions, LLC ("Navient"), under 11 U.S.C. 303(i)(1), seeking to impose legal fee shifting liability against counsel of record for Public Interest Capital, LLC ("PICAP").[1]

---

[1] See, e.g., the Supreme Court precedent cited in a memorandum of law previously filed by PICAP and PICAP Counsel for their objections to the imposition of legal fee shifting liability against them, under 11 U.S.C. 303(i)(1), in any amount [Dkt 63]; the Second Circuit's decision in *Healey v. Chelsea Resources, Ltd.*, 947 F.2d 611, 624 (2d Cir. 1991), vacating a fee-shifting award against a losing party's counsel and ruling that "**When a fee-shifting statute that authorizes the courts to award attorneys' fees to prevailing parties does not mention an award against the losing party's attorney [such as the fee-shifting statute in 11 U.S.C. 303(i)(1)], the appropriate inference is that an award against attorneys is not authorized**. See *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 761 (1980) (inferring that [fee-shifting statutes in] 42 U.S.C. 1988 and 2000e-5(k) were not intended to permit recovery of costs or fees from opposing counsel since neither section 'makes any mention of attorney liability'); *Eastway Construction Corp. v. City of New York*, 821 F.2d 121, 123-124 (2d Cir. 1987) (order that part of fee award be paid by plaintiff's attorneys was authorized only by Fed.R.Civ.P. 11, not [fee-shifting statute in 42 U.S.C.] 1988, because the latter 'makes no provision for imposing upon plaintiff's counsel the burden of fees awarded to a prevailing defendant') (emphasis added); *In re Crescent City Estates, LLC*, 588 F.3d 822, 825-830 (4th Cir. 2009) (reversing Bankruptcy Court, applying the "American Rule" to bankruptcy case, and prohibiting the imposition of fee-shifting liability on a losing party's counsel, regardless of the case-specific situation, except where the fee-shifting statute explicitly and directly imposes fee-shifting liability on the losing party's counsel in the precise case-specific situation) (collecting cases); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259-263 (1975) (Congress has not "extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted" and "Under this scheme of things, it is apparent that the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to

2. The Order also (a) grants the branch of the Motion seeking to impose legal fee shifting liability against PICAP, under 11 U.S.C. 303(i)(1), in the sum of $14,649.40 and (b) grants the branch of the Motion seeking to impose legal fee shifting liability against counsel of record for the Petitioning Creditors Sarah Bannister, Brandon Hood and LaBarron Tate (together, "Petitioning Creditors") in the sum of $43,946 ("Order"). Dkt 74.

3. PICAP respectfully submits this memorandum of law in support of PICAP's motion, under Rule 9023 of the Federal Rules of Bankruptcy Procedure ("FRBP"), to alter or amend the Order - - and/or for reconsideration and vacatur of the Order - - to the extent the Order incorrectly imposes legal fee shifting liability against PICAP, under 11 U.S.C. 303(i)(1), in the sum of $14,649.40.

4. In order to avoid unnecessary duplication, PICAP respectfully refers the Court to the Order [Dkt 74], PICAP's previously filed memorandum of law for PICAP's objections to the imposition of legal fee shifting liability under 11 U.S.C. 303(i)(1) in any amount [Dkt 63], and Navient's moving papers [Dkt 54-55] and reply papers [Dkt 64], for the procedural history, background and circumstances relevant to this matter.[2]

5. The **FIRST** legal reason why the Order should be altered, amended, reconsidered and/or vacated - - to the extent the Order incorrectly imposes legal fee shifting liability against PICAP under 11 U.S.C. 303(i)(1) in the sum of $14,649.40 - - is because the

---

determine" and "But congressional utilization of the private-attorney-general concept can in no sense be construed as a grant of authority to the Judiciary to jettison the traditional rule against nonstatutory allowances to the prevailing party and to award attorneys' fees whenever the courts deem the public policy furthered by a particular statute important enough to warrant the award.").

[2] PICAP expressly incorporates by reference such litigation papers into this memorandum of law. PICAP also expressly incorporates by reference the litigation papers filed by Petitioning Creditors' counsel objecting to the imposition of legal fee shifting liability as against such counsel, under 11 U.S.C. 303(i)(1), on the grounds set forth therein. Dkt 60.

2

**<u>Order does not address Supreme Court precedent</u>** prohibiting Navient from being awarded any legal fees against PICAP unless Navient satisfies its burden of proof to establish that **<u>PICAP is the but-for factual cause</u>** of any legal fees incurred by Navient. PICAP's memorandum of law expressly cited and relied upon this Supreme Court precedent as a legal reason for why Navient should not be awarded any legal fees against PICAP. Dkt 63, pp. 19-22. Significantly, neither Navient's moving papers [Dkt 54-55], nor Navient's reply papers [Dkt 64], address this Supreme Court precedent prohibiting Navient from being awarded any legal fees against PICAP on this ground.[3]

6. Last year, pursuant to the party-presentation principle subsumed within a litigant's constitutional due process rights, the Supreme Court indicated that courts should not award requested relief to a movant where, as here, the movant fails to address a non-movant's reason for denial of the requested relief. See *United States v. Sineneng-Smith*, __ U.S. __, 140 S.Ct. 1575, 1579 (2020):

> "In our adversarial system of adjudication, we follow the principle of party presentation. As this Court stated in [cit. om.], 'in both civil and criminal cases, in the first instance and on appeal. . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present' [cit. om.]. . . But as a general rule, our system 'is designed around the premise that parties represented by competent counsel know what is best for them, **and are responsible for advancing the facts and argument entitling them to relief**,' [cit. om.]. In short, 'courts are essentially passive instruments of government' [cit. om.]. They 'do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them, and when cases arise, courts

