UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE NAVIENT SOLUTIONS, LLC,

                Putative Debtor.

LABARRON TATE ET AL.,

                Appellants,

     - against -

NAVIENT SOLUTIONS, LLC,

                Appellee.

21-cv-2897 (JGK)

MEMORANDUM OPINION
AND ORDER

---

JOHN G. KOELTL, District Judge:

    The appellants, LaBarron Tate, Sarah Bannister, and Brandon Hood (also referred to in this Opinion as the "petitioners"), appeal from an order of the United States Bankruptcy Court for the Southern District of New York (Glenn, J.) dismissing the petitioners' petition for involuntary bankruptcy against Navient Solutions, LLC ("Navient," or the "appellee") under 11 U.S.C. § 303, and an order granting the appellee's motion for attorney's fees under 11 U.S.C. § 303(i). For the following reasons, the orders of the bankruptcy court are **affirmed.**

### I.

### A.

    The petitioners are three individuals who at one point took out student loans from Navient. See Supp. to Petition 4, In re Navient Solutions, LLC, No. 21-10249 (Bankr. S.D.N.Y. filed Feb. 10, 2021), ECF No. 2-1 ("Bankr. ECF"). The petitioners later

filed for bankruptcy. See id. at 4, 9. The petitioners argue
that their respective bankruptcies discharged their debts to
Navient. The petitioners allege that Navient nonetheless
continued to seek repayment of the loans, and that the
petitioners did in fact repay Navient a portion of their debts
after their bankruptcies. See id. The petitioners also allege
that Navient is currently being sued by the Consumer Financial
Protection Bureau ("CFPB"). Id. at 5.

Several putative class actions are currently pending
against Navient based on similar allegations. See, e.g., Crocker
v. Navient Solutions, LLC, No. 16-3175 (Bankr. S.D. Tex. filed
Aug. 5, 2016); Homaidan v. Sallie Mae, Inc., 17-1085 (Bankr.
E.D.N.Y. filed June 23, 2017); Bolt v. Navient Solutions LLC,
No. 20-3040 (Bankr. D. Conn. filed Sept. 8, 2020); Mazloom v.
Navient Solutions, Inc., No. 20-80033 (Bankr. N.D.N.Y. filed
July 2, 2020). At the time the petition was filed, no class had
been certified. Navient has refused to repay the money to the
petitioners. See Supp. to Petition 4, 9.

On February 10, 2021, the petitioners brought a petition
for involuntary bankruptcy against Navient, on the theory that
Navient owed the petitioners the money Navient had collected
from the petitioners after their discharges, making the
petitioners creditors of Navient. See Bankr. ECF No. 2. The
petition alleged that "Navient is insolvent," supporting this

2

allegation with a back-of-the-envelope calculation that "$87.4 billion in assets minus $85 billion in liabilities minus $4 billion in damages in CFPB lawsuit equals -$1.6 billion in net worth." Supp. to Petition 6, Bankr. ECF No. 2-1.[1]

**B.**

On February 17, 2021, Navient moved to dismiss the petition. See Br. ECF No. 14. In letters dated February 18 and 19, 2021, Austin Smith, counsel for the petitioners, stated that "Smith and Smith alone will bear any and all liability resulting from an adverse finding" of the bankruptcy court as to liability regarding Navient's attorney's fees. Bankr. ECF Nos. 17, 22. On February 23, 2021, Public Interest Capital, LLC ("PICAP") purported to join the involuntary petition pursuant to 11 U.S.C. § 303(c) and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 1003(b) on the theory that it, too, held claims against Navient. See Bankr. ECF No. 35.

On February 25, 2021, the bankruptcy court held a hearing, at which Mr. Smith did not appear. See Bankr. ECF No. 52. On the same day, the bankruptcy court issued an order granting the motion to dismiss, denying PICAP's request for joinder, and noting that "Navient has not waived the right to seek judgment against the Petitioners, Counsel, Public Interest Capital, LLC

---

[1] Unless otherwise noted, this Opinion omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

("PICAP"), and counsel for PICAP pursuant to section 303(i) of

the Bankruptcy Code and [the bankruptcy court] may, upon

subsequent proceedings initiated by Navient, take under

advisement additional proceedings related to the Involuntary

Case pursuant to section 303(i) of the Bankruptcy Code." See

Bankr. ECF No. 42.

### C.

On March 8, 2021, the bankruptcy court issued an opinion in

which it articulated four bases for its dismissal. Bankr. ECF

No. 45 ("Dismissal Opinion").

### 1.

The first ground for dismissal was that the petitioners'

claims were not free of bona fide dispute, as required for an

involuntary bankruptcy case by 11 U.S.C. § 303(b). While two

circuits had found student loans to be dischargeable in

bankruptcy, the petitioners' bankruptcies had not occurred in

those circuits. The certification of this question to the Court

of Appeals for the Second Circuit also "very strongly

suggest[ed] that the dispute . . . [wa]s bona fide." Id. at 5.

The bankruptcy court went on to recite several legal and factual

disputes that bore on Navient's liability to the petitioners and

thereby created a bona fide dispute.

### 2.

The second ground for dismissal was that the petition was

filed in bad faith. In re Bayshore Wire Prods. Corp., 209 F.3d

100 (2d Cir. 2000), considered bad faith under four tests: the "improper use" test, which asks whether the petitioners seek to advance an interest outside the goals of bankruptcy, id. at 105; the "improper purpose" test, which asks whether a petitioner was "motivated by ill will, malice, or a desire to embarrass or harass" the putative debtor, id.; the "objective test," which asks whether a "reasonable person" in the petitioner's position would have believed it reasonable to file an involuntary petition, id. at 105-06; and the test used to determine whether sanctions on attorneys are appropriate under Bankruptcy Rule 9011, which considers both objective and subjective elements. Id. at 106. The bankruptcy court also cited In re Murray, 543 B.R. 484, 489-91 (Bankr. S.D.N.Y. 2016), aff'd, 565 B.R. 527 (S.D.N.Y. 2017), and aff'd, 900 F.3d 53 (2d Cir. 2018), which considered several factors to determine bad faith.