---

[3] Navient's motion papers [Dkt 54-55] wholly ignore Navient's fee-shifting burden, under Supreme Court precedent, to prove that PICAP is the but-for factual cause of any legal fees incurred by Navient. Although Navient's reply papers perfunctorily identify this critically important issue [Dkt 64, p. 10, par. 23], Navient's reply papers also wholly ignore Navient's fee-shifting burden, under Supreme Court precedent, to prove that PICAP is the but-for factual cause of any legal fees incurred by Navient [Dkt 64]. Indeed, the "Response to PICAP Objection" portion of Navient's reply papers only contains one substantive paragraph addressing only some of PICAP's independent reasons for denial of legal fee shifting against PICAP [Dkt 64, p. 10, par. 24] - - and nowhere therein does Navient address the merits of this but-for factual cause issue [*Id.*].

3

      normally decide only questions presented by the parties.' [cit. om.]." [emphasis added][4]

7.    Thus, since **Navient never addressed the Supreme Court precedent** raised by PICAP [Dkt 63, pp. 19-22] prohibiting Navient from being awarded any legal fees against PICAP unless Navient were to prove that **PICAP is the but-for factual cause** of any legal fees incurred by Navient - - **and since the Order does not address the merits of this but-for factual cause issue**[5] - - the Order should be altered, amended, reconsidered and/or vacated to the extent the Order incorrectly imposes legal fee shifting liability against PICAP under 11 U.S.C. 303(i)(1) in the sum of $14,649.40.[6]

8.    In addition, even if Navient had addressed this but-for factual cause issue (which did not occur as set forth above), the Order contains findings that also independently

---

[4] See also, e.g., *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986), where the Supreme Court ruled that judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."

[5] Although the Order correctly identifies that PICAP's objection raised this but-for factual cause issue [Dkt 74, p. 6] - - and although the Order correctly identifies that Navient's reply papers do not address this but-for, factual cause issue [Dkt 74, p. 7] - - the Order does not address the merits of this but-for factual cause issue, or the Supreme Court precedent cited in PICAP's objection about such issue [Dkt 63, pp. 19-22].

[6] See, e.g., *Fox v. Vice*, 563 U.S. 826, 131 S.Ct. 2205, 2215-2217 (2011) ("But if the defendant [Navient] would have incurred those fees anyway to defend against [the same claims or issues raised by a prior litigant, such as Petitioning Creditors], then a court has no basis for transferring the expense to [a different, later adversary such as PICAP]. . . In that circumstance, the work does not implicate Congress's [fee-shifting] reason for allowing defendants to collect fees. . . [and] [t]he basic American Rule continues to operate. . . That means the trial court must determine whether the fees requested would not have occurred but for the claim [of a different, later adversary].  And the appeals court must determine whether the [trial] court asked and answered that question, rather than some other. . . **The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet the burden of establishing an entitlement to an award [cit. om.]. . . The [trial] court did not address whether the 'interrelatedness' of the claims meant that [defendant] would have incurred part or most of his fees** [anyway in response to the same claims or issues raised by a prior litigant].  But the [trial] court seemed to think that its test permitted awarding [defendant] fees for any work useful to defending [ ] even if lawyers would have done that work regardless. . .") (emphasis added); *Goodyear Tire & Rubber Co. v. Haeger*, __ U.S. __, 137 S.Ct. 1178, 1184-1188 (2017) ("But because the court here granted legal fees beyond those resulting from the [specific] litigation [c]onduct, its award cannot stand. . . This but-for causation standard generally demands that a [trial] court assess and allocate specific litigation expenses. . . **The [trial] court's fundamental job is to determine whether a given legal fee – say, for taking a deposition or drafting a motion [or attending oral argument on a motion] – would or would not have been incurred in the absence of the [specific litigation] conduct**.  The award is then the sum total of the fees that, except for the [conduct at issue], would not have accrued [cit. om.].") (emphasis added).

4

require the vacatur of the portion of the Order directing PICAP to pay the sum of $14,649.40 to Navient.

9. For instance, the Order correctly finds that (a) Navient's Motion relies upon inappropriate block-billing and fails to present its legal services as "broken down on an every six minute basis" as Navient's counsel admitted would have been done "in a normal fee application" [Dkt 74, pp. 16-17]; (b) Navient's Motion "was overstaffed with too many lawyers and paralegals from two law firms" as to which "there was duplication of services between Kirkland and McGure Woods" and **"[s]ix lawyers on Kirkland's team (including four partners), and all three lawyers on McGuire Woods' team (including one partner and one counsel) attended the MTD Hearing**" [*Id.*, p. 16] [emphasis added]; and (c) Navient's "Motion also does not provide any summary for the categories of fees" [*Id.*, p. 16].

10. Yet, despite these correct findings, the Order inconsistently directs that "PICAP is liable for two-thirds of the fees incurred at the MTD Hearing"[7] [Dkt 74, p. 20], even though the Court found significant overstaffing that "[s]ix lawyers on Kirkland's team (including four partners), and all three lawyers on McGuire Woods' team (including one partner and one counsel) attended the MTD Hearing." And, despite the Court's correct finding that Navient's Motion seeks legal fees for the period from February 8, 2021 until March 19, 2021 [Dkt 74, p. 3] - - **and even though PICAP filed no litigation papers during this legal fee period from February 25, 2021 until March 19, 2021** - - the

---

[7] The "MTD Hearing" is defined in the Order as oral argument by counsel before the Court during the morning of February 25, 2021 on Navient's pre-answer motion (filed on February 16-17, 2021) to dismiss an involuntary petition filed by Petitioning Creditors (filed on February 8, 2021).