The bankruptcy court found, based on Mr. Smith's public statements, that Mr. Smith was using the involuntary petition to circumvent other litigation, and that he "was motivated by ill will, malice, or a desire to embarrass or harass" Navient. The bankruptcy court also pointed out that Mr. Smith, despite listing on his website a summary of "the elements required to commence an involuntary petition," had "blatant[ly] fail[ed]" to heed that information in drafting the petition. The bankruptcy court therefore found that all of the Bayshore tests were met.

5

**3.**

The third basis for dismissal was that Navient was not generally failing to pay its undisputed debts as they became due as required by § 303(h). This test does not ask whether a putative debtor is balance-sheet insolvent. Because the petition alleged only a calculation that purported to show that Navient had a negative net worth, the petition alleged, at most, balance-sheet insolvency. The bankruptcy court also reiterated that the pertinent debts were subject to bona fide dispute. The petitioners had therefore not met the requirements of § 303(h).

**4.**

Finally, the bankruptcy court found that it would in any event have abstained. 11 U.S.C. § 305(a)(1) authorizes a bankruptcy court to dismiss a petition when "the interests of the creditors and the debtor would be better served by such dismissal." In re Monitor Single Lift I, Ltd., 381 B.R. 455 (Bankr. S.D.N.Y. 2008), outlined seven factors to be considered.

The bankruptcy court analyzed the first six factors together under the rubric of "availability of an alternate forum to efficiently achieve an equitable distribution." Dismissal Opinion 27. The bankruptcy court found such forums to be available, given the pending litigation on these issues. The bankruptcy court further found that "an involuntary proceeding . . . [was] not necessary to reach a just and equitable

solution," "the automatic [bankruptcy] stay would only impede" that litigation. Finally, the bankruptcy court "ha[d] not been presented with any economic justification for placing Navient, a solvent entity, into" bankruptcy, and noted the expense and disruption that an involuntary bankruptcy would cause Navient. Dismissal Opinion 28.

The seventh and most important factor, the purpose for which the petition was filed, also favored abstention, given the bankruptcy court's finding of improper purpose. The bankruptcy court thus found that abstention was warranted.

The bankruptcy court thus dismissed the petition, remarking that it was not deciding damages, on which it had reserved jurisdiction.

**D.**

On March 11, 2021, the petitioners moved for reconsideration. Bankr. ECF No. 49. The following day, the bankruptcy court denied the motion. Bankr. ECF No. 51. On March 26, 2021, the petitioners filed with the bankruptcy court a notice of appeal of the dismissal. Bankr. ECF No. 53.

On March 29, 2021, Navient moved for attorney's fees and costs. Bankr. ECF No. 54. On April 14, 2021, PICAP moved for this Court to withdraw the reference to the bankruptcy court, and sought a stay of the bankruptcy court proceedings until this

Court decided the motion for withdrawal. ECF Nos. 4, 5. The
Court denied the request for a stay. ECF No. 10.

On April 22, 2021, the bankruptcy court held a hearing
concerning the imposition of attorney's fees, at which Mr. Smith
reiterated that he would be responsible for any fees awarded
pursuant to § 303(i)(1). Transcript at 36:25-37:3, Bankr. ECF
No. 73.

### E.

On May 11, 2021, the bankruptcy court issued an opinion
awarding certain fees and costs to Navient against Smith and
PICAP pursuant to § 303(i)(1). Bankr. ECF No. 74 ("Fees
Decision").

### 1.

The bankruptcy court first found that Navient's motion for
costs and attorney's fees was timely. While Federal Rule of
Civil Procedure 54(d)(2)(B), made applicable in bankruptcy
proceedings by Bankruptcy Rule 7054, sets a 14-day limit to move
for attorney's fees, several cases had found Rule 54 not to
apply to § 303(i)(1), because § 303(i)(1) "is substantive law
providing an independent claim." Fees Decision 10. Because there
was no prejudice to the petitioners, the motion was timely. In
the alternative, the bankruptcy court held that its prior
reservation of jurisdiction on the fees issue had implicitly
extended the time to file.

**2.**

The bankruptcy court found that some fees and costs were warranted. It first noted the "presumption that costs and attorney's fees will be awarded . . . where an involuntary petition is dismissed." Fees Decision 8. The petitioners made several arguments relating to the merits of the dismissal, but those arguments were foreclosed by the Dismissal Opinion. Because the petition was "profoundly lacking" and filed in bad faith, some costs and attorney's fees were warranted. Id. at 14.

**3.**

However, the bankruptcy court found that most of the fees requested by Navient were unreasonable. The bankruptcy court cited overstaffing, duplication of services between the law firms representing Navient, Kirkland & Ellis LLP ("Kirkland") and McGuireWoods LLP ("McGuireWoods"), insufficiently detailed records, and excessive hours. These excesses warranted a "substantial reduction," from $524,050.80 to $40,797.90 for Kirkland, and from $81,431.10 to $16,401.15 for McGuireWoods. Likewise, noting that Kirkland "did not demonstrate that the costs paid for the outside copy, binding, and printing services [we]re reasonable and necessary," the bankruptcy court reduced Kirkland's costs from $2,903.54 to $1,396.35.

**4.**

Finally, the bankruptcy court allocated the fees among the petitioners. Relying on In re Rosenberg, 500 B.R. 174 (S.D. Fla.