5

Order also inconsistently directs that PICAP is "fifty percent liable for the [Navient] fees incurred post-hearing [between February 25, 2021 until March 19, 2021]. Dkt 74, p. 20.[8]

11.     Accordingly, based upon the foregoing, even if Navient had addressed this but-for factual cause issue (which did not occur as set forth above), the Order nevertheless contains findings that independently require the vacatur of the portion of the Order directing PICAP to pay the sum of $14,649.40 to Navient.

12.     The **SECOND** legal reason why the Order should be altered, amended, reconsidered and/or vacated - - to the extent the Order incorrectly imposes legal fee shifting liability against PICAP under 11 U.S.C. 303(i)(1) in the sum of $14,649.40 - - is because the **Order does not address statutory provisions (or governing appellate precedent from the Second Circuit or Southern District of New York)** mandating the dismissal of Navient's legal fee shifting Motion as time barred because such Motion was not filed during the statutorily mandated 14-day time period. See, e.g., (a) FRBP 1018

---

[8] During the legal fee billing period between February 25, 2021 and March 19, 2021, it is solely the Petitioning Creditors - - **not PICAP** - - who filed a reconsideration motion (followed by a filed appeal) involving the Court's written dismissal order entered February 25, 2021 and the Court's written opinion and order entered March 8, 2021. **PICAP filed no litigation papers during the legal fee billing period between February 25, 2021 and March 19, 2021. Indeed, if Navient had not sought to impose over $600,000 in legal fees against PICAP, this matter would have concluded on February 25, 2021 as between Navient PICAP**. However, on March 29, 2021, it is Navient (not PICAP) who unfortunately escalated the situation, and chose to seek more than $600,000 in legal fees against PICAP so as to punish PICAP for having had the temerity to spend less than two full days - - from the late afternoon of February 23, 2021 until the morning of February 25, 2021 - - presenting its position to the Court as to why Navient's unsecured creditors (of which PICAP is one) should be afforded an opportunity to participate in this involuntary case.

In mid-April 2021, PICAP filed a motion with the District Court, under 28 U.S.C. 157(d), seeking a mandatory withdrawal of the Motion, such mandatory withdrawal Motion has not been decided by the District Court, and pursuant to a court order in late April 2021, further proceedings on such mandatory withdrawal Motion are temporarily suspended until seven days after the entry of a final, appealable, order by the Bankruptcy Court on the Motion. Navient's Motion does not seek legal fees for the period of time after March 19, 2021 and, thus, proceedings between Navient and PICAP in April 2021 are not before the Bankruptcy Court for a legal fee shifting adjudication. Moreover, PICAP's mandatory withdrawal motion is pending before, and has not been denied by, the District Court, thereby presenting another independent reason as to why Navient cannot be awarded any legal fees against PICAP relating thereto.

6

providing that an involuntary bankruptcy case is to be treated as the equivalent of an adversary proceeding under Part VII of the Federal Rules of Bankruptcy Procedure and, in particular, FRBP 7054 shall "apply to all proceedings" involving an involuntary bankruptcy case;[9] (b) FRBP 7054(b)(2)(A), as amended in 2014, providing that "Rule 54(d)(2)(A)-(C) and (E) F.R.Civ.P. applies in adversary proceedings except for the reference in Rule 54(d)(2)(C) to Rule 78";[10] (c) FRCP 54(d)(2)(B)(i), as applied to involuntary cases (a type of adversary proceeding) as of 2014, directing that "**Unless a statute or court order provides otherwise, the motion must (i) be filed no later than 14 days after the entry of judgment**;"[11] [emphasis added] and (d) FRCP 54(d)(2)(e), as applied to involuntary cases (a type of adversary proceeding) as of 2014, **directing that the only exceptions to the statutorily mandated 14-day time period** are for "sanctions for violating these rules" [such as sanctions under Rule 11 or Rule 37 of the Federal Rules of Civil Procedure] "or as sanctions under 28 U.S.C. 1927."[12]

13.    The Motion Record is undisputed that Navient did not file its post-dismissal legal fee shifting motion, under 11 U.S.C. 303(i)(1), within the statutorily mandated 14-day time period after the entry of the Court's written dismissal order on February 25, 2021 - - much less within a 14-day time period after entry of the Court's written opinion and order on March 8, 2021 (elaborating on its reasons for dismissal of the case).  Dkt 74, pp. 4-5

---

[9] The Order does not address the statutory requirement in FRBP 1018 providing that an involuntary bankruptcy case is to be treated as the equivalent of an adversary proceeding under Part VII of the Federal Rules of Bankruptcy Procedure and, in particular, FRBP 7054 shall "apply to all proceedings" involving an involuntary bankruptcy case.  Dkt 74, pp. 10-12.

[10] The Order does not address governing appellate precedent from the Second Circuit or Southern District of New York (as set forth herein) mandating the dismissal of Navient's legal fee shifting Motion as time barred because such Motion was not filed during the statutorily mandated 14-day time period.

[11] See footnotes 9, 10, and 12 *infra.*

[12] The Order does not address the statutory requirement in FRCP 54(d)(2)(e), as applied to involuntary cases (a type of adversary proceeding) as of 2014, directing that the only exceptions to the statutorily mandated 14-day time period are for "sanctions for violating these rules" [such as sanctions under Rule 11 or Rule 37 of the Federal Rules of Civil Procedure] "or as sanctions under 28 U.SA.C. 1927."

and 10-12; Dkt 64 [pp. 3-4, 16-18].