9

2013), aff'd in part, vacated in part and remanded, 779 F.3d
1254 (11th Cir. 2015), the bankruptcy court "look[ed] beyond the
name signed on [the] . . . petition" to find that Mr. Smith was
a de facto petitioner, because he had accepted responsibility
for any fee award. Fees Decision 18. The bankruptcy court
allocated to Mr. Smith all of the costs and all fees incurred
before PICAP's joinder; allocated the fees incurred at the
hearing on the motion to dismiss in a 2:1 ratio between PICAP
and Mr. Smith; and divided fees incurred thereafter evenly
between PICAP and Mr. Smith. All told, the bankruptcy court
awarded $26,148.50 of Kirkland's attorney's fees, $1,396.35 of
Kirkland's costs, and $16,401.15 of McGuireWoods's attorney's
fees against Mr. Smith; and $14,649.40 of Kirkland's attorney's
fees against PICAP. On May 25, 2021, Mr. Smith filed a notice of
appeal of this award. Bankr. ECF No. 75.[2]

## II.

The Court has jurisdiction over the appeal pursuant to 28
U.S.C. § 158(a). While the appellee identifies certain
procedural defects, none of these defects is jurisdictional.
Other than the timely filing of a notice of appeal, see
Bankruptcy Rule 8002; In re Siemon, 421 F.3d 167, 169 (2d Cir.
2005), all other procedural requirements for the filing of a

---

[2] PICAP also filed a notice of appeal in the bankruptcy court.
Bankr. ECF No. 84. However, PICAP has not pursued its appeal.
PICAP's appeal is therefore abandoned.

bankruptcy appeal are non-jurisdictional. See, e.g., In re Enron
Corp., No. 02-cv-5638, 2003 WL 223455, at *4 (S.D.N.Y. Feb. 3,
2003). In this case, each of the notices of appeal was timely
filed with the bankruptcy clerk as required by Bankruptcy Rule
8002. See Fed. R. Bankr. P. 8002(a)(1), 8002(b)(1)(B), 9023;
Fed. R. Civ. P. 59(e). The Court therefore has jurisdiction over
the appeal.

The procedural defects that the appellee has noted — such
as failing to file a designation of the record and statement of
issues on appeal with this Court — have not prevented a
consideration of the merits of this appeal or prejudiced the
appellee. Therefore, the Court will not dispose of the appeal on
procedural grounds and will proceed to the merits.

### III.

The bankruptcy court properly dismissed the involuntary
petition because the petition failed to state a prima facie
claim for relief under 11 U.S.C. § 303, and because the
bankruptcy court permissibly found that the petitioners' bad
faith constituted an independent basis for dismissal. The
bankruptcy court also found that it was proper to abstain.

### A.

The bankruptcy court properly dismissed the petition
because it failed to state a claim under 11 U.S.C. § 303(b). In
particular, the bankruptcy court properly dismissed the petition

because the petitioners had not properly alleged that Navient

was not generally paying its debts that were not subject to bona

fide dispute, as required by § 303(h). See Dismissal Opinion 25.

### 1.

The Bankruptcy Rules allow the debtor named in an

involuntary petition to contest the petition, including by

making objections "in the manner prescribed by" Federal Rule of

Civil Procedure 12. See Fed. R. Bankr. P. 1011; In re Taub, 439

B.R. 261, 270 (Bankr. E.D.N.Y. 2010). The debtor named in an

involuntary petition may therefore move to dismiss the petition

for failure to state a claim pursuant to Rule 12(b)(6).

On a motion to dismiss, the allegations in the petition are

accepted as true, and all reasonable inferences are drawn in the

petitioners' favor. See McCarthy v. Dun & Bradstreet Corp., 482

F.3d 184, 191 (2d Cir. 2007). However, the Court does not accept

as true legal conclusions contained in the petition. See

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court may also

consider documents that are referenced in the petition,

documents that the petitioner relied on in bringing suit and

that are either in the petitioner's possession or that the

petitioner knew of when bringing suit, or matters of which

judicial notice may be taken. See Chambers v. Time Warner, Inc.,

282 F.3d 147, 153 (2d Cir. 2002). The Court's function is "not

to weigh the evidence that might be presented at a trial but

merely to determine whether the [petition] itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

Failure to state a claim is a legal conclusion, see, e.g., In re Lyondell Chem. Co., 585 B.R. 41, 52 (S.D.N.Y. 2018), which the Court reviews de novo. Bayshore, 209 F.3d at 103.

### 2.

The petitioners claimed that Navient qualified for involuntary bankruptcy under 11 U.S.C. § 303(h)(1) because "the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." The bankruptcy court correctly found that the petitioners failed to allege this element.

### a.

First, the petitioners failed to allege that Navient was not generally paying its debts. "Generally not paying its debts" does not mean "balance-sheet insolvent." In re Fischer, 202 B.R. 341, 350 (E.D.N.Y. 1996). It does not mean that a putative debtor could not pay its debts, but rather that the putative debtor is not doing so. Thus, to determine whether an entity is generally paying its debts, courts in this Circuit consider four factors: "(1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the nonpayments; and (4) the

13

debtor's overall conduct of its financial affairs." Id. at 350;
In re A & J Quality Diamonds, Inc., 377 B.R. 460, 463 (Bankr.
S.D.N.Y. 2007). Courts do not, however, consider whether "the
sum of [an] entity's debts is greater than all of such entity's
property," the definition of "insolvency" under 11 U.S.C.
§ 101(32).

In this case, the petitioners failed to allege that Navient
was "generally not paying" its debts. The petition alleged that
"Navient is insolvent," supporting this conclusory allegation
with a back-of-the-envelope calculation that "$87.4 billion in
assets minus $85 billion in liabilities minus $4 billion in
damages in CFPB lawsuit equals -$1.6 billion in net worth."
Supp. to Petition 6, Bankr. ECF No. 2-1. This calculation, even
if it accurately reflects Navient's balance sheet, is entirely
irrelevant to the § 303(h) analysis, because that analysis asks
whether Navient is "generally not paying its debts," not whether
Navient is insolvent. The petition alleged no other facts that
might support an inference that Navient was not generally paying
its debts.