14.     Significantly, in addition to not addressing the statutory requirements in FRBP 1018 applying FRBP 7054 to an involuntary case - - and not addressing FRBP 7054(b)(2)(A)'s incorporation of the statutorily mandated 14-day time period from FRCP 54(d)(2)(B)(i) as of 2014, and the limited statutorily-authorized exceptions thereto in FRCP 54(d)(2)(e) as of 2014) - - **the Order [Dkt. 74, pp. 10-12] also does not address the fact that (a) there is no language in the fee-shifting statute of 11 U.S.C. 303(i)(1) itself that exempts a legal fee shifting motion thereunder from compliance with the statutorily mandated 14-day time period in FRCP 54(d)(2)(B)(i) which was incorporated, as of 2014, into FRBP 7054(b)(2)(A) and (b) there is no language in FRCP 54(d)(2)(E) which was incorporated, as of 2014, into FRBP 7054(b)(2)(A), that includes a legal fee shifting motion under 11 U.S.C. 303(i)(1) as a statutorily-authorized exception to the statutorily mandated 14-day time period**. See also, e.g., the Supreme Court's decision in *Ray Haluch Gravel Co. v. Central Pension Fund*, __ U.S. __, 134 S.Ct. 773, __ (2014) ("Rule 54(d)(2) applies regardless of the statutory, contractual, or equitable basis of the request for fees [cit. om.]"); the federal appellate court decision in *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1385 (Fed. Cir. 2005) ("[W]e hold that any claim to attorney fees must be processed in compliance with Rule 54(d)(2)(B).  No provision in section 285 [the fee-shifting statute in 35 U.S.C. 285] exempts requests for attorney fees thereunder from compliance with Rule 54(d)(2)(B).")

15.     The Order, however, incorrectly concludes, **in reliance upon obsolete case-law precedent that precedes the 2014 Amendment to FRBP 7054**, that the statutorily

8

mandated 14-day time period for the filing of a post-dismissal, legal fee shifting motion - - as set forth in FRCP 54(d)(2)(B)(i) and FRCP 54(d)(2)(e) that are incorporated, **as of 2014**, into FRBP 7054(b)(2)(A), which governs an involuntary case under FRBP 1018 - - "does not apply" to attorneys' fees awarded under the fee-shifting statute of 11 U.S.C. 303(i)(1). Dkt 74, pp. 10-11. As set forth above, **as of 2014**, the statutory law changed for a bankruptcy case to the extent of applying, **as of 2014**, the statutorily mandated 14-day time period for the filing of a post-dismissal, legal fee shifting motion. See FRCP 54(d)(2)(B)(i) and FRCP 54(d)(2)(e) that are incorporated, **as of 2014**, into FRBP 7054(b)(2)(A), which governs an involuntary case under FRBP 1018. As set forth above, the fee-shifting statute in 11 U.S.C. 303(i)(1), **as of 2014**, is not listed as a statutorily-authorized exception to the statutorily mandated 14-day time period in FRCP 54(d)(2)(e) - - which was incorporated, **as of 2014**, into FRBP 7054(b)(2)(A).

16. The Order does not cite any case-law precedent - - **following the 2014 Amendment** to FRBP 7054 incorporating the statutorily mandated 14-day time period - - expressly addressing the legal effect of the 2014 Amendment to FRBP 7054 as applied to the time-period for the filing of a post-dismissal legal fee shifting motion. Dkt 74, pp. 10-11.

17. Instead, the Order cites one bankruptcy court decision from 2017 in the Eastern District of Pennsylvania - - after the 2014 Amendment to FRBP 7054 incorporating the statutorily mandated 14-day time period - - in support of the proposition that a post-dismissal, legal fee shifting motion under 11 U.S.C. 303(i)(1) need not be filed within 14 days after the entry of the dismissal order. See *Nat'l Med. Imaging, LLC v. U.S. Bank, N.A. (In re Nat'l Med. Imaging, LLC)*, 570 B.R. 147, 157 (Bankr. E.D.Pa. 2017).

9

Significantly, however, this bankruptcy court decision from 2017 in the Eastern District of Pennsylvania premised its conclusion upon two cited rulings - - **both of which precede the 2014 Amendment to FRBP 7054, and were issued by a Bankruptcy Appellate Panel within the Ninth Circuit**. *Id.*[13] However, this bankruptcy court decision from 2017 in the Eastern District of Pennsylvania notably fails to expressly address the legal effect of the 2014 Amendment to FRBP 7054 as applied to the time-period for the filing of a post-dismissal legal fee shifting motion. *Id.*

18. Indeed, in 2018, a year after this bankruptcy court decision from 2017 in the Eastern District of Pennsylvania - - and four years after the 2014 Amendment to FRBP 7054 - - the very same Bankruptcy Appellate Panel within the Ninth Circuit, which had issued obsolete rulings preceding the 2014 Amendment, **issued a new ruling, after the 2014 Amendment**, (a) applying the 2014 Amendment; (b) holding that FRCP "Civil Rule 54(d)(2), incorporated by [FRBP] Rule 7054, requires that a motion for attorney's fees be filed within 14 days after the entry of judgment"; (c) holding that "In a case of an untimely motion for attorney's fees under [FRCP] Civil Rule 54(d)(2)(B), the Ninth Circuit requires the court to apply [FRCP] Civil Rule 6(b)(1)(B) [and] [w]e apply [FRBP] Rule 9006(b)(1), which is substantively identical to [FRCP] Civil Rule 6(b)(1)(B) [and] [t]he court should grant the motion only when the moving party missed the [14-day] deadline due to excusable neglect"; (d) holding that "The bankruptcy court did not apply this [2014 Amendment] standard before awarding [debtor] his attorney's fees [and] [t]herefore, it additionally abused its discretion by applying an incorrect standard of law for these fees"; and (e) effectively overruled and rejected its pre-2014 decisions (which

---

[13] "Section 303(i) claims are not subject to a statute of limitations (whether under the Bankruptcy Code or borrowed from state law)." *Id.*, citing two pre-2014 decisions issued by a Bankruptcy Appellate Panel within the Ninth Circuit.