**b.**

Second, the debts that the petitioners claimed Navient owed
to them were subject to a bona fide dispute, and therefore could
not support the petitioners' involuntary bankruptcy petition
under § 303(h). Courts "treat[] the determination of a bona fide

dispute under section 303(h) in the same manner as they ma[k]e
the determination under section 303(b)." In re Amanat, 321 B.R.
30, 40 (Bankr. S.D.N.Y. 2005). The existence of a bona fide
dispute is determined by an objective test, under which courts
ask "whether there is an objective basis for either a factual or
a legal dispute as to the validity of the debt." In re BDC 56
LLC, 330 F.3d 111, 117-18 (2d Cir. 2003), abrogated on other
grounds by In re Zarnel, 619 F.3d 156, 158 (2d Cir. 2010). A
bona fide dispute exists where "there is either a genuine issue
of material fact that bears upon the debtor's liability or a
meritorious contention as to the application of law to
undisputed facts." In re CNG Foods LLC, No. 16-43278, 2020 WL
4219679, at *16 (Bankr. E.D.N.Y. July 13, 2020). Under this
objective test, the existence of pending litigation is not
sufficient to demonstrate, but does strongly suggest, the
existence of a bona fide dispute. In re TPG Troy, LLC, 793 F.3d
228, 234 (2d Cir. 2015). Moreover, a putative debtor's
"vigorously disput[ing] the factual underpinnings" of a putative
creditor's claim suggests the existence of a bona fide dispute.
Id.

In this case, the bankruptcy court properly found that
there was a bona fide dispute. There was extensive litigation
ongoing regarding the dischargeability of student loan debt in
general, and the petitioners' student loans in particular.

Moreover, the substance of the lawsuits calls into question
Navient's liability to the petitioners: While the Courts of
Appeals for the Fifth and Tenth Circuits had found that student
loan debt was dischargeable in bankruptcy, McDaniel v. Navient
Solutions LLC, 973 F.3d 1083, 1104 (10th Cir. 2020); In re
Crocker, 941 F.3d 206, 224 (5th Cir. 2019), the petitioners'
bankruptcy cases did not occur in those circuits, and therefore
it is not clear that those cases have any direct effect on the
viability of the petitioners' claims. Indeed, the question
whether student loan debt is dischargeable in bankruptcy was
certified to and is currently pending before the Court of
Appeals for the Second Circuit, see Homaidan, 17-1085 (Bankr.
E.D.N.Y.), ECF Nos. 107, 201, further indicating that reasonable
minds can differ as to this question. The existence of this
litigation was properly noticed by the bankruptcy court. See
Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150,
157 (2d Cir. 2006).

There are also several case-specific factual disputes that
call into question Navient's obligation to repay the alleged
debts, including:

> [W]hether a debtor is automatically entitled to a
> discharge of the debts in question or whether it must
> initiate an adversary proceeding, whether there was a
> co-borrower on the loans at issue (and if so, whether
> the debtor rather than the co-borrower made any payments
> post-discharge), whether Navient's collection efforts
> actually violated the discharge injunction, whether the

16

loans were obtained under false pretenses (and if so, whether the debtor is barred from receiving a discharge of the loans), whether the claims are barred by the doctrine of laches, and the amount of any alleged overpayment.

Dismissal Opinion at 12-13; see also Transcript at 21:11-:24, Bankr. ECF No. 52. Each of these disputes has the potential to eliminate Navient's liability to a petitioner, and thereby created a bona fide dispute. See, e.g., TPG Troy, 793 F.3d at 234 (finding a bona fide dispute based on the existence of certain potentially viable arguments by the debtor regarding liability); In re Taub, 439 B.R. 261, 274 (Bankr. E.D.N.Y. 2010) (finding a bona fide dispute where the putative debtor had "asserted colorable defenses"); In re Mountain Dairies, Inc., 372 B.R. 623, 634 (Bankr. S.D.N.Y. 2007) (finding a bona fide dispute where "the circumstances surrounding the parties' relationship are the subject of substantial dispute").

Contrary to the petitioners' contentions, these disputes can properly be considered on a motion to dismiss. The disputes are not evidence or counter-allegations: they are outstanding factual issues that made clear that there is, in fact, a bona fide dispute with respect to the petitioners' underlying claims. See, e.g., TPG Troy, 793 F.3d at 234; Taub, 439 B.R. at 274; Mountain Dairies, 372 B.R. at 634. The petitioners therefore failed to allege debts that were not subject to a bona fide dispute.

The petitioners argue that this reasoning as to the existence of a bona fide dispute "would turn 12(b)(6) on its head [by] treating the mere possibility that petitioners might lose at trial as fatal to their claims on the pleadings." Opening Br. 11, ECF No. 25. But that is a feature, not a bug. Section 303 sets a deliberately high bar for forcing a putative debtor into bankruptcy. See TPG Troy, 793 F.3d at 234 ("Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt." (emphasis added)). Consistent with that intent, Congress made the absence of a bona fide dispute as to the underlying claim an essential element of obtaining relief on the claim for involuntary bankruptcy. See BDC, 330 F.3d at 117–18. The court does not resolve any dispute — but the existence of a bona fide dispute on the underlying claim defeats the petitioner's prima facie claim to relief under § 303(h). See id. at 118.

For both of these reasons, the petitioners failed properly to allege that Navient was generally not paying its undisputed debts as those debts became due, a required element of an involuntary bankruptcy petition under § 303(h), and the bankruptcy court therefore properly dismissed the petition.