10

had been erroneously relied upon in the bankruptcy court decision from 2017 in the Eastern District of Pennsylvania) and confirmed that the 2014 Amendment governs the time period for the filing of a legal fee shifting motion in a bankruptcy case. See *The Bank of New York Mellon v. Lane (In re Richard R. Lane),* 589 B.R. 399, 412-413 (9th Cir. BAP 2018);[14] *accord In re Peabody Energy Corp.*, 612 B.R. 916, 919-921 (E.D. Mo. 2020) (reversing bankruptcy court's legal fee award of $433,102.78 because the legal fee motion was not filed with the bankruptcy court during the statutorily mandated 14-day time period under FRBP 7054).

19.     Moreover, the Order also does not address the Second Circuit precedent (and other federal appellate precedent) cited in PICAP's previously filed memorandum of law (a) strictly enforcing the statutorily mandated 14-day time period for the filing of a post-dismissal, legal fee shifting motion and (b) requiring that Navient's legal fee shifting Motion, as against PICAP, must be denied as time-barred. Dkt 64, pp. 16-18. For instance, in *Tancredi v. Metropolitan Life Ins. Co.*, 378 F.3d 220, 226-228 (2d Cir. 2004), the Second Circuit ruled that (a) "the excusable neglect standard of Rule 6 qualifies a court's Rule 54 power to extend the time for filing an attorneys' fee motion after the [14-day] deadline expires;" (b) "Reading Rule 54(d)(2)(B) together with Rule 6(b)(2), as we must [cit. om.], we hold that absent a statute or order of the court such as a local rule, the [trial] court was required to find 'excusable neglect' under Rule 6(b)(2) to extend the time to move for attorneys' fees after the expiration of Rule 54's fourteen-day deadline [cit. om.];[15] and (c) "[W]e note that MetLife would face a great hurdle in demonstrating

---

[14] The Ninth Circuit thereafter affirmed the Bankruptcy Appellate Panel's legal fee shifting ruling. See *The Bank of New York Mellon v. Lane (In re Richard R. Lane),* 959 F.3d 1226, 1233 (9th Cir. 2020).
[15] The Record is undisputed that Navient has never filed a motion under FRBP 9006 seeking to extend the statutorily mandated 14-day time period for the filing of a post-dismissal, legal fee shifting motion.

excusable neglect" and "Absent a sufficient reason for its delay, the fact that the delay and prejudice were minimal would not excuse MetLife's mere inadvertence."[16]

20. Since the Record is undisputed that Navient has never filed a motion under FRBP 9006 seeking to extend the statutorily mandated 14-day time period for the filing of a post-dismissal, legal fee shifting motion, there is no need to address why Navient would be legally unable to prove "excusable neglect" in order to proceed with its untimely motion.

21. Finally, the Order also fails to address governing appellate precedent within the Second Circuit (and elsewhere) rejecting the Order's alternative conclusion that "Even if Rule 54 applies, the request is still timely." Dkt 74, p. 12. For instance, the Order incorrectly cites a 2007 decision from a Bankruptcy Appellate Panel within the Ninth Circuit to support a proposition that the statutorily mandated 14-day time period should be deemed to have been "implicitly extended" simply where a court inserts a clause in a dismissal order containing a "reservation of jurisdiction" over a future legal fee application. *Id.* However, this 2007 decision from a Bankruptcy Appellate Panel within the Ninth Circuit conflicts with, is contrary to, and is superseded by a higher court decision from the Ninth Circuit itself. See *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 872-974 (9th Cir. 2007) (ruling that an order containing a "reservation of jurisdiction" over a future legal fee application does not satisfy the "excusable neglect" standard for extending the statutorily mandated 14-day time period and, thus, such a

---

[16] See also, e.g., *Sorenson v. Wolfson*, 683 Fed. Appx. 33 (2d Cir. 2017), where the Second Circuit stated: "While a court may extend the time to file a motion for fees, it may do so only if the movant demonstrates 'excusable neglect' [cits. om.]. . . Wolfson did not offer any reason at that time for his delay, a fact independently sufficient to justify denial [of] the requested extension."