**3.**

The petitioners also make certain procedural arguments regarding the bankruptcy court's decision. In particular, the

petitioners argue that the bankruptcy court erred in not converting the motion to dismiss into one for summary judgment, because the bankruptcy court relied on evidence not in the pleadings. The petitioners also argue that the bankruptcy court further erred in requiring the petitioners to submit "evidence" on a motion to dismiss for failure to state a claim. These arguments are without merit.

"[W]here there is a legitimate possibility that the [trial] court relied on inappropriate material in granting" a motion to dismiss, a reviewing court must reverse for failure to convert the motion into one for summary judgment. Amaker v. Weiner, 179 F.3d 48, 50 (2d Cir. 1999). However, "reversal for lack of conversion is not required unless there is reason to believe that the extrinsic evidence actually affected the district court's decision." Id. at 51.

In this case, the bankruptcy court relied only on materials in the petition or of which it could take judicial notice. First, the petitioners cite, as examples of evidence the bankruptcy court erroneously considered, "evidence of other debts of the Petitioning Creditors."

But the bankruptcy court did not consider other debts of the petitioners. The bankruptcy court did not even mention the fact that the petitioners might have had other debts, and it is not clear what role that fact could have played in the

bankruptcy court's analysis. Simply because a fact was in the record does not mean that the bankruptcy court relied on it, and that reversal is consequently required. See Amaker, 179 F.3d at 50.

Second, the bankruptcy court was correct to consider the factual disputes raised by the defendants. As explained above, potentially viable arguments and factual disputes regarding liability may create a bona fide dispute as to liability, and are properly considered on a motion to dismiss. See, e.g., TPG Troy, 793 F.3d at 234; Mountain Dairies, 372 B.R. at 634.

Finally, the petitioners' argument that the bankruptcy court required them to submit "evidence" is without merit. While the conversion requirement is strictly enforced, the analysis is one of substance, not form. Amaker, 179 F.3d at 51. The mere fact that the bankruptcy court used the word "evidence" in its opinion does not necessarily indicate that the bankruptcy court in fact conducted a summary judgment-like analysis. See, e.g., Stajic v. City of New York, 214 F. Supp. 3d 230, 236 (S.D.N.Y. 2016).

For the reasons explained above, the materials on which the bankruptcy court permissibly relied established that the petitioners had failed to allege plausibly that Navient was not paying its undisputed debts, an element of a claim for relief under § 303(h). The petitioners therefore failed to allege an

element of their prima facie claim, and the bankruptcy court
properly dismissed the petition without converting the motion
into a summary judgment motion.

**B.**

The bankruptcy court also permissibly dismissed the
involuntary petition because it was filed in bad faith. A court
may dismiss a bankruptcy petition that is filed in bad faith.
See 11 U.S.C. § 1112(b)(1) (allowing dismissal of a Chapter 11
petition "for cause"); see, e.g., In re JPA No. 111 Co., No. 21-
12075, 2022 WL 298428, at *4 (Bankr. S.D.N.Y. Feb. 1, 2022)
(finding cause to dismiss where cases were filed in bad faith).
When considering whether to dismiss a petition pursuant to
§ 1112(b), a bankruptcy court properly considers evidence and
resolves factual issues. See Fed. R. Bankr. P. 1017(f)(1), 9014.

The Court reviews the bankruptcy court's decision to
dismiss on the basis of bad faith for abuse of discretion. In re
C-TC 9th Ave. P'ship, 113 F.3d 1304, 1312 (2d Cir. 1997); In re
Newton, No. 16-cv-11304, 2020 WL 2731995, at *9 (S.D.N.Y. May
26, 2020). "A court abuses its discretion when its decision
rests on an error of law or a clearly erroneous factual finding,
or cannot be located within the range of permissible decisions."
In re Jenkins, No. 17-cv-5819, 2018 WL 2139209, at *2 (E.D.N.Y.
May 9, 2018).

In C-TC, a case involving a voluntary bankruptcy petition,
the Court of Appeals analyzed bad faith sufficient to warrant
dismissal by reference to both objective and subjective factors.
See C-TC, 113 F.3d at 1309-12; see also In re R & G Properties,
Inc., No. 08-10876, 2009 WL 1076703, at *2 (Bankr. D. Vt. Apr.
16, 2009). Courts have extrapolated the C-TC analysis to
determine whether petitioning creditors in involuntary cases
acted in sufficient bad faith to warrant dismissal. See, e.g.,
In re Taberna Preferred Funding IV, Ltd., 594 B.R. 576, 600-01
(Bankr. S.D.N.Y. 2018); Murray, 543 B.R. at 489-91. In Murray,
the court considered factors including whether the bankruptcy
court proceeding was the continuation of a longstanding dispute,
whether there were other creditors "competing with each other to
be first in line to collect on claims"; whether there were
"adequate remedies under nonbankruptcy law"; whether the
putative creditor was "seeking bankruptcy solely to secure a
benefit that it [did] not have under nonbankruptcy law, without
a creditor community to protect whose needs might justify the
invocation of bankruptcy law"; whether "assets would be lost
o[r] dissipated in the event that the bankruptcy case did not
continue," and whether the putative debtor "need[ed], or
want[ed], a discharge." Murray, 565 B.R. at 533-34. This list is
not exhaustive. See id. at 533.

The bankruptcy court in this case cited Murray, Dismissal Opinion 17-18, noting particularly that Smith had been involved in extensive litigation against Navient over the years. The bankruptcy court also analyzed four other tests that are sometimes used to determine bad faith, and found bad faith under each of them. Because the C-TC test is an inclusive one that encompasses both objective and subjective factors, see R & G, 2009 WL 1076703, at *1-2, each of these tests provided support for the bankruptcy court's finding of bad faith.