12

"reservation of jurisdiction" order does not constitute the type of "order of the court" that can legally extend the statutorily mandated 14-day time period);[17] *accord, e.g., Bender v. Freed*, 436 F.3d 747, 750 (7th Cir. 2006).[18]

22. Indeed, last year, the United States District Court for the Southern District of New York, whose rulings are binding on the Bankruptcy Court, favorably cited the Ninth Circuit's decision in *Veritas* (and the Seventh Circuit's decision in *Bender*) to support a ruling that a "reservation of jurisdiction" order, in and of itself, but without proof of "excusable neglect" having been proved on a filed time-extension motion (a) does not legally extend the statutorily mandated 14-day time period to file a legal fee shifting motion and (b) "does not obviate the need to file motions for fees and costs in accordance with the deadlines contained in the Federal Rules of Civil Procedure [incorporated into an involuntary bankruptcy case by the 2014 Amendment to FRBP 7054 and FRBP 1018]." *Beacon Associates LLC I v. Beacon Associates Management Corp.*, __ WL __, Case No. 14-CV-2294 (S.D.N.Y. May 7, 2020). This binding decision from last year cites the Second Circuit's decision in *Tancredi v. Metropolitan Life Ins. Co.*, 378 F.3d 220, 227 (2d Cir. 2004) to support a ruling that "Rule 54's 'order of the court' exception to 14-day

---

[17] The Ninth Circuit also rejected the legal fee movant's alternative argument that "because he acted in good faith reliance on his belief that the [trial] court's 'ambiguous' order extended the 14-day time limit, this untimely filing was the result of excusable neglect" and "the length of the delay was not great." *Id*., at 973-974. However, the Ninth Circuit was not persuaded by this proffered "reason for the delay" which was, in actuality, not excusable "neglect at all and certainly not a compelling showing of good cause." *Id*..
[18] "The Plan's fallback position is that even if the motion was untimely under Rule 54, the [trial] court should have considered it anyway because 'all parties were well aware of the Plan's intention to file a motion for attorneys' fees long before the entry of judgment,' and that discussions during a telephonic pretrial conference 'left no room for doubt that the Motion would be filed post-judgment.' This is not a legal argument; it is an appeal to fairness based upon an asserted absence of prejudice, but without a corresponding claim that compliance with the deadline imposed by Rule 54(d)(2) was impossible or impracticable or that the Plan's noncompliance was for some reason excusable. We are not persuaded. The Plan missed the deadline under Rule 54(d)(2) and offers no reason for having done so. The fact that the parties were 'well aware' that the Plan intended to file a fees motion at some indeterminate date in the future does not excuse noncompliance with the applicable procedural rules." *Id*.

13

deadline does not 'confer [ ] on [ ] courts untrammeled discretion to extend the time to file a fee motion' without finding of 'excusable neglect'.").[19]

23. Accordingly, based upon the foregoing, the Order should be altered, amended, reconsidered and/or vacated - - to the extent the Order incorrectly imposes legal fee shifting liability against PICAP under 11 U.S.C. 303(i)(1) in the sum of $14,649.40 - - because the Order does not address statutory provisions (or governing appellate precedent from the Second Circuit or Southern District of New York) mandating the dismissal of Navient's legal fee shifting Motion as time barred because such Motion was not filed during the statutorily mandated 14-day time period.

24. The **THIRD** reason why the Order should be altered, amended, reconsidered and/or vacated - - to the extent the Order incorrectly imposes legal fee shifting liability against PICAP under 11 U.S.C. 303(i)(1) in the sum of $14,649.40 - - is because the **Order does not address Supreme Court precedent** cited in PICAP's objection [Dkt 63, pp. 8-12] indicating that (a) where, as here, a court declines to exercise jurisdiction and dismisses a case on abstention grounds, **then Article III of the United States Constitution divests all courts of subject matter jurisdiction to adjudicate the merits of any issues in the case**, regardless of whether the court is an Article III District Court or an Article I Bankruptcy Court and (b) the absence of Article III subject matter jurisdiction over the merits in this case means that the Court's non-abstention rulings in the February 25, 2021 dismissal order (and the March 8, 2021 opinion and order) have no

---

[19] See also, e.g., *Mattel, Inc. v. Radio City Entm't*, 210 F.R.D. 505, 505 (S.D.N.Y. 2002) (rejecting claim of "excusable neglect" where the reason for the late legal fee motion filing was that the movant "overlooked or forgot [ ] about Rule 54(d)(2)(B)"); *Joseph v. Korn*, __ WL __, Case No. 19-CV-7147 (E.D.N.Y. Mar. 9, 2021) (rejecting legal fee movant's unsupported argument that the statutorily mandated 14-day time period under FRCP 54 should not apply to "fee-shifting statutes").

14

jurisdictionally binding legal effect, and cannot operate as a putative basis on the merits on which to impose legal fee shifting liability, under 11 U.S.C. 303(i)(1), against PICAP. Dkt 63, pp. 8-12.

25.     For instance, in *Sinochem Int'l v. Malaysia Int'l Shipping*, 549 U.S. 422, 127 S.Ct. 1184, 1190-1193 (2007), the Supreme Court ruled that where, as here, the court declines to exercise jurisdiction and dismisses a case on abstention grounds, then Article III of the United States Constitution divests all courts of subject matter jurisdiction to adjudicate the merits of any issues in the case, regardless of whether the court is an Article III District Court or an Article I Bankruptcy Court:

> ""We have characterized forum *non conveniens* as, essentially, 'a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined [cit. om.]'; [cit. om. stating ***forum non conveniens 'involves a deliberate abstention from the exercise of jurisdiction'***]. . . *Steel Co. [v. Citizens for a Better Environment*, 523 U.S. 83 (1998)] clarified that a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject matter jurisdiction) and the parties (personal jurisdiction) [cit. om.]. '***Without jurisdiction the court cannot proceed at all in any cause:' it may not assume jurisdiction for the purpose of deciding the merits of the case*** [cit. om.]. ***While Steel Co. confirmed that jurisdictional questions ordinarily must precede merits determinations in dispositional order***, *Ruhrgas [AG v. Marathon Oil Co.,* 526 U.S. 574 (1999)] held that there is no mandatory 'sequencing of jurisdictional issues' [cit. om.]. In appropriate circumstances, *Ruhrgas* decided a court may dismiss for lack of personal jurisdiction without first establishing subject matter jurisdiction [cit. om.]. Both *Steel Co*. and *Ruhrgas* recognized that ***a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits' [cit. om.]. Dismissal short of reaching the merits means that the court will not 'proceed at all' to an adjudication of the cause***. The principle underlying these decisions was well stated by the Seventh Circuit: 'Jurisdiction is vital only if the court proposes to issue a judgment on the merits' [cit. om.] . . .A forum *non conveniens* dismissal [a type of abstention dismissal declining to exercise jurisdiction] 'denies audience to a case on the