The bankruptcy court first found bad faith pursuant to the "improper use" test, which is concerned with whether the petitioners seek to advance an interest outside the goals of bankruptcy. See, e.g., Bayshore, 209 F.3d at 105. This is closely related to the factor under Murray that asks whether the petitioners were "seeking bankruptcy solely to secure a benefit that [they did] not have under nonbankruptcy law." Murray, 543 B.R. at 492. In light of other courts' refusal to certify a class, the bankruptcy court could properly infer that the petitioners were seeking to circumvent that denial by bringing all lawsuits together in a bankruptcy proceeding, rather than to ensure an equitable distribution among creditors. Cf. id. at 492-93. Indeed, the petitioners effectively conceded that this was their motivation in their opening brief on this appeal. See Opening Br. 2, ECF No. 25. ("[R]ather than having each

23

individual debtor file a civil action to obtain an individual
determination that their debts were discharged, . . . the
bankruptcy court would be obligated to analyze the tens of
thousands of . . . loans."). The bankruptcy court's finding of
an improper use was therefore not clear error.

The bankruptcy court also found bad faith pursuant to the
"improper purpose" test, which looks to whether a petitioner was
"motivated by ill will, malice, or a desire to embarrass or
harass" the putative debtor. See Bayshore, 209 F.3d at 105. The
bankruptcy court made extensive findings to support its
inference of ill will, noting particularly that Smith had made
"some inflammatory characterizations of Navient in his
submissions" to the bankruptcy court, including that Navient was
"an avowed perjurer and unrepentant embezzler," and had "paraded
the story of th[e] case across the media." Dismissal Opinion 20–
21. The bankruptcy court's finding of improper purpose was not
clear error.

The bankruptcy court also found bad faith pursuant to the
"objective test," which looks at whether a "reasonable person"
in the putative creditor's position would have believed it
reasonable to file an involuntary petition. Bayshore, 209 F.3d
at 105-06. In this case, the petitioners have not alleged any
facts that even conceivably amount to an inference that Navient
is generally failing to pay its undisputed debts within the

meaning of 11 U.S.C. § 303(h), and the bankruptcy court could therefore find that no reasonable person in the petitioners' position would have believed it reasonable to file an involuntary petition. The bankruptcy court thus permissibly found that it was objectively unreasonable to file the petition in this case.

Finally, the bankruptcy court's finding of bad faith was supported under Bankruptcy Rule 9011. To determine whether sanctions on attorneys are appropriate under Bankruptcy Rule 9011, courts examine both objective and subjective elements. See Bayshore, 209 F.3d at 106. The objective portion of the test includes a requirement that the party have conducted "a reasonable inquiry into the facts and the law" "bearing on the legal justification of a claim." Id. The bankruptcy court noted that Smith had laid out the elements of an involuntary petition on his website, yet completely failed to plead the necessary elements, "reflect[ing] a complete failure to make a reasonable inquiry into the validity of the claims." Dismissal Opinion 21. And for the reasons explained above, the bankruptcy court also properly found subjective bad faith.

Each of the facts that the bankruptcy court cited as a basis for its finding of bad faith was supported in the record. And the bankruptcy court's amalgamation of those facts to arrive at a finding of bad faith was plainly within the range of

25

permissible findings. Accordingly, the bankruptcy court's
finding of bad faith sufficient to dismiss the petition was not
clear error, and the bankruptcy court properly dismissed the
petition on the additional ground that it was filed in bad
faith.

The petitioners argue that the bankruptcy court's finding
of bad faith should be reversed because the bankruptcy court
"never articulated what standard it was measuring the bad faith
under." Reply 10, ECF No. 27. In several cases, however, courts
have affirmed findings of bad faith, even where the bankruptcy
court did not expressly identify whether it had found bad faith
by clear and convincing or a preponderance of the evidence.
Compare, e.g., Murray, 900 F.3d at 59, with Murray, 543 B.R. at
489-97. The finding of bad faith would survive even under the
higher clear and convincing standard. Therefore, the bankruptcy
court properly dismissed the petition for the additional reason
that it was filed in bad faith.

### C.

The petitioners make two arguments relating to the
bankruptcy court's decision to abstain. Neither argument is
persuasive. First, the petitioners argue that the bankruptcy
court's abstention decision was improper because the bankruptcy
court "relied on a multitude of extraneous facts" in abstaining.
Reply 13, ECF No. 27. The petitioners made this argument for the

first time in reply, and therefore waived it; in any event, this argument is without merit. Second, the petitioners argue that the bankruptcy court was wrong to both abstain and reach the merits. This argument, too, is without merit. In neither their opening brief nor their reply brief do the petitioners challenge the merits of the bankruptcy court's decision to abstain and the two arguments they raise are without merit.

First, the petitioners argue for the first time in their reply brief that the bankruptcy court's abstention decision was improper because the bankruptcy court "relied on a multitude of extraneous facts" in abstaining. Reply 13, ECF No. 27. Courts typically do not consider arguments that are raised for the first time in a reply brief. McBride v. BIC Consumer Prod. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009). In any event, the argument is without merit. When deciding whether to abstain, a bankruptcy court is not limited to the pleadings. See Fed. R. Bankr. P. 1017(f)(1), 9014.

Second, the petitioners argue that the bankruptcy court was wrong to both abstain and reach the merits. This argument is also without merit. The petitioners cite no case for the proposition that a court cannot make a decision to abstain as an alternative holding, or that such an alternative holding voids the court's decision on the merits. To the contrary, the Court of Appeals for the Second Circuit in TPG Troy affirmed the

27

dismissal of an involuntary petition on the merits, even though the bankruptcy court had held in the alternative that it would abstain. TPG Troy, 793 F.3d at 233 & n.1; see also Friedman v. Revenue Mgmt. of N.Y., Inc., 38 F.3d 668, 669 (2d Cir. 1994). The bankruptcy court's alternative holding that it would abstain thus does not void its dismissal of the petition on the merits.