15

> merits' [cit. om.].  It is a determination that the merits should be
> adjudicated elsewhere [cits. om.].  The Third Circuit [in this case
> properly] recognized that forum *non conveniens* 'is a non-merits ground
> for dismissal' [cit. om.].  A [ ] court therefore may dispose of an action
> by a forum *non conveniens* dismissal, bypassing questions of subject
> matter and personal jurisdiction, when considerations of convenience,
> fairness, and judicial economy so warrant. . . ***The critical point here,
> rendering a forum non conveniens determination a threshold,
> nonmerits issue in the relevant context, is simply this: resolving
> a forum non conveniens motion does not entail any assumption
> by the court of substantive 'law-declaring power'*** [cit. om.]."
> [emphasis added]

*accord, e.g., Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89-95, 101-102

(1998) ("For a court to pronounce upon the meaning. . . of a state or federal law when it

has no jurisdiction to do so is, by very definition, for a court to act *ultra vires*.").

26.     The Order [Dkt 74, pp. 12-13] does not address these Supreme Court rulings,

cited in PICAP's objection [Dkt 63, pp. 8-12], indicating that (a) where, as here, a court

declines to exercise jurisdiction and dismisses a case on abstention grounds, **then Article

III of the United States Constitution divests all courts of subject matter jurisdiction

to adjudicate the merits of any issues in the case**, regardless of whether the court is an

Article III District Court or an Article I Bankruptcy Court and (b) the absence of Article

III subject matter jurisdiction over the merits in this case means that the Court's non-

abstention rulings in the February 25, 2021 dismissal order (and the March 8, 2021

opinion and order) have no jurisdictionally binding legal effect, and cannot operate as a

putative basis on the merits on which to impose legal fee shifting liability, under 11

U.S.C. 303(i)(1), against PICAP.[20]

---

[20] The Order [Dkt 74, pp. 12-13] incorrectly characterizes the issue of Article III subject matter jurisdiction
over the merits, once the Court declined to exercise jurisdiction and dismissed the case on abstention
grounds, as an issue going to the "authority" of an Article I Bankruptcy Court (or an Article III District
Court) to render a "final judgment" herein.  Indeed, as set forth in PICAP's objection [Dkt 63, pp. 8-12],
where, as here, a court declines to exercise jurisdiction and dismisses a case on abstention grounds, then
Article III of the United States Constitution divests all courts of subject matter jurisdiction

16

27. The Order [Dkt 74, pp. 14-16] also incorrectly concludes that, even though the Court declined to exercised jurisdiction and dismissed the case on abstention grounds, the Court nevertheless retained subject matter jurisdiction to adjudicate the merits of non-abstention issues in the case - - including, but not limited to, a putatively binding adjudication of the merits issues in the February 25, 2021 dismissal order (and the March 8, 2021 opinion and order) and the use thereof by Navient as a putative basis on the merits on which to impose legal fee shifting liability, under 11 U.S.C. 303(i)(1), against PICAP. **However, the Court's conclusion is contrary to well-established precedent from the federal appellate courts**. See, e.g., the decision two years ago by the federal appellate court in *First State Bank of Roscoe v. Stabler*, 914 F.3d 1129, 1139 (8th Cir. 2019):

> "**First, if a ruling contains a decision to abstain, or a decision concerning the court's power to decide the case, any purported resolution of the merits generally should be of no effect**. See, e.g., *Remus Joint Venture v. McNally*, 116 F.3d 180, 184 n. 5 (6th Cir. 1997) ('[W]hen a ruling rests on alternative grounds, at least one of which is based on the inability of the court to reach the merits, the judgment should not act as a bar in a future action.');[21] 18 Charles Alan Wright, et al., Federal Practice and Procedure 4421 (3rd ed. 2018) ('If a first

---

to adjudicate the merits of any issues in the case**, regardless of whether the court is an Article I Bankruptcy Court or an Article III District Court**.

[21] "We note that the state court correctly recognized that when a [federal] court's ruling rests on alternative grounds, at least one of which is based on the inability of the court to reach the merits, the judgment should not act as a bar to a future action. See, e.g., *Pizlo v. Bethlehem Steel Corp*., 884 F.2d 116, 119 (4th Cir. 1989) ('When a dismissal is based on two determinations, one of which would not render the judgment a bar to another action on the same claim, the dismissal should not operate as a bar.') (citing Restatement (2d) of Judgments [section] 20, cmt. e, illus. 4 (1982)); 18 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure 4421 at 207 (2d ed. 1981) ('If a first decision is supported both by findings that deny the power of the court to decide the case on the merits and by findings that go to the merits, preclusion is inappropriate as to the findings on the merits.'). The state court also correctly cited federal law in its res judicata analysis. See Restatement (2d) of Judgments [section] 87 (1982) ('Federal law determines the effects under the rules of res judicata of a judgment of a federal [ ] court.'). Nevertheless, at least in our view, the state court incorrectly gave preclusive effect to the federal [trial] court's decision. **Although the federal [trial] court denied plaintiff's motion to amend their federal complaint based on the futility of the amendment, a decision that is on the merits, this decision in no way eviscerated the [trial] court's alternative ruling that it should abstain**. With the alternative abstention ruling intact, the [trial] court's ultimate resolution still rested on alternative grounds, which should have prevented the application of preclusion." *Id*. [emphasis added]