For these reasons, the bankruptcy court's dismissal of the involuntary petition is **affirmed.**

### IV.

### A.

The bankruptcy court's award of costs and attorney's fees is also affirmed. 11 U.S.C. § 303(i)(1) provides that "[i]f the court dismisses a petition under this section other than on consent of all petitioners and the debtor . . . the court may grant judgment against the petitioners and in favor of the debtor for (A) costs; or (B) a reasonable attorney's fee." When an involuntary petition is dismissed, "there is a presumption that costs and attorney's fees will be awarded to the alleged debtor." TPG Troy, 793 F.3d at 235. The petitioner bears the burden of proof on justifying a denial of costs and fees. In re TPG Troy, LLC, 492 B.R. 150, 162 (Bankr. S.D.N.Y. 2013), aff'd, 793 F.3d 228 (2d Cir. 2015).

In deciding whether to award costs and attorney's fees, courts take into account the totality of the circumstances,

considering particularly "(1) the merits of the involuntary petition; (2) the role of any improper conduct on the part of the alleged debtor; (3) the reasonableness of the actions taken by the petitioning creditors; and (4) the motivation and objectives behind the filing of the petition." In re TPG Troy, LLC, No. 12-14965, 2013 WL 3789344, at *4 (Bankr. S.D.N.Y. July 18, 2013).

The Court reviews the decision of the bankruptcy court to award costs and attorney's fees, Bayshore, 209 F.3d at 103, as well as the bankruptcy court's allocation of those fees among parties, see In re Anmuth Holdings LLC, 600 B.R. 168, 204 (Bankr. E.D.N.Y. 2019), for abuse of discretion.

**B.**

The bankruptcy court's award of costs and attorney's fees in this case was not an abuse of discretion. The bankruptcy court had authority under 11 U.S.C. § 303(i)(1) to award costs and reasonable attorney's fees, because, as the petitioners do not dispute, the bankruptcy court had dismissed the petition without the consent of the petitioners. See In re CNG Foods LLC, No. 16-43278, 2020 WL 4219679, at *9–10 (Bankr. E.D.N.Y. July 13, 2020) (noting that failure to oppose dismissal does not constitute consent for the purposes of § 303(i)).

The bankruptcy court considered the factors relevant to its determination whether to award attorney's fees, and its findings

with respect to each of those factors were supported by the record. In particular, the bankruptcy court found that the petition was not only meritless, but indeed "profoundly lacking," noting Mr. Smith's failure to oppose the motion to dismiss or attend the hearing. Dismissal Opinion 3. The bankruptcy court moreover reiterated its amply supported finding of bad faith. Considering those factors together, it was within the range of permissible findings to find that attorney fees were appropriate. See Troy, 2013 WL 3789344, at *4.

The bankruptcy court moreover carefully considered the amount of the fees and costs requested, and reasonably determined that those amounts were too high. See Fees Decision at 16-18. Based on that determination, the bankruptcy court reasonably reduced Kirkland & Ellis LLP's attorney's fees from $524,050.80 to $40,797.90; McGuireWoods LLP's attorney's fees from $81,431.10 to $16,401.15; and Kirkland & Ellis LLP's costs from $2,903.54 to $1,396.35.

Finally, the bankruptcy court examined the participation by Mr. Smith and PICAP in the proceedings, and based on those circumstances, permissibly attributed $26,148.50 of Kirkland & Ellis LLP's attorney's fees, $1,396.35 of Kirkland & Ellis LLP's costs, and $16,401.15 of McGuireWoods LLP's attorney's fees to Mr. Smith; and $14,649.40 of Kirkland & Ellis LLP's attorney's

fees to PICAP. Accordingly, the bankruptcy court's award of attorney's fees was not an abuse of discretion.

### C.

The bankruptcy court allocated part of the attorney's fees against Austin Smith, the petitioners' counsel.[3] The petitioners challenge this part of the bankruptcy court's decision. However, Mr. Smith expressly conceded during the hearings with respect to the Fees Decision that "any award of fees and costs under Section 303(i)(1)" would be Mr. Smith's responsibility. Transcript at 36:25–37:3, ECF No. 73. Mr. Smith cannot now argue that he is not responsible for the award. The issue is waived. See Edward B. Marks Music Corp. v. Cont'l Rec. Co., 222 F.2d 488, 492 (2d Cir. 1955); see also Peralta v. Vasquez, 467 F.3d 98, 105 (2d Cir. 2006) (noting that a party's commitment to abandon certain claims was enforceable via estoppel).

### D.

The petitioners' argument that the motion for attorney's fees was untimely is also without merit. Bankruptcy Rule 9014 applies to "contested matters" such as an involuntary petition under § 303. See In re Linton, 631 B.R. 882, 892 (B.A.P. 9th Cir. 2021); In re Elizabeth Serv., No. 3:20-bk-30003, 2021 WL 1342190, at *2 (Bankr. D.V.I. Apr. 7, 2021), amended on denial

---

[3] The petitioners do not appear to challenge the bankruptcy court's assignment of costs, which the Court would in any event affirm for substantially the reasons explained below.

of reconsideration sub nom. In re Serv., 2021 WL 2177061 (Bankr.

D.V.I. May 27, 2021). Bankruptcy Rule 9014(c) incorporates

Bankruptcy Rule 7054, which in turn incorporates Federal Rule of

Civil Procedure 54(d)(2)(B). That rule requires that a claim for

attorney's fees "be filed no later than 14 days after the entry

of judgment." Navient does not contend that it filed its motion

for fees and costs within that time.

However, most courts to have considered the issue have held

that Rule 54(d)(2)(B) does not apply to applications for

attorney fees under § 303(i). See, e.g., In re Imani Fe, LP, No.