17

decision is supported both by findings that deny the power of the court to decide the case on the merits and by findings that go to the merits, preclusion is inappropriate as to the findings on the merits.'). **The purported resolution of issues on the merits is, for all intents and purposes, a nullity in light of the court's express election to abstain**. See *Disher v. Info. Res., Inc.*, 873 F.3d 136, 140 (7th Cir. 1989_ ('A dismissal based on the [trial] court's relinquishing its [ ] jurisdiction deprives any ruling that [the court] may have made on the merits of a relinquished claim of preclusive effect." [emphasis added][22]

accord, e.g., *Bunker Romo Corp. v. United Bus. Forms, Inc.*, 713 F.2d 1272, 1279 (7th Cir. 1983) ("**Once a court expresses the view that it lacks jurisdiction, the court thereafter does not have the power to rule on any other matter**.") (emphasis added).

28.  The Order [Dkt. 74, p. 14-15] also concludes, in a jurisdictionally overbroad fashion, that, in *In re TPG Troy, LLC*, 793 F.3d 228, 232 (2d Cir. 2015), "[t]he Second Circuit has already found where a court finds grounds to dismiss an involuntary petition under both sections 303 [11 U.S.C. 303] and 305 [11 U.S.C. 305], it does not waive jurisdiction to review a request under section 303(i) ][11 U.S.C. 303(i)(1)]." **However, in *Troy*, the litigants did not actually argue before any court at any level, and no court at any level actually decided, the precise constitutional subject matter jurisdiction issue in this case, to wit**: where, as here, a court declines to exercise jurisdiction and dismisses a case on abstention grounds, then (a) Article III of the United States Constitution divests all courts of subject matter jurisdiction to adjudicate the merits of any issues in the case, regardless of whether the court is an Article III District Court or an Article I Bankruptcy Court and (b) the absence of Article III subject matter

---

[22] "Reviewing de novo *Stewart v/ U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002), we hold – consistent with the Restatement (2d) of Judgments and at least three sister circuits – that an earlier dismissal on alternative grounds, where one ground is lack of jurisdiction, is not res judicata. Res judicata therefore does not bar this action." *Ruiz v. Snohomish County Public Utility Dist. No. 1*, 824 F.3d 1161, 1163 (9th Cir. 2016).

18

jurisdiction over the merits in this case means that the Court's non-abstention rulings in the February 25, 2021 dismissal order (and the March 8, 2021 opinion and order) have no jurisdictionally binding legal effect, and cannot operate as a putative basis on the merits on which to impose legal fee shifting liability, under 11 U.S.C. 303(i)(1), against PICAP. Dkt 63, pp. 8-12.

29.     Indeed, the substantively different jurisdictional issue in *Troy* had nothing to do with whether a court retains subject matter jurisdiction to adjudicate any merits issues after an abstention-based dismissal of the case.

30.     Instead, the substantively different jurisdictional issue in *Troy* solely involved a case development that did not occur until after a bankruptcy appeal had been decided by the District Court, and before the Second Circuit decided a further appeal.  That case development, which arose for the first time at the Second Circuit level, is that an abstention-based dismissal is only subject to the District Court's bankruptcy appeal jurisdiction, and is not subject to further appellate review before the Second Circuit. The target of the legal fee award argued, for the first time before the Second Circuit, that despite its bankruptcy appeal loss before the District Court on its challenge to the abstention-based dismissal, its inability to further challenge that District Court affirmance of the abstention-based dismissal, before the Second Circuit, purportedly rendered its legal fee appeal "moot" in the Second Circuit.  The Second Circuit correctly ruled that the target of the legal fee award could not complain about Second Circuit review of the legal fee appeal merely because Congress had determined to limit bankruptcy appeal review of a challenge to an abstention-based dismissal solely to the District Court (but not the Second Circuit).  As explained above, this situation in *Troy* has nothing to do with

19

the precise subject matter jurisdiction issue in this case. Indeed, in this case, PICAP has not challenged, or appealed from, the abstention-based dismissal. And, in this case, unlike the situation in *Troy*, PICAP has, in fact, actually presented the abstention-based merits jurisdiction issue to the trial court for an adjudication.

31.     In any event, the Supreme Court precedent cited in PICAP's objection [Dkt 63, pp. 8-12, and set forth above, trumps and supersedes any potentially inconsistent rulings from the Second Circuit in *Troy*, as applied to the precise subject matter jurisdiction issue in this case.

32.     Accordingly, based upon the foregoing on this constitutional jurisdiction issue, the Order should be altered, amended, reconsidered and/or vacated - - to the extent the Order incorrectly imposes legal fee shifting liability against PICAP under 11 U.S.C. 303(i)(1) in the sum of $14,649.40.

Dated: May 25, 2021

                                              Respectfully submitted,

                                              Law Offices of Michael B. Wolk, P.C.

                                              By:      /s/ Michael B. Wolk_____
                                                       Michael B. Wolk
                                              155 East 55th Street, Suite 300B
                                              New York, New York 10022
                                              Tel: 917-238-0576
                                              Email: michael.wolk@wolkgroup.com
                                              Counsel for Movant Public Interest Capital, LLC