BAP CC-12-1111, 2012 WL 5418983, at *6 (B.A.P. 9th Cir. Nov. 7,

2012); In re Cap. Fin., Inc., No. BAP CC-07-1122, 2007 WL

7535047, at *5-6 (B.A.P. 9th Cir. Nov. 14, 2007). The reasoning

of those courts is persuasive: because § 303(i) is the

"exclusive remedy for regulating abuse of the involuntary

bankruptcy process," it is "substantive law providing an

independent claim to an alleged debtor." Imani Fe, 2012 WL

5418983, at *6. The limitation described in Rule 54(d)(2)(B)(i)

is thus inapplicable. See id.; see also Cap. Fin., 2007 WL

7535047, at *5-6. While Bankruptcy Rule 7054 has been modified

since Imani and Capital Finance to expressly incorporate Rule

54(d)(2)(B), this amendment does not affect the reasoning in

those cases. See Cap. Fin., 2007 WL 7535047, at *6 ("[E]ven if

the rule were applicable in bankruptcy matters generally, an

32

attorney's fee award under § 303(i)(1) is not of the sort that would be governed by that rule.") Indeed, cases after the amendments have continued to find Rule 54 inapplicable to awards of attorney's fees under 11 U.S.C. § 303(i). See, e.g., Elizabeth, 2021 WL 1342190, at *2; In re Nat'l Med. Imaging, LLC, 570 B.R. 147, 157 (Bankr. E.D. Pa. 2017). The appellants cite no case that has found the time limit in Rule 54(d)(2)(B)(i) to be applicable to a request for attorney's fees pursuant to § 303(i).

In any event, Rule 54(d)(2)(B) allows for a court order to extend the time to seek attorney's fees and costs. The bankruptcy court in its order on the merits expressly retained jurisdiction on this issue, implicitly extending the time to file the appeal. Cf. DVI Receivables XIV, LLC v. Rosenberg, 500 B.R. 174, 180 (S.D. Fla. 2013), aff'd in part, vacated in part, and remanded, 779 F.3d 1254 (11th Cir. 2015); In re Cap. Fin., Inc., No. BAP CC-07-1122, 2007 WL 7535047, at *7 (B.A.P. 9th Cir. Nov. 14, 2007). The bankruptcy court's statement that it was retaining jurisdiction could moreover form the basis for a finding of excusable neglect under Bankruptcy Rule 9006(b)(1), thereby permitting the Bankruptcy Court to extend the time to file the fees motion after the expiration of the 14-day period.

For these reasons, Navient's motion for attorney's fees was timely, and the bankruptcy court's award of attorney's fees is **affirmed**.

V.

Finally, PICAP's motion to withdraw the reference to the bankruptcy court pursuant to 28 U.S.C. § 157(d) is denied. 28 U.S.C. § 1334 confers on district courts original jurisdiction over "all cases under title 11" and "all civil proceedings arising under title 11 or arising in or related to cases under title 11." Section 157(a) authorizes district courts to refer such cases "to the bankruptcy judges for the district." Section 157(d), however, requires district courts to withdraw that reference "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." Withdrawal under this provision "is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990). "Substantial and material consideration" means "significant interpretation, as opposed to simple application." City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d Cir. 1991).

34

PICAP proffers no law of the United States regulating
organizations or activities affecting interstate commerce that
the bankruptcy court was required to significantly interpret,
rather than merely apply. The first example of such a law that
PICAP offers is the purported rule whereby, if the bankruptcy
court declines to exercise jurisdiction over the involuntary
bankruptcy case, the bankruptcy court loses jurisdiction to rule
on the merits. But as explained above, the Court of Appeals for
the Second Circuit has squarely foreclosed the argument that a
bankruptcy court cannot make an abstention holding in the
alternative to a primary holding on the merits. See TPG Troy,
793 F.3d at 233 & n.1. Accordingly, the bankruptcy court was not
required to "significantly interpret" this rule.

PICAP next suggests that Rule 54 requires withdrawing the
reference under § 157(d). However, Rule 54 is relevant only
insofar as it is incorporated through Bankruptcy Rule 7054.
While there is arguably an issue of interpretation as to whether
this rule applies to proceedings under 11 U.S.C. § 303(i), that
issue relates to interpretation of the Bankruptcy Code and
Rules, not the Federal Rules of Civil Procedure. PICAP also
cites Peter v. Nanktwest, Inc., 140 S. Ct. 365, 370 (2019), for
the proposition that an "explicit indication" of Congress'
intent is required to overcome the so-called American Rule,
whereby each party bears its own costs. See id. at 370, 372. But

Peter does not help PICAP: Peter merely reflects a rule of
construction that might aid in interpreting the Bankruptcy Code.
As such, neither Rule 54 nor Peter is a non-bankruptcy law for
the purposes of § 157(d) as relevant in this case.

Finally, PICAP cites Rule 24, the doctrine of judicial
estoppel, and constitutional due process as examples of laws
that the bankruptcy court would have to significantly interpret.
But these rules, like the other rules cited by PICAP, do not
affect interstate commerce in a more than de minimis way,
because they do not "create[] the substantive rights and duties
of the parties to the lawsuit." Cf. Mikulin v. L. Sols. Chicago,
LLC, No. 1:19-mc-01590, 2020 WL 514474, at *2 (N.D. Ala. Jan.
31, 2020). Accordingly, these rules are not "laws of the United
States regulating organizations or activities affecting
interstate commerce" within the meaning of § 157(d), and cannot
support mandatory withdrawal of the reference under that
section. For these reasons, the motion to withdraw the reference
to the bankruptcy judge is **denied.**

### Conclusion

The Court has considered all of the arguments of the
parties. To the extent not addressed herein, the arguments are
either moot or without merit. For the foregoing reasons, the

36

orders of the bankruptcy court are **affirmed**. The Clerk is

directed to close all pending motions and to close this case.

**SO ORDERED.**

**New York, NY**
**March 23, 2022**

John G. Koeltl
United States District Judge